SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
  Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :      Chapter 11
                                          :
CIT GROUP INC. and                        :      Case No. 09-16565
CIT GROUP FUNDING COMPANY                 :
OF DELAWARE LLC,                          :
                                          :
                  Debtors.                :      (Motion for Joint Administration Pending)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' APPLICATION FOR ORDER
## UNDER 28 U.S.C. § 156(c), FED. R. BANKR. P. 2002 AND LOCAL BANKR. R. 5075-1
## AUTHORIZING KURTZMAN CARSON CONSULTANTS LLC
## TO ACT AS NOTICING AND CLAIMS AGENT

The debtors and debtors-in-possession in the above-captioned cases (collectively,

the "Debtors"),[1] hereby submit this application (the "Application") for entry of an order under 28

U.S.C. § 156(c), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rule 5075-1 of the Local Rules for the United States Bankruptcy Court for the

Southern District of New York (the "Local Bankruptcy Rules") authorizing Kurtzman Carson

---

[1]   CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017.  Its tax identification number is 65-
      xxx1192.  In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-
      16566, is a debtor in these related cases.  CIT Group Funding Company of Delaware LLC is located at 1 CIT
      Drive, Livingston, NJ 07039.  Its tax identification number is 98-xxx9146.

Consultants LLC ("KCC") to act as the official noticing and, to the extent needed, claims agent

(the "Noticing and Claims Agent") for the Office of the Clerk of the Bankruptcy Court for the

Southern District of New York (the "Clerk").  In support of this Application, the Debtors rely

upon and incorporate by reference the Declaration of Michael J. Frishberg submitted in support

of the Application (the "Frishberg Declaration") and the Declaration Pursuant to Local

Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and Various First Day

Applications and Motions (the "First Day Declaration") filed concurrently herewith under Local

Bankruptcy Rule 1007-2.[2]  In further support of the Application, the Debtors, by and through

their undersigned counsel, respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates

for the relief requested herein are 28 U.S.C. § 156(c), Bankruptcy Rule 2002 and Local

Bankruptcy Rule 5075-1.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), the Debtors filed voluntary

petitions in this Court for relief under chapter 11 of  title 11 of the United States Code (the

"Bankruptcy Code").  The factual background regarding the Debtors, including their business

operations, their capital and debt structure, and the events leading to the filing of these chapter 11

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day
Declaration.

cases, is set forth in detail in the First Day Declaration. The Debtors continue to manage and operate their businesses as debtors-in-possession under Bankruptcy Code sections 1107 and 1108.

**RELIEF REQUESTED**

3.      By this Application, the Debtors seek entry of an order (a) approving the agreement of services entered into with KCC (the "KCC Agreement") in the form attached hereto as Exhibit A and (b) authorizing the retention and appointment of KCC as Noticing and Claims Agent to, among other things, (i) serve as noticing agent for the mailing of notices to the estates' creditors and parties-in-interest and, to the extent needed, claims agent and (ii) provide expertise, consultation and assistance in connection with other administrative matters with respect to the Debtors' bankruptcy cases.

4.      The Debtors anticipate that there will be hundreds of thousands of creditors and other parties-in-interest involved in the Debtors' chapter 11 cases which may impose heavy administrative burdens on the Clerk. To relieve the Clerk of these burdens, the Debtors seek an order appointing KCC as the Noticing and Claims Agent in these chapter 11 cases. The Debtors submit that the appointment of an outside noticing and claims agent is the most effective and efficient manner by which to provide noticing and claims administration services in these chapter 11 cases and is in the best interests of the Debtors, their estates and creditors.

5.      KCC is one of the country's leading chapter 11 administrators, with extensive experience in noticing, claims administration and other administrative aspects of chapter 11 cases. The Debtors believe that KCC is well-qualified to provide noticing and claims administration services to the Debtors. KCC has acted as the official noticing and claims agent in numerous cases of comparable size, including several cases which are currently pending in the

3

United States Bankruptcy Court for the Southern District of New York.  The Debtors believe that the appointment of KCC as the Noticing and Claims Agent in these chapter 11 cases will permit the Debtors to focus on their reorganization efforts.

