SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
  Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In re:                         :     Chapter 11
                             :

CIT GROUP INC. and        :     Case No. 09-16565
CIT GROUP FUNDING COMPANY  :
OF DELAWARE LLC,        :
                             :

            Debtors.    :     (Motion for Joint Administration Pending)
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105, 363, 503(b)(9), 1107 AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING PAYMENT OF UNIMPAIRED ORDINARY COURSE CLAIMS IN THE ORDINARY COURSE OF BUSINESS**

        The debtors and debtors-in-possession in the above-captioned cases (collectively,

the "Debtors"),[1] hereby move (the "Motion") for the entry of a interim and final orders under

sections 105, 363, 503(b)(9), 1107 and 1108 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the

---

[1]    CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017. Its tax identification number is 65-xxx1192. In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-16566, is a debtor in these related cases. CIT Group Funding Company of Delaware LLC is located at 1 CIT Drive, Livingston, NJ 07039. Its tax identification number is 98-xxx9146.

"Bankruptcy Rules") authorizing, but not directing, the payment of certain unimpaired General Unsecured Claims (as defined below) of providers of goods and services in the ordinary course of business under the terms and conditions set forth herein. In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and Various First Day Applications and Motions (the "First Day Declaration") filed concurrently herewith under Local Bankruptcy Rule 1007-2.[2] In further support of the Motion, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363, 503(b)(9), 1107 and 1108 and Bankruptcy Rule 6003.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration. The Debtors continue to manage and operate their businesses as debtors-in-possession under Bankruptcy Code sections 1107 and 1108.

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**RELIEF REQUESTED**

3.      The Debtors believe that allowing for a "seamless" transition into and through bankruptcy will preserve the value upon which the prepackaged plan of reorganization (the "Plan") is based.  A fundamental aspect of the Debtors' efforts to minimize disruption during their chapter 11 cases is the Debtors' ability to maintain the many relationships with the parties who supply goods and services to the Debtors.  Because these relationships are critical to the continued operation of the Debtors' businesses during and after their bankruptcy cases, it is critical that the Debtors be permitted to honor their publicly expressed commitment to pay the Ordinary Course Claims (as defined below) in the ordinary course of business.

4.      Accordingly, the Debtors request authority (but not direction) to pay, as they come due in the ordinary course of business, the unimpaired prepetition ordinary course claims (the "Ordinary Course Claims") of providers and vendors of goods and services (collectively, the "Vendors") who agree to continue to provide their goods and services on the customary credit terms that existed within 120 days prior to the Petition Date, or on such other terms and conditions as are acceptable to the Debtors.[3]  The Debtors are not seeking to give priority to so-called "critical vendors."  Rather, the Debtors are seeking to pay the Vendors' Ordinary Course Claims consistent with and in the spirit of the Plan, which proposes to pay such holders in full.  Further, until relief on the Motion is granted on a final basis, the Debtors seek the authority to pay up to $10 million in Ordinary Course Claims.

5.      Such Ordinary Course Claims may include, but are not limited to, claims of the Debtors' (i) providers of supplies, equipment and services necessary to the Debtors'

---

[3]      Under the Plan, general unsecured claims are classified as Class 5 claims ("General Unsecured Claims"). The Plan provides that General Unsecured Claims are unimpaired and that unless the holder of such claim and the Debtors agree to different treatment, on the Effective Date, each holder of a Allowed (as defined in the Plan) General Unsecured Claim shall have its Claim Reinstated (as defined in the Plan). See Plan at C-15.

business operations; (ii) advertisers; (iii) rent and utility service providers; (iv) external data and technology support service providers; (v) consultants, legal advisors (except for those professionals subject to filing fee applications) and auditors that are not addressed in other first day motions; and (vi) other general operational expenses.  Based on the Debtors' books and records, the Debtors estimate that the total amount of Ordinary Course Claims to be paid to the Vendors will be approximately $20 million dollars.

