SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
  Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

In re:                          :    Chapter 11
                                  :

CIT GROUP INC. and        :    Case No. 09-16565
CIT GROUP FUNDING COMPANY    :
OF DELAWARE LLC,         :
                                  :

          Debtors.    :    (Motion for Joint Administration Pending)
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS UNDER
## 11 U.S.C. §§ 105, 362 AND 541 AND FED. R. BANKR. P. 3001 AND 3002
## ESTABLISHING NOTICE AND HEARING PROCEDURES FOR TRADING IN
## EQUITY SECURITIES AND CLAIMS AGAINST THE DEBTORS' ESTATES

        The debtors and debtors in possession in the above-captioned cases collectively,

the "Debtors" or "CIT")[1] hereby move (the "Motion") for the entry of an order (the "Order")

under sections 105, 362 and 541 of title 11 of the United States Code (the "Bankruptcy Code")

---

[1]    CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017. Its tax identification number is 65-xxx1192. In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-16566, is a debtor in these related cases. CIT Group Funding Company of Delaware LLC is located at 1 CIT Drive, Livingston, NJ 07039. Its tax identification number is 98-xxx9146.

and Rules 3001 and 3002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") establishing notice and hearing procedures that must be satisfied before certain transfers of claims against the Debtors and equity securities in CIT Group, Inc., or of any beneficial interest therein, are deemed effective. In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and Various First Day Applications and Motions (the "First Day Declaration") filed concurrently herewith under Rule 1007-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules").[2] In further support of the Motion, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 362 and 541. Relief is warranted under Bankruptcy Rule 3001.

## BACKGROUND

2. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure and the events leading to the filing of these chapter 11 cases, is set forth in detail in the

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

First Day Declaration.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

## THE DEBTORS' NET OPERATING LOSSES

3.       The Debtors have recently incurred, and are currently incurring, significant net operating losses ("NOLs") for U.S. federal income tax purposes.  For tax periods through the 2008 tax year, the Debtors have reported on their federal income tax returns approximately $3.6 billion of consolidated NOLs.  In addition, as of September 30, 2009, the Debtors estimate that they have incurred additional NOLs of approximately $2.4 billion.  The Debtors will likely generate additional NOLs for the portion of the 2009 tax year preceding the effective date of the plan of reorganization.  In addition to NOLs, the Debtors have alternative minimum tax credits estimated to be approximately $100 million and, depending on the amount of cancellation of indebtedness income realized as a result of the plan of reorganization, may have net unrealized built-in tax losses  (collectively, the "Tax Attributes").  By this Motion, the Debtors seek authorization to protect and preserve their valuable Tax Attributes by establishing, pursuant to Bankruptcy Code sections 105(a), 362(a)(3) and 541, notice and hearing procedures regarding the trading of CIT equity securities that must be complied with before such trades or transfers become effective.  In addition, the Debtors seek to establish notice and hearing procedures regarding the trading of certain claims against the Debtors.  If no trading restrictions regarding claims against the Debtors and CIT equity securities are imposed by this Court, unrestricted trading or transfers of claims and equity securities could severely limit or even eliminate the Debtors' ability to use their Tax Attributes, which are valuable assets of the

Debtors' estates, and could have significant negative consequences for the Debtors, their estates and the overall reorganization process.

4.     The Tax Attributes are of significant value to the Debtors and their estates because the Debtors can carry forward their NOLs to offset their future taxable income for up to 20 taxable years,[3] thereby reducing their future aggregate tax obligations and freeing up funds to meet working capital requirements and service debt.  Such NOLs may also be utilized by the Debtors to offset any taxable income generated by transactions completed during the chapter 11 cases.

5.     Specifically, unrestricted trading of CIT equity securities and claims could adversely affect the Debtors' Tax Attributes if:

(a) too many 5% or greater blocks of equity securities are created or too many shares are added to or sold from such blocks, such that, together with previous trading by 5% shareholders during the preceding three-year period, an ownership change within the meaning of section 382 of the Internal Revenue Code of 1986, as amended ("I.R.C."), is triggered prior to consummation, and outside the context, of a confirmed chapter 11 plan, or

(b) the beneficial ownership of claims against the Debtors that are currently held by "Qualified Creditors"[4] under the applicable tax regulations is transferred, prior to consummation of a plan, and those claims (either alone or when accumulated with other claims currently held by nonqualified creditors)

---

[3]     See 26 U.S.C. § 172.

[4]     Based on the Debtors' current and projected financial condition, it is anticipated that the plan of reorganization will distribute substantially all of the common stock of reorganized CIT to certain creditors of the Debtors in exchange for all or part of their claims.  As discussed below, if a sufficient percentage of the holders of these claims are not Qualified Creditors (as defined below), then the Debtors will fail to qualify for relief under the safe harbor of I.R.C. § 382(l)(5), and the Debtors' ability to use their Tax Attributes may be severely restricted. The monitoring of, and possible restrictions on, claims trading proposed herein are designed to ensure that the claimants who will or may be receiving stock under the plan are Qualified Creditors.

would be converted under a plan of reorganization into a 5% or greater block of the stock of the reorganized Debtors.[5]

## RELIEF REQUESTED

6.     To preserve the appropriate flexibility to maximize the use and value of their Tax Attributes, the Debtors seek limited relief that will enable them to closely monitor certain transfers of claims against the Debtors and CIT equity securities so as to be in a position to act expeditiously if necessary to preserve their Tax Attributes.  Thus, the Debtors request that this Court enter an order immediately, thereby preserving the status quo in this regard.

7.     The ability of a company to use its NOLs and certain other Tax Attributes to reduce future taxes is subject to certain limitations contained in 26 U.S.C. § 382 ("Section 382").  As a general matter, if a corporation undergoes a change of ownership, Section 382 limits the corporation's ability to use its NOLs and certain other Tax Attributes to offset future taxable income.  Under Section 382, a change of ownership occurs when the percentage of a company's equity held by one or more 5% shareholders increases by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during a three-year rolling testing period.  As of the Petition Date, the amount of CIT equity securities held by one or more 5% shareholders has increased by at least 24 percentage points of the permitted 50 percentage points.

8.     The general purpose of Section 382 is to prevent a company with taxable income from reducing its tax obligations by acquiring control of a company with tax losses.  To

---

[5]     As described below, the relief requested herein has been narrowly tailored in order to comply with the Qualified Creditor <u>de minimis</u> rules of the Treasury Regulations.

achieve this objective, Section 382 limits the amount of taxable income that can be offset by a pre-change loss to the long-term tax exempt bond rate (as published by the Department of the Treasury) as of the change-of-control date multiplied by the value of the stock of the loss corporation immediately before the ownership change. Built-in tax losses recognized during the five-year period after the change date are subject to similar limitations.

9. By establishing procedures for continuously monitoring trading in claims against the Debtors and CIT equity securities, the Debtors can preserve their ability to seek substantive relief at the appropriate time, particularly if it appears that trading of claims against the Debtors and CIT equity securities may jeopardize the use of their Tax Attributes. Accordingly, the Debtors request that this Court enter an order establishing procedures as set forth in the proposed Order attached hereto for monitoring and, if necessary, restricting claims and equity-securities trading.

## BASIS FOR RELIEF

**A.      The Significance Of The Debtors' Tax Attributes**

10. The Debtors have recently incurred, and are currently incurring, significant NOLs. For tax periods through the 2008 tax year, the Debtors have reported on their federal income tax returns approximately $3.6 billion of consolidated NOLs. In addition, as of September 30, 2009, the Debtors estimate that they have incurred additional NOLs of approximately $2.4 billion. The Debtors will likely generate additional NOLs for the portion of the 2009 tax year preceding the effective date of the plan of reorganization. These NOLs could

translate into potential future tax savings for the Debtors of approximately $2.1 billion, based on a federal income tax rate of 35%.[6]

11.    In addition to NOLs, the Debtors have alternative minimum tax credits of approximately $100 million and, depending on the amount of cancellation of indebtedness income realized as a result of the plan of reorganization, may have net unrealized built-in tax losses.  Sections 39(a), 59(e), and 172(b) of the I.R.C. permit corporations to carry forward Tax Attributes to offset future taxable income and tax liability, thereby significantly improving such corporations' cash position in the future.  Thus, the Debtors' Tax Attributes are a valuable asset of the estates, and their availability will facilitate the Debtors' successful reorganization and serve to improve creditor recoveries.  The Debtors' ability to use their Tax Attributes, however, could be severely limited under Section 382 as a result of the trading and accumulation of claims against the Debtors and CIT equity securities prior to consummation of the plan of reorganization.

**B.    The Provisions Of Section 382**

12.    Section 382 of the I.R.C. limits the amount of taxable income that can be offset by a corporation's NOLs in taxable years (or portions thereof) following an ownership change.  Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more five-percent shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time

---

[6]    However, pursuant to a tax sharing agreement entered into by CIT and Tyco International Ltd. ("Tyco") on July 2, 2002, Tyco may be entitled to a payment from CIT equal to the cash tax savings the Debtors realize through the use of the last $800 million of their approximately $6 billion NOL.

during the three-year testing period ending on the date of the ownership change.[7] For example, an ownership change would occur in the following situation:

> An individual ("A") owns 50.1% of the stock of corporation X ("X"). A sells all of his stock to another individual ("B"), who currently owns 5%. Under Section 382, an ownership change has occurred because B's interest in X has increased more than 50 percentage points (from 5% to 55.1%) during the testing period. The same result would follow even if B owned no X stock prior to the transaction with A because B both becomes a 5% shareholder and increases his ownership by more than 50% percentage points by his acquisition of A's stock during the testing period.

