SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
  Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :    Chapter 11
                                          :
CIT GROUP INC. and                        :    Case No. 09-16565
CIT GROUP FUNDING COMPANY                 :
OF DELAWARE LLC,                          :
                                          :
                    Debtors.              :    (Motion for Joint Administration Pending)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION UNDER 11 U.S.C. §§ 105, 341, 1125, 1126, AND 1129 AND FED. R. BANKR. P. 2002, 3017, 3018, AND 3020 (I) FOR ORDER (A) SCHEDULING COMBINED HEARING ON ADEQUACY OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN, (B) ESTABLISHING PROCEDURES FOR OBJECTING TO DISCLOSURE STATEMENT AND PLAN, (C) APPROVING FORM AND MANNER OF NOTICE OF COMBINED HEARING AND (D) WAIVING REQUIREMENT FOR MEETINGS OF CREDITORS OR EQUITY SECURITY HOLDERS, AND (II) FOR ORDER (A) APPROVING PREPETITION SOLICITATION PROCEDURES (B) APPROVING ADEQUACY OF DISCLOSURE STATEMENT AND (C) CONFIRMING PLAN OF REORGANIZATION**

    The debtors and debtors-in-possession in the above-captioned cases (collectively,

the "Debtors"),[1] hereby move (the "Motion") this Court pursuant to sections 105, 341, 1125,

---

[1] CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017.  Its tax identification number is 65-xxx1192.  In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-16566, is a debtor in these related cases.  CIT Group Funding Company of Delaware LLC is located at 1 CIT Drive, Livingston, NJ 07039.  Its tax identification number is 98-xxx9146.

1126 and 1129 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for (i) an order (the "Scheduling Order") (a) scheduling a combined hearing on the adequacy of the Debtors' Amended Offering Memorandum, Disclosure Statement and Solicitation of Acceptances of a Prepackaged Plan of Reorganization, dated October 16, 2009 and as supplemented on October 23, 2009 (including any supplements and annexes thereto, the "Disclosure Statement")[2] with respect to the Second Amended Prepackaged Reorganization Plan of CIT Group Inc. and CIT Group Funding Company of Delaware LLC, dated October 23, 2009 (as may be amended, the "Plan") and confirmation of such Plan (the "Combined Hearing"), (b) approving the procedures for objecting to the adequacy of the Disclosure Statement and confirmation of the Plan, (c) approving form and manner of notice of the Combined Hearing and commencement of the chapter 11 cases, and (d) waiving the requirement for meetings of creditors or equity security holders; and (ii) an order (the "Confirmation Order") (a) approving the prepetition solicitation procedures (the "Solicitation Procedures"), (b) approving the adequacy of the Disclosure Statement and (c) confirming the Plan. In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and Various First Day Applications and Motions (the "First Day Declaration") filed concurrently herewith under Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 341, 1125, 1126 and 1129 and Bankruptcy Rules 2002, 3017, 3018 and 3020. Further support for the relief set forth herein is provided by the Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York, General Order 203, dated Feb. 24, 1999 ("General Order 203").

## BACKGROUND

### A.      The Chapter 11 Filings

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration.  The Debtors continue to manage and operate their businesses as debtors-in-possession under Bankruptcy Code sections 1107 and 1108.

### B.      The Plan

4.      The Debtors have determined that prolonged chapter 11 cases would severely impair their ongoing business operations and threaten their viability as going concerns. Accordingly, the Debtors have determined to seek their restructuring through the commencement of these prepackaged chapter 11 cases, only after receiving the necessary support for their Plan

following their prepetition solicitation. The Debtors, by this Motion, seek the Court's consideration of the restructuring proposed by the Debtors at a single hearing upon the usual and customary notice to parties-in-interest.

5. The Plan provides for, among other things, the classification of certain classes of creditors and interest holders as impaired or unimpaired. Specifically, the Plan provides for 18 different classes of claims and interests. Impaired holders of claims entitled to a distribution under the Plan had their votes solicited prior to the Petition Date.

6. Under the Plan, holders of claims in Class 6 JPM L/C Facility Claims, Class 7 Canadian Senior Unsecured Note Claims, Class 8 Long-Dated Senior Unsecured Note Claims, Class 9 Senior Unsecured Note Claims, Class 10 Senior Unsecured Term Loan Claims, Class 11 Senior Unsecured Credit Agreement Claims, Class 12 Senior Subordinated Note Claims and Class 13 Junior Subordinated Note Claims are impaired under the Plan and had their votes solicited prior to the Petition Date. Holders of Claims in Class 1 Other Priority Claims, Class 2 Other Secured Claims, Class 3 Other Unsecured Debt Claims and Guarantee Claims, Class 4 Intercompany Claims and Class 5 General Unsecured Claims and Interests in Class 17 Old Delaware Funding Interests are unimpaired under the Plan. Such holders of claims and interests are conclusively presumed to have accepted the Plan and, therefore, did not have their vote solicited prior to the Petition Date. Holders of claims in Class 14 Subordinated 510(b) Claims and Interests in Class 15 Old Preferred Interests, Class 16 Old Common Interests, and Class 18 Other Equity Interests are impaired under the Plan. Such holders of claims and interests are not entitled to a distribution under the Plan (other than Contingent Value Rights received by holders

of Old Preferred Interests)[3], are deemed to have rejected the Plan and did not have their votes solicited prior to the Petition Date.

## C. Solicitation

7. In connection with the Plan, the Debtors prepared the Disclosure Statement describing, among other things, the proposed reorganization and its effects on holders of claims against and interests in the Debtors.[4] Following the launch of the solicitation of votes on the Plan, the Debtors, through their voting agent, Epiq Financial Balloting Group, LLC ("FBG"), caused copies of the Disclosure Statement, the Plan (attached to the Disclosure Statement) and the appropriate Ballot (as defined herein) (a "Solicitation Package") to be transmitted to the holders of notes and other debt impaired under the Plan.[5] Solicitation Packages were also sent to the agents for the debt included in Class 10 Senior Unsecured Term Loan Claims and Class 11 Senior Unsecured Credit Agreement Claims. Additionally, Solicitation Packages were sent directly to the lenders holding claims in Class 6 JPM L/C Facility Claims. Solicitation Packages for Class 6, Class 10, and Class 11 contained an annex to the Disclosure Statement and a Ballot appropriate for their class. In accordance with applicable non-bankruptcy law, the Debtors established 11:59 p.m. (prevailing Eastern Time) on October 29, 2009 as the deadline for a majority of the holders of claims entitled to vote to accept or reject the

---

[3]    Pursuant to the Plan, the Contingent Value Rights represent the right to receive contingent distributions of value under the Plan in the form of New Common Interests for holders of Claims in Class 12 Senior Subordinated Note Claims, Class 13 Junior Subordinated Note Claims and Class 15 Old Preferred Interest, provided that such additional New Common Interests are only distributable if senior Classes of Claims receive greater than a 100% recovery under the Plan, as more specifically set forth in Article IV.H of the Plan.

[4]    The Disclosure Statement also contained significant information regarding an out-of-court exchange offer. The Debtors, by commencing these chapter 11 cases, have decided not to consummate the exchange offers described in the Disclosure Statement.

[5]    In certain instances, counsel for the Debtors transmitted the Solicitation Packages to the agents or counsel for certain bank-related debt.

Plan (the "Voting Deadline").  Holders of claims in Class 7 and Class 8 have Voting Deadlines of November 5, 2009 at 11:59 p.m. (prevailing Eastern Time) and November 13, 2009 at 11:59 p.m. (prevailing Eastern Time), respectively.

8.     Preliminary voting results indicate that all Impaired Classes of Claims entitled to vote on the Plan voted to accept the Plan.[6]  Soon after the commencement of the chapter 11 cases, the Debtors will file a declaration of FBG certifying the results and methodology for tabulation of ballots accepting or rejecting the Plan with respect to those holders of claims with the October 29, 2009 Voting Deadline (the "Tabulation Declaration"). FBG continues to audit the results of the solicitation.

## RELIEF REQUESTED

9.     By this Motion, the Debtors request that the Court immediately enter the Scheduling Order granting the following relief:

    (a)    scheduling the Combined Hearing;

    (b)    approving procedures for objections to the adequacy of the Disclosure Statement and confirmation of the Plan;

    (c)    approving the form and manner of notice of the Combined Hearing and commencement of these chapter 11 cases; and

    (d)    waiving the meetings of creditors and equity holders if the Plan is confirmed within sixty (60) days.

10.    The Debtors also request that after appropriate notice and the Combined Hearing, the Court enter the Confirmation Order.  A form of the Debtors' proposed Confirmation Order will be filed with the Court prior to the Combined Hearing.  The Debtors will also file a

---

[6]     The voting deadline for certain classes has not expired at this time but a significant number of holders in such classes have already tendered votes to accept the Plan.

memorandum of law (the "Confirmation Brief") in support of the relief proposed by the Confirmation Order prior to the Combined Hearing.

<div align="center">

**BASIS FOR RELIEF AND APPLICABLE AUTHORITY**

</div>

**A.      Scheduling of the Combined Hearing and Approval of Notice Thereof**

**1.      Scheduling a Date for the Combined Hearing**

11.      Bankruptcy Code section 105(d)(2)(B)(vi) authorizes the bankruptcy court to combine a hearing on a disclosure statement with a hearing on confirmation of a plan of reorganization.  The Debtors submit that such a combined hearing in these chapter 11 cases would promote judicial economy and the expedient reorganization of the Debtors.  The adverse effects of the chapter 11 filings upon the Debtors' businesses and going concern value will be minimized, and the benefit to creditors maximized through prompt distributions and the reduction of administrative expenses of the estate – which are the hallmarks of a prepackaged plan of reorganization.  Therefore, the Debtors hereby respectfully request entry of the Scheduling Order, pursuant to Bankruptcy Code section 105(d)(2)(B)(vi), setting a date for the Combined Hearing at which the Court will consider the adequacy of the Disclosure Statement, approval of the Solicitation Procedures and confirmation of the Plan.

12.      The Debtors seek to consummate their Plan expeditiously.  Accordingly, the Debtors request the Combined Hearing at the earliest date the Court can accommodate the Combined Hearing.  Bankruptcy Rules 2002(b) and 3017(a) require twenty-five (25) days notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization.  Bankruptcy Code section 1128(a) provides that, "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  11 U.S.C. § 1128(a).  In addition, Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the

disclosure statement, the court . . . may fix a date for the hearing on confirmation [of the Plan]." Fed. R. Bankr. P. 3017(c). Additionally, Article X.D. of General Order 203 provides that notice of the hearing on adequacy of a disclosure statement and confirmation of a plan shall be mailed at least twenty (20) days prior to the hearing date, unless such period is shortened by the Court. Accordingly, to the extent necessary the Debtors request the court shorten the notice period proscribed in Bankruptcy Rules 2002(b) and 3017(a) and schedule, in accordance with General Order 203, the Combined Hearing the first available date after December 1, 2009.

13.     In order to avoid any delay in consummating the Plan or possible loss of confidence in the Debtors' ability to reorganize quickly, and to preserve the bargained-for recoveries in these cases, it is imperative that the Debtors' time in chapter 11 be minimized. Therefore, the Debtors submit that it is in the best interests of their estates, creditors and parties-in-interest to hold the Combined Hearing as soon after December 1, 2009 as is practicable.

**2.     Deadline and Procedures for Objections to Adequacy of the Disclosure Statement and Confirmation of the Plan**

14.     Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of the Disclosure Statement and Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to the Plan. As noted above, Bankruptcy Rule 2002(b) requires twenty-five (25) days notice of such deadline. Moreover, Bankruptcy Rule 9006(f) requires that, if notice is to be provided by mail, then three (3) days are to be added to any prescribed period of notice. Accordingly, the Debtors further request that the Court set November 30, 2009 as the last date to file objections to the adequacy of the Disclosure Statement or confirmation of the Plan (the "Objection Deadline"). Such deadline will provide the Debtors with sufficient time to respond to any objections to the Disclosure Statement, the Solicitation Procedures and confirmation of the Plan.

15. The Debtors propose that this Court direct that objections to approval of the Disclosure Statement or confirmation of the Plan, if any, shall:

    (a)   be in writing;

    (b)   comply with the Bankruptcy Rules, the Local Bankruptcy Rules and other case management rules and orders of this Court;

    (c)   state the name and address of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors;

    (d)   state with particularity the legal and factual basis for such objection;

    (e)   be filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, together with proof of service thereof; and

    (f)   be served by personal service or by overnight delivery, so as to be ACTUALLY RECEIVED no later than **4:00 p.m.** (prevailing Eastern time) on the Objection Deadline by all parties on the Master Service List as provided by any case management order entered in these chapter 11 cases.

16. The Debtors submit that the proposed schedule for the Combined Hearing, including the establishment of the Objection Deadline, is in the best interests of all parties-in-interest in these chapter 11 cases. This schedule is intended to minimize the disruption to the Debtors' business and avoid the costs associated with lengthy chapter 11 proceedings.

17. Additionally, it is appropriate that the Court approve the schedule requested by this Motion so that all parties-in-interest may be informed as promptly as possible of the schedule regarding the Combined Hearing, and, in particular, the timing of the hearing to consider confirmation of the Plan. The Debtors submit that the proposed schedule and notice to be provided by the Debtors will afford all parties-in-interest ample notice of the proceedings and an opportunity to obtain a copy of the Disclosure Statement and the Plan.

**3.     Approval of the Form and Manner of the Combined Notice of the Combined Hearing and Commencement of the Chapter 11 Cases**

18.     A debtor is typically required to provide notice of (a) a hearing to consider the adequacy of the disclosure statement and (b) a hearing to consider confirmation of a plan to all creditors and equity holders.  A debtor is also required to provide all creditors, equity holders and parties-in-interest with the notice of commencement of the chapter 11 case.  In this case, it would be extremely cost-effective if the Debtors were permitted to serve parties-in-interest with a combined notice rather than three individual notices.  Further, the impaired treatment of the equity interest holders of CIT Group Inc. and their deemed rejection of the Plan justifies not providing personal notice by mail to such equity holders.

19.     Therefore, the Debtors request authorization to send a combined notice of the commencement of the chapter 11 cases and of the Combined Hearing in substantially the form annexed hereto as <u>Exhibit A</u> (the "Combined Notice") solely to holders of claims identified by the Debtors and a waiver of the requirement to provide equity interest holders with the Combined Notice.

20.     The Debtors propose to serve the Combined Notice as soon as practicable after entry of the Scheduling Order.  The Combined Notice also will be served upon all parties identified on the Master Service List of any case management order entered in these cases.

21.     The Debtors modeled the Combined Notice after the template attached to General Order 203 as Exhibit D.  In particular, the Combined Notice will identify the date, time and place of the Combined Hearing, set forth the deadline and procedures for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan, the manner in which the Disclosure Statement and the Plan can be obtained or viewed electronically, and provide a summary of the treatment of each Plan class.  In addition, the Combined Notice informs parties-

in-interest of the commencement of the chapter 11 cases and the scheduling and possible waiver of the meetings of creditors and equity holders pursuant to Bankruptcy Code section 341, as discussed below.

22.     In addition, the Debtors propose to publish a notice (the "Publication Notice") substantially similar to the Combined Notice in the <u>Wall Street Journal</u> and any other publications the Debtors deem necessary in their sole discretion.

23.     The Debtors believe that the above service of the Combined Notice will provide sufficient notice to all parties-in-interest in the Debtors' chapter 11 cases of the commencement of such cases, the date, time and place of the Combined Hearing, and the procedures for objecting to the adequacy of the Disclosure Statement and Solicitation Procedures or the confirmation of the Plan.

24.     In addition, the Debtors believe that the Publication Notice will provide sufficient notice to persons who did not otherwise receive notice pursuant to the Combined Notice, including the equity holders of CIT Group Inc.  Bankruptcy Rule 2002(l) permits the Court to serve "notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."

**4.     Waiver of Meetings of Creditors or Equity Security Holders if Plan is Confirmed Within Sixty Days**

25.     Bankruptcy Code section 341(a) requires the Unites States Trustee to convene and preside at a meeting of creditors and Bankruptcy Code section 341(b) authorizes the United States Trustee to convene a meeting of equity security holders.  Bankruptcy Code section 341(e), however, provides for the following exception to such provisions: "[n]otwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or

equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case." 11 U.S.C. § 341(e).

26.    The Debtors submit that cause exists to waive the meeting of creditors or equity security holders as contemplated by Bankruptcy Code section 341(e).  The Debtors intend to proceed expeditiously to confirm the Plan and emerge from chapter 11 as quickly as possible. Accordingly, pursuant to Bankruptcy Code section 341(e), the Debtors request that the Court enter an order directing the United States Trustee not to convene a meeting of creditors or equity security holders if the Plan is confirmed within sixty (60) days from the Petition Date.

**5.    Approval of Prepetition Solicitation Procedures**

27.    As described above, the Debtors distributed the Disclosure Statement and solicited acceptances of the Plan prior to the commencement of these chapter 11 cases. Bankruptcy Code Section 1126(b) specifically provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if –
>
> > (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or
> >
> > (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).

28.    By this Motion, the Debtors seek a determination from this Court that the Solicitation Procedures are in compliance with applicable nonbankruptcy law governing the adequacy of disclosure in connection with the solicitation and in accordance with section 1126(b) of the Bankruptcy Code.

29.     The solicitation conducted by the Debtors was in accordance with applicable non-bankruptcy law.  The Debtors are relying on certain exemptions to conduct their solicitation.  Specifically, Section 3(a)(9) of the Securities Act of 1933 (the "Securities Act") provides that the registration requirements of the Securities Act will not apply to "any security exchanged by the issuer with its existing security holders exclusively where no commission or other remuneration is paid or given directly or indirectly for soliciting such exchange."  15 U.S.C. § 77c(a)(9).  Thus, with respect to the Old Notes, the Plan solicitation was exempt from registration under the Securities Act.  The Plan solicitations by the Debtors are also, pursuant to Section 18(b)(4)(C) of the Securities Act, exempt from state securities law requirements.  Section 18(b)(4)(C) of the Securities Act provides, among other things, that state securities laws will not apply to securities that are exempt from federal registration under Section 3(a)(9) of the Securities Act.  The Debtors do not have any contract, arrangement, or understanding relating to, and will not (and have not), directly or indirectly, pay (or have paid) any commission or other remuneration to any broker, dealer, salesperson, agent or any other person for soliciting votes to accept or reject the Plan.  The Debtors have received assurances that no person has or will provide any information to holders of Old Notes relating to the Plan other than to refer the holders of Old Notes to the information contained in the Plan.  In addition, no broker, dealer, salesperson, agent or any other person, is or was engaged or authorized to express any statement, opinion, recommendation or judgment with respect to the relative merits and risks of the Plan.

30.     Furthermore, the solicitation of the Debtors' bank debt in Classes 6, 10, and 11 was conducted in accordance with applicable non-bankruptcy law.  With respect to such solicitations, the Debtors took advantage of the private placement exemption under Section 4(2) of the Securities Act.

31.     The Debtors seek this Court's determination that the Solicitation Procedures are in compliance with the Bankruptcy Code.  Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims for the purpose of soliciting their votes of acceptance or rejection of a plan of reorganization.  Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate."  Fed. R. Bankr. P. 3017(e).  As set forth in further detail below, the Debtors submit that the Solicitation Procedures meet the requirements of Bankruptcy Rules 3017(c) and (d) as well as all other applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

32.     The Debtors continue to solicit votes from certain holders of claims.  The Debtors intend to count such votes when evaluating whether the Plan satisfies the requirements of the Bankruptcy Code.  By this Motion, the Debtors request the authority to include these votes in the final tabulation of votes on the Plan.[7]  Bankruptcy Code section 1125(g) allows a debtor to continue soliciting votes for acceptance or rejection of a plan after the commencement of a case without the requirement of a court-approved disclosure statement if the holder was solicited before the commencement of the case in a manner that complied with applicable nonbankruptcy law.  As set forth above, the prepetition solicitation of votes was in accordance with applicable nonbankruptcy law.  The deadline for holders of Canadian Senior Unsecured Note Claims to accept or reject the Plan is 11:59 p.m. (prevailing Eastern Time) on November 5, 2009.  The deadline for holders of Long-Dated Senior Unsecured Note Claims to accept or reject the Plan is

---

[7]     To the extent necessary, this Motion is also a motion pursuant to General Order 203 to determine the effect of all votes obtained after the Petition Date.  See General Order 203, III.C.  The Debtors request that all votes received following the Petition Date that are received in accordance with the Solicitation Procedures and not otherwise challenged by the Debtors on other grounds, be counted for Plan confirmation purposes.

11:59 p.m. (prevailing Eastern Time) on November 13, 2009. Bankruptcy Code section 1125(g) allows the Debtors to continue postpetition solicitation of votes from the holders of Canadian Senior Unsecured Note Claims and the holders of Long-Dated Senior Unsecured Note Claims pursuant to the Disclosure Statement.

(i)        Solicitation of Holders of Old Notes.

33.        Transmission of Solicitation Packages to Holders of Old Notes. The holders of Old Notes hold claims in either Classes 7, 8, 9, 12 or 13. A vast majority of the holders of Old Notes hold their Old Notes in brokerage accounts and often through several layers of ownership. As is typical of publicly traded securities, the Debtors are unable to identify the individual holders of their securities. Thus, it was necessary for the Debtors to serve the Solicitation Packages in a manner customary in the securities industry so as to maximize the likelihood that the beneficial owners of the Old Notes received the materials in a timely fashion.

34.        Service of the Solicitation Packages. Specifically, on or about October 3 and October 5, 2009, FBG (with the assistance of Bowne & Co., Inc.) transmitted the Solicitation Packages[8] by overnight courier or hand delivery and electronic mail to all banks, brokers and other nominees (each, a "Nominee") that were identified by FBG and the Debtors as an entity through which beneficial owners held Old Notes. In addition, the Debtors instructed each Nominee to distribute the Solicitation Packages to the beneficial owners for which the Nominee held Old Notes promptly upon receipt of the Solicitation Packages from FBG. In addition, FBG also served Solicitation Packages via electronic mail to Euroclear Bank and Clearstream Bank, in accordance with their requirements, for transmission to holders of non-U.S. securities.

---

[8]    The Disclosure Statement contained in this Solicitation Package was dated October 1, 2009.

35.     On October 16, 2009, FBG transmitted Solicitation Packages to the Nominees in light of the Debtors' amendment to the Disclosure Statement on October 16, 2009 to include certain notes with long-term maturities which were initially excluded from having their vote solicited since they were unimpaired under the Plan.  The voting deadline for such holders of newly-solicited notes was extended beyond the Petition Date to ensure that the holders of such notes have adequate time to consider their options with respect to the Plan.  The Plan also provided for modified treatment of certain holders of claims in other Classes of claims.  Each Nominee was again instructed to distribute the Solicitation Packages to the beneficial owners for which the Nominee held Old Notes.

