SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
 Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re: : Chapter 11
:
CIT GROUP INC. and : Case No. 09-16565
CIT GROUP FUNDING COMPANY :
OF DELAWARE LLC, :
:
Debtors. : (Motion for Joint Administration Pending)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS
UNDER 11 U.S.C. §§ 105, 363(b), 507(a)(8), 1107(a), 1108 AND 1129 AUTHORIZING,
BUT NOT DIRECTING, THE DEBTORS TO PAY CERTAIN PREPETITION TAXES
AND RELATED RELIEF**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),[1] hereby move (the "Motion") this Court for entry of interim and final orders pursuant to sections 105, 363(b), 507(a)(8), 1107(a), 1108 and 1129 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, the Debtors to pay, in the

---

[1] CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017. Its tax identification number is 65-xxx1192. In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-16566, is a debtor in these related cases. CIT Group Funding Company of Delaware LLC is located at 1 CIT Drive, Livingston, NJ 07039. Its tax identification number is 98-xxx9146.

ordinary course of their businesses, certain prepetition taxes and granting related relief.[2]  In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and Various First Day Applications and Motions (the "First Day Declaration") filed concurrently herewith under Rule 1007-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules").[3]  In further support of the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

## JURISDICTION

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363(b), 507(a)(8), 1107(a), 1108 and 1129.

## BACKGROUND

2.  On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration.  The Debtors continue to manage and operate their businesses as debtors-in-possession under Bankruptcy Code sections 1107 and 1108.

---

[2]  The Debtors seek authorization to pay certain taxes related to prepetition employee wages and benefits in a separate motion.

[3]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**RELIEF REQUESTED**

3. By this Motion, the Debtors request entry of interim and final orders, under Bankruptcy Code sections 105, 363(b), 507(a)(8), 1107(a), 1108 and 1129, authorizing, but not directing, the Debtors to pay prepetition franchise, commercial, annual report and income taxes and all similar obligations (collectively, the "Taxes") to the appropriate taxing and other governmental authorities (the "Taxing Authorities") in the ordinary course of the Debtors' businesses. Until relief on the Motion is granted on a final basis, the Debtors seek the authority to pay up to $50,000 in Taxes.

4. Further, the Debtors request that this Court authorize the Debtors' banks to receive, process, honor and pay all checks, drafts or other forms of payment ("Tax Payments") drawn or issued on the Debtors' bank accounts prior to the Petition Date in respect of such Taxes (or to re-issue checks and electronic transfers, as may be necessary), provided that sufficient funds are on deposit in the applicable accounts to cover such payments. Such relief will be without prejudice to the Debtors' rights to contest the amounts of any Taxes on any grounds they deem appropriate, and the Debtors expressly reserve all rights with respect thereto.

**BASIS FOR RELIEF**

5. The Debtors, in the ordinary course of their businesses, incur various tax liabilities and have generally paid such tax liabilities as they became due. The Debtors' books and records reflect that they have paid all Taxes which were due and payable prior to the Petition Date. The Taxing Authorities, however, will continue to invoice the Debtors for Taxes relating to periods prior to the Petition Date following the commencement of these chapter 11 cases. Specifically, in the aggregate, the Debtors expect that approximately $275,000 in prepetition Taxes will become due and payable following the Petition Date. Of that amount, approximately $50,000 in Taxes will become due and payable within the first 25-days of these chapter 11 cases.

6. The Debtors are subject to the following Taxes:

(1) Franchise Taxes. The Debtors pay franchise taxes and de minimis registration fees (collectively, the "Franchise Taxes") to certain of the Taxing Authorities so that the Debtors can operate their businesses in the applicable taxing jurisdiction. Some states assess a flat Franchise Tax on all businesses and other states assess a Franchise Tax based upon some measure of income, gross receipts, net worth or other measure of value. Additionally, the Debtors' failure to pay the Franchise Taxes could cause some states to challenge the Debtors' right to operate within their jurisdiction. Addressing any subsequent action taken by those states would be costly, place an administrative burden on management and divert management's attention from the reorganization process.

(2) Commercial Rent Taxes. New York City imposes a commercial rent tax on businesses which occupy and use premises located in New York City in connection with their business (the "New York City Commercial Rent Tax"). The Debtors are subject to the New York City Commercial Rent Tax since they lease and operate their business in office space located within New York City. The Debtors typically pay the New York City Commercial Rent Tax in the ordinary course of business as such taxes are invoiced. These Tax Payments typically cover such taxes for the prior year or fiscal quarter, depending on how the applicable tax is assessed.

(3) Annual Report Taxes. Various Taxing Authorities require the Debtors to pay annual report or bi-annual report taxes (collectively, the "Annual Report Taxes") in order to be in good standing for purposes of conducting business within the state.

