SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
 Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:                                      :   Chapter 11
                                                              :
CIT GROUP INC. and                          :   Case No. 09-16565
CIT GROUP FUNDING COMPANY                   :
OF DELAWARE LLC,                            :
                                                              :
            Debtors.                        :   (Motion for Joint Administration Pending)
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDER UNDER 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 6003 AND 6004 AUTHORIZING, BUT NOT DIRECTING, DEBTORS TO HONOR THE WRITTEN AGREEMENT WITH THE FEDERAL RESERVE AND THE CEASE AND DESIST ORDERS WITH RESPECT TO FEDERAL DEPOSITORY INSTITUTION REGULATORY AGENCIES IN THE ORDINARY COURSE OF BUSINESS**

               The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors")[1] hereby move this Court (the "Motion") for entry of interim and final orders, pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1]    CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017. Its tax identification number is 65-xxx1192. In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-16566, is a debtor in these related cases. CIT Group Funding Company of Delaware LLC is located at 1 CIT Drive, Livingston, NJ 07039. Its tax identification number is 98-xxx9146.

Rules"), authorizing, but not directing, the Debtors to honor the Written Agreement by and between CIT Group Inc. and Federal Reserve Bank of New York (the "Written Agreement") and to comply with the Orders to Cease and Desist (the "Cease and Desist Orders") issued by the Federal Deposit Insurance Corporation (the "FDIC") and the Utah Department of Financial Institutions (the "UDFI," and together with the FDIC and the Federal Reserve Bank of New York, the "Regulators") against CIT Bank, and other regulatory obligations imposed on CIT Bank by the FDIC.  In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules") and in Support of Chapter 11 Petitions and Various First Day Applications and Motions (the "First Day Declaration") filed concurrently herewith under Local Bankruptcy Rule 1007-2.[2]  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 6003 and 6004.

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## BACKGROUND

2. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration. The Debtors continue to manage and operate their businesses as debtors-in-possession under Bankruptcy Code sections 1107 and 1108.

## RELIEF REQUESTED

3. By this Motion, and pursuant to Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 6003 and 6004, the Debtors request that this Court enter an order authorizing, but not directing, the Debtors to honor, in its discretion, the terms and conditions of the Written Agreement with the Federal Reserve Bank of New York, dated August 12, 2009. To the extent applicable to CIT Group Inc., CIT Group Inc. also requests authority to abide by the two Cease and Desist Orders issued on July 16, 2009 each by the UDFI and the FDIC to CIT Bank, and other regulatory obligations imposed on by the FDIC on CIT Bank, in which CIT Group Inc. holds 100% equity interest.

## BASIS FOR RELIEF

**A.  Decline in Liquidity**

4. The global financial market crisis and negative economic conditions materially and adversely affected CIT Group Inc.'s liquidity position and operating results over the past 30 months. CIT Group Inc.'s business historically relied upon access to both the secured and unsecured debt capital markets for cost-efficient funding. The disruption in the credit markets coupled with the global economic deterioration that began in 2007, and downgrades in credit ratings to below investment grade in 2008 and 2009, materially worsened CIT Group Inc.'s

liquidity situation and left it without access to the unsecured debt market and impaired its access to cost efficient secured financing. Since January 2008, CIT Group Inc. obtained interim financing through secured financings and reduced financing needs through balance sheet contraction.

5. As part of the plan to transition to a bank-centered business model, CIT Group Inc. (i) applied to participate in the FDIC's Temporary Liquidity Guarantee Program ("TLGP"), which would have enabled CIT Group Inc. to issue government guaranteed debt; and (ii) applied for exemptions under Section 23A of the Federal Reserve Act ("Section 23A") to transfer a significant portion of its U.S. Assets to CIT Bank, which would have enabled CIT Group Inc. to generate liquidity by leveraging the deposit-taking capabilities of CIT Bank.

6. In April 2009, the Federal Reserve granted CIT Group Inc. a partial Section 23A waiver to transfer $5.7 billion of government-guaranteed student loans to CIT Bank. In connection with this transaction, CIT Bank assumed $3.5 billion in debt and paid $1.6 billion in cash to CIT Group Inc.

7. On July 15, 2009, the CIT Group Inc. was advised that there was no appreciable likelihood of additional government support being provided, through either participation in the FDIC's TLGP or further approvals of asset transfers under its pending Section 23 A exemption request. Following the announcement of these developments, CIT Group Inc. experienced higher draws on financing commitments which accelerated the degradation of its liquidity position. This liquidity situation, continued portfolio deterioration, and the weak economic and credit environment, all weighed heavily on CIT Group Inc.'s financial performance.

