SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
 Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :   Chapter 11
                                        :
CIT GROUP INC. and                      :   Case No. 09-16565
CIT GROUP FUNDING COMPANY               :
OF DELAWARE LLC,                        :
                                        :
            Debtors.                    :   (Motion for Joint Administration Pending)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 362 AND 363 AND FED. R. BANKR. P. 2002, 4001 AND 9019 AUTHORIZING CIT GROUP INC. TO ENTER INTO STIPULATION WITH JPMORGAN CHASE BANK, N.A.

            The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors"),[1] hereby move this Court (the "Motion") for entry of interim and final orders,

under sections 105(a), 362 and 363 of title 11 of the United States Code (the "Bankruptcy Code"),

and Rules 2002, 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1]    CIT Group Inc. ("CIT") is located at 505 Fifth Avenue, New York, NY 10017.  Its tax identification number is
       65-xxx1192.  In addition to CIT Group, Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-
       16566, is a debtor in these related cases.  CIT Group Funding Company of Delaware LLC is located at 1 CIT
       Drive, Livingston, NJ 07039.  Its tax identification number is 98-xxx9146.

Rules") (i) authorizing CIT to enter into the proposed Stipulation (the "Stipulation") with

JPMorgan Chase Bank, N.A. ("JPMorgan"), substantially in the form attached as Exhibit A to

the Order, and (ii) schedule a final hearing with respect to the relief requested herein.  In support

of this Motion, the Debtors rely upon and incorporate by reference the Declaration Pursuant to

Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and Various First Day

Applications and Motions (the "First Day Declaration") filed concurrently herewith under Local

Bankruptcy Rule 1007-2.[2]  In further support of the Motion, the Debtors, by and through their

undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates

for the relief requested herein are Bankruptcy Code sections 105(a), 362 and 363 and Bankruptcy

Rules 2002, 4001 and 9019.

## BACKGROUND

2.        On the date hereof (the "Petition Date"), the Debtors filed voluntary

petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual

background regarding the Debtors, including their business operations, their capital and debt

structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the

First Day Declaration.  The Debtors continue to manage and operate their businesses as debtors-

in-possession under Bankruptcy Code sections 1107 and 1108.

---

[2]        Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day
Declaration.

3.      Prepetition, CIT and certain related entities had access to several letter of credit facilities, which they used to issue letters of credit on behalf of their borrowers and drew on in support of their own general business needs. JPMorgan is the administrative agent on behalf of certain lenders under the 5-year Letter of Credit Issuance and Reimbursement Agreement, dated as of May 23, 2005 (as amended, supplemented, or otherwise modified to date, the "JPM L/C Facility Agreement"). The JPM L/C Facility Agreement provides a $750 million standby letter of credit facility extended by a syndicate of approximately 27 banks, with JPMorgan being the lead bank in the facility ("JPM L/C Facility"). As of the Petition Date, the Debtors had drawn approximately $350 million on the JPM L/C Facility.

4.      The letters of credit outstanding under the JPM L/C Facility were primarily requested by CIT's non-Debtor affiliates for one of two reasons. First, letters of credit were requested on behalf of a customer needing a letter of credit for its business purposes. Second, letters of credit were requested to assure payment of obligations to an existing customer. The orderly and continued administration of the letters of credit outstanding under the JPM L/C Facility is thus essential to CIT and its non-Debtor affiliates to allow for continued effective operations and maintenance of customer relationships.

5.      Prior to the Petition Date, JPMorgan asserted that the conditions to issuance, renewal extension, or increase of letters of credit under the JPM L/C Facility may not have been satisfied or may have been subject to dispute. In order to induce JPMorgan and the participant lenders under the JPM L/C Facility to continue to issue new letters of credit under the JPM L/C Facility Agreement, to renew or extend (including by not issuing any notice of non-renewal or taking any similar action) letters of credit previously issued thereunder that would otherwise expire, and to increase any Letter of Credit previously issued under the JPM L/C

Facility, CIT entered into the Cash Collateral Agreement dated October 6, 2009 (the "Cash Collateral Agreement") with JPMorgan and certain other parties to the JPM L/C Facility Agreement. Pursuant to the Cash Collateral Agreement, CIT deposited approximately $100,000,000 with JPMorgan (the "Cash Collateral"), in its capacity as Administrative Agent under the JPM L/C Facility, as cash collateral for subsequently issued letters of credit.