## SCOPE OF SERVICES

6.  The Debtors propose to retain KCC on substantially the terms and conditions set forth in the KCC Agreement.  Under the KCC Agreement, KCC, as Noticing and Claims Agent, will, if necessary, at the request of the Debtors or the Clerk, serve notices on parties-in-interest or as otherwise directed by the Court on behalf of the Debtors or the Clerk. The primary notice to be served in these "prepackaged" chapter 11 cases is the proposed Notice of Commencement of Chapter 11 Cases and Combined Hearing on Debtors' Amended Offering Memorandum, Disclosure Statement and Solicitation of Acceptances of a Prepackaged Plan of Reorganization, dated October 16, 2009 with respect to the First Amended Prepackaged Reorganization Plan of CIT Group Inc. and CIT Group Funding Company of Delaware LLC, dated October 16, 2009 (the "Plan") and Confirmation of the Plan.  KCC is prepared to serve that notice when approved by the Court.  In addition to providing noticing services, KCC will perform certain claims administration services, to the extent needed.  Because these cases are "prepackaged" chapter 11 cases, the Debtors anticipate that such services will be limited.  If these cases revert to traditional chapter 11 cases, the breadth of KCC's services will increase, as set forth in the KCC Agreement.

7.  KCC, at the request of the Debtors or the Clerk, may perform noticing, claims administration and other related services for the Debtors, in accordance with the terms of the KCC Agreement, including but not limited to:

(a)  Prepare and serve required notices in these chapter 11 cases, including:

(i)  a notice of the commencement of these chapter 11 cases;

4

(ii)      notices of any hearings on a disclosure statement and confirmation of a plan of reorganization;

(iii)     a notice of the initial meetings of creditors and equity holders under Bankruptcy Code section 341 (if necessary);

(iv)     notice of objections to claims (if necessary); and

(v)     such other miscellaneous notices as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)     Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     Provide access to the public for examination of copies of the proofs of claim or proofs of interest filed in the chapter 11 cases without charge during regular business hours (if necessary);

(d)     Furnish a notice of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court (if necessary);

(e)     File with the Court an affidavit or certificate of service which includes a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date and manner mailed, within ten (10) days of service (if necessary);

(f)     Docket all claims received by the Clerk, maintain the official claims registers (the "Claims Registers") for each Debtor on behalf of the Clerk, and provide the Clerk with certified duplicate, unofficial Claims Registers on a monthly basis, unless otherwise directed (if necessary);

(g)     Specify, in the applicable Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification(s) of the claim (e.g., secured, unsecured, priority, etc.) (if necessary);

(h)     Record all transfers of claims, pursuant to Bankruptcy Rule 3001(e), and provide any notices of such transfers required by Bankruptcy Rule 3001(e) (if necessary);

(i)     Relocate, by messenger, all of the actual proofs of claim filed with the Court to KCC, not less than weekly (if necessary);

(j)     Upon completion of the docketing process for all claims received to date by the Clerk for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (if necessary);

(k)     Make changes in the Claims Registers pursuant to any orders of the Court (if necessary);

(l)     Maintain the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party-in-interest or the Clerk (if necessary);

(m)     Assist with, among other things, solicitation and calculation of votes and distribution as required in furtherance of confirmation of plan of reorganization (if necessary);

(n)     Provide such other noticing, claims processing and administrative services as may be requested from time to time by the Debtors;

(o)     File with the Court the final version of the Claims Register immediately before the closing of the chapter 11 cases (if necessary); and

(p)     At the close of the case, box and transport all original documents, in proper format, as provided by the Clerk, to the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064.