       6.       The Debtors are current on their payments to the Vendors, and only wish to maintain such payment through their chapter 11 cases.  The Debtors propose that all payments made under this Motion be subject to the following conditions:

(a)      The Debtors, in their sole discretion, subject to the terms set forth below, shall determine which Ordinary Course Claims, if any, will be paid pursuant to this Motion;

(b)      If a creditor accepts payment under this Motion, such creditor is deemed to have agreed to continue to provide goods and/or services to the Debtors, on terms that are as good or better than the terms and conditions (including credit terms) that existed one hundred and twenty (120) days prior to the Petition Date (the "Customary Terms"), during the pendency of these chapter 11 cases;[4]

(c)      If a creditor accepts payment under this Motion and thereafter does not continue to provide goods and/or services on at least the Customary Terms during the pendency of these chapter 11 cases, then (i) any payment on a prepetition Claim received by such creditor will be deemed to be an unauthorized voidable postpetition transfer under Bankruptcy Code section 549, recoverable by the Debtors in cash upon written request, and (ii) upon recovery by the Debtors, any such prepetition Claim will be reinstated as if the payment had not been made;

(d)      If the Debtors seek to recover a payment from a creditor because the creditor does not continue to provide goods and/or services to the Debtors on at least the Customary Terms during the pendency of these chapter 11 cases, the creditor may contest such action by making a written request (a "Request") to the Debtors to schedule a hearing before this Court.  If such a Request is made, the Debtors will

---

[4]    In the event that the relationship between the creditor accepting payment under this Motion and the Debtors does not extend to 120 days before the Petition Date, the Customary Terms will mean the terms that the creditor generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment.

provide notice of a hearing on such Request to the creditor making the Request and other interested parties in accordance with the Bankruptcy Code and the orders of this Court; and

(e)     Prior to making a payment to a creditor under this Motion, the Debtors may, in their absolute discretion, settle all or some of the prepetition claims of such creditor for less than their face amount without further notice or hearing.

7.      In order to effectuate the purposes of this Motion, the Debtors request that all banks and other financial institutions pursuant to this Motion be authorized and directed to receive, process, honor, and pay any and all checks, drafts, wires or automated clearing house transfers (collectively, the "Disbursements"), whether issued or presented prior to or after the Petition Date.  The Debtors further request that such banks and financial institutions be authorized and directed to rely on the representations of the Debtors as to which Disbursements are authorized to be paid.

## BASIS FOR RELIEF

8.      The Debtors and their affiliates (the "Company") are a leading commercial finance company that provides commercial financing and leasing products and management advisory services to clients in small and middle market businesses across the globe.  The Company offers a range of financing and leasing products including asset-based loans, secured lines of credit, leases (operating, finance, and leveraged), vendor finance programs, import and export financing, debtor-in-possession/turnaround financing, acquisition and expansion financing, letters of credit and trade acceptances structuring, and small business loans.  It also provides advisory services across a range of business areas including financial risk management, asset management and servicing, merger and acquisition advisory services, debt restructuring, credit protection, account receivables collection, debt underwriting and syndication, capital markets, and insurance services to small businesses and middle market customers.

9.     The Debtors rely on their Vendors to ensure that businesses are able to operate without interruption.  For example, the Vendors provide the Debtors with the various office supplies and equipment necessary to the permit their offices to function smoothly.  The Vendors also include the Debtors' rating service providers, utility service providers, external office support consultants, express shippers and advertisers.

10.     In accordance with General Order 203 - Adoption of Prepackaged Chapter 11 Case Guidelines, dated February 24, 1999 (the "Guidelines"), a motion for an order "authorizing [d]ebtor to pay creditors whose prepetition claims will be paid in full in cash on consummation" is a "Typical First Day Motion and Order" in a prepackaged bankruptcy case. See Guidelines, at §VI.C.16.   Bankruptcy Rule 6003, when coupled with Bankruptcy Code section 363(b) or 105, permits this Court to authorize the Debtors to pay the Ordinary Course Claims when the relief is necessary to avoid immediate and irreparable harm.  As discussed further below, the Debtors, their creditors and their estates may suffer immediate and irreparable harm if the Debtors were unable to operate their business in the ordinary course.