13. When an ownership change occurs, Section 382 limits the amount of a corporation's income that may be offset by its "pre-change losses" to an annual amount equal to the value of the equity of the corporation prior to the ownership change multiplied by the long-term tax-exempt rate. See I.R.C. § 382(b). "Pre-change losses" would include (i) NOLs and (ii) any net unrealized built-in loss of the corporation (as defined in I.R.C. § 382(h)(3)). This formulaic limitation under Section 382 can severely restrict the ability to use "pre-change losses" because the value of the stock of a distressed company may be quite low. By way of illustration, if the Debtors were to undergo an ownership change today, they would be permitted to offset with pre-change losses no more than approximately $30.8 million of their income in each post-

---

[7] In general, under I.R.C. § 382(g)(4)(A), all shareholders who individually hold less than 5% of the stock of a company are deemed to be a single 5% shareholder throughout the three-year testing period, and transfers between such shareholders are disregarded for purposes of determining whether an ownership change has occurred (the "public group rule"). Thus, so long as 50% or more of the stock is owned by less than 5% shareholders throughout the three-year testing period, there will be no change of control under I.R.C. § 382. Accordingly, the Debtors do not seek to impose the requested notice and hearing procedures on trading by common shareholders holding less 4.75% of CIT's common stock ("CIT Common Stock"); provided, however, that such shareholders do not have an intent to accumulate a 4.75% or greater block of CIT Common Stock or add or sell shares to or from such a block. With respect to the 8.75% Non-Cumulative Perpetual Convertible Preferred Stock, Series C ("Series C Convertible Preferred") which has conversion rights, the Debtors seek application of a lower percentage (4.5% rather than 4.75%) to allow a cushion for the reduced number of shares of preferred stock that may be outstanding at the time of the actual acquisition or disposition of the shares.

change tax year, which amount is the current market capitalization of CIT (approximately $786.5 million, as of October 30, 2009) multiplied by 3.92% (the long-term tax exempt rate for November 2009 as published by the Department of the Treasury). Taxable income in excess of this amount would generally be taxable to the Debtors at a federal income tax rate of approximately 35%.

          14.     Based on the Debtors' current and projected financial condition, it is anticipated that the plan of reorganization will distribute substantially all of the common stock of reorganized CIT to certain creditors of the Debtors in exchange for all or part of their claims. Accordingly, under any realistic plan scenario, the Debtors would as a result of the reorganization likely experience an "ownership change" for purposes of Section 382 because the percentage of stock that will be owned by creditors[8] will have increased by more than 50 points over the lowest percentage of the stock of CIT held by such persons during the three-year testing period.[9] I.R.C. § 382(g)(1). Nevertheless, in such an event, as described more fully below, the Debtors may avail themselves of one of the special relief provisions applicable to an ownership change resulting from a confirmed chapter 11 plan which would not be available if an ownership change occurred prior to consummation of such plan. I.R.C. § 382(l)(5), (6). Pursuant to these provisions, the Debtors anticipate that they will be exempt from the limitation set forth in Section

---

[8]    As used herein, the term (i) "creditors" means "creditor" as defined in section 101(10) of the Bankruptcy Code, and (ii) "claims" means "claim" as defined in section 101(5) of the Bankruptcy Code.

[9]    The fact that a substantial number of creditors receiving stock pursuant to the plan may own less than 5% of the Debtors' stock upon consummation of a plan of reorganization does not provide relief from I.R.C. § 382; instead the "public group rule" (described above) will aggregate the ownership interests of all such creditor-shareholders and treat them as a new 5% shareholder.

382 or, alternatively, that they will benefit from a favorable valuation rule that will cause the amount of their annual limitation under I.R.C. § 382(b) to reflect the expected increase in the value of the Debtors resulting from any surrender or cancellation of creditors' claims in exchange for stock pursuant to the plan. Id.

15.     The problem facing the Debtors, and the reason for this Motion, is that (i) if too many CIT equity holders transfer their equity interests prior to the effective date of a plan of reorganization, such transfers may trigger an ownership change that would not fall within the ambit of these special bankruptcy provisions because such an ownership change would not occur pursuant to a confirmed bankruptcy plan, and (ii) the Debtors may not qualify for the special "in bankruptcy" rules of I.R.C. § 382(l)(5) and if too many claimholders transfer their claims prior to the effective date of the plan of reorganization. The Debtors need the ability to monitor, and possibly object to, changes in ownership of claims against the Debtors and CIT equity securities to preserve flexibility in implementing a plan of reorganization that qualifies under one of the special bankruptcy provisions and, thus, maximize the Debtors' ability to reduce federal income taxes by offsetting their income earned after reorganization with their existing Tax Attributes.

16.     On August 13, 2009, CIT's board of directors approved the adoption of a "shareholder rights plan" (the "Rights Plan") intended to help protect the Debtors' Tax Attributes by discouraging (i) potential acquirers from accumulating 5% or more of CIT's equity securities and (ii) existing 5% shareholders from acquiring additional CIT equity securities without first obtaining permission from CIT's board of directors (each of the events described in clauses (i)

and (ii), a "Triggering Event").[10]  In connection with the adoption of the Rights Plan, CIT's board of directors declared a dividend of one right (a "Right") for each share of CIT Common Stock held by shareholders.  In general, if a Triggering Event occurs that jeopardizes or endangers the Debtors' utilization of their Tax Attributes, each holder of a Right, other than the acquirer, will be entitled to purchase a share of CIT Common Stock for a purchase price equal to half the current market price.

17.    While the Rights Plan serves as an economic deterrent to potential acquirers of CIT's equity securities due to its dilutive effect on the acquirer's investment,  it cannot actually prevent a potential acquirer from purchasing CIT's equity securities and thereby triggering an ownership change that severely limits the Debtors' use of their Tax Attributes.  In addition, the Rights Plan has no effect on trading in the claims of the Debtors and would not protect the Debtors' ability to effect a plan of reorganization that meets the I.R.C. § 382(l)(5) "bankruptcy" rules.

**C.    Special Section 382 Bankruptcy Rules**

18.    The limitations imposed by Section 382 in the context of a change in ownership pursuant to a confirmed chapter 11 plan are significantly more relaxed than those applicable outside chapter 11.

---

[10]    The notice and hearing procedures on trading requested pursuant to this Motion would apply to persons holding 4.75% or more of the CIT Common Stock and 4.50% or more of the Series C Convertible Preferred in order to provide additional cushion.  A Triggering Event pursuant to the Rights Plan could not be set at these ownership thresholds because Schedules 13D and 13G, the Debtors' only meaningful source of information on the identity of acquirers of their equity securities, are required to be filed with the Securities and Exchange Commission only by persons that acquire ownership of more than 5% of their equity.

19.     A corporation that has not previously undergone an ownership change is not subject to the limitations imposed by Section 382 with respect to an ownership change resulting from consummation of a chapter 11 plan, provided that under the plan, the debtor's pre-change shareholders (i.e., persons or entities who owned the debtor's stock immediately before the relevant ownership change) and/or Qualified Creditors emerge from the reorganization owning at least 50% of the total value and voting power of the debtor's stock immediately after the ownership change (the "I.R.C. § 382(l)(5) safe harbor").  I.R.C. § 382(l)(5)(A).

20.     Under I.R.C. § 382(l)(5)(E) and Treas. Reg. § 1.382-9, a creditor whose claim is exchanged for stock under a chapter 11 plan is a "Qualified Creditor" for I.R.C. § 382 purposes if such claim either (i) has been owned by such creditor for 18 or more months prior to the date of filing of the bankruptcy petition or (ii) arose in the ordinary course of the Debtors' business and was at all times beneficially owned by such creditor.  Creditors may also be classified as "Qualified Creditors," despite not satisfying the continuous ownership requirements under either (i) or (ii) of the preceding sentence, if such creditors meet the criteria set forth in the de minimis rule described below.

21.     Under Treas. Reg. § 1.382-9(d)(3) (the "de minimis rule"), the debtor may, for purposes of the I.R.C. § 382(l)(5) safe harbor, "treat indebtedness as always having been owned by the beneficial owner of the indebtedness immediately before the ownership change if the beneficial owner is not, immediately after the ownership change, either a five percent shareholder or an entity through which a five percent shareholder owns an indirect ownership interest" in the corporation.  Such a claimholder will always be regarded as a Qualifying Creditor under the I.R.C. § 382(l)(5) safe harbor unless the particular claim(s) that it holds both (a) did not

arise in the ordinary course of the Debtor's business and (b) did not exist since a date that was 18 months before the filing of the bankruptcy petition.

22.     The requested relief has been narrowly tailored to impose the notice and hearing procedures only on claimholders that own an amount of claims which could be expected to fall outside of the <u>de minimis</u> rule and, thus, could jeopardize the Debtors' ability to satisfy the requirements of the I.R.C. § 382(l)(5) safe harbor.

23.     Although there can be no assurance that the I.R.C. § 382(l)(5) safe harbor ultimately will be available to the Debtors, it is important that the Debtors preserve the ability to effect a plan of reorganization that would take advantage of that safe harbor.  Because the determination of whether a creditor is a Qualified Creditor depends on whether such creditor has held its claim until the effective date of the plan of reorganization, transfers of claims by creditors before such date pose a threat to the Debtors' ability to satisfy the requirements of the I.R.C. § 382(l)(5) safe harbor.  Likewise, because transfers of stock by or into the hands of five percent shareholders before the effective date of the plan of reorganization could trigger an ownership change that would impose a severe annual limitation on the Debtors' use of their Tax Attributes, even if the Debtors later satisfied the requirements of I.R.C. § 382(l)(5) in connection with a second ownership change resulting from the plan of reorganization, such transfers also pose a threat to the value of their Tax Attributes. The requested relief will ensure that the Debtors have maximum flexibility to effect a plan of reorganization that meets the requirements of I.R.C. § 382(l)(5), and thus preserves their Tax Attributes to the fullest extent.