36.     On October 23, 2009, FBG transmitted to the Nominees Solicitation Packages which contained a supplement to the Disclosure Statement, dated October 23, 2009, providing, among other things, for the modification of the treatment for Class 6 JPM L/C Facility Claims, Class 7 Canadian Senior Unsecured Note Claims, Class 8 Long-Dated Senior Unsecured Note Claims, Class 10 Senior Unsecured Term Loan Claims, and Class 11 Senior Unsecured Credit Agreement Claims.  The terms of the Plan were altered with respect to the Class 7 claimants in a material manner.  Thus, the Debtors extended the voting deadline for such noteholders.  Each Nominee was again instructed to distribute the Solicitation Packages to the beneficial owners for which the Nominee held Old Notes.

37.     The beneficial owners of the Old Notes were instructed to relay their decision to accept or reject the Plan to their Nominee in accordance with the terms of the Ballot included in the Solicitation Packages and any instructions provided by the Nominee.  The Nominees were to be instructed by the beneficial holders of the Old Notes to tender their Old Notes in accordance with their instructions.  Prior to the Voting Deadline, FBG transmitted the

Master Ballots to each Nominee in sufficient time for the Nominees to record the individual votes of their beneficial owners on the Master Ballot in accordance with instructions provided by FBG. Nominees were provided with a deadline to complete and return their Master Ballots to FBG by 8:00 p.m. (prevailing Eastern Time) on October 30, 2009 for the Plan solicitation which began on October 1, 2009. The deadlines for Nominees to return Master Ballots with respect to Class 7 Canadian Senior Unsecured Notes and Class 8 Long-Dated Senior Unsecured Note Claims are November 6, 2009 at 8:00 p.m. (prevailing Eastern Time) and November 13, 2009 at 8:00 p.m. (prevailing Eastern Time), respectively.

38. _Solicitation of Votes._ The unique requirements of the Debtors' combined exchange offer and prepackaged plan of reorganization, and the unprecedented number of public securities involved in the transaction (nearly 300 individual series of publicly traded notes), required voting procedures that were different than those used for a traditional solicitation. An exchange offer typically relies on the "tender" or "presentation" of the bond position, and does not utilize a record date. Conversely, a bankruptcy Plan solicitation typically does utilize a record date. It is possible to have an advance record date _or_ the tender of securities, but not both, in the case of publicly traded securities.

39. In order to preserve the integrity of the Plan vote, yet still allow current holders to tender into the exchange, the Debtors relied on the concept of tendering, or "blocking," the beneficial owner's bonds both for the exchange offer and the Plan vote. This allows the Voting Deadline for each of the Plan solicitations, which is or was also the expiration date of the related exchange offer, to be used as the record date for voting on the Plan. Because the underlying bond positions of the voting parties were actually tendered to the Debtors, and, in

effect, held by their agent and therefore prevented from being traded, each tendering holder as of a Voting Deadline is by necessity a holder as of the voting record date.

40. As described previously, the Debtors arranged for the Disclosure Statement and related documents to be forwarded to beneficial owners of the Old Notes through the banks, brokerage firms, clearing systems, and agents through which the securities were held, in accordance with each firm's customary procedures. The ballot for the Plan was bound into the Disclosure Statement in a readily apparent location, just inside the back cover of the bound book. The cover of the Disclosure Statement included the following language: "HOLDERS OF PUBLICLY TRADED NOTES SHOULD REFER TO THE BALLOT ATTACHED HERETO AS APPENDIX E FOR INSTRUCTIONS ON HOW TO TENDER AND/OR VOTE ON THE PLAN OF REORGANIZATION." This ensured that every holder that received the Disclosure Statement also received the ballot; an essential element of any plan vote.

41. Noteholders, in large part, did not return a physical ballot to their Nominee. The traditional return of ballots to the relevant firms for processing would not have been feasible in this instance because of the unprecedented number of securities involved. Nevertheless, the beneficial owners of Old Notes were able to provide their instructions to their Nominee in a manner consistent with the securities industry practice for exchange offers, while still incorporating all of the language from the ballot. The ballot clearly outlined all relevant instructions. The volume of tendering positions clearly indicates beneficial owners received the Solicitation Packages and understood the process.

(a) Clearly Defined Voting Options. All communications with holders, the relevant depositories, and the Nominees with respect to the voting options in connection with the exchange offer and the Plan were consistent within the ballot, so that holders would clearly

understand the choices. All holders were required to choose one of three options with respect to the exchange offer and the Plan. The three voting options were outlined as follows:

> OPTION 1. PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.
>
> OPTION 2. NOT PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.
>
> OPTION 3. NOT PARTICIPATE in the Exchange Offer; vote to REJECT the Plan of Reorganization.

The ballot specifically included language that said "Your instructions to the firm holding your Old Notes will have the same effect as if you had completed and returned a physical Ballot to indicate your vote with respect to the Plan of Reorganization." The ballot specifically indicated that the return of the instructions to the firm instructed the Nominee to cast the holder's vote on a Master Ballot. These instructions ensured that beneficial holders followed the tender procedure established by the Debtors.

(b) The Ballot provided the contact information of the Voting Agent and Information Agent engaged by the Debtors in these cases to respond to any questions of individual bondholders or their Nominees.

42. The use of the tender process coupled with the use of the voting deadline as the record date ensured that only holders as of the record date were able to cast a vote on the Plan. The use of the voting deadline as the record date, although not typical, was a practical and workable solution to the unique requirements of this case, and is not unprecedented. Similar procedures have been approved for bondholder votes in other cases, including In re Internet

Corporation,[9] Case No. 04-67597 (Bankr. E.D. Mich. 2004) and In re Hayes Lemmerz

International, Inc.,[10] Case No. 09-11655 (MFW) (Bankr. D. Del. Sept. 2, 2009).

   43. Further, the procedures adopted by the Debtors were essential in

connection with the treatment of the Long-Term Notes.  The Plan currently proposes that only

holders that vote to accept the plan are to receive the treatment specified for Class 8A; non-

accepting holders of Long-Term Notes (either by way of a vote to reject the Plan or a non-vote)

are to be left unimpaired under the Plan and their claims shall be Reinstated as holders of Claims

in Class 8B.  The tender process used by the Debtors is virtually the only way to effect such

differentiated treatment.  The Debtors, however, may modify the treatment of Class 8B to

provide for an election of treatment versus reinstatement by default.  In any event, the

solicitation process utilized by the Debtors was the only means to provide alternate treatment to

those voting in favor and against the Plan.

   44. To the extent the Old Notes were not held through DTC or any similar

clearing agency, FBG sent a Solicitation Package, including a Ballot, to the other holder of Old

---

[9] The Internet ballot included the following language: "In order to vote and make any election choice (other than the "Cash-Out Amount" alternative if you do not vote as described below), the bank, broker, agent, nominee or other record holder (each a "Nominee") holding your bonds must "tender" your notes into the appropriate election account established at the Depository Trust Company ("DTC") for that purpose.  (The Cash-Out Amount alternative is the default alternative under the Plan, and any Notes that have not had another specific alternative election made with respect to them will receive the Cash-Out Amount treatment.)  Notes may be withdrawn from a particular election account until the Voting Deadline.  After the Voting Deadline, no withdrawals will be permitted.  Once the Notes have been "tendered" and the Voting Deadline has passed, no further trading will be permitted in the Notes held in the election accounts.  This Ballot will allow you to instruct your Nominee about which election options you wish to make and your vote on the Plan.  There are several different treatment options, which are explained in greater detail below.  You must return your Ballot to your Nominee.  Your Ballot must be included as an attachment to the Nominee's master ballot (the "Master Ballot"), your Nominee must have effected any election instructions in accordance with the established procedures, and the Master Ballot will need to be delivered to the Balloting Agent, PRIOR to the Voting Deadline in order for your vote and election to be counted."

[10] The Hayes Lemmerz ballot included the following language: "To have your vote count, you must complete and return this Ballot in accordance with the directions of your Accountholder, and your Accountholder must have blocked your underlying bonds and submitted a Master Ballot to the voting agent by the Voting Deadline."

Notes directly to such Noteholder by electronic mail and overnight courier. The Ballot instructed the Noteholder to return the Ballot directly to FBG.

45. To the extent the Notes were non-U.S. issues held through international clearing system depositories ("ICSDs") or other non-U.S. depositories, each service of the Solicitation Packages was fulfilled through electronic mail service upon each such depository in accordance with the requirements of such ICSDs or other non-U.S. depositories.

(ii)     Bank Group Solicitations.

46. The solicitation procedures with respect to the Debtors' various bank groups were developed in conjunction with the agents for such debt and their counsel to ensure that holders would receive the Solicitation Package and promptly return their Ballots.

47. Class 6. With respect to holders of Class 6 JPM L/C Facility Claims, following the commencement of the first solicitation on October 1, 2009, the Debtors provided JPMorgan Chase Bank, N.A. ("JPMorgan"), the agent under the facility included in the Class (the "L/C Facility"), and its counsel, with a copy of the Plan and Disclosure Statement and a Ballot customized for Class 6. The Debtors requested that the agent for the L/C Facility distribute the materials to the lenders under the L/C Facility. Successive solicitations were then sent directly to the lenders under the L/C Facility at addresses provided by JPMorgan or its counsel. The Class 6 Ballots instructed holders of Class 6 L/C Facility Claims to return their Ballots directly to FBG.

48. Class 10. With respect to holders of Class 10 Senior Unsecured Term Loan Claims, following the commencement of each solicitation, the Debtors provided Mizuho Corporate Bank, Ltd ("Mizuho"), the agent under the term loans included in the Class (the "Term Loans"), or its counsel, with a copy of the Plan and Disclosure Statement and Ballot with respect to Class 10. The Debtors requested that Mizuho transmit the Solicitation Package to the lenders

under the Term Loans.  The lenders under the Term Loans delivered their Ballots to Mizuho; Mizuho, in turn, provided the completed Ballots to FBG prior to the Voting Deadline.

49.     <u>Class 11</u>.  With respect to holders of Class 11 Senior Unsecured Credit Agreement Claims, following each solicitation the Debtors provided counsel to Citibank, N.A. ("Citibank"), as agent under the credit agreements included in the Class (the "Revolvers"), with a copy of the Plan and Disclosure Statement and Ballot with respect to Class 11.  The Debtors requested that Citibank disseminate the Solicitation Package to the holders of debt under the Revolvers.  Citibank collected all completed Ballots and returned them to FBG prior to the Voting Deadline.

50.     The Debtors submit that the Solicitation Procedures for the publicly traded and bank debt were sufficient to ensure that the Plan was transmitted to substantially all holders of claims entitled to vote on the Plan.

(iii)     <u>Classes of Claims and Interests that are Conclusively Presumed to Accept the Plan.</u>

51.     Holders of Claims in Class 1 Other Priority Claims, Class 2 Other Secured Claims, Class 3 Other Unsecured Debt Claims and Guarantee Claims, Class 4 Intercompany Claims, and Class 5 General Unsecured Claims and Interests in Class 17 Old Delaware Funding Interests are unimpaired under the Plan and, therefore, pursuant to Bankruptcy Code section 1126(f), are conclusively presumed to have accepted the Plan.  Accordingly, the Debtors did not solicit votes from Classes 1, 2, 3, 4, 5, and 17.

(iv)     <u>Classes of Claims and Interests that are Deemed to Reject the Plan.</u>

52.     Holders of Claims in Class 14 Subordinated 510(b) Claims are impaired and shall not receive or retain any property under the Plan and Interests in Class 15 Old Preferred Interests, Class 16 Old Common Interests and Class 18 Other Equity Interests are impaired and

such Interests shall be cancelled, terminated and extinguished under the Plan; provided however that holders of Old Preferred Interests shall receive Contingent Value Rights under the Plan. Thus, pursuant to Bankruptcy Code section 1126(g), these holders are deemed to have rejected the Plan. Therefore, the Debtors did not solicit votes from Classes 14, 15, 16 and 18. With respect to the Claims and Interests in Classes 14, 15, 16, and 18, the Debtors will request that the Plan be confirmed pursuant to Bankruptcy Code section 1129(b).

53. As set forth above, the Debtors propose to provide all known holders of Claims in Class 14 and Interests in Classes 15, 16 and 18, with notice of the Combined Hearing and the deadline and procedures for objecting to the Disclosure Statement or the Plan strictly through the publication of the Combined Notice. The Debtors, however, will provide known and identifiable holders of the Class 15 Old Preferred Interests with a copy of the Combined Notice.

(v) Approval of Form of Ballot.

54. Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Form No. 14, only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors distributed ballots, in the forms attached hereto as Exhibit B, and incorporated herein by reference (collectively, the "Ballots"), to holders of Claims in Classes 6, 7, 8, 9, 10, 11, 12 and 13. In particular, Exhibit B-1 is the form of Ballot provided to holders of Claims in Classes 6, 9, 12 and 13 who held Notes through a Nominee; Exhibit B-2 is the form of Ballot provided to holders of Claims in Class 9 who held Notes in certificated form; Exhibit B-3 is the form of Ballot provided to holders of Claims in Class 6; Exhibit B-4 is the form of Ballot provided to holders of Claims in Class 10; and Exhibit B-5 is the form of Ballot provided to holders of Claims in Class 11. The Ballots attached hereto are the form of Ballots to the Nominees last transmitted to holders of claims entitled to vote on the Plan. The form for the Ballots is based on Official Form No. 14, but has

been modified to address the particular aspects of these chapter 11 cases and to include certain additional information that the Debtors believe to be relevant and appropriate for each such class of Claims.

55.     In addition, the Debtors distributed master ballots, in the form attached hereto as Exhibit C, and incorporated herein by reference (collectively, the "Master Ballots").

56.     The Debtors submit that the form of the Ballots and Master Ballots satisfy Bankruptcy Rule 3017(d) and should be approved.

(vi)     Approval of Voting Deadline.

57.     Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court "shall fix a time within which the holders of claims and equity interests may accept or reject the plan." Fed. R. Bankr. P. 3017(c). Bankruptcy Rule 3018(b) provides that a holder of a claim or equity security will not be deemed to have accepted or rejected the plan "if the court finds after notice and a hearing . . . that an unreasonably short time was prescribed for such creditors and equity security holders to accept or reject the plan." Fed. R. Bankr. P. 3018(b).

58.     General Order 203 states that:

Under ordinary circumstances, in determining whether the time allowed for casting acceptances and rejections on the Debtor's plan satisfied Fed. R. Bankr. P. 3018(b), the Court will approve as reasonable:

    1. For securities listed or admitted to trading on the New York Stock or American Stock Exchange or any international exchanges quoted on NASDAQ, and for securities publicly traded on any other national securities exchange ("Publicly Traded Securities"), a twenty (20) business day voting period, measured from the date of commencement of mailing.

    2. For securities which are not Publicly Traded Securities and for debt for borrowed money which is not evidenced by a Publicly Traded Security, a ten (10) business day voting period, measured from the date of commencement of mailing.

3. For all other claims and interests, a twenty (20) business day voting period, measured from the date of commencement of mailing.

General Order 203, § VII.A.

59. Here, the holders of Old Notes in Classes 7, 8, 9, 12 and 13 were provided with twenty (20) business days between the commencement of their respective solicitations and the Voting Deadline.

60. The Debtors believe that none of the bank debt in Classes 6, 10 and 11 subject to the solicitation is either (i) Publicly Traded Securities or (ii) debt for borrowed money evidenced by a Publicly Traded Security. Holders of bank debt had in excess of 10 business days to vote to accept or reject the Plan. Furthermore, the holders of claims in classes 6, 10 and 11 are all sophisticated investors who played a part in the negotiation of the Plan. Accordingly, the solicitation of holders of bank debt satisfied General Order 203 and Bankruptcy Rule 3018(b).

61. As such, the time period for creditors to accept or reject the Plan was not "unreasonably short" as required by Bankruptcy Rule 3018(b) and complies with General Order 203.

(vii) Record Date.

62. Bankruptcy Rule 3017(d) provides that the "date the order approving the disclosure statement is entered" shall be the record date for determining the "holders of stock, bonds, debentures, notes, and other securities" entitled to receive the materials specified in Bankruptcy Rule 3017(d), unless another date is fixed by the court. Fed. R. Bankr. P. 3017. Because solicitation in these cases occurred prior to the Petition Date, in conjunction with solicitation of votes on certain out of court exchange offers, the Debtors request that the Court establish a record date of October 29, 2009 (the "Record Date"), corresponding to the Voting

Deadline, for the purpose of determining which Holders of Class 6, 9, 10, 11, 12 and 13 Claims were entitled to vote on the Plan. The Record Date for Classes 7 and 8 is proposed to be the Voting Deadline for holders of Claims in such classes to accept or reject the Plan. The Voting Deadline is the appropriate Record Date because the voting procedures required that the Old Notes be "tendered" in conjunction with a vote on the Plan. As a result, in order to vote on the Plan, a party was required to hold such Old Notes on the applicable Voting Deadline. In addition, the Debtors request that the Court establish November 4, 2009 as the date for determining those holders of Claims entitled to receive the Combined Notice.

(viii)    Approval of Procedures for Vote Tabulation.

63.    Section 1126(c) of the Bankruptcy Code provides:

A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).

64.    Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018.

65.    The Voting Agent adhered to the following protocol with respect to Ballots returned by holders of Claims in Class 6, Class 10 and Class 11: (i) if a creditor cast more than one Ballot voting the same Claim before the Voting Deadline, the Ballot which bears the latest date of receipt by the Debtors, as the case may be, before the Voting Deadline was deemed to reflect the voter's intent and thus to supersede any prior Ballot; (ii) creditors were required to vote all of their Claims within a particular facility under the Plan either to accept or reject the Plan and may not split their vote; and (iii) the following Ballots were not to be counted: (a) any

Ballot that was properly completed, executed, and timely returned to the Debtors but did not indicate an acceptance or rejection of the Plan, or that indicated both an acceptance and rejection of the Plan, (b) any Ballot received after the Voting Deadline unless the Debtors agreed to extend the Voting Deadline with respect to such Ballot, (c) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant, (d) any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan, and (e) any unsigned Ballot.

66.     As set forth above, Classes 7, 8, 9, 12 and 13 voted by relaying their acceptance or rejection of the Plan by the Voting Deadline to the Nominees who, in turn, tendered the Old Notes according to the instructions of such holders and submitted a Master Ballot on their behalf.  Accordingly, there was no requirement that the holders of Class 7, 8, 9, 12 and 13 Claims actually complete and return a physical Ballot.  Moreover, any holders of Old Notes who wished to change their vote before the Voting Deadline informed their Nominee of the change and the Nominee effected any such change.  Thus, the vote tabulation procedures set forth with respect to Classes 6, 10 and 11 were not applicable to Classes 7, 8, 9, 12 and 13.

67.     As set forth in the Plan, claims in Classes 10 and 11 are *pari passu* and are combined for voting purposes.  The Debtors reserve the right to seek Court's approval of a merger between the two Classes of claims.

<div align="center">(ix)     <u>Non-Transmission of Disclosure Statement to Certain Creditors and Equity Holders.</u></div>

68.     For the reasons set forth herein, the Debtors request a waiver of the Bankruptcy Rule requirement that the Debtors mail a copy of the Combined Notice, Disclosure Statement and Plan to holders of claims or interests deemed to have accepted or rejected the Plan.  <u>See</u> Fed. R. Bankr. P. 3017.  The Debtors submit that because they solicited acceptances and

rejections of the Plan prepetition, and thus no disclosure statement was "approved" under Bankruptcy Rule 3017, such rule is not applicable and its requirements not germane. The Debtors have made the Disclosure Statement and the Plan available at no cost on their claims agent's website and have included a summary of the Plan in the Combined Notice. Moreover, it would be a significant and unnecessary administrative burden on the Debtors to transmit the Combined Notice, Disclosure Statement and Plan to holders of claims and interests deemed to have accepted or rejected the Plan. The Debtors estimate that they have hundreds of thousands of potential holders of the equity interest. Service upon such interest holders will be extremely expensive for the Debtors to complete. Accordingly, the Debtors submit that it is not appropriate to require the Debtors to transmit a copy of the Combined Notice or Solicitation Package to the holders of claims or interests other than the creditors entitled to vote on the Plan (as previously completed by the Debtors).

**B.     Approval of Adequacy of the Disclosure Statement and Confirmation of Plan**

**1.     Approval of Disclosure Statement**

69.     At the Combined Hearing, the Debtors will seek the Court's ruling that the prepetition solicitation complied with section 1126(b)(2) of the Bankruptcy Code because the Disclosure Statement provided adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code. Accordingly, the Debtors hereby request that, at the Combined Hearing, to the extent necessary, the Court approve the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code.[11]

70.     Section 1125 of the Bankruptcy Code defines "adequate information" as:

---

[11]     The Debtors reserve their right to supplement this pleading prior to the Combined Hearing.

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably
> practicable in light of the nature and history of the debtor and the
> condition of the debtor's books and records, that would enable a
> hypothetical reasonable investor typical of holders of claims or interests of
> the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

71.     In examining the adequacy of the information contained in a disclosure

statement, a bankruptcy court has broad discretion.  See Texas Extrusion Corp. v. Lockheed

Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988); In re Dakota Rail, 104

B.R. 138, 142 (Bankr. D. Minn. 1989) (court has "wide discretion to determine . . . whether a

disclosure statement contains adequate information without burdensome, unnecessary and

cumbersome detail").  Accordingly, the determination of whether a disclosure statement contains

adequate information is made on a case-by-case basis, focusing on the unique facts and

circumstances of each case.  In that regard, courts generally examine whether the disclosure

statement contains such information as:

- the circumstances that gave rise to the filing of the bankruptcy petition;
- a complete description of the available assets and their value;
- the anticipated future of the debtor;
- the source of the information provided in the disclosure statement;
- a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized other than those set forth in the disclosure statement;
- the condition and performance of the debtor while in chapter 11;
- information regarding claims against the estate;
- a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;
- the accounting and valuation methods used to produce the financial information in the disclosure statement;
- information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

- a summary of the plan of reorganization (or liquidation);

- an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

- the collectibility of any accounts receivable;

- any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

- information relevant to the risks being taken by the creditors and interest holders;

- the actual or projected value that can be obtained from avoidable transfers;

- the existence, likelihood, and possible success of non-bankruptcy litigation;

- the tax consequences of the plan; and

- the relationship of the debtor with its affiliates.

See, e.g., In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); see also In re Ionosphere Clubs, Inc., 179 B.R. 24, 29 (S.D.N.Y. 1995) (determination of whether a disclosure statement contains adequate information made on case-by-case basis).

72.     The Debtors submit that the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125.  The Disclosure Statement is extensive and comprehensive and satisfies each of the relevant informational items outlined in In re Scioto Valley Mortgage Co.  Indeed, the Disclosure Statement contains descriptions and summaries of, among other things, (a) the Plan, (b) certain events preceding the commencement of these chapter 11 cases, (c) claims asserted against the Debtors' estates, (d) securities to be issued under the Plan, (e) risk factors affecting the Plan, (f) a liquidation analysis setting forth the estimated return that creditors would receive in chapter 7, (g) financial information and valuations that would be relevant to creditors' determinations of whether to accept or reject the Plan, and (h) federal tax law consequences of the Plan.