(4) Income Taxes. The Debtors must also pay certain taxes based on their income (the "Income Taxes"). The Debtors typically pay Income Taxes in the ordinary course of business as such taxes are invoiced. Corporate income tax is generally paid after the end of the taxable year based on the income made during the year.

7. The continued payment of the prepetition Taxes on their normal due dates will ultimately preserve the resources of the Debtors' estates, thereby promoting their prospects for a successful reorganization. If such obligations are not timely paid, the Debtors will be required to expend time and money to resolve a multitude of issues related to such obligations,

4

each turning on the particular terms of each Taxing Authority's applicable laws, including (a) whether the obligations are priority, secured or unsecured in nature, (b) whether they are proratable or fully prepetition or postpetition, and (c) whether penalties, interest, attorneys' fees and costs can continue to accrue on a postpetition basis, and if so, whether such penalties, interest, attorneys' fees and costs are priority, secured or unsecured in nature.  The Debtors desire to avoid unnecessary disputes with the Taxing Authorities – and expenditures of time and money resulting from such disputes – over a myriad of issues that are typically raised by such entities as they attempt to enforce their rights to collect taxes.

8. The Debtors may suffer clear and irreparable harm if the prepetition Taxes are not paid when they become due and payable.  Additionally, the Taxing Authorities may cause the Debtors to be audited if Taxes are not paid immediately.  Such audits will unnecessarily divert the Debtors' attention away from the reorganization process.  If the Debtors do not pay such amounts in a timely manner, the Taxing Authorities may attempt to revoke the Debtors' licenses, suspend the Debtors' operations and pursue other remedies that will harm the estates.  In all cases, the Debtors' failure to pay Taxes could have a material adverse impact on their ability to operate in the ordinary course of business.  Any disputes that could impact their ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' operations as a whole.

9. Moreover, the federal government and many states in which the Debtors operate have laws providing that the Debtors' officers, directors or other responsible employees could, under certain circumstances, be held personally liable for the payment of such Taxes.  To the extent any accrued Taxes of the Debtors were unpaid as of the Petition Date in these jurisdictions, the Debtors' officers and directors could be subject to lawsuits during the pendency

of these chapter 11 cases. In such events, collection efforts by the Taxing Authorities would be extremely distracting for the Debtors and their directors and officers in their efforts to bring these chapter 11 cases to an expeditious conclusion.

10. Furthermore, the Debtors submit that no prejudice to creditors or other parties-in-interest would result from granting the relief requested herein. Specifically, the Debtors' proposed prepackaged plan of reorganization (the "Plan") provides for the reinstatement or payment in full of priority tax claims and general unsecured claims on the effective date of the Plan. The unimpaired treatment of the Taxing Authorities' claims may prompt the Taxing Authorities to argue that they are entitled to accrue fees, interest and penalties (the "Accrued Amounts") on their tax claims from the time they are due until they are paid. Paying such Taxes in the ordinary course of business – instead of waiting until the effective date of the Plan – will save the estates the added costs of such Accrued Amounts and/or the costs of litigating with the Taxing Authorities over whether they are entitled to Accrued Amounts. Accordingly, there are significant benefits to paying the Taxes in full, in the ordinary course of business, versus waiting until the effective date of the Plan to make such payments.

11. For all of the above reasons, the Debtors submit that the relief requested is reasonable and necessary, particularly under the circumstances of these chapter 11 cases.

## APPLICABLE AUTHORITY

**A. Payment Of The Taxes, In The Debtors' Discretion, Is Appropriate Under Bankruptcy Code Sections 507(a)(8) And 1129.**

12. Payment of Taxes deemed priority claims under Bankruptcy Code section 507(a)(8) should be authorized on the basis that they are required to be paid in full in any event as a condition to satisfying the plan confirmation requirements contained in Bankruptcy Code section 1129. To the extent that the Property Taxes are entitled to priority treatment under

Bankruptcy Code section 507(a)(8)(B), the governmental units may also attempt to assess the additional Accrued Amounts. See 11 U.S.C. § 507(a)(8)(G) (granting priority status to a "penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). To the extent the Debtors pay the Taxes in the ordinary course of business, the Debtors will avoid the cost of paying the Accrued Amounts to which the Taxing Authorities may be entitled.

13. Further, even if certain Taxes are not entitled to priority status under Bankruptcy Code section 507, the Debtors believe that such amounts should be paid as a use of estate property outside the ordinary course of business on the grounds that the payments are necessary for a successful reorganization.

**B. Payment Of Certain Taxes Is Appropriate Under Bankruptcy Code Sections 363(b) And 105(a) And The Doctrine Of Necessity.**

14. Courts have suggested that authority for a debtor's determination to honor prepetition obligations may also be found in Bankruptcy Code section 363(b)(1), which authorizes a debtor to use estate funds outside the ordinary course of business. In re Kmart Corp., 359 F.3d 866, 872 (7th Cir. 2004); see also In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Under Bankruptcy Code section 363(b), a court should authorize transactions outside the ordinary course of business where the debtor has articulated a valid business justification for the requested use of estate assets. See Ionosphere, 98 B.R. at 175. To do so, the debtor "must articulate some business justification, other than mere appeasement of major creditors." Id.