8. Due to CIT Group Inc.'s financial uncertainty and concerns that such uncertainty may lead to unsafe or unsound banking practices at CIT Bank, the Regulators monitored CIT Group Inc. and CIT Bank closely. Upon the financial deterioration of CIT Group Inc., the Regulators entered into the Written Agreement and the Cease and Desists Orders with CIT Group Inc. and CIT Bank, respectively, to monitor the conditions at CIT Group Inc. and CIT Bank and to limit certain activities.

**B.    CIT Bank**

9. CIT Group Inc. is a bank holding company providing commercial financing and leasing products and management advisory services to clients in a wide variety of industries. CIT Group Inc. has both bank and non-bank subsidiaries. CIT Bank, which amended its charter in December 2008 from an industrial bank to a state-charted bank in Utah, is CIT Group Inc.'s primary bank subsidiary. CIT Bank, which has historically funded consumer loans, shifted its focus to commercial lending in late 2007 / early 2008.

10. CIT Group Inc.'s 100% equity interest in CIT Bank has substantial value. CIT Bank, which is chartered by the Department of Financial Institutions of the State of Utah as a State bank, is subject to regulation by the FDIC and the UDFI. CIT Bank's deposits are guaranteed by the FDIC up to certain limits. In addition, FDIC regulations impose strict capital requirements on CIT Bank and certain other regulatory requirements.

**C.    The Cease and Desist Orders**

11. CIT Bank relies principally on brokered deposits to fund its ongoing business which may require payment of slightly higher yields and may be subject to inherent limits on the aggregate amount available, depending on market conditions. On July 16, 2009, CIT Bank, without admission of fault for the liquidity issues CIT Bank faced, entered into a Stipulation and Consent to the Issuance of an Order to Cease and Desist with the FDIC (the

"FDIC Stipulation"), and a Stipulation and Consent to the Issuance of an Order to Cease and Desist with the UDFI (the "UDFI Stipulation"). The FDIC Stipulation and the UDFI Stipulation resulted in the issuance of the Cease and Desist Orders by both the FDIC and the UDFI. Under the terms of the Cease and Desist Orders, the FDIC and the UDFI have imposed, among other matters, additional restrictions on CIT Bank's ability to enter into transactions with affiliates and to make dividend payments. In compliance with the Cease and Desist Orders, CIT Bank submitted a contingency plan providing for and ensuring the continuous and satisfactory servicing of all loans held by CIT Bank, which was accepted as satisfactory by the FDIC. The Cease and Desist Orders further restrict CIT Bank from increasing its level of brokered deposits and restricts the ability of CIT Bank to originate new business.

**D.      The Written Agreement**

12.     On August 12, 2009, CIT Group Inc. and the Federal Reserve Bank of New York, the regulatory body supervising CIT Group Inc., entered into the Written Agreement with the common goal of CIT Group Inc. maintaining its financial soundness so that CIT Group Inc. may serve as a source of strength to CIT Bank.

13.     Under the terms of the Written Agreement, CIT Group Inc. must provide the Federal Reserve Bank of New York with (i) a corporate governance plan, focusing on strengthening internal audit, risk management, and other control functions, (ii) a credit risk management plan, (iii) a written program to review and revise, as appropriate, its program for determining, documenting and recording the allowance for loan and lease losses, (iv) a capital plan for CIT Group Inc. and CIT Bank, (v) a liquidity plan, including meeting short term funding needs and longer term funding needs, without relying on governments programs or Section 23A waivers, and (vi) a business plan for the remainder of 2009 and 2010. The Written Agreement also prevents CIT Group Inc., without prior approval of the Federal Reserve Bank of New York,

6

from paying dividends, paying interest on subordinated debt, incurring or guaranteeing debt outside of the ordinary course of business, or purchasing or redeeming CIT Group Inc. stock. Under the Written Agreement, CIT Group Inc. must comply with certain procedures and restrictions on appointing or changing the responsibilities of any senior officer or director, restricting the provision of indemnification to officers and directors, and restricting the payment of severance to employees. CIT Group Inc. has complied with the terms of the Written Agreement since its inception.

14. After the Petition Date, CIT Group Inc. and CIT Bank will be obligated to continue to meet the requirements of the Written Agreement with respect to CIT Group Inc. and the Cease and Desist Orders with respect to CIT Bank, as well other regulatory obligations imposed on CIT Bank by the FDIC. CIT Group Inc. also anticipates that, in the event CIT Group Inc. does not comply with the Written Agreement and CIT Bank does not comply with the Cease and Desist Orders, the FDIC, the UDFI and the Federal Reserve Bank of New York will exercise their statutory and regulatory remedies and rights against CIT Group Inc. and CIT Bank, potentially resulting in seizure, receivership or liquidation of CIT Bank, or at least the levying of additional regulatory enforcement orders against CIT Group Inc. and CIT Bank.