6.       Prior to issuing letters of credit on behalf of the CIT, its non-Debtor subsidiaries, or customers thereof, the party requesting the letter of credit (the "Applicant"), and any customer of the applicant on whose account such letter of credit was to be issued (the "Account Party"), was required to co-sign an application (the "Application"). JPMorgan asserts that such Application obliges each  party to a particular letter of credit to be jointly and severally liable with CIT for any reimbursement obligation arising from the drawing of such letter of credit. JPMorgan further asserts that as a result of the commencement of the Debtors' chapter 11 cases, no letter of credit under the JPM L/C Facility Agreement can be issued, renewed, extended, or amended after the Petition Date.

7.       CIT reached agreement with the counter-parties to the JPM L/C Facility with respect to the treatment of claims arising under the facility under the Debtors' proposed prepackaged plan of reorganization (the "Plan"). CIT is seeking authorization to enter into and perform under the terms of the Stipulation in order to avoid the deleterious effects of further disputes and preserve the status quo with respect to the JPM L/C Facility until such time as the final settlement embodied in the Plan can be effectuated.

**RELIEF REQUESTED**

8.       By this motion, the Debtors request the entry of interim and final orders approving the Stipulation under Bankruptcy Code sections 105, 362 and 363 and Bankruptcy

Rules 2002, 4001 and 9019, scheduling hearing on the final order approving the Stipulation, and

granting such other and further relief as is just and proper.

## TERMS OF THE STIPULATION

9.    The significant terms of the Stipulation are as follows:[3]

a)    <u>Parties</u>.  CIT and JPMorgan, in its capacity as Administrative Agent and as Issuing Bank under the JPM L/C Facility.

b)    <u>Collateral</u>.  JPMorgan shall retain possession of the Cash Collateral for the duration of the chapter 11 cases and until the consummation of the Plan, including the $400,000 retainer for counsel specified in the Cash Collateral Agreement.

c)    <u>Post-Petition Draws</u>.  To the extent of any drawings on letters of credit under the JPM L/C Facility after the Petition Date but before the effective date of the Plan, (i) to the extent the JPMorgan holds Cash Collateral supporting such drawn Letter of Credit, JPMorgan shall be authorized to apply such Cash Collateral to the reimbursement obligations arising from such drawing; and (ii) otherwise, the Debtor shall pay or cause to be paid the reimbursement obligation in full when due in accordance with the L/C Facility Agreement, and

d)    <u>Automatic Stay Lifted</u>.  The automatic stay under section 362 of the Bankruptcy Code will be lifted to the extent necessary to permit the applications of Cash Collateral and payments contemplated in paragraph (c) above.

e)    <u>Plan Treatment</u>.  (i) all claims for reimbursement obligations arising from drawings of letters of credit ("<u>LC Claims</u>") will be allowed and classified as a separate class; (ii) upon the effective date of the Plan, the Debtor will deliver or cause to be delivered to JPMorgan cash collateral in an amount not to be less than 103% of the total outstanding letters of credit on the effective date; (iii) upon the effective date of the Plan, any claims of the Debtors, their estates, subsidiaries, or affiliates against the lender parties to the JPM L/C Facility Agreement, in respect of the L/C Facility Agreement, shall be forever released; (iv) upon the effective date of the Plan and the delivery to the Issuing Bank of the cash collateral contemplated

---

[3]    In the event of any discrepancy between the Stipulation and this summary of the Stipulation, the provisions of the Stipulation are controlling.