**TERMS OF RETENTION**

8.     The Debtors propose to retain KCC on the terms and conditions set forth in the KCC Agreement. KCC's compensation is set forth in the KCC Agreement. The Debtors respectfully submit that such compensation is reasonable and appropriate in light of the services to be performed. The Debtors request that the fees and expenses of KCC incurred in the performance of the above services be treated as an administrative expense of the Debtors' chapter 11 estates and be paid by the Debtors in the ordinary course of business.[3] If any dispute arises between KCC and the Debtors with respect to the KCC Agreement, monthly invoices, or fees

---

[3]     As an administrative agent, the Debtors do not believe that KCC is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code or whose compensation is subject to approval of the Court under sections 330 and 331 of the Bankruptcy Code.

and expenses, the Debtors and KCC shall meet and confer in an attempt to resolve the dispute. If a resolution is not achieved, such dispute shall be presented to the Court for resolution thereof.

9. As part of the overall compensation payable to KCC under the terms of the KCC Agreement, the Debtors have agreed to certain indemnification obligations. The KCC Agreement provides that the Debtors will indemnify and hold harmless KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents under certain circumstances specified in the KCC Agreement, except in circumstances of gross negligence or willful misconduct. Both the Debtors and KCC believe that such provisions are customary and reasonable for noticing and claims agents in chapter 11 cases.

## APPLICABLE AUTHORITY

10. Bankruptcy Rule 2002 generally regulates what notices must be provided to creditors and other parties in interest in bankruptcy cases. Under Bankruptcy Rule 2002, the Court may direct that some person other than the Clerk give notice of the various matters described therein.

11. Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, states in pertinent part that:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

12. In addition, Local Bankruptcy Rule 5075-1 provides, in relevant part, as follows:

The Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judge's calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

S.D.N.Y. LBR 5075-1.

13.    The engagement of KCC as the Noticing and Claims Agent is therefore permitted under 28 U.S.C. § 156(c), Bankruptcy Rule 2002 and Local Bankruptcy Rule 5075-1.

14.    For all of the foregoing reasons, the Debtors believe the retention of KCC as Noticing and Claims Agent on the terms set forth in the KCC Agreement is appropriate and is in the best interests of the Debtors, their estates and creditors.

## DISINTERESTEDNESS

15.    Although the Debtors do not propose to employ KCC under Bankruptcy Code section 327, to the best of the Debtors' knowledge, information, and belief, and as set forth in the Frishberg Declaration, KCC neither holds nor represents any interest adverse to the Debtors' estates in connection with any matter on which it would be employed and is a "disinterested person" within the meaning of Bankruptcy Code section 101(14). KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

## NOTICE

16.    Notice of this Application has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to: (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Federal Reserve; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) those parties identified in the schedules of the largest unsecured creditors

annexed to the Debtors' petitions; (g) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (h) counsel to Bank of America, N.A. as L/C Issuer; and (i) Counsel to the Lender Steering Committee. The Debtors submit that under the circumstances no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order authorizing KCC to act as Noticing and Claims Agent and provide the services described above and such other and further relief as may be just and proper.

Dated: New York, New York
       November 1, 2009

<div style="margin-left:auto">

CIT Group Inc.
CIT Group Funding Company of
Delaware LLC


*/s/ Eric Mandelbaum*
Name: Eric Mandelbaum
Title:   Senior Vice President and
         Deputy General Counsel

</div>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :    Chapter 11
                                        :
CIT GROUP INC. and                      :    Case No. 09-16565
CIT GROUP FUNDING COMPANY               :
OF DELAWARE LLC,                        :    Jointly Administered
                                        :
                Debtors.                :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF MICHAEL J. FRISHBERG IN SUPPORT OF THE
DEBTORS' APPLICATION FOR ORDER
UNDER 28 U.S.C. § 156(c), FED. R. BANKR. P. 2002 AND LOCAL BANKR. R. 5075-1
AUTHORIZING KURTZMAN CARSON CONSULTANTS LLC
TO ACT AS NOTICING AND CLAIMS AGENT**

I, Michael J. Frishberg, hereby declare that the following is true to the best of my

knowledge, information, and belief:

        1.       I am the Vice President of Corporate Restructuring Services of Kurtzman

Carson Consultants LLC ("KCC"), whose offices are located at 2335 Alaska Avenue, El

Segundo, California 90245, telephone number (310) 823-9000. I am duly authorized to make

this Declaration on behalf of KCC. Except as otherwise indicated, I have personal knowledge of

the matters set forth herein and, if called as a witness, I would testify competently thereto.