11.     Conversely, payment of the Ordinary Course Claims mitigates certain risks to the Debtors' business.  The Debtors are making every effort to avoid interruptions in their ability to procure the goods and services necessary to their ongoing operations.  The Debtors respectfully submit that the relief requested herein is necessary to preserve their ability to continue their operations without interruption.  Absent payment of the Ordinary Course Claims in the ordinary course of business, the Debtors' business may be disrupted and certain Vendors may delay delivery of goods and services or demand trade terms that are less favorable to the Debtors, including payment in advance, as a condition to continuing a business relationship with the Debtors.  Any short term disruption could generate instability and would damage the

"business as usual" message on which their prepackaged reorganization is predicated and undermine the Debtors' efforts to repair customer confidence.

12.    Moreover, in that regard, the Debtors do business with some of the Vendors without the benefit of contracts and, therefore, these Vendors generally are not obligated to do business with the Debtors or to honor particular trade terms in the future.  As such, failure to pay the Ordinary Course Claims of the Vendors who provide goods and services would likely result in a disruption or cancellation of deliveries of goods and services and thus, undermine the Debtors' operations.  Even if the Debtors were able to locate suitable replacement Vendors or service providers, the disruption in the flow of goods and services to or at the sites of the Debtors' offices would jeopardize the Debtors' ability to provide services to their customers on a timely basis, thereby reducing the value of the estates.  Conversely, the continued availability of trade credit will be extremely valuable to the Debtors to allow them to preserve working capital while maintaining optimal production levels.  Thus, by this Motion, the Debtors have reserved the right to ensure that the Vendors will continue to supply trade credit necessary to the Debtors' operations.

13.    In addition, certain Vendors may have mechanic or possessory lien rights. Any delays in payment to such Vendors may result in the assertion of those liens.  Thus, the Debtors will have no alternative but to pay such Vendors in full in any event in order to effect the release of any liens securing payment of such charges.

14.    Further, certain creditors will have claims based on goods received by the Debtors within twenty (20) days before the Petition Date in the ordinary course of business, entitling them to administrative expense priority under Bankruptcy Code section 503(b)(9)

("503(b)(9) Claims").  Such creditors would not only be paid in full, but are already accorded priority.

15.     Finally, payment of the Ordinary Course Claims in the ordinary course of business will not affect relative distributions to creditors under the Plan.  The Debtors anticipate emerging from chapter 11 within a very short time period, and the payment of the Ordinary Course Claims will allow the Debtors to do so with minimal disruption to their businesses.  As discussed above, the Plan provides for the payment in full of all General Unsecured Claims.  As a result, granting the relief requested herein will affect only the timing of payment to holders of such claims, and no prejudice should be suffered by any other parties in interest in these chapter 11 cases on account of the payment of such claims.  Accordingly, the Debtors respectfully submit that payment of the Ordinary Course Claims in the ordinary course of business is especially appropriate here because the satisfaction of such claims is already a key feature of the Debtors' reorganization, necessary to preserve the value of their businesses and will ease their administrative burdens during the very limited period pending confirmation.  Thus, the Debtors believe that the relief requested is reasonable and necessary, particularly under the circumstances of these chapter 11 cases.

## APPLICABLE AUTHORITY

### A.     Payment of the Ordinary Course Claims is Appropriate Under Section 363(b) of the Bankruptcy Code

16.     Bankruptcy Code section 363(b) permits a debtor to use property of the estate "other than in the ordinary course of business," after notice and a hearing.  See 11 U.S.C. § 363(b)(1).  This Court should approve a debtor's request for relief under Bankruptcy Code section 363 where a debtor demonstrates a sound business justification for seeking such relief.  See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d

Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him a good business reason to grant the application."); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("[T]he debtor must articulate some business justification, other than mere appeasement of major creditors. . . .")

17.     Once a debtor has articulated a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

18.     The business judgment rule has vitality in chapter 11 cases.  See Integrated Res., 147 B.R. at 656; see also Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").