24.     Even if it is ultimately determined that I.R.C. § 382(l)(5) is unavailable to the Debtors, it is in the best interests of the Debtors and their estates to restrict equity trading

which could result in an ownership change prior to consummation of a plan of reorganization for at least two additional reasons.

25. First, an ownership change must occur pursuant to consummation of the plan in order for the Debtors to qualify for the other Section 382 bankruptcy relief provision – the favorable valuation rule of I.R.C. § 382(l)(6). Specifically, I.R.C. § 382(l)(6) provides that if a corporation undergoes an ownership change pursuant to a plan of reorganization in chapter 11, and I.R.C. § 382(l)(5) does not apply (either because the corporation elects out of that provision or because its requirements are not satisfied), then under I.R.C. § 382(l)(6), the appropriate value of the Debtors for purposes of calculating the Section 382 limitation shall reflect the increase in value of the Debtors resulting from any surrender or cancellation of creditors' claims in the transaction. Thus, assuming the value of the Debtors increases as a result of the reorganization, I.R.C. § 382(l)(6) will provide for a higher annual limitation than would result under the general rules of Section 382 and preserve the Debtors' ability to use a greater portion of their Tax Attributes to offset any post-change of ownership income.

26. Second, preventing an ownership change prior to the effective date of a plan of reorganization will also benefit the estates by ensuring that the reorganized Debtors will have greater use of their Tax Attributes to offset any income arising on or prior to the effective date of the chapter 11 plan. Thus, in all circumstances, it is in the best interests of the Debtors, their estates and their creditor constituencies to grant the requested relief so as to prevent an ownership change prior to consummation of a plan of reorganization.

**D.     The Requested Relief Is Narrowly Tailored**

27.     The requested relief does not bar all trading of CIT equity securities and claims against the Debtors.  The Debtors seek to establish procedures enabling them only to monitor those types of stock and claims trading which pose a serious risk under the Section 382 ownership change test, so as to preserve the Debtors' ability to seek substantive relief if it appears that a proposed trade of CIT equity securities will jeopardize the use of their Tax Attributes or a claimholder owns an amount of claims in excess of the amount necessary to satisfy the de minimis rule.  The procedures requested by the Debtors in this Motion would permit most stock and claims trading to continue.

28.     Further, holders that acquire significant claims are already subject to other reporting requirements.  Holders with less than 5% of any class of voting securities, or securities convertible in securities stock, are presumed not to control an issuer that is subject to the regulation of the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956, 12 U.S.C. § 1841 et seq. ("BHC Act").  A holder that is itself subject to the BHC Act, however,  may acquire 5% of more of any class of voting securities of another bank holding company, such as CIT, only with the prior approval of the Federal Reserve.  Any other holder would be required to provide the Federal Reserve with prior notice under the Change in Bank Control Act, 12 U.S.C. § 1817(j), before acquiring 10% or more of any class of voting securities of CIT any such acquirer that is not a natural person would be required to enter into certain commitments with the Federal Reserve to minimize the investor's influence over CIT.  Any investor that is not a natural person would be required to obtain the Federal Reserve's prior

approval under the BHC Act to acquire 25% or more any class of voting securities and would itself become a bank holding company subject to the BHC Act.

29. Finally, the Debtors are aware that Carl Icahn owns claims against the Debtors with an aggregate principal amount of approximately $1.9 billion and is actively pursuing a tender offer to acquire certain additional claims against the Debtors. The Debtors estimate that if the tender offer is successful, Carl Icahn could at most acquire further claims against the Debtors that would entitle him to an additional 1.18% of CIT's equity upon emergence from the reorganization.

**E.** **Immediate Relief Is Necessary To Avoid Irreparable Harm To The Debtors**

30. The Debtors request that the Court enter an interim order granting the relief requested. Once an equity interest or claim is transferred, it cannot be undone, and once a Tax Attribute is limited under Section 382, its use is limited forever. Accordingly, the relief sought herein is necessary to avoid the potential irrevocable loss of the Tax Attributes and the irreparable harm which would be caused by unrestricted trading in CIT equity securities and claims of the Debtors and the Debtors' resulting inability to offset taxable income freely with their Tax Attributes.

31. Absent granting the relief requested herein on an interim basis, the Debtors could be irreparably harmed by the mere filing of this Motion. If the Debtors filed this Motion in accordance with the usual notice procedures set forth in the Bankruptcy Rules, the Debtors believe it is likely that a flurry of trading in CIT equity securities and claims against the Debtors could immediately follow. Parties holding such stock or claims might rush to transfer their stock or claims before the restrictions on such trading are imposed by this Court. Such

trading would put the Tax Attributes in jeopardy, as described above, and would therefore be counterproductive to the Debtors' objectives in seeking this relief. Accordingly, the Debtors request that the procedures described herein be approved on an interim basis pending a final hearing.

**F.      Provisions of the Proposed Order**

32.      Following entry of the Order, the Debtors propose to send a notice in substantially the form attached as <u>Exhibit C</u> to the proposed Order (the "Notice of Order") to (a) the Office of the United States Trustee for the Southern District of New York, (b) the United States Treasury, (c) the Securities and Exchange Commission, (d) the Internal Revenue Service, (e) the United States Attorney's Office for the Southern District of New York, (f) the parties included on the Debtors' list of largest unsecured creditors, (g) any statutory committee appointed under Bankruptcy Code Section 1102, (h) all parties who file notices of transfers of claims under Bankruptcy Rule 3001, (i) the indenture trustees or the transfer agents for any CIT Stock or any bonds or debentures of the Debtors, and (j) any person or entity that directly or indirectly owns, controls or holds 5% or more of either CIT Common Stock or Series C Convertible Preferred (the CIT Common Stock and Series C Convertible Preferred, collectively, "CIT Stock") as determined based on filings of Schedule 13D and 13G with the Securities and Exchange Commission. Upon receipt of the Notice of Order, any transfer agent for any CIT Stock would be required to send such Notice of Order to all holders of CIT Stock in excess of 9,500,000 shares registered with such transfer agent and to all holders of Series C Convertible Preferred in excess of 259,000 shares that are registered with such transfer agent; provided,

however, that, if any transfer agent provides the Debtors with the name and addresses of all holders of such CIT Stock, the Debtors would be required to deliver the Notice of Order to such holders. Any such registered holder would be required, in turn, to provide such Notice of Order to any holder for whose account such registered holder holds CIT Common Stock in excess of 9,500,000 shares or Series C Convertible Preferred in excess of 259,000 shares, and so on down the chain of ownership. Additionally, any person or entity, or any broker or agent acting on their behalf who sells 4,750,000 shares of CIT Common Stock or 129,500 shares of Series C Convertible Preferred (or an Option, as defined in the Order, with respect thereto), or sells claims against the Debtors in the aggregate principal amount of at least $15,800,000 to another person or entity would be required to provide notification of the existence of this Order or its contents to such purchaser or any broker or agent acting on their behalf of such claims or CIT Stock, to the extent reasonably feasible. The indenture trustees of any bonds or debentures of the Debtors shall provide a copy of the Notice of Order to any person or entity that holds bonds or debentures of the Debtors of a particular CUSIP/ISIN in the aggregate principal amount of at least $15,800,000. The Debtors will also file a copy of the Order as an exhibit to a report on Form 8-K filed with the Securities and Exchange Commission upon Bankruptcy Court approval. Additionally, the Debtors shall submit the Notice of Order for publication in the form attached as Exhibit D to the proposed Order in The Wall Street Journal and The Financial Times (U.S. edition) and on the Bloomberg newswire service as soon as practicable after entry of the Order.

**G.      NOLs Are Property Of A Debtor's Estate Entitled To Court Protection**

33.      Courts have uniformly held that a debtor's NOLs constitute property of the estate under section 541 of the Bankruptcy Code and, as such, courts have the authority to

implement certain protective measures to preserve the NOLs.  The seminal case articulating this rule is Official Committee of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.), 107 B.R. 832 (Bankr. S.D.N.Y. 1989), aff'd, 119 B.R. 430 (S.D.N.Y. 1990), aff'd, 928 F.2d 565 (2d Cir. 1991), cert. denied 502 U.S. 821 (1991).  In Prudential Lines, the Bankruptcy Court for the Southern District of New York enjoined a parent corporation from taking a worthless stock deduction with respect to its wholly-owned debtor subsidiary on the grounds that allowing the parent to take such a deduction would destroy its debtor-subsidiary's NOLs.  Id. at 842.  In issuing the injunction, the court held that "a debtor's potential ability to utilize NOLs is property of an estate," Id. at 838, and that "the claiming of a worthless stock deduction is an exercise of control over a debtor's NOLs," Id. at 842, and thus was properly subject to the automatic stay of section 362 of the Bankruptcy Code.  Id.;  see also Nisselson v. Drew Indus. Inc. (In re White Metal Rolling & Stamping Corp.), 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them.");  In re Southeast Banking Corp., No. 91-14561 BKC PGH, 1994 WL 1893513, at *3 (Bankr. S.D. Fla. July 21, 1994) (debtors' interest in their NOLs "constitutes property of the estate within the scope of 11 U.S.C. § 541(a)(1) and is entitled to the protection of the automatic stay").  Since the Debtors' NOLs are property of their estates, this Court has the authority under section 362 of the Bankruptcy Code to enforce the automatic stay by restricting the transfer of equity securities in the Debtors that could jeopardize the existence of this valuable asset.

34.     For the reasons set forth above, the Debtors respectfully submit that the Order will play an integral role in the Debtors' success upon emergence from these chapter 11

cases, and there is an immediate need to establish the notice and hearing provisions regarding trading in equity securities of the Debtors. Accordingly, the Debtors respectfully request that the Court grant the relief requested herein.