73.     Accordingly, the Debtors submit that for the reasons set forth herein, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125 and should be approved.

**2.     Confirmation of Plan**

74.     The Debtors believe that the Plan satisfies all of the requirements for confirmation under the Bankruptcy Code.  As noted above, the Debtors have requested that the Court schedule the Combined Hearing at which time the Debtors will seek confirmation of the Plan.  Prior to the Combined Hearing, the Debtors will file the Confirmation Brief (i) demonstrating that the Plan satisfies each requirement for confirmation and (ii) responding to objections to confirmation, if any.

**NOTICE**

75.     Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to: (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Federal Reserve; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (g) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (h) counsel to Bank of America, N.A. as L/C Issuer; and (i) Counsel to the Lender Steering Committee.  The Debtors submit that under the circumstances no further notice is necessary.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the orders requesting the relief requested herein and grant such other and further relief as is just and proper.

Dated: New York, New York
       November 1, 2009

                  SKADDEN, ARPS, SLATE, MEAGHER
                    & FLOM LLP

           By:     */s/ Gregg M. Galardi*
                  Gregg M. Galardi
                  J. Gregory St. Clair
                  Four Times Square
                  New York, New York 10036
                  (212) 735-3000

                  Proposed Counsel for Debtors and
                  Debtors-in-Possession

<u>EXHIBIT A</u>

Disclosure Statement and Confirmation Hearing Notice

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
  Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CIT GROUP INC. and | : | Case No. 09-16565 |
| CIT GROUP FUNDING COMPANY | : | |
| OF DELAWARE LLC, | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SUMMARY OF PLAN AND NOTICE OF (I) COMMENCEMENT OF CHAPTER 11 CASES
AND (II) COMBINED HEARING ON DISCLOSURE STATEMENT AND
CONFIRMATION OF PLAN OF REORGANIZATION**

<u>Commencement of the Chapter 11 Cases</u>

          **PLEASE TAKE NOTICE** that on November 1, 2009 (the "Petition Date"), the debtors
and debtors in possession in the above-captioned cases (collectively, the "Debtors"),[1] each filed petitions
for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). By order of the
United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), the
cases are being jointly administered for procedural purposes under Case No. 09-16565 (___).

          You may be a creditor of one of the Debtors. **The filing of the bankruptcy cases
automatically stays certain collection and other actions against the Debtors and the Debtors'**

---

[1]    CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017. Its tax identification number is 65-
xxx1192. In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-
16566, is a debtor in these related cases. CIT Group Funding Company of Delaware LLC is located at 1 CIT
Drive, Livingston, NJ 07039. Its tax identification number is 98-xxx9146.

**property. If you attempt to collect a debt or take other action in violation of chapter 11 of the Bankruptcy Code, you may be penalized.** This notice provides important information concerning the cases. You may want to consult an attorney to protect your rights. All pleadings filed in the cases may be inspected at the office of the Clerk of the Bankruptcy Court for the Southern District of New York (the "Clerk's Office") at the address listed below. In addition, most pleadings filed in the Debtors' chapter 11 cases will be posted on the website of Kurtzman Carson Consultants LLC ("KCC") at http://www.kccllc.net/citgroup. **PLEASE NOTE: neither the staff of the Clerk's Office nor KCC can give legal advice.**

<u>Summary of Plan of Reorganization</u>[2]

PLEASE TAKE FURTHER NOTICE that on the Petition Date, the Debtors filed the Second Amended Prepackaged Reorganization Plan of CIT Group Inc. and CIT Group Funding Company of Delaware LLC (the "Plan") and the accompanying Amended Offering Memorandum, Disclosure Statement and Solicitation of Acceptances of a Prepackaged Plan of Reorganization (the "Disclosure Statement"). Copies of the Plan and Disclosure Statement are available for review as follows: (i) at the office of the Clerk of the Bankruptcy Court, One Bowling Green, New York, NY 10004, (ii) at the offices of the Debtors' undersigned counsel, (iii) on the Court's website, http://www.nysb.uscourts.gov, or (iii) on the website of KCC, http://www.kccllc.net/citgroup. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Plan.

The Plan provides for the restructuring of the Debtors' liabilities in a manner designed to maximize recoveries to holders of Claims against and Interests in the Debtors. In summary, the Plan contemplates the Exchanges, pursuant to which (i) holders of Canadian Senior Unsecured Note Claims will receive their <u>pro rata</u> share of Series B Notes, equal to a distribution in the amount of 100% of such holder's Allowed Canadian Senior Unsecured Note Claim if such Class 7 votes to accept the Plan, (ii) Electing Long−Dated Senior Unsecured Note Claims and holders of Senior Unsecured Note Claims and, if Class 7 does not vote to accept the Plan and the Plan is nonetheless confirmed, Canadian Senior Unsecured Note Claims on account of CIT Group Inc.'s guarantee of the Canadian Senior Unsecured Notes, will receive their <u>pro rata</u> share of (a) Series A Notes and (b) New Common Interests, (iii) holders of Senior Unsecured Term Loans Claims and Senior Unsecured Credit Agreement Claims shall receive their <u>pro rata</u> share of (a) (1) indebtedness under credit facilities of Reorganized CIT on substantially the same terms as the Series A Notes in lieu of a distribution of Series A Notes or (2) Series A Notes, at each such holder's election, if such Classes vote to accept the Plan or Series A Notes if such Classes do not vote to accept the Plan and (b) New Common Interests, and (iv) holders of Senior Subordinated Note Claims and Junior Subordinated Note Claims shall receive specified percentages of New Common Interests if such Class 12 and Class 13 vote to accept the Plan, as applicable, and Contingent Value Rights, in full satisfaction and settlement of such Claims and Interests. Moreover, the Plan contemplates the issuance of Contingent Value Rights to holders of Senior Subordinated Note Claims, Junior Subordinated Note Claims and Old Preferred Interests. The Plan also contemplates the Cash Collateralization of the JPM L/C Facility.

The Debtors believe that (i) through the Plan, holders of Allowed Claims will obtain a substantially greater recovery from the Debtors' estates than the recovery they would receive if (a) the

---

[2]    This summary is qualified in its entirety by the terms of the Plan. In the event of any conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

Debtors filed Chapter 11 petitions without prior approval of the Plan by a majority of their creditors or (b) the Debtors filed for Chapter 7 protection, and (ii) the Plan will afford the Debtors the opportunity and ability to continue their business as viable going concerns and preserve ongoing employment for the Debtors' employees.

PLEASE TAKE FURTHER NOTICE that votes on the Plan were solicited prior to the Petition Date. The following chart summarizes the treatment provided by the Plan to each Class of Claims and Interests and indicates the acceptance or rejection by each Class.

| Class | Description | Treatment | Accept/Reject | Estimated Recovery |
|-------|-------------|-----------|---------------|--------------------|
| Class 1 | Other Priority Claims | Unimpaired | Deemed to accept | 100% |
| Class 2 | Other Secured Claims | Unimpaired | Deemed to accept | 100% |
| Class 3 | Other Unsecured Debt Claims and Guarantee Claims | Unimpaired | Deemed to accept | 100% |
| Class 4 | Intercompany Claims | Unimpaired | Deemed to accept | 100% |
| Class 5 | General Unsecured Claims | Unimpaired | Deemed to accept | 100% |
| Class 6 | JPM L/C Facility Claims | Impaired | Accepted | 100% |
| Class 7 | Canadian Senior Unsecured Note Claims | Impaired | [Accepted] | 100% |
| Class 8 | Long-Dated Senior Unsecured Note Claims | Entitled to vote Impaired if holders vote to accept the Plan; Unimpaired if holders vote to reject or do not vote on the Plan | [Accepted] | 94.2%[1] |
| Class 9 | Senior Unsecured Note Claims | Impaired | Accepted | 94.2%[1] |
| Class 10 | Senior Unsecured Term Loan Claims | Impaired | Accepted | 94.2%[1] |
| Class 11 | Senior Unsecured Credit Agreement Claims | Impaired | Accepted | 94.2%[1] |
| Class 12 | Senior Subordinated Note Claims | Impaired | Accepted | 50%[1] |
| Class 13 | Junior Subordinated Note Claims | Impaired | Accepted | 15.4%[1] |
| Class 14 | Subordinated 510(b) Claims | Impaired | Deemed to reject | 0% |
| Class 15 | Old Preferred Interests | Impaired | Deemed to reject | 0% |
| Class 16 | Old Common Interests | Impaired | Deemed to reject | 0% |
| Class 17 | Old Delaware Funding Interests | Unimpaired | Deemed to accept | 0% |
| Class 18 | Other Equity Interests (if any) | Impaired | Deemed to reject | 0% |

[1] Assuming (i) acceptance of the Plan by Class 7 Canadian Senior Unsecured Note Claims, Class 12 Senior Subordinated Note Claims and Class 13 Junior Subordinated Note Claims and (ii) New Common Interests valued at the mid-point of Common Equity Value.

PLEASE TAKE FURTHER NOTICE that except as otherwise expressly provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, as of the Effective Date the Debtors shall be deemed to have assumed each executory contract and unexpired lease to which a Debtor is a party unless such contract or lease (i)

previously was assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to assume or reject filed on or before the Confirmation Date. The Debtors shall further be deemed to assume as of the Effective Date all indemnification obligations, whether arising by bylaws, other constituent documents or otherwise, to the Debtors' directors and officers and all such indemnification obligations shall constitute assumed executory contracts. The Debtors reserve the right, at any time prior to the Confirmation Date, to seek to reject any executory contract or unexpired lease to which a Debtor is a party (except as provided in the preceding sentence). The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123 of the Bankruptcy Code approving the contract and lease assumptions described above as of the Effective Date.

<u>Releases, Exculpation and Injunctions</u>

**PLEASE TAKE FURTHER NOTICE** that the Plan contains the following provisions:

***Releases by the Debtors***

*As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, their Estates and the Reorganized Debtors, and any Person seeking to assert claims or exercise rights of any of the foregoing, shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights of the Debtors and the Reorganized Debtors to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date, including, to the extent the underlying claims and causes of action are property of Delaware Funding's Estate, the claims and causes of action asserted in the Canadian Senior Unsecured Notes Litigation, in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the Offering Memorandum, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors, their Estates or the Reorganized Debtors, as of the Effective Date against (i) the Debtors' or the Debtors' subsidiaries' members, members of boards of managers, directors and officers (acting in such capacity or as the Debtors' agents or employees), employees, advisors, attorneys, agents or representatives, in each case to the extent acting in any such capacity since May 8, 2009, or any of their successors or assigns (in each case acting in such capacity); (ii) the Steering Committee (in such capacity) and its current members, members of boards of managers, directors and officers (acting in such capacity or as the Steering Committee's agents or employees), employees, equity holders, partners, affiliates, advisors, attorneys, agents or representatives, or any of its successors or assigns (in each case acting in such capacity); and (iii) solely with respect to the JPM L/C Facility or the JPM L/C Facility Agreement, JPM or any other lender under the JPM Facility Agreement (in each case acting in such capacity), <u>provided</u> that nothing in this paragraph shall be deemed to operate as a waiver or release from any causes of action based on willful misconduct, gross negligence, or intentional fraud, in each case as determined by a final order of a court of competent jurisdiction.*

*Releases by Holders of Claims and Interests*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim that affirmatively votes in favor of the Plan shall have agreed, solely in its capacity as the holder of such Claim, to forever release, waive and discharge all claims, defenses, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than Unimpaired Claims, claims relating to Unimpaired Claims, and the rights to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder) and including the claims and causes of action asserted in the Canadian Senior Unsecured Notes Litigation against any and all present or future defendants named in the Canadian Senior Unsecured Notes Litigation, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the Debtors' prepetition restructuring efforts, the Offering Memorandum, the Plan, the Disclosure Statement, or the JPM L/C Facility or the JPM L/C Facility Agreement, against: (i) the Debtors and the Reorganized Debtors and their respective subsidiaries; (ii) the Debtors' and their subsidiaries' members, members of boards of managers, directors and employees, advisors, attorneys, agents or representatives, officers (acting in such capacity or as the Debtors' agents or employees) in each case to the extent acting in any such capacity since May 8, 2009, or any of their successors or assigns (in each case acting in such capacity); and (iii) the Steering Committee (in such capacity) and its current members, members of boards of managers, directors and officers, employees, advisors, attorneys, agents or representatives (acting in such capacity or as the Steering Committee's agents or employees), or any of its successors or assigns (in each case acting in such capacity), each as of the Effective Date, **provided** that nothing in this paragraph shall be deemed to operate as a waiver or release from any causes of action based on willful misconduct, gross negligence or intentional fraud, in each case as determined by a final order of a court of competent jurisdiction. For the avoidance of doubt, nothing herein shall release any non-Debtor party from any contractual obligations.

Injunction

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, subject to the occurrence of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors or their property on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Lien; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action, in each case in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in Article XIII.I of the Plan.

**Exculpation and Limitation of Liability**

        The Reorganized Debtors, the Debtors, the Estate, their subsidiaries, any Committee, the Steering Committee and any and all of their respective current or former members, officers, directors, members of boards of managers, employees, equity holders, partners, affiliates, advisors, attorneys, agents or representatives, or any of their successors or assigns, shall not have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective members, officers, directors, managers, employees, equity holders, partners, affiliates, advisors, attorneys, agents or representatives, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of, the administration of the Chapter 11 Cases, the negotiation of the terms of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, gross negligence or intentional fraud as determined by a final order of a court of competent jurisdiction, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Cases and the Plan.

        Notwithstanding any other provision of the Plan, but without limiting the releases provided in the Plan or affecting the status or treatment of any Claim Allowed pursuant to the Plan, no holder of a Claim or Interest, no other party in interest, none of their respective members, officers, directors, managers, employees, equity holders, partners, affiliates, subsidiaries, advisors, attorneys, agents or representatives, and no successors or assigns of the foregoing, shall have any right of action against the Reorganized Debtors, the Debtors, their Estates, their subsidiaries, any Committee, the Steering Committee or any of their respective current or former members, officers, directors, managers, employees, equity holders, partners, affiliates, subsidiaries, advisors, attorneys, agents or representatives, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of, the administration of the Chapter 11 Cases, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence as determined by a final order of a court of competent jurisdiction.

<u>Hearing on Adequacy of Disclosure Statement and Confirmation of Plan</u>

        **PLEASE TAKE FURTHER NOTICE** that a hearing will be held on **[December] [__]**, 2009 at [10:00 a.m.] (prevailing Eastern time), before the Honorable [___] in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004 to consider (i) the adequacy of the information contained in the Disclosure Statement and (ii) confirmation of the Plan (the "Disclosure Statement and Confirmation Hearing").  The Disclosure Statement and Confirmation Hearing may be continued from time to time by announcing such continuance in open court and the Plan may be further modified, if necessary, pursuant to 11 U.S.C. § 1127 prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

**PLEASE TAKE FURTHER NOTICE** that any objections to the adequacy of the Disclosure Statement or confirmation of the Plan must

(a)    be in writing;

(b)    comply with the Bankruptcy Rules, the Local Bankruptcy Rules and other case management rules and orders of this Court;

(c)    set forth the name of the objector, and the nature and amount of any claim or interest asserted by the objector against the estate or property of the Debtors;

(d)    state with particularity the legal and factual basis for such objection;

(e)    be filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, together with proof of service thereof; and

(f)    be served by personal service or by overnight delivery, so as to be <u>ACTUALLY RECEIVED</u> no later than **4:00 p.m.** (New York City time) on the Objection Deadline by (1) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attn: J. Gregory St. Clair, Esq. and Bennett S. Silverberg, Esq.) and Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, Wilmington, DE 19899-636 (Attn: Gregg M. Galardi and Sarah E. Pierce); (2) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004; (3) the agents for the Debtors' proposed post-petition financing facilities; and (4) those parties who have filed a notice of appearance and request for service of pleadings in these chapter 11 cases.

Only those objections that are timely filed and received will be considered by the Court. **Objections not timely filed and served in the manner set forth above will not be considered and will be deemed overruled.**

<u>Section 341(a) Meeting</u>

A meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "Section 341(a) Meeting") will not be convened if the Plan is effectuated prior to sixty (60) days after the Petition Date. If the Plan is not effectuated by such date, the United States Trustee may schedule a Section 341(a) Meeting, and you will receive separate notice of such meeting.

Dated: New York, New York
            , 2009

                        BY ORDER OF THE COURT

                        _____

                        UNITED STATES BANKRUPTCY JUDGE

<u>EXHIBIT B-1</u>

**No person has been authorized to give any information or advice, or to make any representation, other than what is contained in the Offering Memorandum to which this Ballot is annexed.**



### REVISED BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED PLAN OF REORGANIZATION OF CIT GROUP INC. AND CIT GROUP FUNDING COMPANY OF DELAWARE

### [THIS BALLOT IS EXCLUSIVELY FOR USE BY HOLDERS OF NON-CERTIFICATED SECURITIES IN CLASS 7 CANADIAN SENIOR UNSECURED NOTE CLAIMS, CLASS 8 LONG-DATED SENIOR UNSECURED NOTE CLAIMS, CLASS 9 SENIOR UNSECURED NOTE CLAIMS, CLASS 12 SENIOR SUBORDINATED NOTE CLAIMS, AND CLASS 13 JUNIOR SUBORDINATED NOTE CLAIMS]

On October 1, 2009, CIT Group Inc. and CIT Group Funding Company of Delaware (collectively, "CIT") commenced their exchange offer solicitations (respectively, the "Original CIT Offers," and the "Delaware Funding Offers," and together, the "October 1 Offers") whereby CIT is seeking to exchange certain of their unsecured debt for new notes and equity in CIT Group Inc. Contemporaneously with the launch of the October 1 Offers, CIT also commenced the solicitation of votes to accept or reject the Prepackaged Plan of Reorganization of CIT Group Inc. and CIT Group Funding Company of Delaware (as amended and modified, the "Plan of Reorganization") from holders of their unsecured debt. On October 16, 2009, CIT Group Inc. commenced its exchange offer solicitation for certain long term notes whereby CIT Group Inc. is seeking to exchange certain of their long-term maturity debt for new notes and equity in CIT Group Inc. (the "Long Term CIT Offers" and together with the October 1 Offers, the "Exchange Offer"). The holders of notes subject to the Long Term CIT Offers are also having their votes solicited in connection with the Plan of Reorganization.

The Exchange Offer and Plan of Reorganization are explained in greater detail in the offering memorandum (the "Offering Memorandum") to which this ballot (the "Ballot") is annexed. This Ballot is to be used to vote to accept or reject the Plan by holders of unsecured notes (the "Old Notes") in the Plan of Reorganization classes identified above. The Old Notes subject to the October 1 Offers are identified in the Offering Memorandum as the Original CIT Old Notes and the Delaware Funding Old Notes. The Old Notes subject to the Long Term CIT Offers are identified in the Offering Memorandum as the CIT Long Term Old Notes. **PLEASE NOTE THAT THERE ARE DIFFERENT EXCHANGE DEADLINES FOR THE ORIGINAL CIT OFFERS, THE DELAWARE FUNDING OFFERS AND THE LONG TERM CIT OFFERS.**

As discussed in the Offering Memorandum, CIT may commence a chapter 11 case under the Bankruptcy Code and seek immediate confirmation of the Plan of Reorganization: (a) if the conditions to consummating the Exchange Offer are not satisfied and/or (b) if the votes on the Plan of Reorganization are sufficient to confirm such Plan of Reorganization under title 11 of the United States Code (the "Bankruptcy Code").

Your instructions with respect to the Exchange Offer and/or Plan of Reorganization are to be relayed to the bank, broker, or other nominee (each, a "Nominee") holding the Old Notes on your behalf. Your options with respect to the Exchange Offer and vote to accept or reject the Plan of Reorganization are as follows:

**OPTION 1. PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

**OPTION 2. NOT PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

**OPTION 3. NOT PARTICIPATE in the Exchange Offer; vote to REJECT the Plan of Reorganization.**

**OPTION 4. Take no action; NOT PARTICIPATE in the Exchange Offer; NO VOTE on the Plan of Reorganization.**

**A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.**

The Nominee will also need to tender (or "block") your Old Notes on your behalf, in accordance with your instructions. There are three different voting choices in connection with the Exchange Offer and Plan of Reorganization, which are outlined in greater detail below. This Ballot was designed to assist you to understand the voting process. Do not return the Ballot to cast your vote. Instead, you will need to provide your instructions to the Nominee holding your Old Notes in accordance with the directions provided by your Nominee. By providing instructions to your Nominee, you are requesting that they (1) tender your underlying Old Notes on your behalf in accordance with your instructions, and (2) execute a master ballot on your behalf that reflects your instructions with respect to the Plan of Reorganization. Your instructions to the firm holding your Old Notes will have the same effect as if you had completed and returned a physical Ballot to indicate your vote with respect to the Plan of Reorganization. If you have any questions, you may contact the information agent, D.F. King & Co., Inc., at (800) 758-5880 or (212) 269-5550.

Please note that, except as provided in the Plan, the Plan contemplates (i) separate plans of reorganization for each potential debtor, and (ii) separate classes of creditors for each plan for voting and distribution purposes. Depending on the Old Notes you hold against CIT, you may hold claims in multiple classes. The Offering Memorandum contains a schedule indicating each series of debt and the corresponding Plan of Reorganization class, which begins on the inside front cover.

**Please note that if you participate in the Exchange Offer you are also required to vote to accept the Plan of Reorganization. Therefore, if you intend to participate in the Exchange Offer you should also carefully review the terms of the Plan of Reorganization. The treatment of your claims under the Plan may be different from the treatment provided under the Exchange Offer.**

A vote to accept the Plan constitutes your consent to the releases, injunctions, and exculpation provisions specified in Article XIII of the Plan of Reorganization.

Please read and follow the attached instructions carefully.

---

**DEADLINES FOR THE ORIGINAL CIT OLD NOTES AND ORIGINAL CIT OFFERS**

THE EXCHANGE OFFER DEADLINE FOR THE ORIGINAL CIT OFFERS AND DEADLINE FOR ORIGINAL CIT OLD NOTE HOLDERS TO VOTE TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION IS 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 (THE "ORIGINAL EXPIRATION DATE"), UNLESS EXTENDED BY CIT. The Nominee holding your Original CIT Old Notes must (1) electronically deliver ("tender") your Original CIT Old Notes into the appropriate account by the Original Expiration Date and (2) submit a master ballot with a report of beneficial owner instructions by 8:00 p.m. (New York City time) on October 30, 2009.