15. Additionally, other courts have authorized payment of prepetition obligations pursuant to Bankruptcy Code section 105(a), which allows a bankruptcy court to enter any order "necessary or appropriate" to carry out the provisions of the Bankruptcy Code.

See, e.g., In re Just for Feet, Inc., 242 B.R. 821 (D. Del. 1999); Ionosphere, 98 B.R. at 175 ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). The common source of authority for those court decisions is the "doctrine of necessity" or "necessity of payment" rule first recognized by the Supreme Court over 120 years ago in Miltenberger v. Logansport Ry. Co., 106 U.S. 286 (1882). In Miltenberger, the Supreme Court held that "[m]any circumstances may exist which may make it necessary and indispensable to the business . . . and the preservation of the property, for the receiver to pay pre-existing debts . . . out of the earnings of the [debtor] . . . under the order of the court . . . ." Id. at 311-12.

16. The Debtors' request to pay the Taxes discussed herein easily satisfies these standards. First, authorizing payment of all such obligations will do little or no violence to the priorities established by the Bankruptcy Code. As noted above, the Debtors believe that certain Taxes are entitled to priority under Bankruptcy Code section 507(a)(8). The Debtors will be required to pay such Taxes in full (either immediately or over time) under any reorganization plan pursuant to Bankruptcy Code section 1129(a)(9). Thus, payment of such Taxes now simply accelerates the time to pay obligations that otherwise will have to be paid in any event, thereby doing no violence to the priority scheme of the Bankruptcy Code.

17. Second, the Debtors payment of the Taxes to the Taxing Authorities in full and on time is necessary to avoid the Taxing Authorities' cessation of normal relations with the Debtors, and to avoid unnecessary cost and expense that will make these estates worse off absent payment than they will be with payment. Failure to timely pay such taxes likely would cause Taxing Authorities to take precipitous action, including a marked increase in audits (which would unnecessarily divert the Debtors' attention from the reorganization process to the

detriment of all parties-in-interest). Prompt and regular payment of the Taxes would avoid any such unwarranted governmental action. In some cases, prepayment of such Taxes may actually reduce the amounts ultimately paid to the Taxing Authorities because penalties and interest will be avoided by prompt payment.

18. Third, it is in the best interests of the Debtors' estates and consistent with the reorganization policy of the Bankruptcy Code to eliminate the possibility that officers and directors will become subject to time consuming litigation pursuant to laws providing for personal liability in the event of nonpayment of the Taxes.

19. The focus of these cases should be on restructuring the Debtors' debt obligations. The payment of the Taxes is insignificant by comparison, and will have a negligible effect on the recoveries of the major creditors in these cases, particularly in view of the priority status of a significant portion of the Taxes. Moreover, the payment amount will likely be offset in no small part by the amount of postpetition resources that will not be required to be expended in disputes with Taxing Authorities that are, in the context of these cases, unnecessary and wasteful of the resources if the Debtors and this Court.

**C.     The Debtors Should Be Authorized To Pay The Taxes Under Bankruptcy Code Sections 1107(a) And 1108.**

20. The Debtors, operating their businesses as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." CoServ, 273 B.R. at 497. Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

9

21. Courts have noted that there are instances in which a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Id. at 497. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

22. Payment of the Taxes meets each element of the CoServ court's standard. As described above, the Taxing Authorities likely maintain secured or priority claims against the Debtors for the Taxes. With respect to each Taxing Authority, the Debtors have examined other options short of payment of Taxes and have determined that, to avoid pointless expense and/or disruption of the Debtors' business operations, there exists no practical or legal alternative to payment of the Taxes. Indeed, failure to pay the Taxes timely will result in a loss of economic advantage to the Debtors because interest and penalties will accrue on the Taxes. In addition, the Debtors represent that they will have sufficient cash to pay the Taxes in the ordinary course of business.

23. Moreover, the Taxing Authorities may institute costly audits or litigation if the Taxes are not paid. The time and expense that the Debtors would need to devote to any audit or litigation instituted by a Taxing Authority over unpaid Taxes would most likely

significantly outweigh any cost savings from the temporary non-payment of such Taxes. Among other things, the Debtors anticipate that the Taxing Authorities may act precipitously in the event that the Taxes are not paid, instituting numerous audits and creating numerous other administrative issues. The potential harm and economic disadvantage that would stem from the failure to pay the Taxes is disproportionate to the amount of any prepetition claim that may be paid.