15. Accordingly, adherence to the Written Agreement, the Cease and Desist Orders and other regulatory obligations imposed on CIT Bank by the FDIC is critical to preserve the Debtors' opportunity to realize the fair value of CIT Bank in order to maximize recovery to the Debtors' creditors. Failure to comply would put CIT Bank, a non-debtor in these cases, at risk of government seizure, liquidation, and/or the appointment of a receiver. As a result, any equity value CIT Group Inc. has in CIT Bank may be permanently lost if compliance does not continue.

**E.   Compliance with the Written Agreement, Cease and Desist Orders and Regulatory Obligations is Required to Preserve Value**

16.   Although there is no compliance cost to the Debtors, in an abundance of caution, the Debtors seek relief from this Court to comply with the Written Agreement and the Cease and Desist Orders as well as any other regulatory obligations imposed on CIT Bank by the FDIC, in an exercise of its business judgment.  The Debtors believe that the value of its estate will be maximized by preserving CIT Bank, preventing the seizure of CIT Bank stock or assets, and avoiding the liquidation of such stock or assets at "fire sale" prices.  At the same time, the Debtors recognize the need to maintain a strong relationship with the FDIC, the Federal Reserve Bank of New York, and the UDFI.  Therefore, the Debtors seek to reassure the FDIC, the Federal Reserve Bank of New York, and the UDFI that they intend to continue to timely satisfy any requirements under the Written Agreement and the Cease and Desist Orders, and any other regulatory obligations in a manner consistent with maximizing the value of the Debtors estate.

## APPLICABLE AUTHORITY

**A.   Sound Business Judgment Supports Compliance with the Written Agreement, the Cease and Desist Orders and Regulatory Obligations**

17.   While the Debtors believe continued compliance with the Written Agreement, the Cease and Desist Orders and any other regulatory obligations imposed by the FDIC is an ordinary course transaction, the Debtors nonetheless seek authority to comply (out of an abundance of caution) should parties-in-interest argue that any such actions taken to comply lie outside the ordinary course of business or utilize property of the estate.  Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decision to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of that debtor.  See Official Comm. of Unsecured Creditors of LTV

Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court determining an application pursuant to section 363(b) must find from the evidence a good business reason to grant such application); see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); In re Global Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); In re Ionosphere Clubs, Inc., 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (standard for determining a section 363(b) motion is whether the debtor has a "'good business reason'" for the requested relief (quoting Lionel, 722 F.2d at 1071)).

18. The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this district have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and "will uphold [a] board's decisions as long as they are attributable 'to any rational business purpose.'" Integrated Res. Inc., 147 B.R. at 656 (internal quotation marks omitted) (citations omitted).

19. Ample business justifications support the Debtors' compliance with the Written Agreement, the Cease and Desist Orders and any other regulatory obligations. First and

foremost, the Debtors believe that CIT Bank is of significant value to CIT Group Inc. and that such value should be preserved for the Debtors in order to maximize recovery to its creditors in these chapter 11 cases. Any seizure of CIT Bank would result in an almost immediate loss of value to the Debtors to the detriment of parties-in-interest in these chapter 11 cases, including the loss of equity to shareholders under the prepackaged plan of reorganization. Adhering to the Written Agreement and the Cease and Desist Orders, however, will leave little possibility or reason for seizure or liquidation by the Regulators. At the same time, it will provide the Debtors and CIT Bank with additional time to develop a plan for CIT Bank's continued role within CIT Group Inc.'s corporate enterprise. It is likely, moreover, that the value for CIT Bank and its assets will increase as market conditions recover and as potential purchasers of CIT Bank and/or its assets emerge. Ultimately, compliance with the Written Agreement and the Cease and Desist Orders will preserve a significant asset of the Debtors' estate that will inure to the benefit of the Debtors' creditors.

20. Accordingly, in light of the potential benefits to CIT Group Inc., CIT Group Inc.'s decision to invest in CIT Bank and in itself by way of compliance with the Written Agreement, the Cease and Desist Orders and other regulatory obligations imposed on CIT Bank by the FDIC, represents a sound exercise of business judgment and should be approved.

**B.  Immediate Relief is Necessary to Avoid Immediate and Irreparable Harm**

21. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is *necessary to avoid immediate and irreparable harm*, the court shall not, within 20 days after the filing of the petition, grant . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003(b) (emphasis added). Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash

collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). For all the reasons set forth herein, the Debtors will suffer immediate and irreparable harm absent the Court's entry of an order granting the relief requested herein. Consequently, the relief requested herein is consistent with Bankruptcy Rule 6003. Accordingly, the order granting the relief requested herein should become effective and enforceable immediately notwithstanding Bankruptcy Rule 6004(h).