5

by subsection (ii) of this paragraph, JPMorgan shall release and discharge the Applicants and Account Parties (other than CIT) for any then existing or thereafter arising reimbursement obligations arising from drawings on any letters of credit issued under the JPM L/C Facility Agreement; and (v) on or before the effective date, all fees and other charges owing from CIT to JPMorgan under or in respect of the JPM L/C Facility shall be paid in full.

f)    Termination Date.  The Stipulation will terminate automatically upon any of the following events: (i) the effective date of the Plan; (ii) the treatment under the Plan of the claims arising out of the JPM L/C Facility Agreement shall be modified from that described in the Stipulation in any respect adverse to the non-Debtor counterparties to the JPM L/C Facility Agreement without their consent; (iii) the failure of the Court to so order the Stipulation by November 6, 2009 or the entry by the Court of an order reinstituting the automatic stay under section 362 with respect to the Cash Collateral held by JPMorgan; (iv) the material breach by either party of any of its obligations under the Stipulation; or (v) and action by CIT or any of its affiliates or any person acting on their behalf to institute litigation seeking an order from any court to restrain JPMorgan from pursuing any remedy against the Applicants or Account Parties with respect to the letters of credit issued under the JPM L/C Facility.

g)    Forbearance from Remedies.  Until the Termination Date, so long as CIT complies with its obligations under the Stipulation, JPMorgan will forbear from pursuing any non-Debtor Applicant or Account Party for any reimbursement obligation under the JPM L/C Facility Agreement for which either of them may be alleged to be liable.

## BASIS FOR RELIEF

10.    As set forth above, CIT seeks authority to enter into the Stipulation to preserve the status quo under the JPM L/C Facility that was achieved through the pre-petition entry into the Cash Collateral Agreement.  Preservation of this status quo and the continued avoidance of disputes with JPMorgan with respect to the JPM L/C Facility is essential not only to protect CIT and its non-Debtor affiliates from potential enforcement actions, but will also

prevent JPMorgan from bringing such actions against customers that will be essential in the successful restructuring of the Debtors. The Debtors believe that the Stipulation will provide a seamless and well-managed transition into chapter 11 restructuring for the JPM L/C Facility and will thus minimize disruption to CIT and its estate.

11.     The Stipulation does not require CIT to post any collateral additional to that already provided, and the Stipulation would accordingly serve as the most efficient and cost-effective means of bridging the gap between the Petition Date and the consummation of the proposed Plan's final settlement of disputes arising under the JPM L/C Facility. The stipulation does provide that CIT will be responsible for repaying any drawings on letters of credit in excess of the Cash Collateral, but, as discussed above, the terms of CIT's Plan provide for payment of amounts owing under the JPM L/C Facility, including cash collateralization of all amounts outstanding under letters of credit.

12.     Entry into and performance under the Stipulation is necessary on an interim basis to avoid immediate and irreparable harm for the reasons set forth above. There are hundreds of letters of credit outstanding under the JPM L/C Facility, and it is critical that the JPM L/C Facility continue to operate without disruption and uncertainty. Indeed, the ability of CIT and its non-Debtor affiliates to present continuity in the operation of the JPM L/C Facility to the market may very well reduce drawings under the letters of credit that could ensue if the JPM L/C Facility is not closely managed and structured as the Debtors commence their chapter 11 restructuring.

## APPLICABLE AUTHORITY

### A.     The Debtors Have Exercised Sound Business Judgment

13.     Entry into and performance under the Stipulation is appropriate under section 363(b)(1) of the Bankruptcy Code. Bankruptcy Code section 363(b)(1) permits a debtor-

in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it. See Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-79 (D. Del. 1991). The court should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code." In re Curlew Valley Assocs., 14 B.R. 506, 513-514 (Bankr. D. Utah 1981); see also In re Ames Dep't Stores, 115 B.R. at 40. Applying "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

      14.    The Second Circuit has held that, although the bankruptcy court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," it must resist becoming "arbiter of disputes between creditors and the estate." In re Orion Pictures Corp., 4 F.3d 1095, 1098-99 (2d Cir. 1993). The Court's consideration of a debtor's section 363(b) motion is a summary proceeding, intended as a means to "efficiently review the . . . debtor's decision[s] . . . in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial." Orion Pictures, 4 F.3d at 1098-99.

15. Once the debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). Thereafter, "[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity." Id.

16. As a rule, a debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" In re Aerovox, Inc., 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting In re Interco, Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)).