        2.       I submit this Declaration in support of the Debtors' Application for Order

Under 28 U.S.C. § 156(c), Fed. R. Bankr. P. 2002 and S.D.N.Y. LBR 5075-1 Authorizing

Kurtzman Carson Consultants LLC to Act as Noticing and Claims Agent, which has been filed

contemporaneously herewith (the "Application").[1]

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

3.      As noticing and, to the extent needed, claims agent in these cases (the

"Noticing and Claims Agent"), the services my firm proposes to render to the Debtors and the

Office of the Clerk of the Bankruptcy Court for the Southern District of New York (the "Clerk")

include, if necessary, serving notices to parties in interest or as otherwise directed by the Court

on behalf of the Debtors or the Clerk, and certain claims administration services, to the extent

needed.

4.      KCC is one of the country's leading chapter 11 administrators, with

experience in noticing, claims administration, other administrative aspects of chapter 11 cases.

KCC has substantial experience in matters of this size and complexity, and has acted as the

official noticing and claims agent in many large bankruptcy cases pending in this District and

other districts nationwide.  See, e.g., In re Lear Corporation, Case No. 09-14326 (Bankr.

S.D.N.Y. 2009); In re Charter Communications, Inc., Case No. 09-11435 (Bankr. S.D.N.Y.

2009); In re Gen. Growth Props., Inc., Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. Apr. 16,

2009); In re Tronox, Inc., Case No. 09-10156 (Bankr. S.D.N.Y. Jan. 13, 2009); In re Paper Int'l,

Inc., Case No. 08-13917 (Bankr. S.D.N.Y. Oct. 10, 2008); In re Wellman, Inc., Case No. 08-

10595 (Bankr. S.D.N.Y. Mar. 12, 2008); In re DJK Residential, LLC, Case No. 08-10375 (Bankr

S.D.N.Y. Feb. 5, 2008); In re Bally Total Fitness of Greater New York, Inc., Case No. 07-12395

(Bankr. S.D.N.Y. Dec. 9, 2007); In re Calpine Corp., Case No. 05-60200 (Bankr. S.D.N.Y. Dec.

22, 2005); see also, e.g., In re Eddie Bauer Holdings, Inc., Case No. 09-12099 (MFW) (Bankr.

D. Del. June 18, 2009); In re Premier Int'l Holdings Inc., Case No. 09-12019 (CSS) (Bankr. D.

Del. June 15, 2009); In re Visteon, Case No. 09-11786 (CSS) (Bankr. D. Del. May 29, 2009); In

re Anchor Blue Retail Group, Inc., Case No.09-11770 (PJW) (Bankr. D. Del. May 28, 2009); In

re VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Nov. 4, 2008); In re Washington

<u>Mutual, Inc.</u>, Case No. 08-12229 (Bankr. D. Del. Oct. 31, 2008); <u>In re Mervyn's Holdings, LLC</u>,

Case No. 08-11586 (Bankr. D. Del. July 30, 2008).

     5.     KCC represents, among other things, the following:

(a)     KCC is not a creditor of the Debtors;

(b)     KCC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Noticing and Claims Agent in these chapter 11 cases;

(c)     By accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government;

(d)     In its capacity as the Noticing and Claims Agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(e)     KCC will not employ any past or present employees of the Debtors in connection with its work as the Noticing and Claims Agent in these chapter 11 cases;

(f)     In its capacity as the Noticing and Claims Agent in these chapter 11 cases, KCC will not intentionally misrepresent any fact to any person; and

(g)     None of the services provided by KCC as Noticing and Claims Agent will be at the expense of the Clerk.