19.     As discussed above, it is the Debtors' business judgment that failure to pay Ordinary Course Claims will have a material adverse impact on their businesses and, thus, their efforts to implement the restructuring contemplated by the Plan.  Moreover, timely paying Ordinary Course Claims is wholly consistent with the Plan.

**B.     Payment of Vendors Will Allow the Debtors to Avoid the Imposition of Possessory Liens Under Section 546(b) of the Bankruptcy Code**

20.     The Debtors believe that failure to pay certain Vendors in the ordinary course may result in the assertion of mechanics or possessory liens by the respective claimants under applicable state law (collectively, the "Liens").  Under Bankruptcy Code section 362(b)(3),

the act of perfecting such Liens, to the extent consistent with Bankruptcy Code section 546(b),[5] is expressly excluded from the automatic stay otherwise imposed by Bankruptcy Code section 362(a).

21.     Absent their assertion of a Lien, Vendors will be entitled to payment in full for their claims as holders of a General Unsecured Claim under the terms of the Plan. However, assertion of Lien rights may result in rendering a Vendor a fully secured creditor entitled to receive payment in full of its prepetition claim under the Plan. Consequently, payment of the Vendors in the ordinary course will give them no more than that to which they otherwise would be entitled under the Plan.

## C.     Payment of the Ordinary Course Claims is in Furtherance of the Debtors' Duties Under Sections 1107(a) and 1108 of the Bankruptcy Code

22.     The Debtors, operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code, have duties to protect and preserve their estates. Implicit in such duties is the maintenance of the going-concern value of the Debtors' businesses, which maintenance includes preserving the accounts and relationships with the Vendors by paying such Vendors in the ordinary course of business.

23.     As described above, certain Vendors will have 503(b)(9) Claims against the Debtors on account of goods supplied to the Debtors during the 20 days prior to the Petition Date. Furthermore, alternative providers would, in certain instances, be difficult to find. The harm and economic disadvantage that would stem from the failure to pay any of the Ordinary Course Claims is grossly disproportionate to the amount of the prepetition claims that would

---

[5]     Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A).

have to be paid.  This is especially evident where, as here, general unsecured creditors will be paid in full under the Plan.

24.    Finally, no practical or legal alternative to paying the Ordinary Course Claims exists.  Practically, no alternative exists that would prevent disruption of the business and, legally, the Vendors will be unimpaired and paid in full pursuant to the Plan.  Thus, the timing of payment is the only material issue.  Waiting until the effective date of the Plan to pay the Ordinary Course Claims will likely have a substantial negative impact on the Debtors' businesses.  Therefore, the Debtors request authority to pay the Ordinary Course Claims to satisfy their duties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

**D.    The Doctrine of Necessity, Bankruptcy Rule 6003, and Section 105(a) of the Bankruptcy Code Further Support Payment of the Ordinary Course Claims**

25.    The Debtors' proposed payment of prepetition Ordinary Course Claims should be authorized pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 6003 and under the "doctrine of necessity."

26.    Under section 105 of the Bankruptcy Code, this Court "may issue any order ... that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).  For the reasons set forth above, and in light of the need for the Debtors to preserve the going concern value of their businesses pending confirmation of their Plan, the relief requested herein is proper and should be granted.

27.    Payment of the Ordinary Course Claims is also warranted under the doctrine of necessity.  The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization.  See In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where debtor "cannot

survive" absent payment of certain prepetition claims, doctrine of necessity should be invoked to permit payment);[6] see also In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").  The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carryout the provisions of this title."  11 U.S.C. § 105(a).

28.     The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence.  See Just For Feet, 242 B.R. at 826 (approving payment of key inventory Vendors' prepetition claims when such Vendors could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); In re Payless Cashways, Inc., 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition Vendors' claims when such Vendors agreed to provide postpetition trade credit) ; In re Synteen Techs., Inc., No. 00-02203-w, 2000 WL 33709667, at *2-3 (Bankr. D. S.C. Apr. 14, 2000) (unreported) (approving payment of prepetition debt to key supplier); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); In re Ionosphere Clubs, Inc., 98 B.R. at 175.