## NOTICE

35.     Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to: (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Federal Reserve; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (g) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (h) counsel to Bank of America, N.A. as L/C Issuer; and (i) Counsel to the Lender Steering Committee. The Debtors submit that under the circumstances no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: New York, New York
November 1, 2009

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:    _/s/ Gregg M. Galardi_____
        Gregg M. Galardi
        J. Gregory St. Clair
        Four Times Square
        New York, New York 10036
        (212) 735-3000

        Proposed Counsel for Debtors and
         Debtors-in-Possession

21

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

In re:                                :       Chapter 11
                                           :

CIT GROUP INC. and              :       Case No. 09-16565
CIT GROUP FUNDING COMPANY    :
OF DELAWARE LLC,             :
                                           :

               Debtors.             :       (Jointly Administered)
                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 362 AND 541 AND FED R. BANKR. P. 3001 AND 3002 ESTABLISHING NOTICE AND HEARING PROCEDURES FOR TRADING IN EQUITY SECURITIES AND CLAIMS AGAINST THE DEBTORS' ESTATES**

         Upon the motion (the "Motion")[1] of the Debtors for entry of an interim order (the "Order"), sections 105, 362 and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 3001 and 3002 establishing notice and hearing procedures for trading in CIT equity securities and claims against the Debtors' estates; and the Court having reviewed the Motion and the First Day Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

         **ORDERED, ADJUDGED, AND DECREED THAT:**

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

1.      The Motion is GRANTED on an interim basis as set forth in this Order.

2.      Any purchase, sale, or other transfer of CIT equity securities or claims against the Debtors in violation of the procedures set forth herein  shall be null and void <u>ab initio</u> as an act in violation of the automatic stay under Bankruptcy Code sections 362 and 105(a).

3.      The following procedures shall apply to trading in equity securities of CIT:

(a)      Any person or entity (as defined in Treasury Regulations Section 1.382-3(a) for purposes of this Section 3) who currently owns CIT Stock (as defined in Section (e)) in an amount sufficient to qualify such person or entity as a Substantial Shareholder (as defined in Paragraph (e) below) or becomes a Substantial Shareholder shall file with this Court, and serve on the Debtors and counsel to the Debtors, a notice of such status, in the form attached hereto as <u>Exhibit A-1</u>, on or before (A) five (5) calendar days after the date of entry of this Order or (B) five (5) calendar days after becoming a Substantial Shareholder.

(b)      Prior to effectuating any transfer of equity securities (including Options to acquire such securities, as defined in Paragraph (e) below) that would result in an increase in the amount of CIT Stock beneficially owned by a Substantial Shareholder or would result in a person or entity becoming a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, advance written notice, in the form attached hereto as <u>Exhibit A-2</u>, of the intended transfer of equity securities.

(c)      Prior to effectuating any transfer of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of CIT Stock beneficially owned by a Substantial Shareholder or would result in a person or entity ceasing to be a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on the Debtors and counsel to the Debtors, advance written notice, in the form attached hereto as <u>Exhibit A-3</u>, of the intended transfer of equity securities (the notices required to be filed and served under Paragraph (b) and this Paragraph (c), each a "<u>Notice of Proposed Transfer</u>").

(d)      The Debtors shall have five (5) calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Substantial Shareholder an objection to any proposed transfer of equity securities described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes.  If the Debtors file an objection, such transaction will not be effective unless approved by a final and nonappealable order of this Court.  If the Debtors do not object within such 5-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer.  Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, each with an additional 5-day waiting period.

(e) For purposes of this Order, (A) a "<u>Substantial Shareholder</u>" is any person or entity which beneficially owns at least 9,500,000 shares of the common stock of CIT ("CIT Common Stock") (representing approximately 4.75% of all issued and outstanding common shares) or who beneficially owns at least 4.50% of CIT 8.75% Non-Cumulative Perpetual Convertible Preferred Stock, Series C ("<u>Series C Convertible Preferred</u>") as of the date immediately prior to the date of filing of a Notice of Proposed Transfer (the CIT Common stock and Series C Convertible Preferred, collectively, the "<u>CIT Stock</u>"), and (B) "beneficial ownership" (or any variation thereof of CIT Stock and Options to acquire CIT Stock) shall be determined in accordance with applicable rules under I.R.C. § 382, Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (<u>e.g.</u>, a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire CIT Stock. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable. For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire CIT Stock may be treated as the owner of such CIT Stock.

4. The following procedures shall apply to trading in Claims of the Debtors:

(a) Any person or entity (as defined in Treasury Regulations Section 1.382-3(a) for purposes of this Section 4) who currently is or hereafter becomes a Substantial Claimholder shall file with this Court, and serve on the Debtors and counsel to the Debtors, a notice of such status, in the form attached hereto as <u>Exhibit B-1</u>, on or before (A) five (5) calendar days after the date of entry of this Order or (B) five (5) calendar days after becoming a Substantial Claimholder.

(b) Prior to effectuating any acquisition or other transfer of Claims that would result in (i) an increase in the dollar amount of Claims beneficially owned by a Substantial Claimholder, (ii) a person or entity becoming a Substantial Claimholder, (iii) an increase in the dollar amount of Claims beneficially owned by a Multi-Class Claimholder, or (iv) a person or entity becoming a Multi-Class Claimholder (each a "<u>Proposed Claims Acquisition Transaction</u>"), such person, entity, Substantial Claimholder, or Multi-Class Claimholder (each a "<u>Proposed Claims Transferee</u>") shall file with this Court, and serve on the Debtors and counsel to the Debtors, advance written notice (a "<u>Notice of Proposed Transfer</u>"), in the form attached hereto as <u>Exhibit B-2</u>, of the intended transfer of Claims.

(c) The Debtors shall have five (5) calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Proposed Claims Transferee an objection to any Proposed Claims Acquisition Transaction described in the Notice

of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes.  If the Debtors file an objection, such transaction will not be effective unless approved by a final and nonappealable order of this Court.  If the Debtors do not object within such 5-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer.  Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, each with an additional 5-day waiting period.

        (d)    For purposes of Section 4 of this Order, the following definitions shall apply:

        (i)    "<u>Beneficial Ownership</u>" of Claims shall be determined in accordance with applicable rules under Section 382 of the I.R.C. and regulations promulgated thereunder, as if such rules applied to Claims in the same manner as they apply to equity except to the extent inconsistent with rules and regulations specifically applicable to the ownership of Claims.

        (ii)    "<u>Claim</u>" shall have the meaning ascribed to that term in section 101(5) of the Bankruptcy Code and includes, without limitation, a lessor's right to any current or future payment under or arising out of any lease with respect to which any Debtor is a lessee.

        (iii)    "<u>Class</u>" means any separate class of Claims.

        (iv)    "<u>Class 7 Claims</u>" means Class 7 Claims as defined in the Plan of Reorganization.

        (v)    "<u>Class 8 Claims</u>" means Class 8 Claims as defined in the Plan of Reorganization.

        (vi)    "<u>Class 9 Claims</u>" means Class 9 Claims as defined in the Plan of Reorganization.

        (vii)    "<u>Class 11 Claims</u>" means Class 11 Claims as defined in the Plan of Reorganization.

        (viii)    "<u>Class 12 Claims</u>" means Class 12 Claims as defined in the Plan of Reorganization.

        (ix)    "<u>Multi-Class Claimholder</u>" means any person or entity that beneficially owns any amount of Claims in two or more Classes of Claims, without regard to whether such person or entity may also be a Substantial Claimholder.

(x)   "<u>Substantial Claimholder</u>" means a person or entity that beneficially owns, with respect to any Class of Claims, a dollar amount of Claims of such Class of more than the Threshold Amount (as defined below) for such Class of Claims.

(xi)   "<u>Threshold Amount</u>" means, for a Class of Claims, the amount of Claims set forth below:

| Class | Threshold Amount |
|-------|------------------|
| Class 7 | $1,534,950,000 |
| Class 8 | $1,429,660,000 |
| Class 9 | $1,430,420,000 |
| Class 11 | $1,430,230,000 |
| Class 12 | $753,930,000 |

5.     The Debtors may waive, in writing and in their sole and absolute discretion, any and all restrictions, stays, and notification procedures contained in this Order.

6.     The Debtors shall serve the Notice of Order setting forth the procedures authorized herein substantially in the form annexed hereto as <u>Exhibit C</u> on (a) Office of the United States Trustee for the Southern District of New York (Attn: Paul K. Schwartzberg), (b) the United States Treasury, (c) the Securities and Exchange Commission, (d) the Internal Revenue Service, (e) the United States Attorney's Office for the Southern District of New York, (f) the parties included on the Debtors' list of largest unsecured creditors, (g) any statutory committee appointed under Bankruptcy Code Section 1102, (h) all parties who file notices of transfers of claims under Bankruptcy Rule 3001, (i) the indenture trustees or the transfer agents for any CIT Stock or any bonds or debentures of the Debtors, and (j) any person or entity that

directly or indirectly owns, controls or holds 5% or more of CIT Common Stock or Series C Convertible Preferred as determined based on filings of Schedule 13D and 13G with the Securities and Exchange Commission. Notice served pursuant to the preceding sentence shall be via first class mail, postage prepaid. The Debtors shall also file a copy of this Order as an exhibit to a report on Form 8-K filed with the Securities and Exchange Commission. Additionally, the Debtors shall publish notice of this Order in substantially the form attached hereto as Exhibit D in The Wall Street Journal and The Financial Times (U.S. edition) and on the Bloomberg newswire service. No further notice of entry of this Order need be served by the Debtors.

7. Any transfer agent(s) for any CIT Stock having notice hereof shall provide such Notice of Order to all holders of CIT Common Stock in excess of 9,500,000 shares and to all holders of Series C Convertible Preferred in excess of 259,000 shares that are registered with such transfer agent; provided that, if any transfer agent provides the Debtors with the name and addresses of all holders of such CIT Stock, the Debtors shall deliver the Notice of Order to such holders. Any such registered holder must, in turn, provide such Notice of Order to any holder for whose account such registered holder holds CIT Common Stock in excess of 9,500,000 shares or Series C Convertible Preferred in excess of 259,000 shares, and so on down the chain of ownership.