---

**DEADLINES FOR THE DELAWARE FUNDING OLD NOTES AND DELAWARE FUNDING OFFERS**

THE EXCHANGE OFFER DEADLINE AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION FOR THE DELAWARE FUNDING OFFERS IS 11:59 P.M. (NEW YORK CITY TIME) ON NOVEMBER 5, 2009 UNLESS EXTENDED BY CIT (THE "DELAWARE FUNDING OFFERS EXPIRATION DATE"). HOLDERS OF DELAWARE FUNDING OLD NOTES MAY TENDER DELAWARE FUNDING OLD NOTES FOR EARLY TENDER UP TO 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 UNLESS EXTENDED BY CIT (THE "DELAWARE FUNDING EARLY TENDER DATE"). The Nominee holding your Delaware Funding Old Notes must (1) electronically deliver ("tender") your Delaware Funding Old Notes into the appropriate account by the Delaware Funding Offers Expiration Date and (2) submit a master ballot with a report of beneficial owner instructions by 8:00 p.m. (New York City time) on November 6, 2009.

<div style="border:1px solid black">

### DEADLINES FOR THE CIT LONG TERM OLD NOTES AND LONG TERM CIT OFFERS

**THE EXCHANGE OFFER DEADLINE AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION FOR THE LONG TERM CIT OFFERS IS 11:59 P.M. (NEW YORK CITY TIME) ON NOVEMBER 13, 2009 UNLESS EXTENDED BY CIT (THE "LONG TERM EXPIRATION DATE"). HOLDERS OF CIT LONG TERM OLD NOTES MAY TENDER CIT LONG TERM OLD NOTES FOR EARLY ACCEPTANCE UP TO 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 UNLESS EXTENDED BY CIT (THE "LONG TERM NOTES EARLY ACCEPTANCE DATE"). The Nominee holding your CIT Long Term Old Notes must (1) electronically deliver ("tender") your CIT Long Term Old Notes into the appropriate account by the Long Term Expiration Date and (2) submit a master ballot with a report of beneficial owner instructions by 8:00 p.m. (New York City time) on November 16, 2009.**

</div>

**You must give your instructions to your Nominee in sufficient time for them to be able to tender your underlying Old Notes by the Original Expiration Date, Delaware Funding Offers Expiration Date, Long Term Expiration Date, Delaware Funding Early Tender Date or Long Term Notes Early Acceptance Date (each, a "Deadline"), as applicable. Please note that once your Old Notes have been tendered, you will not be able to trade your Old Notes through an automated exchange. Exchange withdrawals will only be permitted as set forth in the Offering Memorandum.**

### INSTRUCTIONS

CIT is soliciting the votes of certain of their creditors on their proposed Plan, described in and annexed to the Offering Memorandum accompanying this Ballot. Please review the Offering Memorandum and Plan carefully before deciding on the action you wish to take. Unless otherwise defined, capitalized terms used herein and in the Master Ballot have the meanings ascribed to them in the Plan.

**VOTING DEADLINE:**

The Deadlines for your Nominee to be able to tender your Old Notes are set forth above. PLEASE ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO EFFECT YOUR INSTRUCTIONS BY THE APPLICABLE DEADLINE. YOUR NOMINEE MAY ESTABLISH AN EARLIER DEADLINE FOR YOU TO PROVIDE IT WITH YOUR INSTRUCTIONS.

**HOW TO VOTE:**

**Item 1. Determine How You Wish to Vote, and provide your instructions to the Nominee holding your Old Notes.** Please note that each holder of the Old Notes must vote all of his, her, or its Old Notes within a class in a consistent fashion, and may not split the vote with respect to the Plan of Reorganization.

**THE THREE VOTING OPTIONS ARE AS FOLLOWS:**

**OPTION 1. PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

**OPTION 2. NOT PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

**OPTION 3. NOT PARTICIPATE in the Exchange Offer; vote to REJECT the Plan of Reorganization.**

**A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.**

**TO CAST YOUR VOTE,** YOU MUST GIVE YOUR INSTRUCTIONS TO THE NOMINEE HOLDING YOUR OLD NOTES IN ACCORDANCE WITH THE DIRECTIONS PROVIDED BY THAT FIRM. **WITH RESPECT TO THE OLD NOTES TENDERED IN CONNECTION WITH THE ORIGINAL CIT OFFERS,** IN ORDER TO EFFECT YOUR INSTRUCTIONS, THE NOMINEE HOLDING YOUR OLD NOTES MUST (1) TENDER THE UNDERLYING BONDS IN ACCORDANCE WITH YOUR INSTRUCTIONS, AND (2) EXECUTE AND RETURN A MASTER BALLOT TO THE VOTING AGENT ON YOUR BEHALF BY 8:00 P.M. (NEW YORK CITY TIME) OCTOBER 30, 2009 (UNLESS THE DEADLINES ARE EXTENDED BY THE DEBTORS). PLEASE SEE THE ADDITIONAL DEADLINES SET FORTH ON

PAGE 2 OF THIS BALLOT IN CONNECTION WITH THE DELAWARE FUNDING OLD NOTES AND THE CIT LONG TERM OLD NOTES.

**YOU MAY ALSO INSTRUCT YOUR NOMINEE WITH RESPECT TO A FOURTH OPTION**, which is also the default option for those holders that do not provide any instructions:

**OPTION 4. Take no action; NOT PARTICIPATE in the Exchange Offer; NO VOTE on the Plan of Reorganization.**

PLEASE NOTE THAT IF YOU INSTRUCT YOUR NOMINEE TO TAKE NO ACTION ON YOUR BEHALF, OR FAIL TO PROVIDE TIMELY INSTRUCTIONS TO THAT FIRM, YOU SHALL NEVERTHE-LESS BE BOUND BY THE TERMS OF THE PLAN OF REORGANIZATION IF IT IS CONSUMMATED.

**WITHDRAWAL RIGHTS:**

Any party who has delivered valid instructions with respect to the Exchange Offer and Plan of Reorganization may withdraw such instruction prior to the applicable Deadline under the conditions set forth in the Offering Memorandum.

**Item 2.  Certifications**

By providing your instructions, you acknowledge (1) that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Offering Memorandum, (2) that you have received a copy of the Offering Memorandum, (3) that the vote on the Plan of Reorganization is being made pursuant to the terms and conditions set forth therein, (4) **that a vote to accept the Plan of Reorganization is an affirmative consent to the releases, injunctions, and exculpation contained in Article XIII of the Plan**, (5) that you have thereby requested that the Nominee holding your Old Notes tender your underlying Old Notes in accordance with your instructions; and (6) that you have thereby requested that such firm submit a Master Ballot reflecting your vote.

### Certification by Beneficial Holders Residing in the European Union

In connection with the exchange the Old Notes pursuant to the Exchange Offer and/or voting to accept or reject the Plan of Reorganization, the undersigned represents and warrants that either:

1. both:

(a) the undersigned is a legal entity which is authorized or regulated to operate in the financial markets or, if not so authorized or regulated, whose corporate purpose is solely to invest in securities; or

(b) the undersigned is a legal entity which meets two or more of the following criteria: (i) an average number of at least 250 employees during our last financial year; (ii) a total balance sheet more than €43,000,000 and (iii) an annual net turnover more than €50,000,000;

and:

(c) either the undersigned is acting for its own account in respect of the Exchange Offer and voting to accept or reject the Plan of Reorganization; or

(d) the undersigned is acting for the account of one or more other persons who meet two or more of the criteria described in paragraph 1(b) above and (i) is duly authorized by those persons to provide the instructions to the Nominee on their behalf, and (ii) the provisions of this certification constitute legal, valid and binding obligations upon the undersigned and any other person for whose account the undersigned is acting.

Or:

2. both:

(a) the undersigned is a legal entity which is authorized or regulated to operate in the financial markets or, if not so authorized or regulated, whose corporate purpose is solely to invest in securities; and

(b) the undersigned is acting for the account of one or more persons who are not qualified investors within the meaning of the law in a Member State of the European Economic Area implementing Article 2(1)(e) of the Prospectus Directive and the terms on which the undersigned has been engaged enable the undersigned to make decisions concerning the acceptance of the Exchange Offer of the Old Notes and voting to accept or reject the Plan without reference to those persons.

### Certification of Beneficial Holders Residing in Canada

Holders of Old Notes who are residents of Canada hereby confirm and certify to CIT Group Inc. and CIT Group Funding Company of Delaware LLC that such holder is an "accredited investor", as such term is defined in applicable Canadian securities legislation.

The undersigned acknowledges that CIT and others will rely upon the undersigned certifications set forth herein, and the undersigned agrees to notify CIT promptly in writing if any of the certifications, representations or warranties herein ceases to be accurate or complete.

| | |
|---|---|
| Name of Holder: | *HOLDERS SHOULD PROVIDE THEIR INSTRUCTIONS TO THE NOMINEE* |
| Signature: | *HOLDING THEIR OLD NOTES IN ACCORDANCE WITH THE DIRECTIONS* |
| Print or Type Name: | *PROVIDED BY THAT FIRM. BY PROVIDING YOUR INSTRUCTIONS TO* |
| Title (if appropriate): | *YOUR NOMINEE, YOU ARE THEREBY REQUESTING THAT THE FIRM* |
| Address: | *TENDER YOUR OLD NOTES IN ACCORDANCE WITH YOUR DIRECTIONS,* |
| Telephone Number: | *AND CAST A MASTER BALLOT ON YOUR BEHALF TO* |
| Date: | *TRANSMIT YOUR VOTE.* |

---

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL MAKE YOU OR ANY OTHER PERSON AN AGENT OF THE COMPANY OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH. NO BENEFICIAL OWNER BALLOT OR MASTER BALLOT SHALL CONSTITUTE OR BE DEEMED TO CONSTITUTE (A) A PROOF OF CLAIM OR (B) AN ADMISSION BY THE COMPANY OF THE NATURE, VALIDITY, OR AMOUNT OF ANY CLAIM.**

---

**DEADLINES FOR EXCHANGE OFFER AND VOTING DEADLINES**

**PLEASE CONSULT THE SECOND PAGE OF THIS BALLOT FOR THE APPLICABLE VOTING AND EXCHANGE DEADLINES. YOUR NOMINEE MAY ESTABLISH AN EARLIER EXCHANGE DEADLINE.**

---

**ADDITIONAL INFORMATION**

**Retail holders of Old Notes with questions regarding the voting and exchange process should contact the information agent, D.F. King & Co., Inc., at (800) 758-5880 or (212) 269-5550.**

**Nominees with questions regarding the voting and exchange process should contact the exchange and voting agent, Financial Balloting Group LLC, at (646) 282-1888.**

<u>EXHIBIT B-2</u>



**LETTER OF TRANSMITTAL AND BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED PLAN OF REORGANIZATION OF CIT GROUP INC. AND CIT GROUP FUNDING COMPANY OF DELAWARE**

**[THIS BALLOT IS EXCLUSIVELY FOR THE USE BY HOLDERS OF CERTIFICATED SECURITIES IN CLASS 9 SENIOR UNSECURED NOTE CLAIMS]**

On October 1, 2009, CIT Group Inc. and CIT Group Funding Company of Delaware (collectively, "CIT") commenced their exchange offer solicitation whereby CIT is seeking to exchange certain of their unsecured debt for new notes and equity in CIT Group Inc. (the "Exchange Offer"). Contemporaneously with the launch of the Exchange Offer, CIT has also commenced the solicitation of votes to accept or reject the Prepackaged Plan of Reorganization of CIT Group Inc. and CIT Group Funding Company of Delaware (as amended and modified, the "Plan of Reorganization") from holders of their unsecured debt. On October 16, 2009, CIT Group Inc. commenced its exchange offer solicitation for certain long term notes whereby CIT Group Inc. is seeking to exchange certain of their long term maturity debt for new notes and equity in CIT Group Inc. (the "Long Term CIT Offers"). **THIS BALLOT IS NOT TO BE USED IN CONNECTION WITH THE LONG TERM CIT OFFERS.** The Exchange Offer and Plan of Reorganization are explained in greater detail in the offering memorandum (the "Offering Memorandum"). As discussed in the Offering Memorandum, CIT may commence a chapter 11 case under the Bankruptcy Code and seek immediate confirmation of the Plan of Reorganization: (a) if the conditions to consummating the Exchange Offer are not satisfied and/or (b) the votes on the Plan of Reorganization are sufficient to confirm such Plan of Reorganization under title 11 of the United States Code (the "Bankruptcy Code").

This ballot (the "Ballot") is being sent to all registered holders (the "Registered Holders") of Class 9 Senior Unsecured Debt Claims who hold debt against CIT in certificated form (the "CIT Debt") for their use in participating in the Exchange Offer and voting to accept or reject the Plan of Reorganization. Your options with respect to the Exchange Offer and vote to accept or reject the Plan of Reorganization are as follows:

**OPTION 1. PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

**OPTION 2. NOT PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

**OPTION 3. NOT PARTICIPATE in the Exchange Offer; vote to REJECT the Plan of Reorganization.**

**OPTION 4. Take no action; NOT PARTICIPATE in the Exchange Offer; NO VOTE on the Plan of Reorganization.**

A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.

If you have any questions regarding the voting and exchange process should contact the exchange and voting agent, Financial Balloting Group LLC, at (646) 282-1800.

Please note that, except as provided in the Plan, the Plan contemplates (i) separate plans of reorganization for each potential debtor, and (ii) separate classes of creditors for each plan for voting and distribution purposes. Depending on the nature of the Debt you hold against CIT, you may hold claims in multiple classes. The Offering Memorandum at page (iii) contains a schedule indicating each series of debt and the corresponding Plan of Reorganization class.

**Please note that if you participate in the Exchange Offer you are also required to vote to accept the Plan of Reorganization. Therefore, if you intend to participate in the Exchange Offer you should also carefully review the terms of the Plan. The treatment of your claims under the Plan may be different from the treatment provided under the Exchange Offer.**

**A vote to accept the Plan constitutes your consent to the releases, injunctions, and exculpation provisions specified in Article XIII of the Plan.**

Please read and follow the attached instructions carefully. THE EXCHANGE OFFER AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 (the "Voting Deadline"). This Ballot must be ACTUALLY RECEIVED by the Financial Balloting Group LLC (the "Voting Agent" or the "Exchange Agent") prior to the expiration of the Voting Deadline. Please note that once your CIT Debt has been tendered, you will not be able to trade your CIT Debt. Exchange withdrawals will only be permitted as set forth in the Offering Memorandum.

## INSTRUCTIONS

CIT Group Inc. and CIT Group Funding Company of Delaware (collectively, "CIT") are soliciting the votes of certain of their creditors on their proposed Exchange Offer and Plan of Reorganization, described in Offering Memorandum accompanying this Ballot. Please review the Offering Memorandum carefully before you return this Ballot. Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Offering Memorandum or Plan of Reorganization.

This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.

A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.

You may not split your vote. You must vote the entire claim that you hold to accept or to reject the Plan of Reorganization. You will be deemed to have voted the full amount of your claim in your vote. You must vote all your claims within a single class to either accept or reject that Plan. Please consult page (iii) of the Offering Memorandum for a description of the Plan of Reorganization classes.

To ensure your tender is valid and vote on the Plan of Reorganization is counted, you must complete, sign, and return this Ballot to the address (i) set forth on the enclosed pre-addressed envelope or (ii) to the hand delivery or overnight courier address. The method of delivery of Certificate(s), this Ballot and all other required documents is at the option and sole risk of the tendering Registered Holder, and the delivery will be deemed made only when actually received by the Voting Agent. If delivery is by mail, registered mail with return receipt requested, properly insured or overnight delivery service is recommended. In all cases, sufficient time should be allowed to ensure timely delivery.

This Ballot (including the accompanying letter of transmittal) and CIT Debt should be sent only to the Exchange Agent and not to CIT, any affiliate of CIT or The Depository Trust Company. **Unsigned Ballots will not be counted.** Ballots must be RECEIVED along with the certificate evidencing the debt you hold against CIT by the Voting Agent by 11:59 p.m. (New York City time) on October 29, 2009 (the "Voting Deadline") at the following address:

<div align="center">

Financial Balloting Group LLC
Attn: CIT Ballot Tabulation
757 Third Avenue, 3rd Floor
New York, NY 10017

</div>

If a Ballot is received after the Voting Deadline, it may not be counted for purposes of the Exchange Offer or as a vote to accept or reject the Plan of Reorganization. Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Voting Agent. In all cases, sufficient time should be allowed to assure timely delivery. Delivery of a Ballot to the Voting Agent by facsimile, e-mail, or any other electronic means will not be valid. No Ballot should be sent to CIT, any indenture trustee, transfer agent, or financial or legal advisor of CIT.

To complete the Ballot properly, take the following steps:

(a) Complete Item 1. Describe the type of certificated debt you are voting through this Ballot.

(b) Complete Item 2. Cast your vote with respect to the Exchange Offer and Plan of Reorganization in Item 2.

Your options with respect to the Exchange Offer and vote to accept or reject the Plan of Reorganization are as follows:

**OPTION 1. PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

**OPTION 2. NOT PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

<div align="center">2</div>

**OPTION 3.** NOT PARTICIPATE in the Exchange Offer; vote to REJECT the Plan of Reorganization.

**OPTION 4.** Take no action; NOT PARTICIPATE in the Exchange Offer; NO VOTE on the Plan of Reorganization.

A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.

(c) Ballots that are signed and returned, but not expressly voted to accept or reject the Plan of Reorganization, will not be counted. A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(d) Review Item 3 carefully.

(e) Sign and date your Ballot. Your signature is required in order for your vote and elections to be counted. If the CIT Debt voted with this Ballot is/are held by a partnership, the Ballot should be executed in the name of the partnership by a general partner. If the CIT Debt is held by a corporation, the Ballot must be executed by an officer.

(f) Complete the letter of transmittal portion of this Ballot.

(g) If you believe that you have received the wrong Ballot, please immediately contact the Voting Agent, Financial Ballot Group LLC, at (646) 282-1800.

(h) If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing.

(i) Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(j) Return your Ballot using the enclosed return envelope.

<div align="center">

**Please Mail Your Ballot Promptly!**

**If you have any questions regarding this Ballot
or the voting or election procedures, please call the Voting Agent,
Financial Balloting Group LLC, promptly at (646) 282-1800.**

**You may receive multiple mailings containing Ballots. You should vote each Ballot that you
receive for all of the claims that you hold.**

</div>

**Item 1.** *Amount of Claim.*

The undersigned certifies that as of the date of this Ballot, the undersigned was the holder (or authorized signatory) of Class 7 Senior Unsecured Debt Claims in the following principal amount (do not include interest) against CIT:

| Amount of CIT Debt | Description of CIT Debt |
|---|---|
| 1. $ | |
| 2. $ | |
| 3. $ | |

You should complete a separate Ballot for each issue of **CERTIFICATED** CIT Debt and tender the related certificate with such Ballot.

**Item 2.** *Vote On Plan.*

Please note that each holder of the CIT Debt must vote all of his, her, or its CIT Debt within a class in a consistent fashion, and may not split the vote with respect to the Plan of Reorganization.

<div align="center">3</div>

**THE VOTING OPTIONS ARE AS FOLLOWS (please check one):**

☐  **OPTION 1.** PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.

☐  **OPTION 2.** NOT PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.

☐  **OPTION 3.** NOT PARTICIPATE in the Exchange Offer; vote to REJECT the Plan of Reorganization.

A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan. You must complete the Letter of Transmittal following Item 3 below if you are participating in the Exchange Offer or voting on the Plan of Reorganization.

**Item 3.** *Certifications for Vote on Plan*

By completing and submitting this Ballot, you acknowledge (1) that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Offering Memorandum, (2) that you have received a copy of the Offering Memorandum, (3) that the vote on the Plan of Reorganization is being made pursuant to the terms and conditions set forth therein, and (4) **that a vote to accept the Plan of Reorganization is an affirmative consent to the releases, injunctions, and exculpation contained in Article XIII of the Plan.**

| | |
|---|---|
| Name of Holder: | _____ |
| Signature: | _____ |
| Print or Type Name: | _____ |
| Title (if appropriate): | _____ |
| Address: | _____ |
| Telephone Number: | _____ |
| Date: | _____ |

---

NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL MAKE YOU OR ANY OTHER PERSON AN AGENT OF THE COMPANY OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH. THIS BALLOT SHALL CONSTITUTE OR BE DEEMED TO CONSTITUTE (A) A PROOF OF CLAIM OR (B) AN ADMISSION BY THE COMPANY OF THE NATURE, VALIDITY, OR AMOUNT OF ANY CLAIM.

---

**VOTING DEADLINE**

The Voting Deadline is 11:59 p.m. (New York City time) on October 29, 2009. For your instructions to be followed, the bank or brokerage firm holding your Old Notes must have TENDERED the underlying position by the Voting Deadline.

---

**ADDITIONAL INFORMATION**

If you have any questions regarding the voting and exchange process should contact the exchange and voting agent, Financial Balloting Group LLC, at (646) 282-1800.

**PLEASE SEE FOLLOWING PAGES FOR LETTER OF TRANSMITTAL INSTRUCTIONS IF PARTICIPATING IN EXCHANGE OFFER OR VOTING TO ACCEPT OR REJECT THE PLAN.**

**LETTER OF TRANSMITTAL FOR CERTIFICATE(S) FORMERLY REPRESENTING DEBT OF CIT GROUP INC. ("CIT" OR THE "COMPANY") TENDERED PURSUANT TO EXCHANGE OFFER AND PREPACKAGED PLAN OF REORGANIZATION OF CIT GROUP INC. AND CIT GROUP FUNDING COMPANY OF DELAWARE**

*The Exchange Agent is:*

*By Mail or by Hand Delivery:*
Financial Balloting Group LLC
Attn: CIT Ballot Tabulation
757 Third Avenue, 3rd Floor
New York, NY 10017
+1 (646) 282-1800

**DELIVERY OF THIS BALLOT AND LETTER OF TRANSMITTAL TO AN ADDRESS OTHER THAN AS SET FORTH ABOVE WILL NOT CONSTITUTE A VALID TENDER**

For holders ("Registered Holders") of CIT certificated debt (the "CIT Debt") to (a) participate in the Exchange Offer or vote to accept or reject the Plan of Reorganization and (b) receive a distribution in respect of the Exchange Offer or Plan of Reorganization, the certificate(s) (the "Certificate(s)") formerly representing the CIT Debt must be properly tendered by sending such Certificate(s), together with this Letter of Transmittal, properly completed and duly executed, to the Exchange Agent such that they are received by the Exchange Agent at its address set forth above **no later than the Voting Deadline which is October 29, 2009 at 11:59 P.M. (New York City Time). IF YOU FAIL TO MAKE AN EFFECTIVE TENDER OF ALL CERTIFICATE(S) BENEFICIALLY OWNED BY A REGISTERED HOLDER BY THE VOTING DEADLINE, YOUR TENDER INTO THE EXCHANGE OFFER OR VOTE ON THE PLAN OF REORGANIZATION WILL NOT BE VALID AND YOU WILL NOT RECEIVE A DISTRIBUTION ON ACCOUNT OF YOUR CIT DEBT IN THE EXCHANGE, AND YOU WILL ONLY RECEIVE A DISTRIBUTION UNDER THE PLAN UPON SURRENDER OF SUCH CERTIFICATE(S).**

**DESCRIPTION OF TENDERED CERTIFICATE(S)**

| Name(s) and Address(es) of Registered Holder(s) (Please fill in, if blank, exactly as name(s) appear(s) on Certificate(s)) | Certificate(s) (Please attach additional signed list, if necessary) | |
|---|---|---|
| | Certificate Number(s) | Principal Amount Represented by Certificate(s) |
| | | |
| | | |
| | | |
| | | |
| | | **Total** |

If your Certificate(s) have been mutilated, lost, destroyed or stolen, please check this box.