24. A debtor-in-possession is a fiduciary with a duty to protect and preserve the estate, including the value of the business as a going concern. Because the payment of the Taxes is necessary to preserve the value of the Debtors' estates, the Debtors can only meet their fiduciary duties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108 by payment of the Taxes, in the Debtors' discretion. See CoServe, 273 B.R. at 497 ("There are occasions when this [fiduciary] duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). Accordingly, such payment should be authorized under Bankruptcy Code sections 1107 and 1108.

**D. Authorizing The Debtors To Pay The Taxes Until The Court Considers Granting The Relief Requested Herein Will Avoid Clear And Irreparable Harm To The Debtors.**

25. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm). The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the court instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" Kamerling

v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (citation omitted).  Further, the "harm must be shown to be actual and imminent, not remote or speculative."  Id. at 214; see also Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998).  The relief the Debtors are requesting by this Motion on an interim basis is limited to the extent it avoids clear and irreparable harm to the Debtors.  Accordingly, entry of an order on an interim basis is appropriate under the circumstances.

26. Nothing in this Motion shall be construed as impairing the Debtors' rights to contest the amount, classification or allowability of any of the Taxes asserted in these cases.

27. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates.  The Debtors respectfully request that the Court waive the ten-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**NOTICE**

28. Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to: (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Federal Reserve; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (g) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (h) counsel to Bank of America,

N.A. as L/C Issuer; and (i) Counsel to the Lender Steering Committee.  The Debtors submit that under the circumstances no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request this Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: New York, New York
November 1, 2009

        SKADDEN, ARPS, SLATE, MEAGHER
         & FLOM LLP

By:    */s/ Gregg M. Galardi*
        Gregg M. Galardi
        J. Gregory St. Clair
        Four Times Square
        New York, New York 10036
        (212) 735-3000

        Proposed Counsel for Debtors and
        Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                                                         :

In re:                                               :        Chapter 11

CIT GROUP INC. and                    :        Case No. 09-16565
CIT GROUP FUNDING COMPANY     :
OF DELAWARE LLC,                     :

           Debtors.               :        (Jointly Administered)
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 363(b), 506(a), 507(a)(8),
1107(a), 1108 AND 1129 AUTHORIZING, BUT NOT DIRECTING,
THE DEBTORS TO PAY CERTAIN PREPETITION TAXES AND RELATED RELIEF**

Upon consideration of the motion (the "Motion")[1] of the Debtors for entry of an interim order (the "Order"), under Bankruptcy Code sections 105(a), 363(b), 506(a), 507(a)(8), 1107(a) and 1129 authorizing, but not directing, the Debtors to pay the Taxes in the ordinary course of business and to authorize the Debtors' banks to honor any prepetition Tax Payments; and upon the declaration filed under Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in support of the Debtors' chapter 11 petitions and various first day applications and motions; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby:

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**FOUND THAT:**

A. The relief granted by this Order with respect to the payment of the Taxes is necessary to avoid immediate and irreparable harm to the Debtors.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED on an interim basis as set forth in this Order.

2. Until the Court considers the relief requested in the Motion on a final basis, the Debtors shall be, and they hereby are, authorized, in their sole discretion, but not directed, to pay all Taxes to the Taxing Authorities in the ordinary course of their businesses up to the amount of $50,000.

3. The Debtors' banks are authorized to receive, process, honor, and pay all Tax Payments (without any dollar limitation) drawn or issued on the Debtors' bank accounts prior to the Petition Date in respect of the Taxes, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

4. Nothing in the Motion or this Order shall be construed as impairing the Debtors' right to contest the amount, classification or allowance of any Taxes that may be due to any Taxing Authorities.

5. Any objections to entry of a final order on the Motion must be (a) filed with the Court no later than 4:00 p.m. (prevailing Eastern time) on _____, 2009 (the "Objection Deadline") and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) CIT Group Inc., 1 CIT Drive, Livingston, New Jersey 07039 (Attn: Eric Mandelbaum); (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Attn: Gregg M. Galardi and J. Gregory St. Clair); (iii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New

York 10004 (Attn: Paul K. Schwartzberg); (iv) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (v) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (vi) Counsel to the Lender Steering Committee; and (vii) counsel to any official committee(s) appointed in these cases.

6. A hearing will be held on         at       (prevailing Eastern Time) to consider the relief requested in the Motion on a final basis (the "Final Hearing") and, pending entry of an order following the conclusion of the Final Hearing, the relief granted herein shall remain in effect on an interim basis. If no objection to the relief requested in the Motion on a permanent basis is received by the Objection Deadline, the Debtors may present to the Court a final Order with respect to the relief requested in the Motion without the need for a Final Hearing.

7. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and the relief requested is necessary to avoid immediate and irreparable harm.

8. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

9. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:   New York, New York
               , 2009

_____
UNITED STATES BANKRUPTCY JUDGE