**NOTICE**

22. Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to: (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) Federal Deposit Insurance Corporation, Division of Supervision and Consumer Protection, San Francisco Region, 25 Jessie Street at Ecker Square, Suite 2300, San Francisco, CA 94105-2780 (Attn: J. George Doerr); (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (g) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (h) counsel to Bank of America, N.A. as L/C Issuer; (i) Counsel to the Lender Steering Committee; (j) the Federal Reserve Bank of New York, 33 Liberty Street, New York, New York 10045 (Attn: Lance Auer, Vice President); (k) Utah Department of Financial Institutions, P.O. Box 146800, Salt Lake City, Utah 84114-6800 (Attn: G. Edward Leary, Commissioner); and (l) the Federal Reserve. The Debtors submit that under the circumstances no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request this Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: New York, New York
November 1, 2009

                                  SKADDEN, ARPS, SLATE, MEAGHER
                                              & FLOM LLP

By:    */s/ Gregg M. Galardi*
            Gregg M. Galardi
            J. Gregory St. Clair
            Four Times Square
            New York, New York 10036
            (212) 735-3000

            Proposed Counsel for Debtors and
            Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re: : Chapter 11
:
CIT GROUP INC. and : Case No. 09-16565
CIT GROUP FUNDING COMPANY :
OF DELAWARE LLC, :
:
          Debtors. : (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER UNDER 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 6003 AND 6004 AUTHORIZING, BUT NOT DIRECTING, DEBTORS TO HONOR THE WRITTEN AGREEMENT WITH THE FEDERAL RESERVE AND THE CEASE AND DESIST ORDERS WITH RESPECT TO FEDERAL DEPOSITORY INSTITUTION REGULATORY AGENCIES IN THE ORDINARY COURSE OF BUSINESS**

Upon consideration of the motion (the "Motion")[1] of the Debtors for entry of an interim order (the "Order"), under sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure authorizing, but not directing, the Debtors to honor the Written Agreement and the Cease and Desist Orders and upon the First Day Declaration; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**FOUND THAT:**

The relief granted by this Order with respect to continued compliance with the Written Agreement, the Cease and Desist Orders and other regulatory obligations imposed on CIT Bank by the FDIC, is necessary to avoid immediate and irreparable harm to the Debtors.

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED on an interim basis as set forth in this Order.

2. CIT Group Inc. is authorized, but not directed, in it discretion to take all acts to comply with the Written Agreement, the Cease and Desist Orders and other regulatory obligations imposed on CIT Bank by the FDIC.

3. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption or adoption of any contract or agreement under 11 U.S.C. § 365.

4. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

5. Notwithstanding the possible applicability of Bankruptcy Rule 6004, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

6. Any objections to entry of a final order on the Motion must be (a) filed with the Court no later than 4:00 p.m. (prevailing Eastern time) on              , 2009 (the "Objection Deadline") and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) CIT Group Inc., 1 CIT Drive, Livingston, New Jersey 07039 (Attn: Eric Mandelbaum); (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four

Times Square, New York, New York 10036 (Attn: Gregg M. Galardi and J. Gregory St. Clair); (iii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Paul K. Schwartzberg); (iv) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (v) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (vi) Counsel to the Lender Steering Committee; (vii) counsel to any official committee(s) appointed in these cases; (viii) the Federal Reserve Bank of New York, 33 Liberty Street, New York, New York 10045 (Attn: Lance Auer, Vice President); (ix) Utah Department of Financial Institutions, P.O. Box 146800, Salt Lake City, Utah 84114-6800 (Attn: G. Edward Leary, Commissioner); and (x) Federal Deposit Insurance Corporation, Division of Supervision and Consumer Protection, San Francisco Region, 25 Jessie Street at Ecker Square, Suite 2300, San Francisco, CA 94105-2780 (Attn: J. George Doerr).

7. A hearing will be held on                    at            (prevailing Eastern time) to consider the relief requested in the Motion on a final basis (the "Final Hearing") and, pending entry of an order following the conclusion of the Final Hearing, the relief granted herein shall remain in effect on an interim basis. If no objection to the relief requested in the Motion on a permanent basis is received by the Objection Deadline, the Debtors may present to the Court a final Order with respect to the relief requested in the Motion without the need for a Final Hearing.

8. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the content of the Motion or otherwise deemed waived.

9. Notwithstanding the possible applicability of Bankruptcy Rule 6004, the terms and conditions of this Order shall be immediately effective and enforceable upon

10. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
         , 2009

_____
UNITED STATES BANKRUPTCY JUDGE