17. As set forth above, the continued arrangement embodied in the Stipulation is necessary to prevent potential enforcement actions under the JPM L/C Facility that would harm CIT and its non-Debtor affiliates, as well as customers essential to CIT's successful restructuring. Entry into the Stipulation will thus preserve and maintain CIT's going concern value and is, therefore, in the best interests of CIT's estate and creditors. Entry into the Stipulation will minimize disruption to CIT's business and ongoing operations, and avoid immediate and irreparable harm to CIT, its creditors, its business, and its assets.

18. The terms and conditions of the Stipulation are fair, reasonable, and appropriate, and were extensively negotiated by the parties in good faith and at arms' length. Notably, the Stipulation does not require CIT to post any further collateral in exchange for JPMorgan's forbearance from remedies throughout these chapter 11 cases.

**B.** **The Stipulation is an Appropriate Settlement Under Bankruptcy Rule 9019**

19. Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Bankruptcy Rule 9019(a). Settlements and compromises are "a normal part of the process of reorganization," Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106, 130 (1939)); see also In re Adelphia Commc'ns Corp., 327 B.R. 143, 159 (decision to accept or reject settlement lies within sound discretion of bankruptcy court), adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

20. Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate. See, e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia Commc'ns, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)); Nellis v. Shugrue, 165 B.R. 115, 121 (S.D.N.Y. 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it."). In general, compromises in the bankruptcy context should be approved unless they "'fall below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983).

21. The Supreme Court in TMT Trailer Ferry set forth the following factors that courts should consider in determining whether a proposed settlement or compromise is in the best interests of a debtor's estate: (a) the probability of the debtor's success in the litigation, (b) the difficulties associated with collection, (c) the complexity of the litigation, and the attendant expense, inconvenience, and delay, and (d) the paramount interests of the estate's

creditors. <u>TMT Trailer Ferry</u>, 390 U.S. at 424-25; <u>see also</u> <u>Nellis</u>, 165 B.R. at 122; <u>Fry's Metals, Inc. v. Gibbons</u> (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002).

22.     Courts in this district have further elaborated on these factors to consider: (a) the balance between the likelihood of plaintiff's or defendants' success should the case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures, (b) the prospect of complex and protracted litigation if the settlement is not approved, (c) the proportion of the class members who do not object or who affirmatively support the proposed settlement, (d) the competency and experience of counsel who support the settlement, (e) the relative benefits to be received by individuals or groups within the class, (f) the nature and breadth of releases to be obtained by the directors and officers as a result of the settlement, and (g) the extent to which the settlement is truly the product of arm's-length bargaining, and not of fraud or collusion. <u>Adelphia Commc'ns</u>, 327 B.R. at 159-60; <u>accord</u> <u>In re Texaco Inc.</u>, 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

23.     The bankruptcy court need not determine that all of the foregoing criteria favor approval of a compromise, and the proposed compromise need not be the best agreement that the debtor could have achieved under the circumstances. <u>See</u> <u>Adelphia Commc'ns</u>, 327 B.R. at 159-60; <u>Penn Cent.</u>, 596 F.2d at 1114. Instead, the court's proper "role is to determine whether the settlement as a whole is fair and equitable," <u>In re Lee Way Holding Co.</u>, 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and falls "'within the reasonable range of litigation possibilities.'" <u>In re Telesphere Commc'ns, Inc.</u>, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994). To that end, courts should not substitute their own judgment for that of the debtor, but rather should "'canvass the issues'" to affirm that the proposed settlement falls above "'the lowest point in the range of reasonableness.'" <u>Adelphia Commc'ns</u>, 327 B.R. at 159 (quoting <u>W.T. Grant Co.</u>, 699 F.2d at

608); <u>accord</u> <u>Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co.</u> (In re Ionosphere Clubs,

Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), <u>aff'd sub nom.</u> <u>Sobchack v. Am. Nat'l Bank & Trust</u>

<u>Co.</u>, 17 F.3d 600 (2d Cir. 1994).