     6.     The Debtors have hundreds of thousands of creditors, and accordingly,

KCC may have rendered and may continue to render services to certain of these creditors. KCC

has not and will not represent the separate interests of any such creditor in these cases.

Additionally, KCC employees may, in the ordinary course of their personal affairs, have

relationships with certain creditors of the Debtors. For example, one or more of KCC's

employees may have obligations outstanding with financial institutions that are creditors of the

Debtors or may have used the Debtors' services.

     7.     KCC is an indirect subsidiary of Computershare Limited. Computershare

Limited is a financial services and technologies provider for the global securities industry.

Within the Computershare corporate structure, KCC operates as a separate, segregated business unit.  As such, any relationships that Computershare Limited and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.  Computershare Limited and its affiliates have many clients both in the United States and internationally.  In the ordinary course of their business, certain affiliates of Computershare Limited may provide administrative services to CIT or its affiliates. For example, Computershare Trust Company of Canada, an indirect affiliate of KCC through KCC's ultimate parent, serves in an administrative capacity as the sub-paying agent in Canada with respect to CIT's 4.72% Senior Notes due 2011.  Additionally, Administar, a claims and noticing agent, is also an indirect subsidiary of Computershare Limited.  On July 1, 2009, the operations of Administar were consolidated under KCC.

8.     To the best of my knowledge, information, and belief, and except as disclosed herein, KCC neither holds nor represents any interest adverse to the Debtors' estates in connection with any matter on which it would be employed and KCC is a "disinterested person," within the meaning of Bankruptcy Code section 101(14).  KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require further disclosure.

9.     In performing the services of Noticing and Claims Agent, KCC will charge the Debtors the rates set forth in the KCC Agreement, which is attached as <u>Exhibit A</u> to the Application.  The rates set forth therein are at least as favorable as the rates that KCC charges in cases in which it has been retained to perform similar services.

10.     KCC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 1, 2009

/s/ Michael J. Frishberg
Michael J. Frishberg
Vice President of Corporate Restructuring
Services
Kurtzman Carson Consultants LLC

5

**EXHIBIT A**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 14th day of July, 2009, between CIT Group, Inc. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**<u>Terms and Conditions</u>**

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the KCC Fee Structure.

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

II.     PRICES, CHARGES AND PAYMENT

A.      KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect on the day such services and/or supplies are provided to the Company, in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment.

B.      Company agrees to pay fees set by KCC related to transportation, lodging, meals, publications, printing, postage and other third-party charges, in addition to the hourly consulting fees set forth in the KCC Fee Structure.

C.      In addition to all fees for services and expenses hereunder, Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.      Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.      KCC agrees to submit its invoices to the Company monthly, provided, however, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment which will be due and payable upon demand and prior to the performance of services hereunder.  Company agrees that the amount invoiced is due and payable upon its receipt of the invoice.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, notice shall be given to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section


# KCC AGREEMENT FOR SERVICES

156(c) approving this Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G.      KCC shall receive a retainer in the amount of $150,000 for services to be performed and expenses to be incurred in this matter due upon execution of this Agreement. This shall be an "evergreen retainer;" invoices shall be drawn down from the retainer and Company's payments shall then be deposited into the retainer to return the retainer to its original $150,000.

## III.     RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for Company's use during and in connection with the services provided by KCC under this Agreement.