---

[6]   The United States Supreme Court first articulated the doctrine of necessity over a century ago, in Miltenberger v. Logansport Ry. Co., 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  See id. at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in Miltenberger.  See In re Lehigh & New Eng. Ry. Co., 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

29.     Similarly, Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on interim basis to avoid irreparable harm). The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the court instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" Kammerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (quoting N.Y. Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975)). Further, the "harm must be shown to be actual and imminent, not remote or speculative." Id. at 214. See also Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999). The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Second Circuit.

**E.     Certain of the Proposed Payments are already Accorded Priority**

30.     Certain Ordinary Course Claims may already be entitled to priority under the Bankruptcy Code. Bankruptcy Code section 503(b)(9) provides administrative expense priority for the value of any goods received by the Debtors within 20 days before the Petition Date that the Debtors purchased in the ordinary course of their businesses. The Debtors believe that a significant portion of the Ordinary Course Claims that would be paid pursuant to the relief

requested herein are already entitled to administrative expense priority under Bankruptcy Code section 503(b)(9).[7]

31.     For the Debtors to confirm a plan of reorganization in these chapter 11 cases, the Debtors would have to pay all 503(b)(9) Claims in full, in cash, on the effective date of such plan, unless the holders of such 503(b)(9) Claims agree to different treatment. See 11 U.S.C. § 1129(a)(8)(A). Therefore, to the extent that the Ordinary Course Claims constitute 503(b)(9) Claims, the relief requested in this Motion is merely an extension of the treatment that will have to be provided under any plan of reorganization and an acceleration of the distributions that the Vendors holding such 503(b)(9) Claims would receive on plan consummation. This is particularly true here, where the Debtors' proposed Plan already contemplates the payment in full of all General Unsecured Claims.

32.     The Debtors thus respectfully submit that granting the relief requested in the Motion with respect to such 503(b)(9) Claims would have no substantial effect on the relative distribution of estate assets. Further, if the relief requested in the Motion is granted, to the extent that the Debtors pay any 503(b)(9) Claims, the Debtors' estate would benefit from such Vendors continuing to provide goods and/or services to the Debtors on at least the Customary Terms during the pendency of these chapter 11 cases. In contrast, absent the relief requested in this Motion, the Vendors holding 503(b)(9) Claims would still be entitled to payment in full, in cash, upon plan consummation, but the Vendors may not be required (or will be reluctant) to continue to provide goods or services on Customary Terms during these chapter 11 cases.[8] Accordingly,

---

[7]     The Debtors reserve all rights to challenge any assertions of section 503(b)(9) status or seeking payment of a claim under section 503(b)(9).

[8]     Of course, if a Vendor is a party to a service or supply agreement with the Debtors, such Vendor would remain obligated to perform such agreement, in accordance with its terms, unless rejected by the Debtors, whether or not the Debtors pay the Claims of such Vendor. The Debtors, nevertheless, would be faced with the need to

*(cont'd)*

granting the relief requested is not only consistent with the Bankruptcy Code's objective of ensuring that Vendors delivering goods to the Debtors within 20 days of the Petition Date receive payment in full, but also helps to maximize the value of the Debtors' estates.

33.     The Debtors propose to pay General Unsecured Claims in cash, in full, in the ordinary course of business or otherwise reinstate such claims under the terms of the Plan. The relief requested in this Motion is merely an extension of the treatment provided in the Plan and an acceleration of the distributions that holders of General Unsecured Claims would otherwise receive on Plan consummation. Therefore, granting the Motion would have no effect on the relative distribution of estate assets.

34.     The relief requested herein also may help to avert the institution of reclamation claims, adversary proceedings, and other creditor motions. Avoiding the time and expense of addressing such issues in the Bankruptcy Court will maximize judicial efficiency and will benefit the Debtors, their estates, and their creditors. Such relief, therefore, will allow the Debtors to focus on effectuating the provisions of the Plan.