8. Any person or entity or broker or agent acting on such person or entity's behalf who sells an aggregate amount of 4,750,000 shares of CIT Common Stock or 129,500 shares of Series C Convertible Preferred (or an Option with respect thereto) or sells claims against the Debtors in the aggregate principal amount of at least $15,800,000 to another person or entity shall provide a copy of the Notice of Order to such purchaser of such claims or CIT

Stock or to any broker or agent acting on such purchaser's behalf, to the extent reasonably feasible. The indenture trustees of any bonds or debentures of the Debtors shall provide a copy of the Notice of Order to any person or entity that holds bonds or debentures of the Debtors of a particular CUSIP/ISIN in the aggregate principal amount of at least $15,800,000.

9.      The requirements set forth in this Order are in addition to all applicable securities, corporate and other laws, and do not excuse compliance therewith.

10.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

11.     The relief provided in this Order is granted on an interim basis. Any objection to this relief being granted on a final basis must be in writing and both filed with the Court and served upon counsel for the Debtors so as to be actually **received** by ___, 2009.

12.     Any objections to entry of a final order on the Motion must be (a) filed with the Court no later than 4:00 p.m. (prevailing Eastern time) on                    , 2009 (the "Objection Deadline") and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) CIT Group Inc., 1 CIT Drive, Livingston, New Jersey 07039 (Attn: Eric Mandelbaum); (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Attn: Gregg M. Galardi and J. Gregory St. Clair); (iii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Paul K. Schwartzberg); (iv) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (v) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (vi)

Counsel to the Lender Steering Committee; and (vii) counsel to any official committee(s) appointed in these cases.

13. If any timely objections are received, a hearing shall be held to consider such objections on ____, 2009, and __ a.m. (Prevailing Eastern Time). This Order shall remain in effect until such hearing and unless otherwise ordered by this Court.

14. If no objections are timely filed and actually received as set forth herein, or if all timely filed and actually received objections are withdrawn, this Order shall automatically become final and non-appealable without further order of this Court.

Dated: New York, New York
         , 2009


_____
UNITED STATES BANKRUPTCY JUDGE

<u>EXHIBIT A-1</u>

Notice of Status as Substantial Shareholder

## NOTICE OF STATUS AS A SUBSTANTIAL SHAREHOLDER[1]

PLEASE TAKE NOTICE that [Name of Shareholder] is/has become a Substantial Shareholder with respect to CIT Stock (as defined herein) of CIT Group Inc., a debtor and debtor-in-possession in Case No. 09-16565 pending in the United States Bankruptcy Court for the Southern District of New York.

PLEASE TAKE FURTHER NOTICE that, as of [Date], [Name of Shareholder] beneficially owns [_____] shares of CIT Common Stock and [_____] shares of Series C Convertible Preferred (including any Options with respect to such CIT Stock). The following table sets forth the date(s) on which [Name of Shareholder] acquired or otherwise became the beneficial owner of such CIT Stock:

| Number Of Shares | Class | Date Acquired |
|---|---|---|
|  |  |  |
|  |  |  |

(Attach additional page if necessary)

---

[1]   For purposes hereof, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 9,500,000 shares of the common stock of CIT ("CIT Common Stock") (representing approximately 4.75% of all issued and outstanding common shares) or who beneficially owns at least 4.50% of CIT 8.75% Non-Cumulative Perpetual Convertible Preferred Stock, Series C ("Series C Convertible Preferred") as of the date immediately prior to the date of filing of a Notice of Proposed Transfer (the CIT Common stock and Series C Convertible Preferred, collectively, the "CIT Stock"), and (B) "beneficial ownership" (or any variation thereof of CIT Stock and Options to acquire CIT Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire CIT Stock. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable. For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire CIT Stock may be treated as the owner of such CIT Stock.

PLEASE TAKE FURTHER NOTICE that the last four digits of the taxpayer identification or social security number of [Name of Shareholder] is [_____].

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, [Name of Shareholder] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct, and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to those certain Interim or Final Orders Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice And Hearing Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates. (Docket No. [_]), this Notice is being (a) filed with the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York, (Attn: Paul K. Schwartzberg) and (b) served upon the Debtors and counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attn: Gregg M. Galardi).

Respectfully Submitted,

_____
(Name of Shareholder)

By: _____

Name: _____

Title: _____

Address: _____

_____

_____

Telephone:_____

Facsimile:_____

Date: _____

## EXHIBIT A-2

Notice of Intent to Purchase, Acquire, or Otherwise
Accumulate an Equity Interest

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

In re:                             :     Chapter 11
                                 :

CIT GROUP INC. and         :     Case No. 09-16565
CIT GROUP FUNDING COMPANY  :
OF DELAWARE LLC,         :
                                 :

              Debtors.     :    (Jointly Administered)
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF INTENT TO PURCHASE, ACQUIRE, OR OTHERWISE ACCUMULATE AN EQUITY INTEREST

        PLEASE TAKE NOTICE THAT [Name of Prospective Acquirer] hereby provides notice of its intention to purchase, acquire, or otherwise accumulate one or more shares of CIT Stock (as defined herein) of CIT Group Inc. or an Option with respect thereto (as defined herein) (the "Proposed Transfer").

        PLEASE TAKE FURTHER NOTICE THAT, if applicable, on [Prior Date(s)], [Name of Prospective Acquirer] filed a Notice of Status as a Substantial Shareholder[1] with the United States Bankruptcy Court for the Southern District of New York (the "Court") and served copies thereof on Debtors' counsel.

---

[1]    For purposes hereof, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 9,500,000 shares of the common stock of CIT ("CIT Common Stock") (representing approximately 4.75% of all issued and outstanding common shares) or who beneficially owns at least 4.50% of CIT 8.75% Non-Cumulative Perpetual Convertible Preferred Stock, Series C ("Series C Convertible Preferred") as of the date immediately prior to the date of filing of a Notice of Proposed Transfer (the CIT Common stock and Series C Convertible Preferred, collectively, the "CIT Stock"), and (B) "beneficial ownership" (or any variation thereof of CIT Stock and Options to acquire CIT Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire CIT Stock. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable. For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire CIT Stock may be treated as the owner of such CIT Stock.

1

PLEASE TAKE FURTHER NOTICE THAT [Name of Prospective Acquirer] currently beneficially owns [_____] shares of CIT Common Stock and [_____] shares of Series C Convertible Preferred (including any Options with respect to such CIT Stock).

PLEASE TAKE FURTHER NOTICE THAT, pursuant to the Proposed Transfer, [Name of Prospective Acquirer] proposes to purchase, acquire, or otherwise accumulate [_____] shares of CIT Common Stock, [_____] shares of Series C Convertible Preferred, an Option with respect to [_____] shares of CIT Common Stock, or an Option with respect to [_____] shares of Series C Convertible Preferred. If the Proposed Transfer is permitted to occur, [Name of Prospective Acquirer] will beneficially own [_____] shares of CIT Common Stock and [_____] shares of Series C Convertible Preferred after the transfer (including any Options with respect to any such CIT Stock).

PLEASE TAKE FURTHER NOTICE THAT the last four digits of the taxpayer identification or social security number of [Name of Prospective Acquirer] is [_____].

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, [Name of Prospective Acquirer] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct, and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to those certain Interim or Final Orders Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice And Hearing Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]), this Notice is being (a) filed with the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York, (Attn: Paul K. Schwartzberg) and (b) served upon the Debtors and counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square New York, NY 10036 (Attn: Gregg M. Galardi).

PLEASE TAKE FURTHER NOTICE that the Debtors have five (5) calendar days after receipt of this Notice to object to the Proposed Transfer described herein. If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court. If the Debtors do not object within such 5-day period, then after expiration of such period the Proposed Transfer may proceed solely as set forth in the Notice.

PLEASE TAKE FURTHER NOTICE that any further transactions contemplated by [Name of Prospective Acquirer] that may result in [Name of Prospective Acquirer] purchasing, acquiring or otherwise accumulating additional shares of CIT Stock (or an Option with respect thereto) will each require an additional notice filed with the Court to be served in the same manner as this Notice.

Respectfully Submitted,

_____
(Name of Shareholder)

By: _____

Name: _____

Title: _____

Address: _____

_____

_____

Telephone:_____

Facsimile:_____

Date: _____

Notice of Intent to Sell, Trade or Otherwise
Transfer an Equity Interest

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

In re:                                  :     Chapter 11
                                           :

CIT GROUP INC. and           :     Case No. 09-16565
CIT GROUP FUNDING COMPANY   :
OF DELAWARE LLC,             :
                                           :

                  Debtors.       :     (Jointly Administered)
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF INTENT TO SELL, TRADE OR OTHERWISE
## TRANSFER AN EQUITY INTEREST

           PLEASE TAKE NOTICE THAT [Name of Prospective Seller] hereby provides notice of its intention to sell, trade, or otherwise transfer one or more shares of CIT Stock (as defined herein) of CIT Group Inc. or an Option with respect thereto (as defined herein) (the "Proposed Transfer").

           PLEASE TAKE FURTHER NOTICE THAT, if applicable, on [Prior Date(s)], [Name of Prospective Seller] filed a Notice of Status as a Substantial Shareholder[1] with the United States Bankruptcy Court for the Southern District of New York (the "Court") and served copies thereof on Debtors' counsel.

---

[1]     For purposes hereof, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 9,500,000 shares of the common stock of CIT ("CIT Common Stock") (representing approximately 4.75% of all issued and outstanding common shares) or who beneficially owns at least 4.50% of CIT 8.75% Non-Cumulative Perpetual Convertible Preferred Stock, Series C ("Series C Convertible Preferred") as of the date immediately prior to the date of filing of a Notice of Proposed Transfer (the CIT Common stock and Series C Convertible Preferred, collectively, the "CIT Stock"), and (B) "beneficial ownership" (or any variation thereof of CIT Stock and Options to acquire CIT Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire CIT Stock. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable. For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire CIT Stock may be treated as the owner of such CIT Stock.