Please note that it may be necessary to combine the CIT Debt represented by your Certificate(s) for purposes of determining the principal amount of consideration you are entitled to receive under the Exchange Offer or the Plan of Reorganization. Therefore, no assurance can be given that you will receive separate distributions for each of the certificates tendered.

**THE INSTRUCTIONS CONTAINED HEREIN SHOULD BE READ CAREFULLY BEFORE THIS LETTER OF TRANSMITTAL IS COMPLETED.**

**The procedures set forth in the Offering Memorandum requires that certificated holders of CIT Debt tender their Certificate(s) pursuant to this Letter of Transmittal as a condition to (a) participating in the Exchange Offer and voting to accept or reject the Plan of Reorganization and (b) the receipt of the distribution to which such holders are entitled under the Exchange Offer or Plan of Reorganization.**

**NOTE: SIGNATURES MUST BE PROVIDED BELOW.**
**PLEASE READ CAREFULLY THE INSTRUCTIONS SET FORTH IN THIS LETTER OF TRANSMITTAL.**

Upon the terms and subject to the conditions of the Offering Memorandum, the undersigned hereby tenders to the Exchange Agent, as agent for the Company, the Certificate(s) listed above formerly representing outstanding CIT Debt.

The undersigned hereby represents and warrants that the undersigned (i) has read and agreed to the terms and conditions contained in this Letter of Transmittal and (ii) has full power and authority to tender the Certificate(s) listed above, free and clear of all liens, restrictions, charges and encumbrances and to direct the manner in which distributions are to be made with respect to the CIT Debt represented by such Certificate(s). The undersigned, upon request, will execute and deliver any additional documents deemed by the Exchange Agent or the Company to be necessary or desirable in connection with the tender of the Certificate(s). The undersigned hereby acknowledges that delivery of the Certificate(s) will be made, and risk of loss and title to such Certificate(s) will pass, only upon receipt thereof by the Exchange Agent.

The undersigned hereby irrevocably constitutes and appoints the Exchange Agent the true and lawful attorney-in-fact of the undersigned with respect to the CIT Debt held by the undersigned, with full power of substitution, to cancel such CIT Debt upon consummation of the Exchange Offer or Plan of Reorganization. This power of attorney shall be deemed to be an irrevocable power coupled with an interest.

All authority conferred or agreed to be conferred by this Letter of Transmittal shall not be affected by, and shall survive, the death or incapacity of the undersigned, and any obligation of the undersigned hereunder shall be binding upon the successors, assigns, heirs, executors, administrators, trustees in bankruptcy and personal and legal representatives of the undersigned. The tender of Certificate(s) hereby is irrevocable unless the Company chooses not to consummate both the Exchange Offer or the Plan of Reorganization.

The undersigned understands that the tender of the Certificate(s) will not be deemed to have occurred unless and until the Exchange Agent has received the Certificate(s) and this Letter of Transmittal, properly completed and duly executed, together with all accompanying evidence of authority in form satisfactory to the Company (which may delegate such power in whole or in part to the Exchange Agent). All questions as to the validity, form and eligibility of any tender of Certificate(s) hereunder will be determined by the Company, which determination shall be final and binding on all parties.

Unless otherwise indicated under "Special Delivery Instructions," the distribution with respect to the tendered CIT Debt to the undersigned at the address of record shown above upon consummation of the Exchange Offer or Plan of Reorganization.

**PLEASE SIGN HERE**
(Please Complete Form W-9 Accompanying the Guidelines
for Request for Taxpayer Identification Number and
Certification on Form W-9
or a Form W-8; See Instruction 8)

_____

_____

**Signature(s) of Registered Holder(s)**

Date:_____

(Must be signed by the Registered Holder(s) exactly as name(s) appear(s) on Certificate(s) for the CIT Debt transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation or other person acting in a fiduciary or representative capacity, please provide the following information and see Instruction 2.)

Name(s):_____

_____

_____

**(Please Print)**

Capacity (full title):_____

_____

Address:_____

_____

Area Code and Telephone No.:_____

Taxpayer Identification Number or Social Security Number:     _____

                                                                                        **(See Instruction 8)**

**GUARANTEE OF SIGNATURE(S)**
(See Instruction 2)

Authorized Signature:_____

Name:_____

_____

**(Please Type or Print)**

Title:_____

Name of Firm:_____

Address:_____

**(Include Zip Code)**

Area Code and Telephone Number:_____

Date:_____

7

**ALL REGISTERED HOLDERS MUST COMPLETE FORM W-9 ON PAGE 8 HEREOF OR, IF APPLICABLE, THE APPROPRIATE FORM W-8.**

<div style="border:1px solid black; padding:10px;">

**SPECIAL PAYMENT OR DELIVERY INSTRUCTIONS**
(Signature Guarantee Required — See Instructions 2 and 5)

TO BE COMPLETED ONLY if the Distribution is to be sent to someone other than the Registered Holder(s) of the CIT Debt whose signature(s) appear(s) above, or to such Registered Holder at an address other than that shown above.

Deliver the Distribution to:

Name (please print):_____

Address (including zip code):_____

_____

_____

</div>

## INSTRUCTIONS

1. **Delivery of Letter of Transmittal and Certificate(s).** In accordance with the instructions set forth herein, in order for you to (a) participate in the Exchange Offer or vote to accept or reject the Plan of Reorganization and (b) receive the distribution to which you are entitled under the Exchange Offer or Plan of Reorganization, you must properly tender your Certificate(s) by sending such Certificate(s), together with this Letter of Transmittal (or a photocopy hereof), properly completed and duly executed, with any required medallion signature guarantees and any other documents required by this Letter of Transmittal, to the Exchange Agent at its address set forth herein such that they are received no later than the Expiration Date.

**IF YOU FAIL TO MAKE AN EFFECTIVE TENDER OF CERTIFICATE(S) BY THE VOTING DEADLINE, YOU WILL NOT BE PERMITTED TO PARTICIPATE IN THE EXCHANGE OFFER OR VOTE TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION**

**The method of delivery of Certificate(s), this Ballot and Letter of Transmittal and all other required documents is at the option and sole risk of the tendering Registered Holder, and the delivery will be deemed made only when actually received by the Exchange Agent. If delivery is by mail, registered mail with return receipt requested, properly insured or overnight delivery service is recommended. In all cases, sufficient time should be allowed to ensure timely delivery. This Letter of Transmittal and CIT Debt should be sent only to the Exchange Agent, not to the Company, any of the other affiliate of CIT or The Depository Trust Company.**

2. **Guarantee of Signatures.** No medallion signature guarantee on this Letter of Transmittal is required if (i) this Letter of Transmittal is signed by the Registered Holder(s) of the Certificate(s) tendered herewith, unless such Registered Holder(s) has completed the box entitled "Special Delivery Instructions" herein or (ii) such Certificate(s) are tendered for the account of a financial institution that is an eligible guarantor institution (*e.g.*, commercial banks, savings and loan associations and brokerage houses with membership in an approved medallion signature program) pursuant to Rule 17Ad-15 under the Securities Exchange Act of 1934 (collectively, "Eligible Institutions"). In all other cases, all signatures on this Letter of Transmittal must be medallion guaranteed by an Eligible Institution.

3. **Inadequate Space.** If the space provided in the box captioned "Description of Tendered Certificate(s)" is inadequate, the Certificate number(s) and/or the number of shares and any other required information should be listed on a separate, signed schedule, which is attached to this Letter of Transmittal.

4. **Signatures on Letter of Transmittal, Assignments and Endorsements.** If this Letter of Transmittal is signed by the Registered Holder(s) of the CIT Debt formerly represented by the Certificate(s) being tendered, the signature(s) must correspond with the name(s) as written on the face of the Certificate(s) without alteration, enlargement or any change whatsoever.

If any of the Certificate(s) being tendered hereby are held of record by two or more joint owners, all such owners must sign this Letter of Transmittal.

If any of the CIT Debt being tendered hereby are registered in different names on several Certificate(s), it will be necessary to complete, sign and submit as many separate Letters of Transmittal as there are different registrations of Certificate(s).

If this Letter of Transmittal or any Certificate(s) are signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation or other person acting in a fiduciary or representative capacity, such person should so indicate when signing, and proper evidence satisfactory to the Company of the authority of such person so to act must be submitted.

5. **Special Payment or Delivery Instructions**. If the Distribution is to be sent to someone other than the individual or entity executing this Letter of Transmittal or to an address other than that shown above, the appropriate box on this Letter of Transmittal should be completed.

6. **Irregularities**. The Company will determine, in its sole discretion, all questions as to the form of documents, validity, eligibility (including time of receipt) and acceptance for exchange of any CIT Debt, which determination shall be final and binding on all parties. The Company reserves the absolute right to reject any and all tenders determined by it not to be in proper form. The Company also reserves the absolute right, subject to applicable law, to waive any conditions or irregularity in any submission of CIT Debt of any particular Registered Holder whether or not similar conditions or irregularities are waived in the case of other Registered Holders. The Company's interpretation of the terms and conditions of the Exchange Offer or Plan of Reorganization (including this Letter of Transmittal and the instructions hereto) will be final and binding. No tender of CIT Debt will be deemed to have been validly made until all irregularities with respect to such tender have been cured or waived. The Exchange Agent, any affiliates or assigns of the Exchange Agent, or any other person shall not be under any duty to give notification of any irregularities in any tender of CIT Debt or incur any liability for failure to give such notification. Any and all Letters of Transmittal or facsimiles (including any other required documents) not in proper form are subject to rejection.

7. **Questions, Requests for Assistance and Additional Copies**. Questions and requests for assistance may be directed to the Exchange Agent at its address and telephone number set forth on the front of this Letter of Transmittal. Additional copies of the Letter of Transmittal may be obtained from the Exchange Agent at the address and telephone number set forth on the front of this Letter of Transmittal. Copies of the Exchange Offer and Plan of Reorganization may be obtained from the Exchange Agent.

9. **Mutilated, Lost, Destroyed or Stolen Certificates**. If any Certificate(s) representing CIT Debt have been mutilated, lost, destroyed or stolen, the Registered Holder should promptly notify the Exchange Agent in writing at its address set forth herein. The Registered Holder will then be instructed as to the steps that must be taken in order to replace the Certificate(s). This Letter of Transmittal and related documents cannot be processed until the procedures for replacing lost, destroyed or stolen Certificate(s) have been followed.

# IMPORTANT TAX INFORMATION

**TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, YOU ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS BALLOT AND LETTER OF TRANSMITTAL IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE USED BY YOU, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON YOU UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"); (B) ANY SUCH DISCUSSION IS INCLUDED HEREIN BY CIT IN CONNECTION WITH THE EXCHANGE OFFER AND PLAN OF REORGA-NIZATION; AND (C) YOU SHOULD SEEK ADVICE BASED ON YOUR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

Under current U.S. federal income tax law, the Exchange Agent (as payor) may be required to withhold a portion of any payments made to certain holders (or other payees) pursuant to the Exchange Offer or Plan of Reorganization. To prevent backup withholding, each U.S. Holder (as defined in the Offering Memorandum) or other U.S. payee should either (x) provide the Exchange Agent his correct taxpayer identification number ("TIN") by completing the copy of the Internal Revenue Service ("IRS") Form W-9 attached to this Ballot and Letter of Transmittal, certifying that (1) he is a "United States person" (as defined in section 7701(a)(30) of the Code), (2) the TIN provided is correct (or that such U.S. Holder is awaiting a TIN) and (3) that the U.S. Holder is exempt from backup withholding because (i) the holder has not been notified by the IRS that he is subject to backup withholding as a result of a failure to report all interest or dividends, or (ii) the IRS has notified the U.S. Holder that he is no longer subject to backup withholding or (y) otherwise establish an exemption. In general, for an individual, the TIN is such individual's social security number. If the Exchange Agent is not provided with the correct TIN, the U.S. Holder (or other payee) may be subject to a $50 penalty imposed by the IRS, and any reportable payments made to such person may be subject to backup withholding at the applicable rate, currently 28%. Such reportable payments generally will be subject to information reporting, even if the Exchange Agent is provided with a TIN. If a U.S. Holder has not been issued a TIN and has applied for one or intends to apply for one in the near future, such U.S. Holder should write "Applied For" in the space provided for the TIN in Part I of Form W-9 and sign and date the Form W-9. If "Applied For" is written in Part I and the Exchange Agent is not provided with a TIN prior to the date of payment, the Exchange Agent will withhold 28% of any reportable payments made to the U.S. Holder. For further information concerning backup withholding and instructions for completing Form W-9 (including how to obtain a TIN if you do not have one and how to complete Form W-9 if the CIT Debt is held in more than one name), consult the instructions in the enclosed Form W-9 contained in this Ballot and Letter of Transmittal.

Certain persons (including, among others, all corporations and certain individual Non-U.S. Holders (as defined in the Offering Memorandum)) are not subject to these backup withholding and reporting requirements. Exempt U.S. persons should indicate their exempt status on Form W-9. To satisfy the Exchange Agent that an individual Non-U.S. Holder qualifies as an exempt recipient, such person must submit an applicable IRS Form W-8 (such as an IRS Form W-8BEN), signed under penalties of perjury, attesting to that person's non-U.S. status. An applicable IRS Form W-8 can be obtained at the IRS website at *www.irs.gov.* Holders should consult their tax advisors as to any qualification for exemption from backup withholding, and the procedure for obtaining the exemption.

A person's failure to complete Form W-9, the applicable Form W-8 or other appropriate form will not, by itself, cause such person's CIT Debt to be deemed invalidly delivered, but may require the Exchange Agent to withhold a portion of any payments made to such person pursuant to the Exchange Offer or Plan of Reorganization. Backup withholding is not an additional U.S. federal income tax. Rather, the amount of U.S. federal income tax withheld will be creditable against the U.S. federal income tax liability of a person subject to backup withholding. If backup withholding results in an overpayment of U.S. federal income tax, a refund may be obtained provided that the required information is timely furnished to the IRS.

NOTE: FAILURE TO COMPLETE AND RETURN FORM W-9, THE APPLICABLE FORM W-8, OR ANOTHER APPROPRIATE FORM, AS APPLICABLE, MAY RESULT IN BACKUP WITHHOLDING OF 28% OF ANY REPORT-ABLE PAYMENTS MADE TO YOU PURSUANT TO THE EXCHANGE OFFER OR PLAN OR REORGANIZATION.

Form **W-9**
(Rev. October 2007)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

**Give form to the requester. Do not send to the IRS.**

Print or type
See Specific Instructions on page 2.

Name (as shown on your income tax return)

Business name, if different from above

Check appropriate box: ☐ Individual/Sole proprietor   ☐ Corporation   ☐ Partnership
☐ Limited liability company. Enter the tax classification (D=disregarded entity, C=corporation, P=partnership) ▶ _____
☐ Other (see instructions) ▶

☐ Exempt payee

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

| Social security number |
|---|

**or**

| Employer identification number |
|---|

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. See the instructions on page 4.

| Sign Here | Signature of U.S. person ▶ | Date ▶ |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest

you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

• The U.S. owner of a disregarded entity and not the entity,

• The U.S. grantor or other owner of a grantor trust and not the trust, and

• The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5

calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** Check the "Limited liability company" box only and enter the appropriate code for the tax classification ("D" for disregarded entity, "C" for corporation, "P" for partnership) in the space provided.

For a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

For an LLC classified as a partnership or a corporation, enter the LLC's name on the "Name" line and any business, trade, or DBA name on the "Business name" line.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

## Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for... | THEN the payment is exempt for... |
|---|---|
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 7[2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited liability company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov.* You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting *www.irs.gov* or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt payees, see *Exempt Payee* on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

**What Name and Number To Give the Requester**

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
|    b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Disregarded entity not owned by an individual | The owner |
| 7. A valid trust, estate, or pension trust | Legal entity[4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

¹ List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

² Circle the minor's name and furnish the minor's SSN.

³ You must show your individual name and you may also enter your business or "DBA" name on the second name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

⁴ List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules regarding partnerships* on page 1.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

Call the IRS at 1-800-829-1040 if you think your identity has been used inappropriately for tax purposes.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS personal property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious email to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.consumer.gov/idtheft* or 1-877-IDTHEFT(438-4338).

Visit the IRS website at *www.irs.gov* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA, or Archer MSA or HSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, the District of Columbia, and U.S. possessions to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

# EXHIBIT B-3

No person has been authorized to give any information or advice, or to make any representation, other than what is contained in the Offering Memorandum and Disclosure Statement and Annex accompanying this Ballot.



## BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED PLAN OF REORGANIZATION OF CIT GROUP INC. AND CIT GROUP FUNDING COMPANY OF DELAWARE

## [THIS BALLOT IS EXCLUSIVELY FOR THE USE BY HOLDERS OF CLASS 6 JPM L/C FACILITY CLAIMS]

On October 1, 2009, CIT Group Inc. (the "Company") and CIT Group Funding Company of Delaware (collectively, "CIT") commenced their exchange offer solicitation whereby CIT is seeking to exchange certain of their unsecured debt for new notes and equity in CIT Group Inc. (the "Exchange Offer"). Contemporaneously with the launch of the Exchange Offer, CIT also commenced the solicitation of votes to accept or reject the Prepackaged Plan of Reorganization of CIT Group Inc. and CIT Group Funding Company of Delaware (the "Plan of Reorganization" or the "Plan") from holders of their unsecured debt. On October 5, 2009, the Company commenced the solicitation of votes on the Plan (the "Solicitation") from the lenders under the 5-Year Letter of Credit and Reimbursement Agreement, dated as of May 23, 2005, among CIT Group Inc., the several banks and other financial institutions from time to time party thereto, J.P. Morgan Securities, Inc., as sole lead arranger and bookrunner, Barclays Bank PLC, as syndication agent, Bank of America, N.A and Citibank, N.A., as documentation agents and JPMorgan Chase Bank, N.A., as administrative agent and as Issuing Bank (in such capacity, "JPM") (the "JPM LC Facility"). The Plan of Reorganization and proposed treatment for claims arising under the JPM LC Facility are explained in greater detail in the Amended Offering Memorandum, Disclosure Statement and Solicitation of Acceptances of a Prepackaged Plan of Reorganization, dated October 16, 2009 (the "Offering Memorandum and Disclosure Statement"), Supplement No. 1 to Amended Offering Memorandum, Disclosure Statement and Solicitation of Acceptances of a Prepackaged Plan of Reorganization, dated October 23, 2009 and in the annex dated October 19, 2009 to the Offering Memorandum and Disclosure Statement provided to the lenders to the JPM LC Facility (the "Annex"). As discussed in the Offering Memorandum and Disclosure Statement, CIT may commence a chapter 11 case under title 11 of the United States Code (the "Bankruptcy Code") and seek immediate confirmation of the Plan of Reorganization if: (a) the conditions to consummating the Exchange Offer are not satisfied and/or (b) the votes on the Plan of Reorganization are sufficient to confirm such Plan of Reorganization under the Bankruptcy Code. We have not at this time taken any action approving a bankruptcy filing.

Claims arising under the JPM LC Facility constitute Class 6 JPM L/C Claims. This ballot (the "Ballot") is being sent to all lenders under the JPM LC Facility in connection with the Solicitation.

If the Plan of Reorganization is consummated and Class 6 votes to accept the Plan of Reorganization, on, or as soon as reasonably practicable after, the Effective Date, Reorganized CIT or a subsidiary of Reorganized CIT in the case of letters of credit for which a subsidiary or Reorganized CIT is a co-applicant or account party shall provide JPM with cash collateral on account of all outstanding undrawn letters of credit issued under the JPM L/C Facility in the percentages specified in the JPM L/C Facility Agreement generally and no less than 103% of the face amount of such outstanding undrawn letters of credit and JPM may apply such cash collateral to any subsequently arising reimbursement obligations under the JPM L/C Facility Agreement (the "Cash Collateralization"). All fees and other charges arising under or in respect of the JPM L/C Facility Agreement shall be paid on, or as soon as reasonably practicable after, the Effective Date by Reorganized CIT. In addition to the release provided in Article XIII.H.1 of the Plan of Reorganization and in the Confirmation Order, upon the Effective Date, each non-Debtor subsidiary and affiliate of CIT Group Inc. that was or is a co-applicant or account party on a letter of credit issued under the JPM L/C Facility and JPM and/or any other lender(s) under the JPM L/C Facility shall execute a mutual release and waiver of any and all claims against JPM and/or any other lenders under the JPM L/C Facility in respect of the JPM L/C Facility and/or the JPM L/C Facility Agreement arising prior to the Effective Date.

If Class 6 does not vote to accept the Plan of Reorganization and the Plan of Reorganization is nonetheless confirmed, (i) Reorganized CIT or a subsidiary of Reorganized CIT in the case of letters of credit for which a subsidiary or Reorganized CIT is a co-applicant or account party shall satisfy any Claims for reimbursement under the JPM L/C Facility that arose during the Chapter 11 Cases in full on, or as soon as reasonably practicable after, the Effective Date and (ii) following the Effective Date, Reorganized CIT or a subsidiary of Reorganized CIT in the case of letters of credit for which a subsidiary or Reorganized CIT is a co-applicant or account party shall pay all such Claims for reimbursement under the JPM L/C Facility in the ordinary course of business and upon the terms set forth in the JPM L/C Facility Agreement. In exchange for Reorganized CIT maintaining the reimbursement obligations in the immediately preceding (i) and (ii), JPM shall not pursue any subsidiary or affiliate of CIT Group Inc. or any other entity that JPM contends may be co-liable with CIT Group Inc. under the JPM L/C Facility Agreement for any remedies, claims or causes of action arising out of or relating to the JPM L/C Facility or the JPM L/C Facility Agreement.

Please note that, except as provided in the Plan, the Plan contemplates (i) separate plans of reorganization for each potential debtor, and (ii) separate classes of creditors for each plan for voting and distribution purposes. Depending on the nature of the debt you hold against CIT, you may hold claims in multiple classes. The front of the Offering Memorandum and Disclosure Statement contains a schedule indicating each series of debt and the corresponding Plan of Reorganization class.