    24.  The Stipulation should be authorized under Bankruptcy Rule 9019(a)

because the settlement terms are fair and equitable, fall well within the range of reasonableness,

and are in the best interests of the Debtors and their estates.  The Settlement will allow CIT and

its non-Debtor affiliates and customers to avoid litigation risks and potential expenses associated

with litigating the disputes under the JPM L/C Facility.  This continuation of the status quo is

particularly critical here where the Debtors' efforts are focused entirely on the expeditious

completion of their chapter 11 restructuring under the terms of the prepackaged Plan.  For these

reasons, the Settlement serves the best interests of the Debtors' estates and will maximize value

for all stakeholders.

**C.**  **Approval of Modification of the Automatic Stay**

    25.  Bankruptcy Code section 362 provides for an automatic stay upon the

filing of a bankruptcy petition. The Stipulation contemplates modification of the automatic stay

to provide for the automatic vacation of the automatic stay to permit JPMorgan to offset Cash

Collateral against obligations owing as a result of drawings on letters of credit issued under the

JPM L/C Facility Agreement.  The Cash Collateral was provided prior to the Petition Date for

exactly this purpose, and the Debtors do not believe that there would be a viable automatic stay-

based defense to JPMorgan's offset of obligations against the Cash Collateral.  Accordingly, the

Debtors respectfully request that the Court authorize the modification of the automatic stay in

accordance with the terms set forth in the Stipulation.

**D.      Establishing Notice Procedures and Scheduling the Final Hearing**

26.      Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to: (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Federal Reserve; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (g) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (h) counsel to Bank of America, N.A. as L/C Issuer; (i) Counsel to the Lender Steering Committee; and (j) counsel to JPMorgan (collectively, the "Initial Notice Parties").  The Debtors submit that under the circumstances no further notice is necessary.

27.      The Debtors further respectfully request that the Court schedule the Final Hearing and authorize them to mail copies of the signed Interim Order, which fixes the time, date and manner for the filing of objections, to: (a) the Initial Notice Parties, (b) counsel to any statutory committees appointed in these chapter 11 cases, and (c) any party who filed a request for notices in these chapter 11 cases pursuant to Bankruptcy Rule 2002 prior to the date set forth in the Interim Order for the Final Hearing.  The Debtors request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

WHEREFORE, the Debtors respectfully request that this Court (i) enter the

Interim Order, substantially in the form annexed hereto, granting the relief requested in this

Motion; (ii) schedule the Final Hearing to consider entry of the Final Order enter a Final Order;

(iii) grant such other and further relief as may be just and proper.

Dated: New York, New York
          November 1, 2009

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                         & FLOM LLP

                              By:     */s/ Gregg M. Galardi*
                                        Gregg M. Galardi
                                        J. Gregory St. Clair
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Proposed Counsel for Debtors and
                                         Debtors-in-Possession

14

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :      Chapter 11
                                        :
CIT GROUP INC. and                      :      Case No. 09-16565
CIT GROUP FUNDING COMPANY               :
OF DELAWARE LLC,                        :
                                        :
                Debtors.                :      (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER AUTHORIZING CIT GROUP INC. TO
ENTER INTO STIPULATION WITH JPMORGAN CHASE BANK, N.A.
AND SCHEDULING FINAL HEARING**

Upon the motion (the "<u>Motion</u>"),[1] dated November 1, 2009, of CIT Group Inc.

("<u>CIT</u>") and CIT Group Funding Company of Delaware LLC ("<u>Funding</u>"), each as debtor

and debtor-in-possession (collectively, the "<u>Debtors</u>"), in the above-captioned cases (the

"<u>Cases</u>") pursuant to sections 105, 362 and 363 of title 11 of the United States Code, 11

U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for an order

(i) authorizing CIT to enter into the proposed Stipulation (the "<u>Stipulation</u>") with

JPMorgan Chase Bank, N.A. ("JPMorgan"), substantially in the form attached as Exhibit

A hereto, and (ii) scheduling a final hearing with respect to the relief requested in the

Motion:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Motion.

Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on (a) the United States Trustee for the Southern District of New York; (b) counsel to Bank of America, N.A., as L/C Issuer; (c) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; and (e) those parties identified in the schedules of largest unsecured creditors annexed to the Debtors' chapter 11 petitions.