## IV.     NON-SOLICITATION

Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

## V.      CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.



# KCC AGREEMENT FOR SERVICES

VI.     SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined below).  As used herein, the term "Cause" means (i) gross negligence or wanton misconduct of KCC that causes serious and material harm to the Company's reorganization under Chapter 11 of the Bankruptcy Code or (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for an orderly transfer.  Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C.      Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  KCC may dispose of the data or media, and be reimbursed for the expense of such disposition, after giving the Company thirty (30) days' notice if the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days.  Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients. KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement, other than Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party.  The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to Company or any person claiming through or under Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC's liability to Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to Company and actually paid to KCC for the services contemplated under the Agreement.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.    Company is responsible for the accuracy of the programs and data it or any Company Party submits for processing to KCC and for the output.  Company agrees to initiate and maintain backup files that would allow Company to regenerate or duplicate all programs and data submitted by Company to KCC.

D.    Company agrees that except as set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



# KCC AGREEMENT FOR SERVICES

X.      FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.     INDEPENDENT CONTRACTORS

Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

| | |
|---|---|
| Kurtzman Carson Consultants LLC | CIT Group Inc. |
| 2335 Alaska Ave. | 1 CIT Dr |
| El Segundo, CA  90245 | Livingson, NJ 07039 |
| Attn:  James Le | Attn:  Eric Mandelbaum |
| Tel: (310) 823-9000 | Tel: (973) 740-5109 |
| Fax: (310) 823-9133 | Fax: (973) 740-5087 |
| | Email:  eric.mandelbaum@cit.com |

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.   APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter



# KCC AGREEMENT FOR SERVICES

law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of Company and an officer of KCC.

## XV.   ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by KCC to a wholly owned subsidiary of KCC.

## XVI.   ARBITRATION

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in the Los Angeles County, State of California.

## XVII.   ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: Michael J. Frishberg       DATE: 7/15/09
TITLE: Vice President, Restructuring Services

Company

BY: ERIC MANDELBAUM      DATE: 7/15/09
TITLE: SVP & DEPUTY GC.

7



# KCC CORPORATE RESTRUCTURING
# FEE STRUCTURE

**FEES**

**Consulting Services & Rates[1]**

| | |
|---|---|
| Clerical | $45.00 -   $65.00 per hour |
| Project Specialist | $80.00 -   $140.00 per hour |
| Consultant | $165.00 - $245.00 per hour |
| Senior Consultant | $255.00 - $275.00 per hour |
| Senior Managing Consultant | $295.00 - $325.00 per hour |
| Technology/Programming Consultant | $145.00 - $195.00 per hour |
| Weekend, holidays and overtime | Waived |

**EXPENSES[2]**

**KCC CaseView – Application Licensing, Web Hosting & Database Storage**

| | |
|---|---|
| Case configuration | Applicable consulting fees |
| Remote set-up; training | Applicable consulting fees |
| Permitted users | $100.00 per user per month |
| License fee and data storage | $0.05 per creditor per month |
| Case-specific public website set-up | Waived |
| Case-specific public website hosting | $250.00 per month |
| Case-specific voicemail box for creditor inquiries | Waived |
| Case-specific e-mail box for creditor inquiries | Waived |

**Claims Management & Administration**

| | |
|---|---|
| Creditor import | Waived |
| Proof of Claim input | $0.25 per claim |

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.
[2] Expenses shall be consistent with the general practice procedures authorized in the Southern District of New York.

Kurtzman Carson Consultants LLC 1230 Avenue of the Americas, 7th Floor, New York, NY 10020  PHONE 866-381-9100  kccllc.com



# KCC CORPORATE RESTRUCTURING
# FEE STRUCTURE

**Notice Printing & Publication Services**

| | |
|---|---|
| Set-up | Waived |
| Insert creditor information into customized documents | $0.12 per piece |
| Electronic noticing (e-mail) | $50.00 per 1,000 |
| Electronic noticing (domestic facsimile) | $0.15 per page |
| Claim Acknowledgement Card | $0.25 per notice |
| Document folding and inserting | $0.07 per document |
| Finishing – tape binding[3] | $1.25 per document |
| Legal notice publishing | Quote prior to publishing |
| Public Debt and Equity Holder noticing. | Quote as required, based on nature and type of securities |