35.     In comparison, if this Motion is not granted, the relationships the Debtors have with their Vendors may be jeopardized. Vendors may choose to terminate their relationships with the Debtors and, even if such precipitous action is not taken, such Vendors may have no incentive to continue to finance the Debtors on traditional terms. Because these risks of disruption may lengthen the Debtors' chapter 11 cases unnecessarily, the transactions contemplated under the Plan, which are critical to the uninterrupted operation of the Debtors'

_____
*(cont'd from previous page)*
litigate with their Vendors to compel them to perform under their contracts should they refuse to provide goods and services consistent to the terms of any contract with the Debtors.

business, would be jeopardized. Accordingly, the benefits of granting the Motion far outweigh any alleged prejudice that might result from granting such relief.

36.     Absent the relief requested herein, the Debtors face the prospect of damaged business relationships, interrupted operations, and tightened trade terms, if trade terms are available at all. Moreover, as noted above, absent such relief, the Debtors will likely face numerous creditor actions, including the imposition, or attempted imposition, of liens, adversary proceedings, and other precipitous creditor action. In light of the treatment of General Unsecured Claims under the Plan, therefore, the relief requested herein not only assists the Debtors in their restructuring efforts, but also preserves the value of the Debtors' business operations pending confirmation of the Plan. Finally, as noted herein, because General Unsecured Claims will be paid in full upon the effective date of the Plan, payment of the Ordinary Course Claims, in the ordinary course, as requested herein, only alters the timing of payment, not the priority of payment of such claims.

37.     The relief requested herein should not (a) be construed as a request to assume, or for authority to assume, any executory contract under Bankruptcy Code section 365, (b) waive, affect or impair any of the Debtors' rights, claims or defenses, including, but not limited to, those arising from Bankruptcy Code section 365, other applicable law and any agreement, (c) grant third-party beneficiary status or bestow any additional rights on any third party, (d) be otherwise enforceable by any third party, including, but not limited to third parties that may purchase the Claims, or (e) impair the Debtors' ability to contest or object to any invoice or claim of any Vendor or other creditor.

**NOTICE**

38.     Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to: (a) the United States Trustee for the

Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Federal Reserve; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (g) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (h) counsel to Bank of America, N.A. as L/C Issuer; and (i) Counsel to the Lender Steering Committee. The Debtors submit that under the circumstances no further notice is necessary.

# CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order authorizing the payment of the Ordinary Course Claims of the Vendors, on the terms described herein and granting such other and further relief as may be just and proper.

Dated: New York, New York
      November 1, 2009

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:     */s/ Gregg M. Galardi*
        Gregg M. Galardi
        J. Gregory St. Clair
        Four Times Square
        New York, New York 10036
        (212) 735-3000

        Proposed Counsel for Debtors and
        Debtors-in-Possession

596528-Wilmington Server 1A - MSW

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :    Chapter 11
                                          :
CIT GROUP INC. and                        :    Case No. 09-16565
CIT GROUP FUNDING COMPANY                 :
OF DELAWARE LLC,                          :    (Jointly Administered)
                                          :
           Debtors.                       :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 363, 503(b)(9), 1107 AND 1108, AND FED. R. BANKR. P. 6003 AUTHORIZING PAYMENT OF UNIMPAIRED ORDINARY COURSE CLAIMS IN ORDINARY COURSE OF BUSINESS**

Upon the motion (the "Motion")[1] of the Debtors for entry of an interim order (the "Order") under sections 105, 363, 503(b)(9), 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing, but not directing, the payment of the Ordinary Course Claims of the Vendors in the ordinary course of business; and the Court having reviewed the Motion and the First Day Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth in this Order.