1

PLEASE TAKE FURTHER NOTICE THAT [Name of Prospective Seller] currently beneficially owns currently beneficially owns [_____] shares of CIT Common Stock and [_____] shares of Series C Convertible Preferred (including any Options with respect to such CIT Stock).

PLEASE TAKE FURTHER NOTICE THAT, pursuant to the Proposed Transfer, [Name of Prospective Acquirer] proposes to purchase, acquire, or otherwise accumulate [_____] shares of CIT Common Stock, [_____] shares of Series C Convertible Preferred, an Option with respect to [_____] shares of CIT Common Stock, or an Option with respect to [_____] shares of Series C Convertible Preferred. If the Proposed Transfer is permitted to occur, [Name of Prospective Acquirer] will beneficially own [_____] shares of CIT Common Stock and [_____] shares of Series C Convertible Preferred after the transfer (including any Options with respect to any such CIT Stock).

PLEASE TAKE FURTHER NOTICE THAT the last four digits of the taxpayer identification or social security number of [Name of Prospective Seller] is [_____].

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, [Name of Prospective Seller] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct, and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to those certain Interim or Final Orders Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice And Hearing Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]), this Notice is being (a) filed with the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York, (Attn: Paul K. Schwartzberg) and (b) served upon the Debtors and counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attn: Gregg M. Galardi).

PLEASE TAKE FURTHER NOTICE that the Debtors have five (5) calendar days after receipt of this Notice to object to the Proposed Transfer described herein. If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court. If the Debtors do not object within such 5-day period, then after expiration of such period the Proposed Transfer may proceed solely as set forth in the Notice.

PLEASE TAKE FURTHER NOTICE that any further transactions contemplated by [Name of Prospective Seller] that may result in [Name of Prospective Seller] selling, trading or otherwise transferring shares of CIT Stock (or an Option with respect thereto) will each require an additional notice filed with the Court to be served in the same manner as this Notice.

Respectfully Submitted,

_____
(Name of Shareholder)

By: _____

Name: _____

Title: _____

Address: _____

_____

_____

Telephone:_____

Facsimile:_____

Date: _____

<u>EXHIBIT B-1</u>

Notice of Status as Substantial Claimholder

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                              :        Chapter 11
                                                    :
CIT GROUP INC. and                                  :        Case No. 09-16565
CIT GROUP FUNDING COMPANY                           :
OF DELAWARE LLC,                                     :
                                                    :
                    Debtors.                        :        (Jointly Administered)
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **NOTICE OF SUBSTANTIAL CLAIMHOLDER STATUS**

　　　　　PLEASE TAKE NOTICE [Name of Filer] (the "Filer") hereby provides notice (the "Notice") that the Filer is a Substantial Claimholder of Claims against CIT Group, Inc and CIT Group Funding Company of Delaware LLC ("CIT"), as debtors and debtors-in-possession (collectively, the "Debtors") in Case No. [     ]-[          ], pending in the United States Bankruptcy Court for the Southern District of New York.

　　　　　PLEASE TAKE FURTHER NOTICE that the following table sets forth the following information:

　　　　　1. In the case of Claims that are owned directly by the Filer, the table sets forth (i) the dollar amount of such Claims (by Class); and (ii) the date(s) on which such Claims were acquired.

　　　　　2. In the case of Claims that are not owned directly by the Filer but are nonetheless beneficially owned by the Filer, the table sets forth (i) the name(s) of each record or legal owner of Claims that are beneficially owned (as defined below) by the Filer; (ii) the dollar amount of such Claims (by Class); and (iii) the date(s) on which such Claims were acquired.

| Class | Name of Owner | Dollar Amount Owned | Date( s) Acquired |
|-------|---------------|---------------------|-------------------|
| Class 7 | | | |
| Class 8 | | | |

1

| Class 9 | | | |
|---|---|---|---|
| Class 11 | | | |
| Class 12 | | | |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE that the taxpayer identification number of the Filer is _____.

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, the Filer hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to those certain Interim or Final Orders Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice And Hearing Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]), this Notice is being (a) filed with the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York, (Attn: Paul K. Schwartzberg) and (b) served upon the Debtors and counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attn: Gregg M. Galardi).

This Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001 (e) of the Federal Rules of Bankruptcy Procedure.

For purposes of this Notice:

(i) "Beneficial Ownership" of Claims shall be determined in accordance with applicable rules under Section 382 of the I.R.C. and regulations promulgated thereunder, as if such rules applied to Claims in the same manner as they apply to equity except to the extent inconsistent with rules and regulations specifically applicable to the ownership of Claims.

(ii) "Claim" shall have the meaning ascribed to that term in Section 101(5) of the Bankruptcy Code and includes, without limitation, a lessor's right to any current or future payment under or arising out of any lease with respect to which any Debtor is a lessee.

(iii) "Class" means any separate class of Claims.

(iv)  "<u>Multi-Class Claimholder</u>" means any person or Entity that beneficially owns any amount of Claims in two or more Classes of Claims, without regard to whether such person or Entity may also be a Substantial Claimholder.

(v)  "<u>Class 7 Claims</u>" means Class 7 Claims as defined in the Plan of Reorganization.

(vi)  "<u>Class 8 Claims</u>" means Class 8 Claims as defined in the Plan of Reorganization.

(vii)  "<u>Class 9 Claims</u>" means Class 9 Claims as defined in the Plan of Reorganization.

(viii)  "<u>Class 11 Claims</u>" means Class 11 Claims as defined in the Plan of Reorganization.

(ix)  "<u>Class 12 Claims</u>" means Class 12 Claims as defined in the Plan of Reorganization.

(x)  "<u>Substantial Claimholder</u>" means a person or entity that beneficially owns, with respect to any Class of Claims, a dollar amount of Claims of such Class of more than the Threshold Amount for such Class of Claims.

(xi)  "<u>Threshold Amount</u>" means, for a Class of Claims, the amount of Claims set forth below:

| Class 7 | $1,534,950,000 |
| Class 8 | $1,429,660,000 |
| Class 9 | $1,430,420,000 |
| Class 11 | $1,430,230,000 |
| Class 12 | $753,930,000 |

[IF APPLICABLE] the Filer is represented by [name of the law firm], [address], [phone], (Attn: [name]).

Respectfully submitted,

_____

[Name of Filer]
By: _____
Name: _____
Address: _____
_____
Telephone: _____
Facsimile: _____

## EXHIBIT B-2

Notice of Proposed Transfer

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :       Chapter 11
                                        :
CIT GROUP INC. and                      :       Case No. 09-16565
CIT GROUP FUNDING COMPANY               :
OF DELAWARE LLC,                        :
                                        :
            Debtors.                    :       (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF INTENT TO PURCHASE,
## ACQUIRE OR OTHERWISE ACCUMULATE A CLAIM

       PLEASE TAKE NOTICE THAT [Name of Filer] (the "Filer") hereby provides notice (the "Notice") of (i) its intent to purchase, acquire or otherwise accumulate directly a Claim or Claims against CIT Group, Inc and CIT Group Funding Company of Delaware LLC ("CIT"), as debtors and debtors-in-possession (collectively, the "Debtors") and/or (ii) a proposed purchase or acquisition of Claims that, following the proposed acquisition, would be beneficially owned by the Filer (any proposed transaction described in (i) or (ii), a "Proposed Transfer").

       PLEASE TAKE FURTHER NOTICE THAT, if applicable, on [Prior Date(s)], the Filer filed a Notice of Substantial Claimholder Status with the Court and served copies thereof on the Debtors and Debtors' counsel.

       PLEASE TAKE FURTHER NOTICE THAT the Filer is filing this notice as (check one):

| | |
|---|---|
| A Substantial Claimholder | |
| A person or entity that would, upon consummation of the Proposed Transfer, become a Substantial Claimholder | |
| A Multi-Class Claimholder | |
| A person or entity that would, upon consummation of the Proposed Transfer. become a Multi-Class Claimholder | |

PLEASE TAKE FURTHER NOTICE THAT the following table sets forth the following information:

      1.     In the case of Claims that are owned directly by the Filer, the table sets forth (i) the dollar amount of such Claims (by Class); and (ii) the date(s) on which such Claims were acquired.

      2.     In the case of Claims that are not owned directly by the Filer but are nonetheless beneficially owned by the Filer, the table sets forth (i) the name(s) of each record or legal owner of Claims that are beneficially owned (as defined below) by the Filer; (ii) the dollar amount of such Claims (by Class); and (iii) the date(s) on which such Claims were acquired.

| Class | Name of Owner | Dollar Amount Owned | Date(s) Acquired |
|-------|---------------|---------------------|------------------|
| Class 7 | | | |
| Class 8 | | | |
| Class 9 | | | |
| Class 11 | | | |
| Class 12 | | | |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE THAT if the Proposed Transfer involves a purchase or acquisition of Claims directly by the Filer and such Proposed Transfer would result in (i) an increase in the dollar amount of Claims beneficially owned by a Substantial Claimholder (other than the Filer); (ii) an increase in the dollar amount of Claims beneficially owned by a Multi-Class Claimholder (other than the Filer); or (iii) a person or entity (other than the Filer) becoming a Substantial Claimholder or Multi-Class Claimholder, the following table sets forth (w) the name of each such person or entity; (x) the dollar amount of Claims (by Class) that are beneficially owned by such person or entity prior to the Proposed Transfer; (y) the dollar amount of Claims (by Class) that would be beneficially owned by such person or entity immediately following the Proposed Transfer; and (z) the date(s) of the Proposed Transfer:

| Class | Name of Owner | Dollar Amount Currently Owned | Dollar Amount to be Acquired | Date(s) of Proposed Transfer |
|---|---|---|---|---|
| Class 7 | | | | |
| Class 8 | | | | |
| Class 9 | | | | |
| Class 11 | | | | |
| Class 12 | | | | |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE THAT the taxpayer identification number of the Filer is _____.