**A vote to accept the Plan constitutes your consent to the releases, injunctions, and exculpation provisions specified in Article XIII of the Plan.**

**Please read and follow the attached instructions carefully. THE DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 (THE "VOTING DEADLINE"). You must provide your Ballot in adequate time such that your ballot is ACTUALLY RECEIVED by the Financial Balloting Group LLC (the "Voting Agent"), located at 757 3rd Avenue, 3rd Floor, New York, New York 10017, prior to the Voting Deadline. You may change your vote or withdraw your ballot at any point prior to the Voting Deadline in accordance with the provisions of the Offering Memorandum and Disclosure Statement.** Please contact the Voting Agent (as defined below) at (646) 282-1800 or JPMorgan Chase Bank, N.A., as administrative agent (the "Bank Agent") if you have any questions regarding the voting process.

## INSTRUCTIONS

CIT Group Inc. and CIT Group Funding Company of Delaware (collectively, "CIT") are soliciting the votes of certain of their lenders on their proposed Offering and Plan of Reorganization, described in the Offering Memorandum and Disclosure Statement and Annex accompanying this Ballot. Please review the Offering Memorandum and Disclosure Statement carefully before you return this Ballot. Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Offering Memorandum and Disclosure Statement or Plan of Reorganization.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.**

**A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.**

You may not split your vote. You must vote the entire claim that you hold to accept or to reject the Plan of Reorganization. You will be deemed to have voted the full amount of your claim in your vote. You must vote all your claims within a single class to either accept or reject that Plan. Please consult the front of the Offering Memorandum and Disclosure Statement for a description of the Plan of Reorganization classes.

To ensure your vote on the Plan of Reorganization is counted, you must complete, sign, and return this Ballot to the Voting Agent. Do not return the Ballot to the Bank Agent or directly to CIT. **Unsigned Ballots will not be counted.** Ballots must be actually RECEIVED by the Voting Agent by 11:59 p.m. (New York City time) on October 29, 2009 (the "Voting Deadline"). **The Bank Agent will verify your holdings under the JPM LC Facility and your vote will only be counted to the extent you hold debt under the JPM LC Facility as of the Voting Deadline. If a Ballot is received after the Voting Deadline, it may not be counted for purposes of the vote to accept or reject the Plan of Reorganization.**

To complete the Ballot properly, take the following steps:

(a)  Complete Item 1.

(b)  Complete Item 2. Cast your vote with respect to the Plan by checking the proper box in Item 2. Ballots that are signed and returned, but not expressly voted with respect to the Plan, will not be counted. A Ballot may not be revoked after the Voting Deadline.

(c)  Review Item 3 carefully.

(d)  Sign and date your Ballot. Your signature is required in order for your vote and elections to be counted. If the claims voted with this Ballot is/are held by a partnership, the Ballot should be executed in the name of the partnership by a general partner. If the claims are held by a corporation, the Ballot must be executed by an officer.

(e)  If you believe that you have received the wrong Ballot, please immediately contact the Voting Agent, Financial Ballot Group LLC, at (646) 282-1800 or the Bank Agent.

(f)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing.

(g)  Provide your name and mailing address.

(h)  **Return your Ballot to the Voting Agent. The Voting Agent's address is: Financial Balloting Group LLC, 757 Third Avenue, 3rd Floor, New York, New York 10017.**

## Please Return Your Ballot Promptly!

**If you have any questions regarding this Ballot or the voting or election procedures, please call the Voting Agent, Financial Balloting Group LLC, promptly at (646) 282-1800.**

You may receive multiple mailings containing Ballots. You should vote each Ballot that you receive for all of the claims that you hold.

**Item 1. Amount of Claim.**

The undersigned certifies that as of the date of this Ballot, the undersigned was the holder (or authorized signatory) of claims in Class 6 JPM L/C Facility Claims in the following principal amount (do not include interest):

| $ |
|---|

**The amount you indicate in this Ballot will be verified against the register maintain by the agent for your claim.**

**Item 2. Vote On Plan.**

Please note that each holder of the Class 6 JPM L/C Facility Claims must vote all of his, her, or its Class 6 JPM L/C Facility Claims in a consistent fashion, and may not split the vote with respect to the Plan of Reorganization.

**THE VOTING OPTIONS ARE AS FOLLOWS (please check one):**

☐   <u>**OPTION 1.**</u>  **Vote to ACCEPT the Plan of Reorganization.**

☐   <u>**OPTION 2.**</u>  **Vote to REJECT the Plan of Reorganization.**

**A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.**

**Item 3. Certifications for Vote on Plan**

By completing and submitting this Ballot, you acknowledge (1) that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Offering Memorandum and Disclosure Statement and Annex, (2) that you have received a copy of the Offering Memorandum and Disclosure Statement and Annex, (3) that the vote on the Plan of Reorganization is being made pursuant to the terms and conditions set forth therein, and (4) **that a vote to accept the Plan of Reorganization is an affirmative consent to the releases, injunctions, and exculpation contained in Article XIII of the Plan.**

|  |  |
|---|---|
| Name of Holder: | _____ |
| Signature: | _____ |
| Print or Type Name: | _____ |
| Title (if appropriate): | _____ |
| Address: | _____ |
| Telephone Number: | _____ |
| Date: | _____ |

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL MAKE YOU OR ANY OTHER PERSON AN AGENT OF THE COMPANY OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH. NO BALLOT SHALL CONSTITUTE OR BE DEEMED TO CONSTITUTE (A) A PROOF OF CLAIM OR (B) AN ADMISSION BY THE COMPANY OF THE NATURE, VALIDITY, OR AMOUNT OF ANY CLAIM.**

## VOTING DEADLINE

**THE OFFERING DEADLINE AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 (THE "<u>VOTING DEADLINE</u>"). YOUR BALLOT MUST ACTUALLY BE RECEIVED BY FINANCIAL BALLOTING GROUP LLC (THE "<u>VOTING AGENT</u>" OR THE "<u>EXCHANGE AGENT</u>") PRIOR TO THE VOTING DEADLINE. THE VOTING AGENT'S ADDRESS IS: FINANCIAL BALLOTING GROUP LLC, 757 3RD AVENUE, 3RD FLOOR, NEW YORK, NEW YORK 10017.**

<u>EXHIBIT B-4</u>



**EXCHANGE INSTRUCTION FORM AND BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED PLAN OF REORGANIZATION OF CIT GROUP INC. AND CIT GROUP FUNDING COMPANY OF DELAWARE**

**[THIS BALLOT IS EXCLUSIVELY FOR THE USE BY HOLDERS OF CLASS 10 SENIOR UNSECURED TERM LOAN CLAIMS]**

On October 1, 2009, CIT Group Inc. (the "Company") and CIT Group Funding Company of Delaware (collectively, "CIT") commenced their exchange offer solicitation whereby CIT is seeking to exchange certain of their unsecured debt for new notes and equity in CIT Group Inc. (the "Exchange Offer"). Contemporaneously with the launch of the Exchange Offer, CIT also commenced the solicitation of votes to accept or reject the Prepackaged Plan of Reorganization of CIT Group Inc. and CIT Group Funding Company of Delaware (the "Plan of Reorganization" or the "Plan") from holders of their unsecured debt. On October 5, 2009, the Company commenced its offering (the "Offering") to exchange the outstanding indebtedness of holders of syndicated bank debt for indebtedness under junior term loan facilities incorporating the terms described in the Annex (as defined below) and in the Offering Memorandum and Disclosure Statement (as defined below) (the "Junior Credit Facilities") and equity in the Company, together with a solicitation of votes to accept or reject the Plan of Reorganization. The Exchange Offer and Plan of Reorganization are explained in greater detail in the Amended Offering Memorandum, Disclosure Statement and Solicitation of Acceptances of a Prepackaged Plan of Reorganization, dated October 16, 2009 (the "Offering Memorandum and Disclosure Statement") and Supplement No. 1 to Amended Offering Memorandum, Disclosure Statement and Solicitation of Acceptances of a Prepackaged Plan of Reorganization, dated October 23, 2009. The Offering is explained in greater detail in the annex dated October 19, 2009 to the Offering Memorandum and Disclosure Statement provided to certain holders of syndicated bank debt (the "Annex"). As discussed in the Offering Memorandum and Disclosure Statement, CIT may commence a chapter 11 case under title 11 of the United States Code and seek immediate confirmation of the Plan of Reorganization if: (a) the conditions to consummating the Exchange Offer are not satisfied and/or (b) the votes on the Plan of Reorganization are sufficient to confirm such Plan of Reorganization under the Bankruptcy Code.

This ballot (the "Ballot") is being sent to all lenders under the (a) JPY 20 Billion Syndicated Term Loan Agreement, dated as of September 30, 2005, among the Company, the lenders from time to time party thereto, and Mizuho Corporate Bank, Ltd., as Arranger, Initial Lender and Agent (the "2005 Mizuho Facility"), and (b) the $100,000,000 Five-Year Term Loan Agreement, dated as of September 29, 2006, among the CIT Group Inc., the lenders from time to time party thereto, and Mizuho Corporate Bank, Ltd., as Arranger and Agent (the "2006 Mizuho Facility" and, together with the 2005 Mizuho Facility, each a "Mizuho Facility" and collectively, the "Mizuho Facilities").

As part of CIT's proposed out-of-court restructuring, lenders under the Mizuho Facilities are being offered the opportunity (the "Offering") to exchange the existing indebtedness under the Mizuho Facilities for (a) either Series A Notes or indebtedness under the Junior Credit Facilities incorporating the terms described in the Annex and the Offering Memorandum and Disclosure Statement and (b) their *pro rata* share of New Preferred Stock (as defined in the Offering Memorandum and Disclosure Statement) on the terms described in the Annex to the Offering Memorandum and Disclosure Statement.

Consummation of the Offering with respect to the Mizuho Facilities is conditioned upon obtaining the lender consent required by the applicable facility to an amendment to the applicable loan agreement to add a provision enabling the Company to remove lenders from the facility. In the event that lender consent required to amend the Mizuho Facilities is obtained, the Company will remove accepting lenders from the Mizuho Facilities and such lenders will receive either Series A Notes or indebtedness under the Junior Credit Facilities and their *pro rata* share of New Preferred Stock in satisfaction of all obligations owed to such lenders under the Mizuho Facilities. In addition to amending Mizuho Facilities, consummation of this Offering is subject to the conditions to the consummation of the Exchange Offers as described in the Offering Memorandum and Disclosure Statement. Capitalized terms used and not defined herein have the meanings ascribed thereto in the Plan of Reorganization. We have not at this time taken any action approving a bankruptcy filing.

We also are soliciting acceptances of the Plan of Reorganization (as defined in the Offering Memorandum and Disclosure Statement) from the lenders under the Mizuho Facilities. Under the proposed Plan of Reorganization, claims under the Mizuho Facilities are classified as Class 10 Senior Unsecured Term Loan Claims.

Class 10 Senior Unsecured Term Loan Claims are impaired by the Plan of Reorganization. Each holder of an allowed Class 10 Senior Unsecured Term Loan Claim is entitled to vote on the Plan of Reorganization. Claims in Classes 10 and 11 are pari passu and shall be combined for voting purposes. The Filing Entities reserve the right to seek Bankruptcy Court approval of a merger of Class 10 and Class 11. If Class 10 votes to accept the Plan of Reorganization, on, or as soon as reasonably practicable after, the

Effective Date, each holder of an Allowed Senior Unsecured Term Loan Claim shall receive its pro rata share of (i) (a) indebtedness under credit facilities of Reorganized CIT on substantially the same terms as the Series A Notes, in lieu of a distribution of the Series A Notes or (b) Series A Notes, each (a) and (b) equal to a distribution in the amount of 70% of such holder's Allowed Senior Unsecured Term Loan Claim (which Allowed Claim constitutes principal plus accrued but unpaid prepetition interest), at each such holder's election, and (ii) New Common Interests allocated to 30% of such holder's Allowed Senior Unsecured Term Loan Claim (which Allowed Claim constitutes principal plus accrued but unpaid prepetition interest) as follows: (A) if Class 7 Canadian Senior Unsecured Note Claims votes to accept the Plan and (1) if Class 12 and Class 13 vote to accept the Plan, 0.97% of New Common Interests, (2) if Class 12 votes to accept the Plan and Class 13 does not vote to accept the Plan, 0.98% of New Common Interests, (3) if Class 12 does not vote to accept the Plan and if Class 13 votes to accept the Plan, 1.06% of New Common Interests, or (4) if neither Class 12 nor Class 13 vote to accept the Plan, 1.06% of New Common Interests or (B) if Class 7 Canadian Senior Unsecured Note Claims does not vote to accept the Plan and (1) if Class 12 and Class 13 vote to accept the Plan, 0.90% of New Common Interests, (2) if Class 12 votes to accept the Plan and Class 13 does not vote to accept the Plan, 0.92% of New Common Interests, (3) if Class 12 does not vote to accept the Plan and if Class 13 votes to accept the Plan, 0.99% of New Common Interests, or (4) if neither Class 12 nor Class 13 vote to accept the Plan, 0.99% of New Common Interests.

If Class 10 does not vote to accept the Plan of Reorganization and the Plan of Reorganization is nonetheless confirmed, on, or as soon as reasonably practicable after, the Effective Date, each holder of an Allowed Senior Unsecured Term Loan Claim shall receive its pro rata share of (i) Series A Notes, equal to a distribution in the amount of 70% of such holder's Allowed Senior Unsecured Term Loan Claim (which Allowed Claim constitutes principal plus accrued but unpaid prepetition interest) and (ii) New Common Interests allocated to 30% of such holder's Allowed Senior Unsecured Term Loan Claim (which Allowed Claim constitutes principal plus accrued but unpaid prepetition interest) as follows: (A) if Class 7 Canadian Senior Unsecured Note Claims votes to accept the Plan and (1) if Class 12 and Class 13 vote to accept the Plan, 0.97% of New Common Interests, (2) if Class 12 votes to accept the Plan and Class 13 does not vote to accept the Plan, 0.98% of New Common Interests, (3) if Class 12 does not vote to accept the Plan and if Class 13 votes to accept the Plan, 1.06% of New Common Interests, or (4) if neither Class 12 nor Class 13 vote to accept the Plan, 1.06% of New Common Interest or (B) if Class 7 Canadian Senior Unsecured Note Claims does not vote to accept the Plan and (1) if Class 12 and Class 13 vote to accept the Plan, 0.90% of New Common Interests, (2) if Class 12 votes to accept the Plan and Class 13 does not vote to accept the Plan, 0.92% of New Common Interests, (3) if Class 12 does not vote to accept the Plan and if Class 13 votes to accept the Plan, 0.99% of New Common Interests, or (4) if neither Class 12 nor Class 13 vote to accept the Plan, 0.99% of New Common Interests.

Please note that, except as provided in the Plan, the Plan contemplates (i) separate plans of reorganization for each potential debtor, and (ii) separate classes of creditors for each plan for voting and distribution purposes. Depending on the nature of the debt you hold against CIT, you may hold claims in multiple classes. The Offering Memorandum and Disclosure Statement at page (iii) contains a schedule indicating each series of debt and the corresponding Plan of Reorganization class.

**Acceptance by a lender of the Offering constitutes (i) the consent of such lender to the amendments to the Mizuho Facility contained in the applicable form of amendment annexed to the Annex, (ii) the irrevocable agreement by such lender to accept either Series A Notes or indebtedness under the Junior Credit Facilities and the New Preferred Stock on the terms of the Offering in satisfaction of all amounts required to be paid to such lender under Section 3.8 of the 2005 Mizuho Facility or Section 3.9 of the 2006 Mizuho Facility, as applicable, after giving effect to the amendments to the applicable loan agreement, (iii) if such lender elected to receive indebtedness under the Junior Credit Facilities, the irrevocable agreement by such lender to enter into the Junior Credit Facilities, subject to agreement of definitive documentation consistent with the terms described herein and customary closing conditions, and (iv) A VOTE IN FAVOR OF THE PLAN.**

**A vote to accept the Plan constitutes your consent to the releases, injunctions, and exculpation provisions specified in Article XIII of the Plan.**

**Please read and follow the attached instructions carefully. THE OFFERING DEADLINE AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 (THE "VOTING DEADLINE"). You must provide your Ballot to Mizuho Corporate Bank, Ltd., as agent under the Mizuho Facilities (the "Bank Agent") in adequate time such that your ballot is ACTUALLY RECEIVED by the Financial Balloting Group LLC (the "Voting Agent" or the "Exchange Agent"), located at 757 3ʳᵈ Avenue, 3ʳᵈ Floor, New York, New York 10017, prior to the Voting Deadline. The Bank Agent will forward your Ballot to the Voting Agent or include your ballot in a master ballot tabulating the votes of all lenders under the Mizuho Facilities only if you hold debt under the Mizuho Facilities as of the Voting Deadline. You may change your vote or withdraw your ballot at any point prior to the Voting Deadline in accordance with the provisions of the Offering Memorandum and Disclosure Statement.** Please contact the Voting Agent (as defined below) at (646) 282-1800 or the Bank Agent if you have any questions regarding the exchange or voting process.

<center>INSTRUCTIONS</center>

CIT Group Inc. and CIT Group Funding Company of Delaware (collectively, "CIT") are soliciting the votes of certain of their lenders on their proposed Offering and Plan of Reorganization, described in the Offering Memorandum and Disclosure Statement and Annex accompanying this Ballot. Please review the Offering Memorandum and Disclosure Statement carefully before you return this Ballot. Unless otherwise defined,

<center>2</center>

capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Offering Memorandum and Disclosure Statement or Plan of Reorganization.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.**

**A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.**

You may not split your vote. You must vote the entire claim that you hold to accept or to reject the Plan of Reorganization. You will be deemed to have voted the full amount of your claim in your vote. You must vote all your claims within a single class to either accept or reject that Plan. Please consult page (iii) of the Offering Memorandum and Disclosure Statement for a description of the Plan of Reorganization classes.

To ensure your exchange is valid and vote on the Plan of Reorganization is counted, you must complete, sign, and return this Ballot to the Bank Agent. The Bank Agent will provide you with instructions on where to return your Ballot. This Ballot should not be sent directly to the Voting Agent or CIT. **Unsigned Ballots will not be counted.** Ballots must be actually RECEIVED by the Voting Agent by 11:59 p.m. (New York City time) on October 29, 2009 (the "Voting Deadline"). **The Bank Agent will forward your Ballot to the Voting Agent or include your ballot in a master ballot tabulating the votes of all lenders under the Mizuho Facilities and your vote will only be counted to the extent you hold debt under the Mizuho Facilities as of the Voting Deadline. If a Ballot is received after the Voting Deadline, it may not be counted for purposes of the Offering or as a vote to accept or reject the Plan of Reorganization.**

To complete the Ballot properly, take the following steps:

(a)  Complete Item 1.

(b)  Complete Item 2. Cast your vote with respect to the Offering and/or Plan by checking the proper box in Item 2. Ballots that are signed and returned, but not expressly voted with respect the Exchange Offer and/or Plan, will not be counted. A Ballot may not be revoked after the Voting Deadline.

(c)  Optional: Complete Item 3 if you did not opt to participate in the Offering.

(d)  Review Item 4 carefully.

(e)  Sign and date your Ballot. Your signature is required in order for your vote and elections to be counted. If the claims voted with this Ballot is/are held by a partnership, the Ballot should be executed in the name of the partnership by a general partner. If the claims are held by a corporation, the Ballot must be executed by an officer.

(f)  If you believe that you have received the wrong Ballot, please immediately contact the Voting Agent, Financial Ballot Group LLC, at (646) 282-1800 or the Bank Agent.

(g)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing.

(h)  Provide your name and mailing address.

(i)  **Return your Ballot to the Bank Agent.**

### Please Return Your Ballot Promptly!

**If you have any questions regarding this Ballot
or the voting or election procedures, please call the Voting Agent,
Financial Balloting Group LLC, promptly at (646) 282-1800.**

You may receive multiple mailings containing Ballots. You should vote each Ballot that you receive for all of the claims that you hold.

**Item 1. Amount of Claim.**

The undersigned certifies that as of the date of this Ballot, the undersigned was the holder (or authorized signatory) of claims in Class 10 Senior Unsecured Term Loan Claims in the following principal amount (do not include interest):

2005 Mizuho Facility Amount:                    2006 Mizuho Facility Amount:

| $ | | $ |
|---|---|---|

**The amount you indicate in this Ballot will be verified against the register maintain by the agent for your claim.**

**Item 2. Vote On Plan.**

Please note that each holder of the Class 10 Senior Unsecured Term Loan Claims must vote all of his, her, or its Class 10 Senior Unsecured Term Loan Claims in a consistent fashion, and may not split the vote with respect to the Plan of Reorganization.

**THE VOTING OPTIONS ARE AS FOLLOWS (please check one for each Mizuho Facility under which you have a Claim):**

| 2005 Mizuho Facility | 2006 Mizuho Facility | |
|---|---|---|
| ☐ | ☐ | **OPTION 1.  PARTICIPATE in the Offering; vote to ACCEPT the Plan of Reorganization.** |
| ☐ | ☐ | **OPTION 2.  NOT PARTICIPATE in the Offering; vote to ACCEPT the Plan of Reorganization.** |
| ☐ | ☐ | **OPTION 3.  NOT PARTICIPATE in the Offering; vote to REJECT the Plan of Reorganization.** |

A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.

**Item 3.  Consent to Amendment to applicable Mizuho Facility (only complete this item if you chose Option 2 or Option 3 in Item 2 or if you did not elect any option in Item 2).**

| 2005 Mizuho Facility | 2006 Mizuho Facility | |
|---|---|---|
| | | **By checking this box the lender consents to the amendments to the applicable Mizuho Facility contained in the applicable form of amendment annexed to the Annex.** |
| ☐ | ☐ | |

**Item 4.  Certifications for Vote on Plan**

By completing and submitting this Ballot, you acknowledge (1) that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Offering Memorandum and Disclosure Statement and Annex, (2) that you have received a copy of the Offering Memorandum and Disclosure Statement and Annex, (3) that the vote on the Plan of Reorganization is being made pursuant to the terms and conditions set forth therein, and (4) **that a vote to accept the Plan of Reorganization is an affirmative consent to the releases, injunctions, and exculpation contained in Article XIII of the Plan**.

Name of Holder: _____

Signature: _____

Print or Type Name: _____

Title (if appropriate): _____

Address: _____

Telephone Number: _____

Date: _____

NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL MAKE YOU OR ANY OTHER PERSON AN AGENT OF THE COMPANY OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.  NO BALLOT SHALL CONSTITUTE OR BE DEEMED TO CONSTITUTE (A) A PROOF OF CLAIM OR (B) AN ADMISSION BY THE COMPANY OF THE NATURE, VALIDITY, OR AMOUNT OF ANY CLAIM.