The Interim Hearing having been held by this Court on                    , 2009.

Upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice*.  Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(d).

3.    *Findings Regarding the Stipulation*.

(a) Good cause has been shown for the entry of this Interim Order.

(b) CIT has an immediate need to enter into and perform under the Stipulation in order preserve the status of letters of credit issued under the JPM L/C Facility and prevent irreparable harm to CIT, its non-Debtor affiliates and their customers.

(c) The terms of the Stipulation are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and were negotiated in good faith and at arm's length.

4.     *Authorization of the Stipulation*.  CIT is hereby authorized on an interim basis to enter into and perform its obligations under the Stipulation.

5.     *Automatic Stay*.  The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified, consistent with the terms of the Stipulation.

6.     *Final Hearing*.  The Final Hearing is scheduled for            , 2009 at            before this Court.

7.     The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any objections to entry of a final order on the Motion must be (a) filed with the Court no later than 4:00 p.m. (prevailing Eastern time) on            , 2009 (the "Objection Deadline") and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) CIT Group Inc., 1 CIT Drive, Livingston, New Jersey  07039 (Attn: Eric Mandelbaum); (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Attn: Gregg M. Galardi and J. Gregory St. Clair); (iii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Paul K. Schwartzberg); (iv) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (v) counsel to Bank of

America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit

Facility; (vi) Counsel to the Lender Steering Committee; (vii) counsel to any official

committee(s) appointed in these cases; and (viii) Davis Polk & Wardwell LLP, attorneys

for the Administrative Agent, attention Peter Levin and Timothy Graulich.


Dated:   New York, New York
              _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

4

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
  Debtors-in-Possession

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000
Mark Thompson

Attorneys for JPMorgan Chase, N.A.,
  as Administrative Agent

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                     :

In re:                                  :     Chapter 11
                                                     :

CIT GROUP INC. and             :     Case No. 09-16565
CIT GROUP FUNDING COMPANY    :
OF DELAWARE LLC,             :
                                                     :

               Debtors.           :     (Jointly Administered)
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## STIPULATION UNDER 11 U.S.C. §§ 105(a), 362, AND 363 WITH JPMORGAN CHASE BANK, N.A., AS ADMINISTRATIVE AGENT FOR LETTER OF CREDIT FACILITY

The debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"),[1] and JPMorgan Chase Bank, N.A., in its capacity as administrative agent on behalf

---

[1]     CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017.  Its tax identification number is 65-

of certain lenders under the 5-year Letter of Credit Issuance and Reimbursement Agreement, dated as of May 23, 2005 (as amended, supplemented, or otherwise modified to date, the "L/C Facility Agreement")[2] (in such capacity, the "Administrative Agent") and as Issuing Bank thereunder, stipulate and agree as follows:

## JURISDICTION AND VENUE

1.　　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157.  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## RECITALS

2.　　　WHEREAS, the Issuing Bank has agreed to issue Letters of Credit (as defined in the L/C Facility Agreement);

3.　　　WHEREAS, one of the principal purposes of the L/C Facility Agreement has been to enable operating Subsidiaries of the Debtor to fulfill their customers' requests for letters of credit to benefit such customers' and Subsidiaries' businesses;

4.　　　WHEREAS, prior to issuing Letters of Credit on behalf of the Debtor, its Subsidiaries, or customers thereof, the Issuing Bank has required the requesting Debtor or Subsidiary, as the case may be (the "Applicant"), and any customer of the Applicant on whose account such Letter of Credit is to be issued (the "Account Party"), to co-sign an application (the "Application") which, the Issuing Bank alleges, obliges each to be jointly and severally liable

---

xxx1192.  In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-16566, is a debtor in these related cases.  CIT Group Funding Company of Delaware LLC is located at 1 CIT Drive, Livingston, NJ 07039.  Its tax identification number is 98-xxx9146.