**Document Management/Imaging**

| | |
|---|---|
| Electronic imaging (scanning & bar-coding) | $0.10 per imaged page |
| Virtual data room | Quote prior to VDR set-up[4] |

**Standard and Customized Reporting**

*The following services are available at consulting rates:*

- Preparation of Service Lists
- Preparation of Claims Registers & Claims Reports
- Claims Reconciliation
- Preparation of Claims Objection Exhibits
- Custom Data Extraction & Forensics
- Preference Data Compilation
- Preparation of Schedules & SOFA
- Preparation of Ballot Tabulations/Disbursements Reports
- Contract and Lease Analysis
- Preparation of Claim Transfer Reports
- Preparation of Exhibits to Plan and Disclosure Statement
- Preparation of Custom Reports
- Other Services as Requested by Client

---

[3] This is an optional service for documents exceeding 200 images.
[4] Regular set-up fee is $5,000. Includes two (2) users. Additional users cost $250 per month.



# KCC CORPORATE RESTRUCTURING
# FEE STRUCTURE

**Solicitation & Vote Tabulation**

| | |
|---|---|
| Plan & Disclosure Statement Mailings – (CD or print) | Quote prior to printing |
| Per ballot process charge | $0.25 per ballot |

**Disbursements**

| | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |

**Other Services**

| | |
|---|---|
| KCC's proprietary Avoidance Application Systems | Quote prior to performance |

**Other Expenses**

| | |
|---|---|
| Printing, photocopies and labels | $0.10 per image [5] |
| Facsimile – standard incoming/outgoing | No charge |
| Archival DVD/CD-ROM | $50 per copy |

---

[5] With respect to notice printing related to service of a document on more than 1,000 parties, this charge will be reduced by 5%.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :

In re:                             :       Chapter 11
                                        :

CIT GROUP INC. and         :       Case No. 09-16565
CIT GROUP FUNDING COMPANY   :
OF DELAWARE LLC,          :       Jointly Administered
                                        :

                Debtors.       :

                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER UNDER 28 U.S.C. § 156(c), FED. R. BANKR. P. 2002 AND LOCAL BANKR. R.
5075-1 AUTHORIZING KURTZMAN CARSON CONSULTANTS LLC
TO ACT AS NOTICING AND CLAIMS AGENT**

        Upon the application (the "Application")[1] of the Debtors for an order (the "Order")

under 28 U.S.C. § 156, Rule 2002 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rule 5075-1 of the Local Rules for the United States Bankruptcy Court

for the Southern District of New York (i) approving an agreement for services with Kurtzman

Carson Consultants LLC ("KCC") and (ii) authorizing the retention and appointment of KCC as

noticing and, to the extent needed, claims agent (the "Noticing and Claims Agent") in these cases;

and upon the Frishberg Declaration and the First Day Declaration; and due and sufficient notice

of the Application having been given under the particular circumstances; and it appearing that no

other or further notice need be given; and it appearing that the employment of KCC is in the best

interests of the Debtors estates, their creditors, and other parties-in-interest; and after due

deliberation thereon and sufficient cause appearing therefor, it is hereby;

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
    Application.

ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Application is GRANTED as set forth in this Order.

2.     KCC's retention and appointment as Noticing and Claims Agent is approved on the terms and conditions set forth in the KCC Agreement and the Application.

3.     The terms of the KCC Agreement are approved.

4.     KCC shall perform the services set forth in the KCC Agreement and the Application.

5.     The fees and expenses of KCC incurred in the performance of services in accordance with the KCC Agreement and the Application shall be treated as an administrative expense of the Debtors' chapter 11 estates and be paid by the Debtors in the ordinary course of business.

6.     The Debtors and KCC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

7.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062 and 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.     This Court shall retain jurisdiction with respect to all matters relating to or arising from the implementation or interpretation of this Order.


Dated:     New York, New York
                        , 2009


_____
UNITED STATES BANKRUPTCY JUDGE