2.      Until the Court considers the relief requested in the Motion on a final basis, the Debtors are authorized, but not directed, to pay, in the ordinary course of business, their Ordinary Course Claims up to the aggregate amount of $10 million, as the same become due and payable, on the following terms and conditions:

(a)      The Debtors, in their sole discretion, subject to the limitations set forth below, shall determine which Ordinary Course Claims, if any, will be paid pursuant to this Order;

(b)      If a creditor accepts payment under this Order, such creditor is deemed to have agreed to continue to provide goods and/or services to the Debtors, on terms that are as good as or better than the terms and conditions (including credit terms) that existed 120 days prior to the Petition Date (the "Customary Terms"), during the pendency of these chapter 11 cases;

(c)      In the event that the relationship between a creditor accepting payment under this Order and the Debtors does not extend to 120 days before the Petition Date, the Customary Terms shall mean the terms that the creditor generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment;

(d)      If a creditor accepts payment under this Order and thereafter does not continue to provide goods and/or services on at least the Customary Terms during the pendency of these chapter 11 cases, then (i) any payment on a prepetition claim received by such creditor shall be deemed to be an unauthorized voidable postpetition transfer under Bankruptcy Code section 549 and, therefore, recoverable by the Debtors in cash upon written request and (ii) upon recovery by the Debtors, any such prepetition claim shall be reinstated as if the payment had not been made;

(e)      If the Debtors seek to recover a payment from a creditor because the creditor does not continue to provide goods and/or services to the Debtors on at least the Customary Terms during the pendency of these chapter 11 cases, the creditor may contest such action by making a written request (a "Request") to the Debtors to schedule a hearing before this Court.  If such a Request is made, the Debtors shall provide notice of a hearing on such Request to the creditor making the Request

and other interested parties in accordance with the Bankruptcy Code and the orders of this Court; and

(f)      Prior to making a payment to a creditor under this Order, the Debtors may, in their absolute discretion, settle all or some of the prepetition claims of such creditor for less than their face amount without further notice or hearing.

3.      Unless the Plan has been confirmed on or before forty-five (45) days of the Petition Date, the Debtors shall provide a written report listing the total amount of payments made under this Order in the first forty-five (45) days after these cases to (i) any statutory committee appointed in these cases, and (ii) the United States Trustee.

4.      All banks and other financial institutions hereby are authorized and directed to receive, process, honor, and pay any and all checks, drafts, wires or automated clearing house transfers (collectively, the "Disbursements"), whether issued or presented prior to or after the Petition Date. Furthermore, the Debtors are authorized to issue postpetition Disbursements in respect of unpaid prepetition indebtedness.

5.      Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Order, shall be deemed an assumption or adoption of any policy, program, practice, contract, or agreement, or shall otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract or unexpired lease.

6.      Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Order, shall be deemed an admission as to the validity of any claim or underlying obligation, or a waiver of the rights of the Debtors or any other party in interest to subsequently dispute any such claim or obligation on any ground that applicable law permits.

7.      Notwithstanding anything to the contrary herein, payments made pursuant to this Order shall be subject to any requirements imposed on the Debtors under any order entered by the Court approving the use of cash collateral.

8.      Any objections to entry of a final order on the Motion must be (a) filed with the Court no later than 4:00 p.m. (prevailing Eastern time) on                   , 2009 (the "Objection Deadline") and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) CIT Group Inc., 1 CIT Drive, Livingston, New Jersey  07039 (Attn: Eric Mandelbaum); (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Attn: Gregg M. Galardi and J. Gregory St. Clair); (iii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Paul K. Schwartzberg); (iv) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (v) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (vi) Counsel to the Lender Steering Committee; and (vii) counsel to any official committee(s) appointed in these cases.

9.      A hearing will be held on                   at                   (prevailing Eastern Time) to consider the relief requested in the Motion on a final basis (the "Final Hearing") and, pending entry of an order following the conclusion of the Final Hearing, the relief granted herein shall remain in effect on an interim basis.  If no objection to the relief requested in the Motion on a permanent basis is received by the Objection Deadline, the Debtors may present to the Court a final Order with respect to the relief requested in the Motion without the need for a Final Hearing.

10.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the content of the Motion or otherwise deemed waived.

11.     Notwithstanding Interim Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

12.     This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.

Dated:     New York, New York
                        , 2009


_____
     UNITED STATES BANKRUPTCY JUDGE