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, the Filer hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to those certain Interim or Final Orders Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice And Hearing Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]), this Notice is being (a) filed with the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York, (Attn: Paul K. Schwartzberg) and (b) served upon the Debtors and counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attn: Gregg M. Galardi).

PLEASE TAKE FURTHER NOTICE that the Filer hereby acknowledges that if the Proposed Transfer is not approved in writing by the Debtors within five (5) business days after the filing of this Notice, such Proposed Transfer shall be deemed rejected and will not be effective ab initio. If the Debtors provide written authorization approving the Proposed Transfer prior to the end of such five (5) business day period, then such Proposed Transfer may proceed solely as specifically described in this Notice.

PLEASE TAKE FURTHER NOTICE that any further transactions that may result in the Filer increasing its beneficial ownership of Claims will each require an additional notice filed with the Court to be served in the same manner as this Notice.

This Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001 (e) of the Federal Rules of Bankruptcy Procedure.

For purposes of this Notice:

(i)    "Beneficial Ownership" of Claims shall be determined in accordance with applicable rules under Section 382 of the I.R.C. and regulations promulgated thereunder, as if such rules applied to Claims in the same manner as they apply to equity except to the extent inconsistent with rules and regulations specifically applicable to the ownership of Claims.

(ii)    "Claim" shall have the meaning ascribed to that term in Section 101(5) of the Bankruptcy Code and includes, without limitation, a lessor's right to any current or future payment under or arising out of any lease with respect to which any Debtor is a lessee.

(iii)    "Class" means any separate class of Claims.

(iv)    "Multi-Class Claimholder" means any person or Entity that beneficially owns any amount of Claims in two or more Classes of Claims, without regard to whether such person or Entity may also be a Substantial Claimholder.

(v)    "Class 7 Claims" means Class 7 Claims as defined in the Plan of Reorganization.

(vi)    "Class 8 Claims" means Class 8 Claims as defined in the Plan of Reorganization.

(vii)    "Class 9 Claims" means Class 9 Claims as defined in the Plan of Reorganization.

(viii)    "Class 11 Claims" means Class 11 Claims as defined in the Plan of Reorganization.

(ix)    "Class 12 Claims" means Class 12 Claims as defined in the Plan of Reorganization.

(x)    "Substantial Claimholder" means a person or entity that beneficially owns, with respect to any Class of Claims, a dollar amount of Claims of such Class of more than the Threshold Amount for such Class of Claims.

(xi) "Threshold Amount" means, for a Class of Claims, the amount of Claims set forth below:

| Class 7 | $1,534,950,000 |
|---------|----------------|
| Class 8 | $1,429,660,000 |
| Class 9 | $1,430,420,000 |
| Class 11 | $1,430,230,000 |
| Class 12 | $753,930,000 |

[IF APPLICABLE] the Filer is represented by [name of the law firm], [address]. [phone]. (Attn: [name]).

Respectfully submitted,

_____
[Name of Filer]
By: _____
Name: _____
Address: _____
_____
_____
Telephone: _____
Facsimile: _____

Date: _____

<u>EXHIBIT C</u>

Notice of Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :

In re:                           :     Chapter 11
                               :

CIT GROUP INC. and            :     Case No. 09-16565

CIT GROUP FUNDING COMPANY     :

OF DELAWARE LLC,             :
                               :

             Debtors.         :     (Jointly Administered)
                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF INTERIM ORDER UNDER 11 U.S.C. §§ 105, 362 AND 541 AND FED R. BANKR. P. 3001 AND 3002 ESTABLISHING NOTICE AND HEARING PROCEDURES FOR TRADING IN EQUITY SECURITIES AND CLAIMS AGAINST THE DEBTORS' ESTATES**

**TO: ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS:**

        PLEASE TAKE NOTICE that on November 1, 2009 ("Petition Date"), CIT Group, Inc and CIT Group Funding Company of Delaware LLC (the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

        PLEASE TAKE FURTHER NOTICE that on November 1, 2009, the Debtors filed a motion seeking entry of an order pursuant to Bankruptcy Code sections 105, 362, and 541 and Federal Rule of Bankruptcy Procedure 3001 and 3002 establishing notice and hearing procedures for trading in equity securities of CIT Group, Inc (the "CIT Stock") and claims against the Debtors' estates.

        PLEASE TAKE FURTHER NOTICE THAT on _____, 2009 the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order approving the procedures set forth below on an interim basis in order to preserve the Debtors' net operating losses ("Tax Attributes") pursuant to Bankruptcy Code sections 105, 362, and 541 and Federal Rules of Bankruptcy Procedure 3001 and 3002(the "Order"). **Except as otherwise provided in the Order, any sale or other transfer of CIT Stock or claims against the Debtors in violation of the procedures set forth below shall be null and void ab initio as an act in violation of the automatic stay under section 362 of the Bankruptcy Code**.

        PLEASE TAKE FURTHER NOTICE that any objections to the Order shall be heard by the Court at the hearing scheduled for _____, 2009, at ___:00 a.m. (Prevailing Eastern Time). Any objections with respect to the Order must be filed with the Court and served upon counsel for the Debtors so as to be actually received no later than ___, 2009. If no objections are timely filed and actually received, or if all timely filed and actually received objections are withdrawn or overruled, the Order shall automatically become final and non-appealable without further order of this Court.

1

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, the following procedures have been approved by the Bankruptcy Court and shall apply to holding and trading in CIT Stock:

(a)     Any person or entity (as defined in Treasury Regulations Section 1.382-3(a) for purposes of this Section 3) who currently owns CIT Stock (as defined in Paragraph (e) below) in an amount sufficient to qualify such person or entity as a Substantial Shareholder (as defined in Paragraph (e) below) or becomes a Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, a notice of such status, in the form attached to the Order as  Exhibit A-1, on or before (A) five (5) calendar days after the effective date of the notice of entry of the Order or (B) five (5) calendar days after becoming a Substantial Shareholder.

(b)     Prior to effectuating any transfer of equity securities (including Options to acquire such securities, as defined below) that would result in an increase in the amount of CIT Stock beneficially owned by a Substantial Shareholder or would result in a person or entity becoming a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, advance written notice, in the form attached to the Order as Exhibit A-2, of the intended transfer of equity securities.

(c)     Prior to effectuating any transfer of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of CIT Stock beneficially owned by a Substantial Shareholder or would result in a person or entity ceasing to be a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, advance written notice, in the form attached to the Order as Exhibit A-3, of the intended transfer of equity securities (the notices required to be filed and served under Paragraph (b) and this Paragraph (c), each a "Notice of Proposed Transfer").

(d)     The Debtors shall have five (5) calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Substantial Shareholder an objection to any proposed transfer of equity securities described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes.  If the Debtors file an objection, such transaction will not be effective unless approved by a final and nonappealable order of this Court.  If the Debtors do not object within such 5-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer.  Further transactions within the scope of this Paragraph must be the subject of additional notices as set forth herein, with an additional 5-day waiting period.

(e)     For purposes of the Order, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 9,500,000 shares of the common stock of CIT ("CIT Common Stock") (representing approximately 4.75% of all issued and outstanding common shares) or who beneficially owns at least 4.50% of CIT 8.75% Non-Cumulative Perpetual Convertible Preferred Stock, Series C ("Series C Convertible Preferred") as of the date immediately prior to the date of filing of a Notice of Proposed Transfer (the CIT Common stock and Series C Convertible Preferred, collectively, the "CIT Stock"), and (B) "beneficial ownership" (or any variation thereof of CIT Stock and Options to acquire CIT Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire CIT Stock.  An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.  For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire CIT Stock may be treated as the owner of such CIT Stock.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, the following procedures and restrictions have been approved by the Bankruptcy Court and shall apply to holding and trading in Claims against the Debtors:

(f)     Any person or entity (as defined in Treasury Regulations Section 1.382-3(a) for purposes of this Section 4) who currently is or hereafter becomes a Substantial Claimholder shall file with this Court, and serve on the Debtors and counsel to the Debtors, a notice of such status, in the form attached hereto as

<u>Exhibit B-1</u>, on or before (A) five (5) calendar days after the date of entry of this Order or (B) five (5) calendar days after becoming a Substantial Claimholder.

(g)     Prior to effectuating any acquisition or other transfer of claims that would result in (i) an increase in the dollar amount of Claims beneficially owned by a Substantial Claimholder, (ii) a person or entity becoming a Substantial Claimholder, (iii) an increase in the dollar amount of Claims beneficially owned by a Multi-Class Claimholder, or (iv) a person or entity becoming a Multi-Class Claimholder (each a "<u>Proposed Claims Acquisition Transaction</u>"), such person, entity, Substantial Claimholder, or Multi-Class Claimholder (each a "<u>Proposed Claims Transferee</u>") shall file with this Court, and serve on the Debtors and counsel to the Debtors, advance written notice (a "<u>Notice of Proposed Transfer</u>"), in the form attached hereto as Exhibit B-2, of the intended transfer of claims.

(h)     The Debtors shall have five (5) calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Proposed Claims Transferee an objection to any Proposed Claims Acquisition Transaction described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes.  If the Debtors file an objection, such transaction will not be effective unless approved by a final and nonappealable order of this Court.  If the Debtors do not object within such 5-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer.  Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, each with an additional 5-day waiting period.