## VOTING DEADLINE

THE OFFERING DEADLINE AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 (THE "VOTING DEADLINE"). YOU MUST PROVIDE YOUR BALLOT TO MIZUHO CORPORATE BANK, LTD., AS AGENT UNDER THE MIZUHO FACILITIES (THE "BANK AGENT"), IN ADEQUATE TIME SUCH THAT YOUR BALLOT IS ACTUALLY RECEIVED BY THE FINANCIAL BALLOTING GROUP LLC (THE "VOTING AGENT" OR THE "EXCHANGE AGENT") PRIOR TO THE VOTING DEADLINE. THE BANK AGENT WILL FORWARD YOUR BALLOT TO THE VOTING AGENT OR INCLUDE YOUR BALLOT IN A MASTER BALLOT TABULATING THE VOTES OF ALL LENDERS UNDER THE MIZUHO FACILITIES ONLY IF YOU HOLD DEBT UNDER THE MIZUHO FACILITIES AS OF THE VOTING DEADLINE.

<u>EXHIBIT B-5</u>

No person has been authorized to give any information or advice, or to make any representation, other than what is contained in the Offering Memorandum and Disclosure Statement and Annex accompanying this Ballot.



**EXCHANGE INSTRUCTION FORM AND BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED PLAN OF REORGANIZATION OF CIT GROUP INC. AND CIT GROUP FUNDING COMPANY OF DELAWARE**

**[THIS BALLOT IS EXCLUSIVELY FOR THE USE BY HOLDERS OF CLASS 11 SENIOR UNSECURED CREDIT AGREEMENT CLAIMS]**

On October 1, 2009, CIT Group Inc. (the "Company") and CIT Group Funding Company of Delaware (collectively, "CIT") commenced their exchange offer solicitation whereby CIT is seeking to exchange certain of their unsecured debt for new notes and equity in CIT Group Inc. (the "Exchange Offer"). Contemporaneously with the launch of the Exchange Offer, CIT also commenced the solicitation of votes to accept or reject the Prepackaged Plan of Reorganization of CIT Group Inc. and CIT Group Funding Company of Delaware (the "Plan of Reorganization" or the "Plan") from holders of their unsecured debt. On October 5, 2009, the Company commenced its offering (the "Offering") to exchange the outstanding indebtedness of holders of syndicated bank debt for indebtedness under junior term loan facilities incorporating the terms described in the Annex (as defined below) and in the Offering Memorandum and Disclosure Statement (as defined below) (the "Junior Credit Facilities") and equity in the Company, together with a solicitation of votes to accept or reject the Plan of Reorganization. The Exchange Offer and Plan of Reorganization are explained in greater detail in the Amended Offering Memorandum, Disclosure Statement and Solicitation of Acceptances of a Prepackaged Plan of Reorganization, dated October 16, 2009 (the "Offering Memorandum and Disclosure Statement") and Supplement No. 1 to Amended Offering Memorandum, Disclosure Statement and Solicitation of Acceptances of a Prepackaged Plan of Reorganization, dated October 23, 2009. The Offering (as defined below) is explained in greater detail in the annex dated October 19, 2009 to the Offering Memorandum and Disclosure Statement provided to certain holders of syndicated bank debt (the "Annex"). As discussed in the Offering Memorandum and Disclosure Statement, CIT may commence a chapter 11 case under title 11 of the United States Code (the "Bankruptcy Code") and seek immediate confirmation of the Plan of Reorganization if: (a) the conditions to consummating the Exchange Offer are not satisfied and/or (b) the votes on the Plan of Reorganization are sufficient to confirm such Plan of Reorganization under the Bankruptcy Code.

This ballot (the "Ballot") is being sent to all lenders under the (a) the 5-Year Credit Agreement, dated as of April 13, 2005, among CIT Group Inc., the several banks and other financial institutions from time to time party thereto, Citigroup Global Markets Inc. and Banc of America Securities, LLC, as joint lead arrangers and bookrunners, Bank of America, N.A. and JPMorgan Chase Bank, N.A., as syndication agents, Barclays Bank PLC, as documentation agent, and Citibank, N.A., as administrative agent (the "2005 Revolver") and (b) the 5-Year Credit Agreement, dated as of December 6, 2006, among the Company, the several banks and other financial institutions from time to time party thereto, Citigroup Global Markets Inc. and Barclays Capital, as joint lead arrangers and bookrunners, Citibank, N.A., as administrative agent, Barclays Bank PLC, as syndication agent, and Bank of America, N.A. and JPMorgan Chase Bank, N.A., as co-documentation agents (the "2006 Revolver" and, together with the 2005 Revolver, each a "Revolver" and collectively, the "Revolvers").

As part of CIT's proposed out-of-court restructuring, lenders under the Revolvers are being offered the opportunity (the "Offering") to exchange the existing indebtedness under the Revolvers for (a) either Series A Notes or indebtedness under the Junior Credit Facilities incorporating the terms described in the Annex and the Offering Memorandum and Disclosure Statement and (b) their *pro rata* share of New Preferred Stock (as defined in the Offering Memorandum and Disclosure Statement) on the terms described in the Annex to the Offering Memorandum and Disclosure Statement.

Consummation of the Offering with respect to the Revolvers is conditioned upon obtaining the consent of the majority lenders under each Revolver to certain amendments to such Revolver described herein. The amendments include deleting the requirement in Subsection 2.22 that a specified amount of commitments remain in effect under such Revolver after the removal of accepting lenders from such Revolver, and permitting the Company to make payment of amounts due to any lender that is being removed in such form and amount of non-cash consideration that is acceptable to such lender. In addition to amending the Revolvers, consummation of the Offering is subject to the conditions to the consummation of the Exchange Offers as described in the Offering Memorandum and Disclosure Statement.

We also are soliciting acceptances of the Plan of Reorganization (as defined in the Offering Memorandum and Disclosure Statement) from the lenders under the Revolvers. Under the proposed Plan of Reorganization, claims under the Revolvers are classified as Class 11 Senior Unsecured Credit Agreement Claims.

Class 11 Senior Unsecured Credit Agreement Claims are impaired by the Plan of Reorganization. Each holder of an allowed Class 11 Senior Unsecured Credit Agreement Claim is entitled to vote on the Plan of Reorganization. Claims in Classes 10 and 11 are

pari passu and shall be combined for voting purposes. The Filing Entities reserve the right to seek Bankruptcy Court approval of a merger of Class 10 and Class 11. If Class 11 votes to accept the Plan of Reorganization, on, or as soon as reasonably practicable after, the Effective Date, each holder of an Allowed Senior Unsecured Credit Agreement Claim shall receive its pro rata share of (a) (i) indebtedness under credit facilities of Reorganized CIT on substantially the same terms as the Series A Notes, in lieu of a distribution of the Series A Notes or (ii) Series A Notes, each (i) and (ii) equal to a distribution in the amount of 70% of such holder's Allowed Senior Unsecured Credit Agreement Claim (which Allowed Claim constitutes principal plus accrued but unpaid prepetition interest), at each such holder's election, and (b) New Common Interests allocated to 30% of such holder's Allowed Senior Unsecured Credit Agreement Claim (which Allowed Claim constitutes principal plus accrued but unpaid prepetition interest) as follows: (A) if Class 7 Canadian Senior Unsecured Note Claims votes to accept the Plan and (1) if Class 12 and Class 13 vote to accept the Plan, 9.37% of New Common Interests, (2) if Class 12 votes to accept the Plan and Class 13 does not vote to accept the Plan, 9.52% of New Common Interests, (3) if Class 12 does not vote to accept the Plan and if Class 13 votes to accept the Plan, 10.30% of New Common Interests, or (4) if neither Class 12 nor Class 13 vote to accept the Plan, 10.30% of New Common Interests or (B) if Class 7 Canadian Senior Unsecured Note Claims does not vote to accept the Plan and (1) if Class 12 and Class 13 vote to accept the Plan, 8.74% of New Common Interests, (2) if Class 12 votes to accept the Plan and Class 13 does not vote to accept the Plan, 8.88% of New Common Interests, (3) if Class 12 does not vote to accept the Plan and if Class 13 votes to accept the Plan, 9.60% of New Common Interests, or (4) if neither Class 12 nor Class 13 vote to accept the Plan, 9.60% of New Common Interests.

If Class 11 does not vote to accept the Plan of Reorganization and the Plan of Reorganization is nonetheless confirmed, on, or as soon as reasonably practicable after, the Effective Date, each holder of an Allowed Senior Unsecured Credit Agreement Claim shall receive its pro rata share of (i) Series A Notes, equal to a distribution in the amount of 70% of such holder's Allowed Senior Unsecured Credit Agreement Claim (which Allowed Claim constitutes principal plus accrued but unpaid prepetition interest) and (ii) New Common Interests allocated to 30% of such holder's Allowed Senior Unsecured Credit Agreement Claim (which Allowed Claim constitutes principal plus accrued but unpaid prepetition interest) as follows: (A) if Class 7 Canadian Senior Unsecured Note Claims votes to accept the Plan and (1) if Class 12 and Class 13 vote to accept the Plan, 9.37% of New Common Interests, (2) if Class 12 votes to accept the Plan and Class 13 does not vote to accept the Plan, 9.52% of New Common Interests, (3) if Class 12 does not vote to accept the Plan and if Class 13 votes to accept the Plan, 10.30% of New Common Interests, or (4) if neither Class 12 nor Class 13 vote to accept the Plan, 10.30% of New Common Interests or (B) if Class 7 Canadian Senior Unsecured Note Claims does not vote to accept the Plan and (1) if Class 12 and Class 13 vote to accept the Plan, 8.74% of New Common Interests, (2) if Class 12 votes to accept the Plan and Class 13 does not vote to accept the Plan, 8.88% of New Common Interests, (3) if Class 12 does not vote to accept the Plan and if Class 13 votes to accept the Plan, 9.60% of New Common Interests, or (4) if neither Class 12 nor Class 13 vote to accept the Plan, 9.60% of New Common Interests.

Please note that, except as provided in the Plan, the Plan contemplates (i) separate plans of reorganization for each potential debtor, and (ii) separate classes of creditors for each plan for voting and distribution purposes. Depending on the nature of the debt you hold against CIT, you may hold claims in multiple classes. The front of the Offering Memorandum and Disclosure Statement contains a schedule indicating each series of debt and the corresponding Plan of Reorganization class.

**Acceptance by a lender of the Offering constitutes (i) the consent of such lender to the amendments to the applicable Revolver contained in the applicable form of amendment annexed to the Annex, (ii) the irrevocable agreement by such lender to accept either Series A Notes or indebtedness under the Junior Credit Facilities and the New Preferred Stock on the terms of the Offering in satisfaction of all amounts required to be paid to such lender under Subsection 2.22 of the 2005 Revolver or the 2006 Revolver, after giving effect to the amendments to the applicable loan agreement, (iii) if such lender elected to receive indebtedness under the Junior Credit Facilities, the irrevocable agreement by such lender to enter into the Junior Credit Facilities, subject to agreement of definitive documentation consistent with the terms described herein and customary closing conditions, and (iv) A VOTE IN FAVOR OF THE PLAN.**

A vote to accept the Plan constitutes your consent to the releases, injunctions, and exculpation provisions specified in Article XIII of the Plan.

Please read and follow the attached instructions carefully. **THE OFFERING DEADLINE AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 (THE "VOTING DEADLINE"). You must provide your Ballot in adequate time such that your ballot is ACTUALLY RECEIVED by the Financial Balloting Group LLC (the "Voting Agent" or the "Exchange Agent"), located at 757 3rd Avenue, 3rd Floor, New York, New York 10017, prior to the Voting Deadline. You may change your vote or withdraw your ballot at any point prior to the Voting Deadline in accordance with the provisions of the Offering Memorandum and Disclosure Statement.** Please contact the Voting Agent (as defined below) at (646) 282-1800 or Citibank, N.A., as administrative agent under the Revolvers (the "Bank Agent") if you have any questions regarding the exchange or voting process.

## INSTRUCTIONS

CIT Group Inc. and CIT Group Funding Company of Delaware (collectively, "CIT") are soliciting the votes of certain of their lenders on their proposed Offering and Plan of Reorganization, described in the Offering Memorandum and Disclosure Statement and Annex accompanying this Ballot. Please review the Offering Memorandum and Disclosure Statement carefully before you return this Ballot. Unless otherwise defined,

capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Offering Memorandum and Disclosure Statement or Plan of Reorganization.

This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.

A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.

You may not split your vote within a Revolver. You must vote the entire claim that you hold for a particular revolver to accept or to reject the Plan of Reorganization, and you may vote a different way for your holdings under each Revolver, if applicable. You will have been deemed to have voted the full amount of your claim for each Revolver in your vote. You must vote all your claims with respect to each Revolver within a single class to either accept or reject that Plan. Please consult the front of the Offering Memorandum and Disclosure Statement for a description of the Plan of Reorganization classes.

To ensure your exchange is valid and vote on the Plan of Reorganization is counted, you must complete, sign, and return this Ballot to the Voting Agent. Do not return the Ballot to the Bank Agent or directly to CIT. **Unsigned Ballots will not be counted.** Ballots must be actually RECEIVED by the Voting Agent by 11:59 p.m. (New York City time) on October 29, 2009 (the "Voting Deadline"). **The Bank Agent will verify your holdings under the Revolvers and your vote will only be counted to the extent you hold debt under the Revolvers as of the Voting Deadline. If a Ballot is received after the Voting Deadline, it may not be counted for purposes of the Offering or as a vote to accept or reject the Plan of Reorganization.**

To complete the Ballot properly, take the following steps:

(a) Complete Item 1.

(b) Complete Item 2. Cast your vote with respect to the Offering and/or Plan by checking the proper box in Item 2. Ballots that are signed and returned, but not expressly voted with respect the Exchange Offer and/or Plan, will not be counted. A Ballot may not be revoked after the Voting Deadline.

(c) Optional: Complete Item 3 if you did not opt to participate in the Offering.

(d) Review Item 4 carefully.

(e) Sign and date your Ballot. Your signature is required in order for your vote and elections to be counted. If the claims voted with this Ballot is/are held by a partnership, the Ballot should be executed in the name of the partnership by a general partner. If the claims are held by a corporation, the Ballot must be executed by an officer.

(f) If you believe that you have received the wrong Ballot, please immediately contact the Voting Agent, Financial Ballot Group LLC, at (646) 282-1800 or the Bank Agent.

(g) If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing.

(h) Provide your name and mailing address.

(i) **Return your Ballot to the Voting Agent. The Voting Agent's address is: Financial Balloting Group LLC, 757 Third Avenue, 3rd Floor, New York, New York 10017.**

## Please Return Your Ballot Promptly!

**If you have any questions regarding this Ballot
or the voting or election procedures, please call the Voting Agent,
Financial Balloting Group LLC, promptly at (646) 282-1800.**

You may receive multiple mailings containing Ballots. You should vote each Ballot that you receive for all of the claims that you hold.

**Item 1. Amount of Claim.**

The undersigned certifies that as of the date of this Ballot, the undersigned was the holder (or authorized signatory) of claims in Class 11 Senior Unsecured Credit Agreement Claims in the following principal amount (do not include interest):

| 2005 Revolver Amount: | 2006 Revolver Amount: |
|---|---|
| $ | $ |

**The amount you indicate in this Ballot will be verified against the register maintain by the agent for your claim.**

**Item 2. Vote On Plan.**

Please note that each holder of the Class 11 Senior Unsecured Credit Agreement Claims must vote all of his, her, or its Class 11 Senior Unsecured Credit Agreement Claims within a particular Revolver in a consistent fashion, and may not split the vote with respect to the Plan of Reorganization within a particular Revolver.

**THE VOTING OPTIONS ARE AS FOLLOWS (please check one for each Revolver under which you have a Claim):**

| 2005 Revolver | 2006 Revolver | |
|---|---|---|
| ☐ | ☐ | **OPTION 1. PARTICIPATE** in the Offering; vote to **ACCEPT** the Plan of Reorganization. |
| ☐ | ☐ | **OPTION 2. NOT PARTICIPATE** in the Offering; vote to **ACCEPT** the Plan of Reorganization. |
| ☐ | ☐ | **OPTION 3. NOT PARTICIPATE** in the Offering; vote to **REJECT** the Plan of Reorganization. |

A vote to accept the Plan constitutes your consent to the releases specified in Article XIII of the Plan.

**Item 3. Consent to Amendment to applicable Revolver** (only complete this item if you chose Option 2 or Option 3 in Item 2 or if you did not elect any option in Item 2).

| 2005 Revolver | 2006 Revolver | |
|---|---|---|
| ☐ | ☐ | **By checking this box the lender consents to the amendments to the applicable Revolver contained in the applicable form of amendment annexed to the Annex.** |

**Item 4. Certifications for Vote on Plan**

By completing and submitting this Ballot, you acknowledge (1) that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Offering Memorandum and Disclosure Statement and Annex, (2) that you have received a copy of the Offering Memorandum and Disclosure Statement and Annex, (3) that the vote on the Plan of Reorganization is being made pursuant to the terms and conditions set forth therein, and (4) **that a vote to accept the Plan of Reorganization is an affirmative consent to the releases, injunctions, and exculpation contained in Article XIII of the Plan.**

| | |
|---|---|
| Name of Holder: | _____ |
| Signature: | _____ |
| Print or Type Name: | _____ |
| Title (if appropriate): | _____ |
| Address: | _____ |
| Telephone Number: | _____ |
| Date: | _____ |

NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL MAKE YOU OR ANY OTHER PERSON AN AGENT OF THE COMPANY OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH. NO BALLOT SHALL CONSTITUTE OR BE DEEMED TO CONSTITUTE (A) A PROOF OF CLAIM OR (B) AN ADMISSION BY THE COMPANY OF THE NATURE, VALIDITY, OR AMOUNT OF ANY CLAIM.

## VOTING DEADLINE

THE OFFERING DEADLINE AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 (THE "VOTING DEADLINE").  YOUR BALLOT MUST ACTUALLY BE RECEIVED BY FINANCIAL BALLOTING GROUP LLC (THE "VOTING AGENT" OR THE "EXCHANGE AGENT") PRIOR TO THE VOTING DEADLINE.

THE VOTING AGENT'S ADDRESS IS:
FINANCIAL BALLOTING GROUP LLC
757 3RD AVENUE, 3RD FLOOR
NEW YORK, NEW YORK  10017

# EXHIBIT C

**No person has been authorized to give any information or advice, or to make any representation, other than what is contained in the Offering Memorandum.**

**This Master Ballot has been updated to reflect the new expiration of the Delaware Funding Offers. No other changes have been made. <u>You may return either this version OR the original version of the Master Ballot.</u>**



**MASTER BALLOT FOR ACCEPTING OR REJECTING THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF CIT GROUP INC. AND CIT FUNDING COMPANY OF DELAWARE**

**[THIS MASTER BALLOT IS EXCLUSIVELY FOR USE BY HOLDERS OF NON-CERTIFICATED SECURITIES IN CLASS 7 CANADIAN SENIOR UNSECURED NOTE CLAIMS, CLASS 8 LONG-DATED SENIOR UNSECURED NOTE CLAIMS, CLASS 9 SENIOR UNSECURED NOTE CLAIMS, CLASS 12 SENIOR SUBORDINATED NOTE CLAIMS, AND CLASS 13 JUNIOR SUBORDINATED NOTE CLAIMS]**

On October 1, 2009, CIT Group Inc. and CIT Group Funding Company of Delaware (collectively, "<u>CIT</u>") commenced their exchange offer solicitation (the "<u>October 1 Offers</u>") whereby CIT is seeking to exchange certain of their unsecured debt for new notes and equity in CIT Group Inc. Contemporaneously with the launch of the October 1 Offers, CIT also commenced the solicitation of votes to accept or reject the Prepackaged Plan of Reorganization of CIT Group Inc. and CIT Group Funding Company of Delaware (as amended and modified, the "<u>Plan of Reorganization</u>") from holders of their unsecured debt. On October 16, 2009, CIT Group Inc. commenced its exchange offer solicitation for certain long term notes whereby CIT Group Inc. is seeking to exchange certain of their long-term maturity debt for new notes and equity in CIT Group Inc. (the "<u>Long Term CIT Offers</u>" and together with the October 1 Offers, the "<u>Exchange Offer</u>"). The holders of notes subject to the Long Term CIT Offers are also having their votes solicited in connection with the Plan of Reorganization. As discussed in the Offering Memorandum, CIT may commence a chapter 11 case under the Bankruptcy Code and seek immediate confirmation of the Plan of Reorganization: (a) if the conditions to consummating the Exchange Offer are not satisfied and (b) the votes on the Plan of Reorganization are sufficient to confirm such Plan of Reorganization under title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

Holders of unsecured notes (the "<u>Old Notes</u>") subject to the October 1 Offers are identified in the Offering Memorandum as the Original CIT Old Notes and the Delaware Funding Old Notes (collectively, the "<u>October 1 Offer Notes</u>").[1] The Old Notes subject to the Long Term CIT Offers are identified in the Offering Memorandum as the CIT Long Term Old Notes. PLEASE NOTE THAT THERE ARE DIFFERENT EXCHANGE DEADLINES FOR THE OCTOBER 1 OFFERS AND THE LONG TERM CIT OFFERS.

<u>Beneficial owner instructions with respect to the Old Notes in connection with the Exchange Offer and/or Plan of Reorganization are to be relayed to you, as the bank, broker, or other dealer (the "Nominee") holding the Old Notes on their behalf.</u> Your firm will need to tender (or "block") your clients' underlying Old Notes on their behalf, in accordance with their instructions. For U.S. CUSIPS, the Old Notes will need to be tendered into the appropriate "contra" CUSIP through The Depository Trust Company ("<u>DTC</u>"). For all other ISIN codes, follow the instructions of the depository holding the Old Notes. There are three different voting choices in connection with the Exchange Offer and Plan of Reorganization, which are outlined in greater detail below. Each option has its own corresponding "contra" CUSIP.

This master ballot (the "<u>Master Ballot</u>") was designed to transmit the voting selections of your clients (<u>i.e.</u>, the beneficial holders of the Old Notes) to the Voting Agent and to confirm the numerosity requirement for confirmation of a plan under Bankruptcy Code section 1126. By providing instructions to your firm, the beneficial holder of the Old Notes (the "<u>Beneficial Holder</u>") is requesting that you (1) tender their underlying Notes on their behalf in accordance with their instructions, and (2) execute a master ballot on their behalf that reflects their instructions with respect to the Plan. Beneficial Holder instructions with respect to their Notes have the same effect as if they had completed and returned a physical ballot to indicate their vote with respect to the Plan. In addition to tendering the underlying Notes as requested by the Beneficial Holder, <u>you are required to return a Master Ballot reflecting the corresponding instructions.</u>

Please note that, except as provided in the Plan, the Plan contemplates (i) separate plans of reorganization for each Debtor and (ii) separate classes of creditors for each plan for voting and distribution purposes. Depending on the debt that is held against

---

[1] The Equity Units (CUSIP 125581405) issued by CIT Group Inc. have not been included in the October 1 Offers but are included in the solicitation of acceptances for the Plan of Reorganization. The voting deadline applicable to the Equity Units is the same as for the October 1 Offer Notes. Votes to accept or the reject by Plan of Reorganization by holders of Equity Units should be reflected on this Master Ballot.