[2]  Unless otherwise defined herein, capitalized terms are used herein as defined in the L/C Facility Agreement.

with the Debtor for any reimbursement obligation arising from the drawing of any Letter of Credit issued as a result of the Application, and has issued [$345,395,180.84] face amount of presently outstanding Letters of Credit on behalf of such Applicants and/or Account Parties;

5.      WHEREAS, prior to the Petition Date (as defined below), in order to induce the Issuing Bank to continue to issue new Letters of Credit under the L/C Facility Agreement, to renew or extend (including by not issuing any notice of non-renewal or taking any similar action) Letters of Credit previously issued thereunder that would otherwise expire and to increase any Letter of Credit previously issued thereunder, notwithstanding that the conditions to such issuance, renewal or extension, or increase may not have been satisfied or may have been subject to dispute by the Issuing Bank, the Debtor entered into the Cash Collateral Agreement dated October 6, 2009 (the "Cash Collateral Agreement"), between the Debtor and JPMorgan Chase Bank, N.A. as Administrative Agent and Securities Intermediary and as the bank maintaining the Linked Deposit Account for the Secured Parties (all as defined therein), for the benefit of the Administrative Agent, the Issuing Bank, and the Banks and their respective successors and assigns and deposited approximately [$100,000,000] with the Administrative Agent as cash collateral for subsequently issued Letters of Credit;

6.      WHEREAS, on                    , 2009 (the "Petition Date"), the Debtor commenced these cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Bankruptcy Court");

7.      WHEREAS, the Debtor desires to induce the Issuing Bank and the Administrative Agent to forbear, during the administration of the Chapter 11 Cases, from pursuing any Applicant or Account Party for any obligations under the Letters of Credit issued pursuant to the

L/C Facility Agreement;

8.    WHEREAS, by virtue of the commencement of the Chapter 11 Cases, no Letter of Credit under the L/C Facility Agreement can be issued, renewed, extended, or amended after the Petition Date;

9.    WHEREAS, the Debtor will file a plan of reorganization (the "Plan") in the Chapter 11 Cases, in which (i) all claims for Reimbursement Obligations arising from drawings of Letters of Credit ("LC Claims") will be allowed and classified as a separate class; (ii) upon the effective date of the Plan, the Debtor will deliver or cause to be delivered to the Issuing Bank cash collateral in an amount not to be less than 103% of the total outstanding Letters of Credit on the effective date, for the Issuing Bank to apply to any subsequently arising Reimbursement Obligations of the Debtor arising from the drawing of any Letter of Credit; (iii) upon the effective date of the Plan, any claims of the Debtors, their estates, subsidiaries, or affiliates against the Administrative Agent, the Issuing Bank, or any of the other Banks, in respect of the L/C Facility Agreement, shall be forever released; (iv) upon the effective date of the Plan and the delivery to the Issuing Bank of the cash collateral contemplated by subsection (ii) of this paragraph, the Administrative Agent, on behalf of the Issuing Bank and the other Banks, shall release and discharge the Applicants and Account Parties (other than the Debtor) for any then existing or thereafter arising reimbursement obligations arising from drawings on any Letters of Credit issued under the L/C Facility Agreement; (v) on or before the effective date, all fees and other charges owing from the Debtor to the Issuing Bank or the Administrative Agent under or in respect of the L/C Facility Agreement or the Letters of Credit thereunder shall be paid in full;

10.    NOW THEREFORE, in consideration of the premises, the parties hereby agree as

follows:

## STIPULATION

11.     For the duration of the Chapter 11 Cases and until the consummation of the Plan, the Administrative Agent shall retain possession of all cash collateral held by the Administrative Agent for the benefit of the Issuing Bank and the Banks as of the Petition Date, including the $400,000 retainer for counsel specified in the Cash Collateral Agreement.

12.     To the extent of any drawings, after the Petition Date but before the effective date of the Plan, under any Letter of Credit issued pursuant to the L/C Facility Agreement, (i) to the extent the Administrative Agent holds cash collateral supporting such drawn Letter of Credit, the Administrative Agent shall be authorized to apply such cash collateral to the Reimbursement Obligations arising from such drawing; and (ii) otherwise, the Debtor shall pay or cause to be paid the Reimbursement Obligation in full when due in accordance with the L/C Facility Agreement.

13.     The automatic stay under 11 U.S.C. § 362 shall be lifted to the extent necessary to permit the applications of cash collateral and payments contemplated by paragraph 12 above.