(i)     For purposes of the Order, the following definitions shall apply:

(i)     "<u>Beneficial Ownership</u>" of Claims shall be determined in accordance with applicable rules under Section 382 of the I.R.C. and regulations promulgated thereunder, as if such rules applied to Claims in the same manner as they apply to equity except to the extent inconsistent with rules and regulations specifically applicable to the ownership of Claims.

(ii)     "<u>Claim</u>" shall have the meaning ascribed to that term in Section 101(5) of the Bankruptcy Code and includes, without limitation, a lessor's right to any current or future payment under or arising out of any lease with respect to which any Debtor is a lessee.

(iii)     "<u>Class</u>" means any separate class of Claims.

(iv)     "<u>Class 7 Claims</u>" means Class 7 Claims as defined in the Plan of Reorganization.

(v)     "<u>Class 8 Claims</u>" means Class 8 Claims as defined in the Plan of Reorganization.

(vi)     "<u>Class 9 Claims</u>" means Class 9 Claims as defined in the Plan of Reorganization.

(vii)     "<u>Class 11 Claims</u>" means Class 11 Claims as defined in the Plan of Reorganization.

(viii)     "<u>Class 12 Claims</u>" means Class 12 Claims as defined in the Plan of Reorganization.

(ix)     "<u>Multi-Class Claimholder</u>" means any person or Entity that beneficially owns any amount of Claims in two or more Classes of Claims, without regard to whether such person or Entity may also be a Substantial Claimholder.

(x) "Substantial Claimholder" means a person or entity that beneficially owns, with respect to any Class of claims, a dollar amount of claims of such Class of more than the Threshold Amount for such Class of claims.

(xi) "Threshold Amount" means, for a Class of Claims, the amount of Claims set forth below:

| Class | Threshold Amount |
|-------|------------------|
| Class 7 | $1,534,950,000 |
| Class 8 | $1,429,660,000 |
| Class 9 | $1,430,420,000 |
| Class 11 | $1,430,230,000 |
| Class 12 | $753,930,000 |

PLEASE TAKE FURTHER NOTICE that, upon the request of any person, counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, NY 10036, Att'n Jessica D. Lubarsky, will provide a form of each of the required notices described above.

PLEASE TAKE FURTHER NOTICE that a copy of the Order may be obtained from the Court's electronic filing system or at http://www.kccllc.com., or by making request upon Kurtzman Carson Consultants at (866) 381-9100.

**FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE SHALL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY PRESCRIBED BY SECTION 362 OF THE BANKRUPTCY CODE.**

**ANY PROHIBITED PURCHASE, SALE, TRADE, OR OTHER TRANSFER OF CIT STOCK OR CLAIMS AGAINST THE DEBTORS IN VIOLATION OF THE ORDER SHALL BE NULL AND VOID AB INITIO AND MAY BE PUNISHED BY CONTEMPT OR OTHER SANCTIONS IMPOSED BY THE COURT.**

Dated:          _____, 2009

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

Gregg M. Galardi
J. Gregory St. Clair
Four Times Square
New York, New York 10036
(212) 735-3000

Proposed Counsel for Debtors and
Debtors-in-Possession

4

<u>EXHIBIT D</u>

Publication Notice of Order

# NOTICE CONCERNING TRADING IN STOCK AND CLAIMS OF CIT GROUP, INC

### NOTICE OF INTERIM ORDER UNDER 11 U.S.C. §§ 105, 362 AND 541 AND FED R. BANKR. P. 3001 AND 3002 ESTABLISHING NOTICE AND HEARING PROCEDURES FOR TRADING IN EQUITY SECURITIES AND CLAIMS AGAINST THE DEBTORS' ESTATES

**TO: ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS:**

PLEASE TAKE NOTICE that on November 1, 2009 ("Petition Date"), CIT Group, Inc and CIT Group Funding Company of Delaware LLC (the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The cases are jointly administered under Case No. 09-16565 (\_\_\_).

PLEASE TAKE FURTHER NOTICE that on \_\_\_\_\_, the Court entered an order establishing notice and hearing procedures for trading in equity securities of CIT Group, Inc. (the "CIT Stock") and claims against the Debtors, for the purpose of preserving the Debtors' net operating losses ("Tax Attributes") pursuant to Bankruptcy Code sections 105, 362, and 541 and Federal Rules of Bankruptcy Procedure 3001 and 3002 (the "Order"). **Except as otherwise provided in the Order, any sale or other transfer of CIT Stock or claims against the Debtors in violation of the procedures set forth in the Order shall be null and void ab initio as an act in violation of the automatic stay under section 362 of the Bankruptcy Code**. A copy of the Order may be obtained from the Court's electronic filing system or at http://www.kccllc.com., or by making request upon Kurtzman Carson Consultants at (866) 381-9100.

PLEASE TAKE FURTHER NOTICE that any objections to the Order shall be heard by the Court at the hearing scheduled for \_\_\_\_\_ 2009, at \_:00 a.m. (Prevailing Eastern Time). Any objections with respect to the Order must be filed with the Court and served upon counsel for the Debtors so as to be actually received no later than \_\_\_\_\_, 2009. If no objections are timely filed and actually received, or if all timely filed and actually received objections are withdrawn or overruled, the Order shall automatically become final and non-appealable without further order of this Court.

PLEASE TAKE FURTHER NOTICE that the Order applies to holding and trading in CIT Stock by any "Substantial Shareholder": (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 9,500,000 shares of the common stock of CIT ("CIT Common Stock") (representing approximately 4.75% of all issued and outstanding common shares) or who beneficially owns at least 4.50% of CIT 8.75% Non-Cumulative Perpetual Convertible Preferred Stock, Series C ("Series C Convertible Preferred") as of the date immediately prior to the date of filing of a Notice of Proposed Transfer (the CIT Common stock and Series C Convertible Preferred, collectively, the "CIT Stock"), and (B) "beneficial ownership" (or any variation thereof of CIT Stock and Options to acquire CIT Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire CIT Stock. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable. For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire CIT Stock may be treated as the owner of such CIT Stock. The procedures require the filing and service of a notice of Substantial Shareholder status before (A) five (5) days after the effective date of the notice of entry of the Order or (B) five (5) days after becoming a Substantial Shareholder. In addition, prior notice must be provided of any intended transfer of CIT Stock that (i) would result in the increase in the amount of CIT Stock beneficially owned by

a Substantial Shareholder or would result in a person or entity becoming a Substantial Shareholder, or (ii) decreases in the amount of CIT Stock beneficially owned by a Substantial Shareholder or would result in a person or entity's ceasing to be a Substantial Shareholder.  The Debtors will have five (5) days after receipt of notice of any such intended transfer to file with the Court and serve on such Substantial Shareholder an objection to any proposed transfer of CIT Stock on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes.  If the Debtors file an objection, such transaction will not be effective unless approved by a final and nonappealable order of the Court.  If the Debtors do not object within such five (5)-day period, such transaction may proceed solely as set forth in the notice . Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, each with an additional five (5)-day waiting period.

PLEASE TAKE FURTHER NOTICE that the Order applies to holding and trading in claims against the Debtors by any "Substantial Claimholder": (A) a "Substantial Claimholder" means a person or entity that beneficially owns, with respect to any Class of Claims, a dollar amount of Claims of such Class of more than the Threshold Amount for such Class of Claims.  "Beneficial Ownership" of Claims shall be determined in accordance with applicable rules under Section 382 of the I.R.C. and regulations promulgated thereunder, as if such rules applied to Claims in the same manner as they apply to equity except to the extent inconsistent with rules and regulations specifically applicable to the ownership of Claims.  "Class" means any separate class of claims.  "Claim" shall have the meaning ascribed to that term in Section 101(5) of the Bankruptcy Code and includes, without limitation, a lessor's right to any current or future payment under or arising out of any lease with respect to which any Debtor is a lessee.  A "Multi-Class Claimholder" is any person or entity that beneficially owns any amount of Claims in two or more Classes of Claims, without regard to whether such person or entity may also be a Substantial Claimholder.  The "Threshold Amount" means, for a Class of Claims, the amount of Claims as follow: Class 7, $1,534,950,000; Class 8, $1,429,660,000; Class 9, $1,430,420,000; Class 11, $1,430,230,000; Class 12, $753,930,000.  The procedures require the filing and service of a notice of Substantial Claimholder status before the later of (A) five (5) days after the effective date of the notice of entry of the Order or (B) five (5) days after becoming a Substantial Claimholder. In addition, prior notice must be provided of any intended transfer of claims against the Debtors that would result in (i) an increase in the dollar amount of Claims beneficially owned by a Substantial Claimholder, (ii) a person or entity becoming a Substantial Claimholder, (iii) an increase in the dollar amount of Claims beneficially owned by a Multi-Class Claimholder, or (iv) a person or entity becoming a Multi-Class Claimholder (each a "Proposed Claims Acquisition Transaction).  The Debtors will have five (5) calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Proposed Claims Transferee an objection to any Proposed Claims Acquisition Transaction described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes.  If the Debtors file an objection, such transaction will not be effective unless approved by a final and nonappealable order of this Court.  If the Debtors do not object within such five (5)-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer.  Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, each with an additional five (5) -day waiting period.

PLEASE TAKE FURTHER NOTICE that a copy of the Order and of the form notices described above may be obtained from counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, NY 10036, Att'n Jessica D. Lubarsky, Telephone: 212-735-3000, Fax: 212-735-2000, Email: jessica.lubarsky@skadden.com; through the Court's electronic filing system or at http://www.kccllc.com., or by making request upon Kurtzman Carson Consultants at (866) 381-9100.

**ANY PROHIBITED PURCHASE, SALE, TRADE, OR OTHER TRANSFER OF CIT STOCK OR CLAIMS AGAINST THE DEBTORS IN VIOLATION OF THE ORDER SHALL BE NULL AND VOID AB INITIO AND MAY BE PUNISHED BY CONTEMPT OR OTHER SANCTIONS IMPOSED BY THE COURT.**