CIT, a Beneficial Holder may have claims in multiple classes. The front of the Offering Memorandum contains a schedule indicating each series of debt and the corresponding Plan of Reorganization class.

Please note that a Beneficial Holder that gives an instruction to participate in the Exchange Offer is also voting to accept the Plan.

Please read and follow the attached instructions carefully. To correctly register your clients' instructions, you must have (1) electronically delivered ("tendered" or "blocked") their Old Notes into the correct account for that purpose by the relevant Voting Deadline, and must have submitted a Master Ballot with a report of beneficial holder instructions by 8:00 p.m., New York City time, on the following business day in accordance with the directions provided below. Withdrawals from the Exchange Offer and modifications to votes to accept or reject the Plan are not permitted after the Voting Deadline.

---

**DEADLINES FOR THE OCTOBER 1 OFFER NOTES AND OCTOBER 1 OFFERS**

THE EXCHANGE OFFER DEADLINE FOR THE OCTOBER 1 OFFERS AND DEADLINE FOR OCTOBER 1 OFFER NOTE HOLDERS TO VOTE TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION IS 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 (THE "ORIGINAL EXPIRATION DATE"), UNLESS EXTENDED BY CIT. You must (1) electronically deliver ("tender") any October 1 Offer Notes into the appropriate account by the Original Expiration Date and (2) submitted a master ballot with a report of beneficial owner instructions by 8:00 p.m. (New York City time) on October 30, 2009. The original Master Ballot must be received by November 3, 2009 by 5:00 p.m. (New York City time).

---

**DEADLINES FOR THE DELAWARE FUNDING OLD NOTES AND DELAWARE FUNDING OFFERS**

THE EXCHANGE OFFER DEADLINE AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION FOR THE DELAWARE FUNDING OFFERS IS 11:59 P.M. (NEW YORK CITY TIME) ON NOVEMBER 5, 2009 UNLESS EXTENDED BY CIT (THE "DELAWARE FUNDING OFFERS EXPIRATION DATE"). HOLDERS OF DELAWARE FUNDING OLD NOTES MAY TENDER DELAWARE FUNDING OLD NOTES FOR EARLY TENDER UP TO 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 UNLESS EXTENDED BY CIT (THE "DELAWARE FUNDING EARLY TENDER DATE"). You must (1) electronically deliver ("tender") your Delaware Funding Old Notes into the appropriate account by the Delaware Funding Offers Expiration Date and (2) submit a master ballot with a report of beneficial owner instructions by 8:00 p.m. (New York City time) on November 6, 2009. The original Master Ballot must be received by November 10, 2009.

---

**DEADLINES FOR THE CIT LONG TERM OLD NOTES AND LONG TERM CIT OFFERS**

THE EXCHANGE OFFER DEADLINE AND DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION FOR THE LONG TERM CIT OFFERS IS 11:59 P.M. (NEW YORK CITY TIME) ON NOVEMBER 13, 2009 UNLESS EXTENDED BY CIT (THE "LONG TERM EXPIRATION DATE"). HOLDERS OF CIT LONG TERM OLD NOTES MAY TENDER CIT LONG TERM OLD NOTES FOR EARLY ACCEPTANCE UP TO 11:59 P.M. (NEW YORK CITY TIME) ON OCTOBER 29, 2009 UNLESS EXTENDED BY CIT (THE "LONG TERM NOTES EARLY ACCEPTANCE DATE"). You must (1) electronically deliver ("tender") any CIT Long Term Old Notes into the appropriate account by the Long Term Expiration Date and (2) submitted a master ballot with a report of beneficial owner instructions by 8:00 p.m. (New York City time) on November 16, 2009. The original Master Ballot must be received by November 18, 2009.

---

## INSTRUCTIONS FOR COMPLETING THE BALLOT

CIT is soliciting the votes of certain of their creditors on their proposed Plan, described in and annexed to the Offering Memorandum. Please review the Offering Memorandum and Plan carefully before you return this Master Ballot. Unless otherwise defined, capitalized terms used herein have the meanings ascribed to them in the Offering Memorandum and Plan.

**DEADLINES:**

**OCTOBER 1 OFFER NOTES AND OCTOBER 1 OFFERS:**

1. **Voting Deadline is October 29, 2009 at 11:59 p.m.** (New York City time) for you to TENDER ("block") the underlying bonds in accordance with your clients' instructions;

2. **Master Ballot Deadline is October 30, 2009 at 8:00 p.m.** (New York City time) for you to EMAIL the Master Ballot to the Voting Agent (with accompanying Excel spreadsheet of client information); and

3. **Deadline for the ORIGINAL Master Ballot is November 3, 2009 at 5:00 p.m.** (New York City time) to be received by the Voting Agent.

**DELAWARE FUNDING OLD NOTES AND DELAWARE FUNDING OFFERS:**

1. **Voting Deadline is November 5, 2009 at 11:59 p.m.** (New York City time) for you to TENDER ("block") the underlying bonds in accordance with your clients' instructions;

2. **Master Ballot Deadline is November 6, 2009 at 8:00 p.m.** (New York City time) for you to EMAIL the Master Ballot to the Voting Agent (with accompanying Excel spreadsheet of client information); and

3. **Deadline for the ORIGINAL Master Ballot is November 10, 2009 at 5:00 p.m.** (New York City time) to be received by the Voting Agent.

**CIT LONG TERM OLD NOTES AND LONG TERM CIT OFFERS:**

4. **Voting Deadline is November 13, 2009 at 11:59 p.m.** (New York City time) for you to TENDER ("block") the underlying bonds in accordance with your clients' instructions;

5. **Master Ballot Deadline is November 16, 2009 at 8:00 p.m.** (New York City time) for you to EMAIL the Master Ballot to the Voting Agent (with accompanying Excel spreadsheet of client information); and

6. **Deadline for the ORIGINAL Master Ballot is November 18, 2009 at 5:00 p.m.** (New York City time) to be received by the Voting Agent.

Complete, sign, and date this Master Ballot and return it so that it is received in electronic format via electronic mail on by 8:00 p.m., New York City time, on the relevant deadline for the receipt of the Master Ballot (the "Master Ballot Deadline"), by Financial Balloting Group LLC (the "Voting Agent"). Unless the report of clients for which you are voting number fewer than five (5) accounts, the Voting Agent will request that the attachments be provided in a specified Microsoft Excel format, to be made available on http://cit.fbgregister.com. The ORIGINAL Master Ballot must be received by the Voting Agent three business days after the relevant Voting Deadline by 5:00 P.M., New York City time). If this Master Ballot (and any attachments thereto) is not completed, signed, and timely received by the Master Ballot Deadline, the votes transmitted hereby will not be counted and your client's elections may be reversed.

The Email address for returning Master Ballots with attached beneficial holder instructions on the Master Ballot Deadline is: CITBALLOTING@FBGLLC.COM.

The street address for returning ORIGINAL Master Ballots (deadline of 5:00 p.m., New York City time, on the Deadline for the Original Master Ballot) is:

> Financial Balloting Group LLC
> Attn: CIT Ballot Tabulation
> 757 Third Avenue, 3rd Floor
> New York, NY 10017
> Telephone: +1-646-282-1800

**HOW TO VOTE:**

    **1. If you are transmitting the votes of any Beneficial Holders of Old Notes, including yourself, you must:**

    (a) deliver the Offering Memorandum and take any action required to enable each Beneficial Holder to (i) review the Offering Memorandum and Ballot annexed thereto to determine how they wish to vote and (ii) return their instructions to you in sufficient time to enable you to tender the underlying Old Notes by the Voting Deadline in accordance with the Beneficial Holder's instructions and complete the Master Ballot and deliver it to the Voting Agent before the Master Ballot Deadline.

    (b) With regard to any Beneficial Holder instructions provided to you, you must (x) TENDER ("Block") the Old Notes of each Beneficial Holder who provided instructions to you by the Voting Deadline into the appropriate contra-CUSIP for U.S. CUSIPS, or, for non-U.S. ISINS, in accordance with the directions of the depository holding the Old Notes; (y) execute the Master Ballot so as to reflect the voting instructions given to by the Beneficial Holders for whom you hold Old Notes, and (z) forward the Master Ballots (and any necessary schedules) to the Voting Agent by the Master Ballot Deadline.

    **2. To complete the Master Ballot properly, take the following steps:**

    (a) Provide appropriate information for each of the items on the Master Ballot. Vote as instructed by the Beneficial Holder with respect to Option 1, Option 2, or Option 3. Do not record any vote for holders that instructed you to take Option 4, or who failed to provide a timely voting instruction. Please provide information for each individual Beneficial Holder for whom you are voting Old Notes. You may attach the information required by Item 3 in the form of a report (preferably in Microsoft Excel format) containing the same information required below.

    (b) Read item 4 carefully.

    (c) Sign and date your Master Ballot.

    (d) Provide your name and mailing address.

    (e) Authorize The Depository Trust Company, Euroclear Bank, Clearstream Bank, or other depository, as appropriate, through which the Old Notes have been tendered (blocked), as applicable, to provide appropriate confirmation to the Voting Agent with respect thereto.

    (f) Deliver your Master Ballot (and any attachments thereto) to the Voting Agent before the Master Ballot Deadline.

**PLEASE NOTE: No Ballot or Master Ballot constitutes or will be deemed to constitute (a) a proof of claim or equity interest or (b) an admission by the Debtors of the nature, validity, or amount of any claim or equity interest.**

**Item 1. Certification Of Authority To Vote.** The undersigned certifies that the undersigned was a bank, broker, or other accountholder for the Beneficial Holders of the aggregate amount of Old Notes listed in Item 2 below, and is the registered or record holder of the securities (whether through a securities depository or otherwise), and accordingly, has full power and authority to vote to accept or reject the Plan of Reorganization on behalf of the Beneficial Holders of the Old Notes described in Item 2.

**Item 2. Voting Procedures.**

**BENEFICIAL HOLDERS HAVE THREE VOTING OPTIONS, AS FOLLOWS:**

**OPTION 1. PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

**OPTION 2. NOT PARTICIPATE in the Exchange Offer; vote to ACCEPT the Plan of Reorganization.**

**OPTION 3. NOT PARTICIPATE in the Exchange Offer; vote to REJECT the Plan of Reorganization.**

    **A vote to accept the Plan constitutes the Beneficial Holder's consent to the releases specified in Article XIII of the Plan. A Beneficial Holder of Old Notes who tenders into the Exchange Offer is also voting to accept the Plan.**

    IN ORDER TO EFFECT YOUR CLIENTS' INSTRUCTIONS, YOU MUST (1) TENDER THE UNDERLYING BONDS IN ACCORDANCE WITH EACH CLIENT'S INSTRUCTIONS, AND (2) EXECUTE AND RETURN THE MASTER BALLOT TO THE VOTING AGENT REFLECTING THOSE INSTRUCTIONS BY THE NEXT BUSINESS DAY.

BENEFICIAL HOLDERS MAY ALSO INSTRUCT WITH RESPECT TO A FOURTH OPTION, which is also the default option for those holders that do not provide any instructions:

**OPTION 4.  Take no action; NOT PARTICIPATE in the Exchange Offer; NO VOTE on the Plan of Reorganization.**

DO NOT TENDER THE UNDERLYING NOTES OF BENEFICIAL HOLDERS THAT INSTRUCT YOU TO TAKE NO ACTION, OR FAIL TO PROVIDE TIMELY INSTRUCTION, AND DO NOT INCLUDE ANYTHING ON THE MASTER BALLOT WITH RESPECT TO SUCH ACCOUNTS.

PLEASE NOTE THAT HOLDERS THAT INSTRUCT THEIR NOMINEE TO TAKE NO ACTION ON THEIR BEHALF, OR FAIL TO PROVIDE TIMELY INSTRUCTIONS TO THAT FIRM, MAY NEVERTHELESS BE BOUND BY THE TERMS OF THE PLAN IF THE PLAN OF REORGANIZATION IS CONSUMMATED.

**Item 3.  Votes Cast on the Plan of Reorganization.**  The undersigned transmits the following votes of Beneficial Holders in respect of their Old Notes and certifies that the following Beneficial Holders of the Old Notes, as identified by their respective customer account numbers set forth below, are Beneficial Holders of those securities and have delivered to the undersigned instructions casting such votes.  Indicate, in the appropriate column, the CUSIP or ISIN Number of the Old Note, the name or account number of the Beneficial Holder, the aggregate face amount voted for each account, and the VOI Number or Blocking Number for each account, or attach such information to this Master Ballot, in the form of the following tables.

Please note that you must vote all the Old Notes owned by such Beneficial Holder.  For purposes of tendering and tabulating the vote, each Beneficial Holder who votes should be deemed to have voted the full amount of Old Notes owned by the Beneficial Holder according to your records.  A Beneficial Holder may not split the vote and, accordingly, a Beneficial Holder that has provided instructions that partially accepts and partially rejects the Plan and/or partially takes no action may not be counted.

**IF THE NUMBER OF CLIENTS FOR WHICH YOU ARE VOTING IS GREATER THAN FIVE, THE VOTING AGENT WILL REQUEST THAT THE ATTACHMENTS BE PROVIDED IN A SPECIFIED MICROSOFT EXCEL FORMAT, TO BE MADE AVAILABLE ON HTTP://CIT.FBGREGISTER.COM.**

[Continued next page]

**OPTION 1** - Holders that instructed you that they wished to take Option 1 (Vote to participate in the EXCHANGE OFFER and required to ACCEPT the Plan).

| OPTION 1 - Participating in Exchange Offer; voting to ACCEPT the Plan | | | |
|---|---|---|---|
| **CUSIP OR ISIN CODE** | **Beneficial Holder Account Number** | **Face Amount of Notes** | **VOI Number or Blocking Number** |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

**OPTION 2** - Holders that instructed you that they wished to take Option 2 (Not participate in the Exchange Offer; vote to ACCEPT the Plan).

| OPTION 2 - Not Participating in Exchange Offer; voting to ACCEPT the Plan | | | |
|---|---|---|---|
| **CUSIP OR ISIN CODE** | **Beneficial Holder Account Number** | **Face Amount of Notes** | **VOI Number or Blocking Number** |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

**OPTION 3** - Holders that instructed you that they wished to take Option 3 (Not participate in the Exchange Offer; vote to REJECT the Plan).

| OPTION 3 - Not Participating in Exchange Offer; voting to REJECT the Plan | | | |
|---|---|---|---|
| **CUSIP OR ISIN CODE** | **Beneficial Holder Account Number** | **Face Amount of Notes** | **VOI Number or Blocking Number** |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

**Item 4.** By signing this Master Ballot, the undersigned certifies (i) that each Beneficial Holder of Old Notes whose votes are being transmitted by this Master Ballot has received copies of the Offering Memorandum (including the exhibits thereto), (ii) that the undersigned and has received instructions from each Beneficial Holder whose vote is transmitted by this Master Ballot in accordance with the option selected; (iii) that the underlying Old Notes positions relating to the votes transmitted hereby have been tendered (blocked) in accordance with the option selected; and (iv) that it authorizes the depository through which the Old Notes have been tendered (blocked), as applicable, to provide appropriate confirmation to the Voting Agent with respect thereto.

Name of Bank, Broker, or Other Nominee or Accountholder: _____

Depository through which Noteholder Claims are tendered (blocked): ❏ DTC ❏ Euroclear ❏ Clearstream ❏ Other (please specify): _____

Participant Number: _____

Name of Voter: _____

Signature: _____

Print or Type Name: _____

Title (if appropriate): _____

Address: _____

Telephone Number: _____

Date: _____

---

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL MAKE YOU OR ANY OTHER PERSON AN AGENT OF THE COMPANY OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH. NO BENEFICIAL OWNER BALLOT OR MASTER BALLOT SHALL CONSTITUTE OR BE DEEMED TO CONSTITUTE (A) A PROOF OF CLAIM OR (B) AN ADMISSION BY THE COMPANY OF THE NATURE, VALIDITY, OR AMOUNT OF ANY CLAIM. THIS MASTER BALLOT IS *NOT* A LETTER OF TRANSMITTAL AND MAY *NOT* BE USED FOR ANY OTHER PURPOSE THAN TO CAST VOTES TO ACCEPT OR REJECT THE PLAN.**

---

<div style="border: 1px solid black; padding: 10px;">

**DEADLINES**

**OCTOBER 1 OFFER NOTES AND OCTOBER 1 OFFERS:**

1. **Voting Deadline is October 29, 2009 at 11:59 p.m.** (New York City time) for you to TENDER ("block") the underlying bonds in accordance with your clients' instructions;

2. **Master Ballot Deadline is October 30, 2009 at 8:00 p.m.** (New York City time) for you to EMAIL the Master Ballot to the Voting Agent (with accompanying Excel spreadsheet of client information); and

3. **Deadline for the ORIGINAL Master Ballot is November 3, 2009 at 5:00 p.m.** (New York City time) to be received by the Voting Agent.

**DELAWARE FUNDING OLD NOTES AND DELAWARE FUNDING OFFERS:**

4. **Voting Deadline is November 5, 2009 at 11:59 p.m.** (New York City time) for you to TENDER ("block") the underlying bonds in accordance with your clients' instructions;

5. **Master Ballot Deadline is November 6, 2009 at 8:00 p.m.** (New York City time) for you to EMAIL the Master Ballot to the Voting Agent (with accompanying Excel spreadsheet of client information); and

6. **Deadline for the ORIGINAL Master Ballot is November 10, 2009 at 5:00 p.m.** (New York City time) to be received by the Voting Agent.

**CIT LONG TERM OLD NOTES AND LONG TERM CIT OFFERS:**

1. **Voting Deadline is November 13, 2009 at 11:59 p.m.** (New York City time) for you to TENDER ("block") the underlying bonds in accordance with your clients' instructions;

2. **Master Ballot Deadline is November 16, 2009 at 8:00 p.m.** (New York City time) for you to EMAIL the Master Ballot to the Voting Agent (with accompanying Excel spreadsheet of client information); and

3. **Deadline for the ORIGINAL Master Ballot is November 18, 2009 at 5:00 p.m.** (New York City time) to be received by the Voting Agent.

</div>

<div style="border: 1px solid black; padding: 10px;">

**ADDITIONAL INFORMATION**

**If you have any questions regarding the Master Ballot or the voting procedures, please call the Voting Agent at +1 646-282-1800.**

</div>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :

In re:                                   :     Chapter 11
                                          :

CIT GROUP INC. and                 :     Case No. 09-16565
CIT GROUP FUNDING COMPANY    :
OF DELAWARE LLC,               :
                                          :

               Debtors.           :     (Jointly Administered)
                                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER (A) SCHEDULING COMBINED HEARING ON ADEQUACY OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN, (B) ESTABLISHING PROCEDURES FOR OBJECTING TO DISCLOSURE STATEMENT AND PLAN, (C) APPROVING FORM AND MANNER OF NOTICE OF COMBINED HEARING, AND (D) WAIVING REQUIREMENT FOR MEETINGS OF CREDITORS OR EQUITY SECURITY HOLDERS

Upon the motion (the "Motion")[1] of the Debtors for entry of (i) an order (the

"Scheduling Order") (a) scheduling a combined hearing on the adequacy of the Debtors'

Disclosure Statement, approval of the Solicitation Procedures, confirmation of the Plan (the

"Combined Hearing"), (b) approving the procedures for objecting to the adequacy of the

Disclosure Statement, approval of the Solicitation Procedures, and confirmation of the Plan, (c)

approving form and manner of the Combined Notice and (d) waiving the requirement for

meetings of creditors or equity security holders; and (ii) an order (the "Confirmation Order") (a)

approving the Solicitation Procedures, (b) approving the adequacy of the Disclosure Statement,

and (c) confirming the Plan; and upon the First Day Declaration; and due and sufficient notice of

the Motion having been given under the particular circumstances; and it appearing that no other

or further notice need be given; and it appearing that relief requested is in the best interests of the

---

[1]     Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

Debtors, their estates, and creditors; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby

<div align="center">ORDERED, ADJUDGED, AND DECREED THAT:</div>

1. The Motion is GRANTED as set forth in this Scheduling Order.

2. The Combined Hearing (at which time the Court will consider, among other things, the adequacy of the Offering Memorandum and Disclosure Statement and confirmation of the Plan) will be held before the Honorable _____, United States Bankruptcy Judge, in court room ___ of the United States Bankruptcy Court, One Bowling Green, New York, NY 10004, on _____, 2009 at _:__ _.m. (prevailing Eastern time).  The Combined Hearing may be continued from time to time by the Court without further notice.

3. Any objections to the approval of the Disclosure Statement, adequacy of the Disclosure Statement, or confirmation of the Plan must be filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, together with proof of service thereof, and served by personal service or by overnight delivery, so as to be ACTUALLY RECEIVED no later than 4:00 p.m. (prevailing Eastern Time) on _____, 2009 (the "Objection Deadline") by those parties on the Master Service List of any case management order entered by the Court.

4. In addition, any objections to the Solicitation Procedures, Disclosure Statement, or confirmation of the Plan must:

  (a) be in writing;

  (b) comply with the Bankruptcy Rules, the Local Bankruptcy Rules and other case management rules and orders of this Court;

(c)     state the name and address of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors; and

(d)     state with particularity the legal and factual basis for such objection.

5.     Any objections not timely filed and served in the manner set forth in this Scheduling Order may not be considered and may be overruled.

6.     The Debtors are authorized to combine the notice of the Combined Hearing with the notice of the commencement of the chapter 11 cases.

7.     The form of Combined Notice is APPROVED, and the Debtors shall mail or cause to be mailed a copy of the Combined Notice, in substantially the form attached hereto as Exhibit A, as soon as reasonably possible after the entry of this Scheduling Order upon all of the Debtors' creditors.  The Debtors shall not be required to serve the Combined Notice upon their interest holders; provided, however, the Debtors shall serve the Combined Notice upon their known holders of preferred interests.

8.     The Debtors shall publish a notice substantially similar to the Combined Notice in the Wall Street Journal (global edition) and any other publications the Debtors deem necessary.

9.     The notice procedures set forth above constitute good and sufficient notice of the Combined Hearing and the commencement of the chapter 11 cases and the deadline and procedures for objecting to the approval of the Solicitation Procedures, adequacy of the Disclosure Statement, and confirmation of the Plan, and no other or further notice shall be necessary.

10.     The record date for determining which creditors and equity holders are entitled to receive the Combined Notice is November ___, 2009.

11.     The meetings pursuant to section 341(a) and (b) of the Bankruptcy Code (the "Section 341 Meetings") shall not be convened; provided, however, the Section 341 Meetings shall be held if the Plan is not confirmed within 60 days after the Petition Date.

12.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Scheduling Order.

13.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Schedule Order.

Dated:      New York, New York
                          , 2009


_____
UNITED STATES BANKRUPTCY JUDGE