14.     Until the Termination Date (as defined below), so long as the Debtor complies with the obligations set forth in paragraph 12 above, the Administrative Agent and Issuing Bank shall forbear from pursuing any Subsidiary Applicant or Account Party for any reimbursement obligation resulting from the drawing of any Letter of Credit issued under the L/C Facility Agreement for which either of them may be alleged to be liable.  Such forbearance is entirely contractual, undertaken in consideration of the performance by the Debtor of its obligations pursuant to this Stipulation, and shall not constitute any admission by the Administrative Agent,

the Issuing Bank, or the Banks that the automatic stay under 11 U.S.C. § 362 or any other law, whether state or federal, requires such forbearance.

15.     Between the Petition Date and the Termination Date, so long as the Administrative Agent and the Issuing Bank are complying with paragraph 14 above, neither the Debtor nor any of its affiliates shall seek the entry of an order by the Bankruptcy Court or any other court restraining the Administrative Agent or the Issuing Bank from pursuing any remedy against the Subsidiary Applicants or Account Parties with respect to the Letters of Credit issued under the L/C Facility Agreement.

16.     This Stipulation shall become effective upon the entry of an order by the Bankruptcy Court approving the terms herein and lifting the automatic stay under 11 U.S.C. § 362 as contemplated by paragraph 13.

## TERMINATION OF THE STIPULATION

17.     This Stipulation will only become effective if and when it is so ordered by the Court as provided below and shall automatically terminate upon the occurrence of any of the following events (the date of such termination, the "Termination Date"):

    a.   the effective date of the Plan;

    b.   the treatment under the Plan of the LC Claims or any other claims arising out of the L/C Facility Agreement shall be modified from that described herein in any respect adverse to (i) the Banks, without the consent of holders of at least two-thirds in amount and more than one-half in number of the LC Claims; (ii) the Administrative Agent, without its consent; or (iii) the Issuing Bank, without its consent;

    c.    the Bankruptcy Court shall fail to so order this Stipulation by November 6, 2009 or shall enter an order reinstituting the automatic stay under 11 U.S.C. § 362 with respect to the cash collateral held by the Administrative Agent;

    d.    the material breach by either party of any of its obligations under this Stipulation; or

    e.    the Debtor or any of its affiliates or any person acting on behalf of any of them shall institute any litigation seeking an order from any court to restrain the Administrative Agent or the Issuing Bank from pursuing any remedy against the Applicants or Account Parties with respect to the Letters of Credit issued under the L/C Facility Agreement.

## MISCELLANEOUS

18.    This Stipulation is subject to the Court's approval.  The Debtor shall promptly cause this Stipulation to be presented to the Court for approval.

19.    To the extent that there is an inconsistency between the terms of this Stipulation and any provision of the Debtors' motion requesting approval thereof, the terms of this Stipulation shall control.

20.    This Stipulation may be executed in one or more counterparts, by facsimile or otherwise, each of which shall be deemed an original, and all of which, when taken together, shall constitute a single document.

IT IS SO ORDERED.

Dated:      New York, New York
                                , 2009

_____

UNITED STATES BANKRUPTCY JUDGE

[Signature page follows]

Dated: November    , 2009                    **CIT GROUP, INC.**

                                             By Counsel:


                                             SKADDEN, ARPS, SLATE, MEAGHER
                                               & FLOM LLP

                                             By:    _____
                                                    Gregg M. Galardi
                                                    J. Gregory St. Clair
                                                    Four Times Square
                                                    New York, New York 10036
                                                    (212) 735-3000

                                                    Proposed Counsel for Debtors and
                                                     Debtors-in-Possession



Dated: November    , 2009                    **JPMORGAN CHASE BANK, N.A.**

                                             By Counsel:


                                             SIMPSON THACHER & BARLETTE LLP

                                             By:    _____
                                                    Mark Thompson (MT4187)
                                                    425 Lexington Avenue
                                                    New York, New York 10017
                                                    (212) 455-2000

                                                    Attorneys for JPMorgan Chase, N.A.,
                                                     as Administrative Agent