SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
   Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :     Chapter 11
                                          :
CIT GROUP INC. and                        :     Case No. 09-16565 (ALG)
CIT GROUP FUNDING COMPANY                 :
OF DELAWARE LLC,                          :
                                          :
                    Debtors.              :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF HEARING ON APPLICATION OF THE DEBTORS FOR ORDER UNDER
11 U.S.C. §§ 327(A) AND 328(A), FED. R. BANKR. P. 2014 AND 2016, AND LOCAL
BANKR. R. 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF
EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL ADVISOR
TO THE DEBTORS AND DEBTORS-IN-POSSESSION
*NUNC PRO TUNC* TO THE PETITION DATE**

PLEASE TAKE NOTICE THAT on November 9, 2009, the debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors")[1] filed the

Application of the Debtors for Order under 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P.

---

[1]     CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017. Its tax identification number is 65-
        xxx1192. In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-
        16566, is a debtor in these related cases. CIT Group Funding Company of Delaware LLC is located at 1 CIT
        Drive, Livingston, NJ 07039. Its tax identification number is 98-xxx9146.

2014 and 2016, and Local Bankr. R. 2014-1 Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor to the Debtors and Debtors-In-Possession *Nunc Pro Tunc* to the Petition Date (the "Evercore Application").

PLEASE TAKE FURTHER NOTICE THAT, a hearing on the Debtors' Evercore Application will be held before the Honorable Allan L. Gropper of the United States Bankruptcy Court for the Southern District of New York (the "Court"), One Bowling Green, New York, New York 10004, in Courtroom 617, 6th Floor on **November 23, 2009 at 2:30 p.m. (Prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that the Court requires that any objection to the relief requested in the Evercore Application must be (a) filed with the Court no later than **4:00 p.m. (Prevailing Eastern Time) on November 19, 2009** (the "Objection Deadline") and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) CIT Group Inc., 1 CIT Drive, Livingston, New Jersey 07039 (Attn: Eric Mandelbaum); (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Attn: Gregg M. Galardi and J. Gregory St. Clair); (iii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Paul K. Schwartzberg); (iv) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Timothy Graulich); (v) Counsel to the Lender Steering Committee, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of Americas, New York, New York 10019-6064 (Attn: Andrew N. Rosenberg and Alice Belisle Eaton); and (vi) counsel to any official committee(s) appointed in these cases. Only objections made in writing and timely filed and received will be considered by the Court at the Hearing.

PLEASE TAKE FURTHER NOTICE THAT, copies of the Evercore Application can be obtained by using the Court's electronic case filing system at www.nysb.uscourts.gov using a PACER password (to obtain a PACER password, go to the PACER website, http://pacer/psc.uscourts.gov) or on the website maintained by the Debtors' claims agent at http://www.kccllc.net/citgroup.

Dated:  New York, New York
      November 9, 2009

             SKADDEN, ARPS, SLATE, MEAGHER
              & FLOM LLP

        By:    */s/ Gregg M. Galardi*
             Gregg M. Galardi
             J. Gregory St. Clair
             Four Times Square
             New York, New York 10036
             (212) 735-3000

             Proposed Counsel for Debtors and
             Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In re:                        :     Chapter 11
                             :

CIT GROUP INC. and         :     Case No. 09-16565 (ALG)
CIT GROUP FUNDING COMPANY  :
OF DELAWARE LLC,        :
                             :

         Debtors.       :     (Jointly Administered)
                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPLICATION OF THE DEBTORS FOR ORDER UNDER 11 U.S.C. §§ 327(A) AND 328(A), FED. R. BANKR. P. 2014 AND 2016, AND LOCAL BANKR. R. 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS-IN-POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

        The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),[1] hereby submit this application (the "Application") for entry of an order (the "Proposed Order") filed concurrently herewith, under sections 327(a) and 328(a) of title 11 of the United States Code, as amended (the "Bankruptcy Code"), and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing the employment and retention of Evercore Group L.L.C. and its affiliates ("Evercore") as investment banker and financial advisor to the Debtors *nunc pro tunc* to the Petition Date (defined below). In support of this Application, the Debtors (a) rely on the

---

[1]    CIT Group Inc. is located at 505 Fifth Avenue, New York, NY 10017. Its tax identification number is 65-xxx1192. In addition to CIT Group Inc., CIT Group Funding Company of Delaware LLC, Case No. 09-16566, is a debtor in these related cases. CIT Group Funding Company of Delaware LLC is located at 1 CIT Drive, Livingston, NJ 07039. Its tax identification number is 98-xxx9146.

Declaration of David Ying, a Senior Managing Director of Evercore (the "Ying Declaration"), annexed hereto as Exhibit 1, and (b) rely upon and incorporate by reference the Declaration Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and Various First Day Applications and Motions (the "First Day Declaration"). In further support of this Application, the Debtors represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(a) and 328(a).

## BACKGROUND

2. On November 1, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in these cases. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the First Day Declaration filed on the Petition Date and fully incorporated herein by reference. The Debtors continue to manage and operate their businesses as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.

## RELIEF REQUESTED

3. By this Application, the Debtors seek entry of an order (a) authorizing the employment and retention of Evercore as the Debtors' investment banker and financial advisor, *nunc pro tunc* to the Petition Date, in accordance with the provisions of this Application, the

Engagement Letter (as defined herein), and the proposed order submitted herewith, (b) approving the terms and conditions contained in the Engagement Letter and (c) granting such other and further relief as the Court deems appropriate.

## PROFESSIONAL BACKGROUND AND QUALIFICATIONS

4. Evercore commenced its engagement with the Debtors to provide certain investment banking and financial advisory services pursuant to an engagement letter agreement dated April 15, 2008. On May 11, 2009, Evercore and the Debtors executed a separate engagement letter agreement and Indemnification Agreement, of the same date (the "Indemnification Agreement"). On July 30, 2009, Evercore and the Debtors executed an amendment to the May 11, 2009 engagement letter and then executed a separate engagement letter agreement dated on September 11, 2009. The Debtors and Evercore executed a new engagement letter agreement on October 1, 2009 (the "Engagement Letter"). The Indemnification Agreement is incorporated by reference in, and constitutes a part of, the Engagement Letter. Prior engagement letter agreements are presently not in effect (except for the Indemnification Agreement). A copy of the Engagement Letter is attached to the Ying Declaration as Exhibit A. A copy of the Indemnification Agreement is attached to the Ying Declaration as Exhibit B.

5. Established in 1996, Evercore is a leading investment banking boutique and investment management firm. Evercore's Advisory business counsels its clients on mergers, acquisitions, divestitures, restructurings and other strategic transactions. Evercore's Investment Management business comprises private equity investing, institutional asset management and wealth management. Evercore serves a diverse set of clients around the world from its offices in New York, San Francisco, Boston, Washington D.C., Los Angeles, Houston, London, Mexico

City and Monterrey, Mexico. Its corporate advisory and restructuring advisory groups have together advised on over $1 trillion of transactions. Its restructuring professionals provide investment banking and financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in Chapter 11 proceedings and out-of-court restructurings.

6. The Debtors have selected Evercore as their investment banker and financial advisor because of its extensive general experience and knowledge in the restructuring advisory field. Evercore and its professionals have been retained as investment bankers and financial advisors to debtors in a number of Chapter 11 transactions, including among others: Acme Metals Inc., Apex Oil Company, Inc., Aurora Foods Inc., C.R. Anthony Co., Birch Telecom, Inc., Choice One Communications Corp., Crystal Brands, Inc., Daewoo Motor America Inc., E-II Holdings, Inc., Focal Communications Corporation, General Motors Corporation, Geneva Steel Holdings Corp., Globe Metallurgical Inc., Grand Union Co., ICG Communications, Inc., High Voltage / ASIRobicon SpA, ICH Corporation, Imperial Sugar Company, Impath Inc., Interco Inc., IWO Holdings, Inc., Kaiser Aluminum Corporation, Liberté Investors Inc., Loews Cineplex Entertainment Corporation, Lone Star Steel Company, Lyondell Chemical Company, Marvel Entertainment Group, Inc., Medical Resources, Inc., Memorex-Telex N.V., Meridian Automotive Systems, Inc., McLeodUSA, NVR L.P., Northwest Airlines Corporation, Oakwood Homes, Orbital Imaging Corp., Parmalat U.S.A. Corp., Pegasus Satellite Communications, PennCorp Financial Group, Inc., PhyAmerica Group Inc., PRC, LLC, Prime Motor Inns, Inc., Republic Health Corporation, Resorts International, Inc., Safety-Kleen Corporation, SLM International, Inc., The Elder-Beerman Stores Corporation, The Kendall

Company, The Williams Companies, Inc., Thermadyne Holdings Corporation, TouchAmerica, Inc., Wang Laboratories Inc., Washington Group International Inc., and Zale Corporation.

7.    Further reason for selecting Evercore is its knowledge of the Debtors' businesses and capital structure. Since Evercore's initial retention on April 15, 2008, it has worked closely with the Debtors' management, creditors, other professionals and advisors in exploring various strategic and financial alternatives. Since July 2009, Evercore has been the lead advisor to the Debtors in evaluating restructuring alternatives and developing the exchange offers and prepackaged plan of reorganization. Consequently, the Debtors believe that Evercore has developed significant relevant experience and expertise regarding the Debtors and their current situation and is thus both well-qualified and uniquely suited to deal effectively and efficiently with any financial problems that may arise in the context of these cases. Indeed, if the Debtors were required to retain investment bankers and financial advisors other than Evercore in connection with these chapter 11 cases, the Debtors, their estates, and all parties in interest would be unduly prejudiced by the time and expenses necessary to familiarize the other investment bankers and financial advisors with the intricacies of the Debtors and their business operations.

8.    An experienced investment banker and financial advisor such as Evercore fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. The Debtors submit that the retention of Evercore on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of their estates, creditors, and all other parties in interest, and should be granted in all respects.

## SERVICES TO BE RENDERED

9.    The employment of Evercore under the terms set forth in the Engagement Letter is appropriate and necessary to enable the Debtors to execute faithfully their duties as debtors and debtors-in-possession and to implement their restructuring and reorganization. The

Debtors submit that Evercore is well-qualified and able to provide the following professional services, more fully described in the Engagement Letter. Subject to further order of this Court, the Debtors propose that Evercore provide the following services pursuant to the Engagement Letter:[2]

(a) Reviewing and analyzing the Debtors' businesses, operations, capital structure and financial projections;

(b) Advising and assisting the Debtors regarding restructuring alternatives, mechanics and strategy;

(c) Advising and assisting the Debtors in consummating Restructuring transaction(s) if the Debtors determine to undertake such transaction(s);

(d) Providing financial advice in developing and implementing a Restructuring, which would include:

　　i. Assisting the Debtors in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (the "Plan");

　　ii. Advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the Plan;

　　iii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings under the Bankruptcy Code that are pending before this Court; and,

　　iv. Providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate.

10. The Debtors believe that Evercore is well-qualified and able to provide the foregoing services to the Debtors. The Debtors believe that the services will not duplicate the

---

[2] To the extent that the Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control. Capitalized terms used in this Application without definition shall have the meanings ascribed to them in the Engagement Letter.

services that other professionals will be providing the Debtors in these cases. Specifically, Evercore will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and other professionals retained in these cases to avoid the unnecessary duplication of services. Evercore has indicated a willingness to act on behalf of the Debtors, on the terms described above and subject itself to the jurisdiction of the Court.

### PROFESSIONAL COMPENSATION

11. Evercore's decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

12. Evercore intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court, and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure"). Further, because the Debtors are seeking to retain Evercore under Bankruptcy Code sections 327(a) and 328(a), the Debtors believe that Evercore's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and should not constitute a "bonus" under applicable law.

13. As more fully described in the Engagement Letter, the Debtors have agreed that the Fee Structure for services rendered by Evercore during these cases will be as follows:

      (a)      A Monthly Fee of $350,000 beginning in November 2009, payable on the 1st day of each month until the earlier of the consummation of the

Restructuring transaction or the termination of Evercore's engagement. Monthly Fees due and payable prior to February 28, 2010, will be credited against the Restructuring Fee (described below), provided, that, in the event of a Chapter 11 filing, any such credit of fees contemplated by this sentence shall only apply to the extent that all such Monthly Fees and the Restructuring Fee are approved in their entirety by this Court pursuant to a final order not subject to appeal and which order is acceptable to Evercore.

(b)     A Restructuring Fee of $30 million, payable as follows:

     i.    If a Restructuring is to be effected through out-of-court exchange offers, the Restructuring Fee shall be deemed earned in full on the date definitive offering materials are first given, sent or delivered to holders of Existing Obligations, of which $7.5 million shall be paid on such date and the balance shall be paid on the 120th date thereafter;

    ii.    If the Debtors determine to effect the Restructuring through a pre-packaged or pre-arranged Plan of Reorganization pursuant to the Bankruptcy Code, $7.5 million of the Restructuring Fee shall be accelerated and paid on the business day immediately preceding the day petitions for relief under Chapter 11 are filed, and the balance of the Restructuring Fee (less any amounts paid pursuant to clause (i) above) shall be payable upon successful consummation of the restructuring;

    iii.    In the event of a Sale of the Debtors and their subsidiaries pursuant to Section 363 of the Bankruptcy Code or pursuant to a Restructuring specified by the Debtors and the Steering Committee (as defined in the Credit Facility Agreement, as agreed and amended):  $12.5 million of the Restructuring Fee shall be earned and payable immediately prior to the commencement of Chapter 11 proceedings with $17.5 million payable upon consummation of such Sale; and

    iv. In the event of any other restructuring transaction not contemplated under the foregoing clauses (i) – (iii), the Restructuring Fee shall be payable upon successful consummation of a restructuring.

  (c) In the event that Evercore is paid a fee in connection with a pre-packaged Plan or similar pre-arranged Plan or Sale pursuant to Section 363 of the Bankruptcy Code, and such Plan or Sale is not thereafter consummated, then such fee previously paid to Evercore may be credited by the Debtors against any subsequent Restructuring Fee that is payable or that becomes payable by the Debtors to Evercore pursuant to the Engagement Letter.

  14. Pursuant to subparagraph 2(b)(i) of the Engagement Letter, $7.5 million of the Restructuring Fee was earned on October 1, 2009, the date on which definitive exchange-offer materials were first given, sent or delivered to holders of Existing Obligations; the respective payment was received on October 5, 2009.  Pursuant to subparagraph 2(b)(ii) of the Engagement Letter, an additional $7.5 million of the Restructuring Fee was accelerated and paid on the business day immediately preceding the Petition Date in these pre-packaged Chapter 11 cases.  The unpaid balance of the Restructuring Fee is $15 million.

  15. Evercore also will seek reimbursement for reasonable out-of-pocket expenses and other fees and expenses, including expenses of counsel, if any, as set forth in the Engagement Letter.  With respect to such expenses, Evercore will follow the guidelines established by the United States Trustee for the Southern District of New York.  If Evercore provides services to the Debtors for which a fee is not provided in the Engagement Letter, such services will, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of the Engagement Letter, and the Debtors and Evercore will agree upon a fee for such services based upon good faith negotiations.

16.     Per the Fee Structure, the net Restructuring Fee payable to Evercore upon a successful consummation of the restructuring of the Debtors is $15 million. The Restructuring Fee per the Engagement Letter reflects the potential completion fee for a variety of structuring, negotiating and analytical work already completed by Evercore since late July 2009. The Fee Structure has been agreed upon by the parties to reflect substantial commitment of professional time and effort required of Evercore and its professionals over the period of several months preceding the Chapter 11 filing as well as during the course of these cases. Customarily, the preparation of prepackaged or pre-arranged Chapter 11 cases requires a disproportionate amount of professional time to be expended before the commencement of the cases in order to minimize the time spent by the Debtors during the Chapter 11 process. This was particularly true in the case of CIT given the sheer number of different types of debt holders and other constituencies with whom the Debtors and Evercore had to negotiate in order to prepare the plan of organization that would have the highest chance of being approved, thereby minimizing potential value destruction in bankruptcy. In light of these facts, the Debtors believe that the Fee Structure also reflects the unprecedented nature and complexity of the assignment, and the extensive tasks that Evercore has previously undertaken and expects to undertake.

17.     The compensation is comparable to the compensation generally charged by investment banking and financial advisory firms of similar stature to Evercore and for comparable engagements, both in and out of the context of chapter 11 reorganizations.

18.     The Debtors and Evercore believe that the foregoing Fee Structure is both reasonable, market-based and within the range of other comparable transactions.

19.     Although Evercore does not charge for its services on an hourly basis, Evercore will nonetheless maintain records (in summary format) of time spent by its

professionals in connection with the rendering of services for the Debtors by category and the amount of time spent on each date by each such professional in rendering services on behalf of the Debtors; provided, however, that Evercore seeks approval to maintain time records in half-hour increments.

20.     The Debtors acknowledge and agree that Evercore's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Evercore's engagement, were important factors in determining the fees set forth in the Engagement Letter and summarized above, and that the ultimate benefit to the Debtors of Evercore's services likely could not be measured merely by reference to the number of hours to be expended by Evercore's professionals in the performance of such services.

21.     In addition, given the numerous issues that Evercore may be required to address in the performance of its services hereunder, Evercore's commitment to the variable level of effort necessary to address all issues as they arise, and the market prices for Evercore's services for engagements of this nature in an out-of-court context, as well as in Chapter 11, the Debtors submit that the fee arrangements in the Engagement Letter (including the Restructuring Fee) are reasonable under the standards set forth in Bankruptcy Code section 328(a).

22.     As set forth in the Ying Declaration, Evercore has not shared or agreed to share any of its compensation from the Debtors with any other persons, other than employees of Evercore, as permitted by section 504 of the Bankruptcy Code.

23.     Evercore will file interim and final fee applications for allowance of its compensation and expenses, with respect to its services, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern

District of New York, the guidelines established by the United States Trustee for the Southern District of New York (the "U.S. Trustee"), and further orders of this Court; provided, however, that Evercore shall not be subject to the standard of review under section 330 of the Bankruptcy Code. Evercore's applications for compensation and expenses will be paid by the Debtors upon approval by the Court.

24.     The Debtors acknowledge and agree that Evercore's compensation under the Engagement Letter has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Evercore and its professionals and in light of the fact that such commitment may foreclose other opportunities for Evercore and that the actual time and commitment required of Evercore and its professionals to perform the investment banking and financial advisory services under the Engagement Letter may vary substantially from week to week or month to month.

## TERMINATION OF ENGAGEMENT

25.     Evercore's engagement may be terminated by either the Debtors or Evercore at any time without liability or continuing obligation, except that following such termination and any expiration of the Engagement Letter, (a) Evercore will remain entitled to any fees accrued pursuant to the Engagement Letter but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, and (b) in the case of termination by the Debtors without Cause, Evercore will remain entitled to full payment of all fees contemplated by the Engagement Letter in respect to any Restructuring announced or occurring during the period from the date of engagement until 12 months following such termination or expiration, as the case may be.

"Cause," as defined in the Engagement Letter, shall mean gross negligence, bad faith or willful misconduct of Evercore.

## INDEMNIFICATION PROVISIONS

26.     Subject to the approval of the Court, and as more fully described in the Indemnification Agreement and incorporated by reference in the Engagement Letter, the Debtors will indemnify and hold Evercore and its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any, (each an "Indemnified Person") harmless from and against any and all claims, actions, investigations or liabilities incurred by any of them in the performance of duties hereunder (including reasonable attorneys' fees and expenses in connection with any such controversies) other than as a primary result of such Indemnified Person's gross negligence, bad faith or willful misconduct.

27.     The terms and conditions of the Engagement Letter and the Indemnification Agreement were negotiated by the Debtors and Evercore at arm's-length and in good faith.  The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Agreement, viewed in conjunction with the other terms of Evercore's proposed retention, are reasonable and are in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require Evercore's services to successfully reorganize. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Agreement.

## EVERCORE'S DISINTERESTEDNESS

28.     To the best of the Debtors' knowledge, information and belief, other than as set forth herein or in the Ying Declaration, neither Evercore nor any Evercore professional working on or connected to its engagement on the Debtors' behalf has any connection with the

Debtors, their creditors, the U.S. Trustee or any other party with an actual or potential interest in the Debtors' cases or their attorneys or accountants.

29.     To the best of the Debtors' knowledge, information and belief, based on (and other than as set forth in) the Ying Declaration, Evercore does not hold or represent any interest adverse to the Debtors' bankruptcy estates. The Debtors believe that Evercore is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as modified by section 1107(b) of the Bankruptcy Code, and that the employment of Evercore is necessary and in the best interests of the Debtors, their estates, and their creditors.

30.     Evercore will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Evercore will inform the Court.

## APPROVAL OF TERMS OF ENGAGEMENT
## UNDER BANKRUPTCY CODE SECTION 328(a)

31.     The Debtors seek approval of the Engagement Letter, including the Fee Structure contained therein, pursuant to Bankruptcy Code sections 327(a) and 328(a). Section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) permits the compensation of professionals, including investment bankers and financial advisers, on flexible terms that reflect the nature of their services and prevailing market conditions for those services.

32.     As set forth above, notwithstanding approval of the Engagement Letter under Bankruptcy Code section 328(a), Evercore intends to apply for compensation for

professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the Engagement Letter.

33.     The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by Evercore in these complex chapter 11 cases, Evercore's substantial experience with respect to investment banking and financial advisory services and the fee structures typically utilized by Evercore and other leading investment bankers and financial advisors that do not bill their clients on an hourly basis.

34.     In light of the foregoing, and given the numerous issues that Evercore may be required to address in the performance of its services hereunder, Evercore's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Evercore's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in Bankruptcy Code section 328(a).

35.     To deny the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment bankers and financial advisors and would effect an unjust disadvantage to the Debtors and all parties in interest.  Indeed, the Debtors would be forced to engage new investment bankers and financial advisors who lack a thorough understanding of the Debtors' business and the restructuring initiatives that have been implemented over the course of the last few months and which will continue through the pendency of these cases.  It would require the commitment of significant resources for a newly retained investment banker and financial advisor to gain adequate situational awareness given the

steep learning curve involved.  Moreover, comparable investment bankers and financial advisors would charge an equivalent level of fees.

**NOTICE**

36.     Notice of this Application has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to: (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Federal Reserve; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (g) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility; (h) counsel to Bank of America, N.A. as L/C Issuer; and (i) counsel to the Lender Steering Committee.  The Debtors submit that under the circumstances no further notice is necessary.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request this Court enter an order, substantially in the form annexed hereto, (a) authorizing the Debtors to retain and employ Evercore as investment banker and financial advisor to the Debtors, *nunc pro tunc* to the Petition Date, (b) approving the terms and conditions contained in the Engagement Letter and (c) granting related relief.

Dated: New York, New York
      November 9, 2009

CIT Group Inc. and
CIT Group Funding Company of
Delaware LLC

*/s/ Eric Mandelbaum*
Eric Mandelbaum
Senior Vice President and Deputy
General Counsel

EXHIBIT 1

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Gregg M. Galardi
J. Gregory St. Clair

Proposed Counsel for Debtors and
  Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :

In re:                          :    Chapter 11
                                   :

CIT GROUP INC. and       :    Case No. 09-16565 (ALG)
CIT GROUP FUNDING COMPANY :
OF DELAWARE LLC,         :
                                   :

          Debtors.     :    (Jointly Administered)
                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF DAVID YING IN SUPPORT OF THE
## APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 327(A) AND 328(A),
## FED. R. BANKR. P. 2014 AND 2016, AND LOCAL BANKR. R. 2014-1 AUTHORIZING
## THE EMPLOYMENT AND RETENTION OF EVERCORE GROUP L.L.C.
## AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE DEBTORS
## *NUNC PRO TUNC* TO THE PETITION DATE

        I, David Ying, make this Declaration under 28 U.S.C. § 1746 and state:

        1.        I am a Senior Managing Director of Evercore Group L.L.C. ("**Evercore**"),

an investment banking firm that maintains offices at 55 East 52nd Street New York, NY 10055,

and I make this declaration (the "**Declaration**") on behalf of Evercore in connection with the

application dated November 6, 2009 (the "**Application**") of CIT Group Inc. and certain of its

affiliates, as debtors and debtors-in-possession (collectively, the "**Debtors**" and each, a

"**Debtor**"), (a) for authorization to employ and retain Evercore as investment banker and financial advisor for the Debtors *nunc pro tunc* to November 1, 2009 (the "**Petition Date**"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

<u>**Evercore's Qualifications**</u>

2.      Established in 1996, Evercore is a leading investment banking boutique and investment management firm. Evercore's Advisory business counsels its clients on mergers, acquisitions, divestitures, restructurings and other strategic transactions.  Evercore's Investment Management business comprises private equity investing, institutional asset management and wealth management. Evercore serves a diverse set of clients around the world from its offices in New York, San Francisco, Boston, Washington D.C., Los Angeles, Houston, London, Mexico City and Monterrey, Mexico.  Its corporate advisory and restructuring advisory groups have together advised on more than $1 trillion of transactions.  Its restructuring professionals provide investment banking and financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in Chapter 11 proceedings and out-of-court restructurings.

3.      I have considerable experience with Chapter 11 restructurings and other distressed company circumstances.  I have more than 24 years of restructuring experience, including in complex restructuring transactions involving large corporations, money center and investment banks, and other creditors on numerous Chapter 11 transactions and restructurings. Evercore and its professionals have been retained as investment bankers and financial advisors to debtors in a number of Chapter 11 transactions, including among others: Acme Metals Inc., Apex Oil Company, Inc., Aurora Foods Inc., C.R. Anthony Co., Birch Telecom, Inc., Choice One Communications Corp., Crystal Brands, Inc., Daewoo Motor America Inc., E-II Holdings, Inc., Focal Communications Corporation, General Motors Corporation, Geneva Steel Holdings

Corp., Globe Metallurgical Inc., Grand Union Co., ICG Communications, Inc., High Voltage / ASIRobicon SpA, ICH Corporation, Imperial Sugar Company, Impath Inc., Interco Inc., IWO Holdings, Inc., Kaiser Aluminum Corporation, Liberté Investors Inc., Loews Cineplex Entertainment Corporation, Lone Star Steel Company, Lyondell Chemical Company, Marvel Entertainment Group, Inc., Medical Resources, Inc., Memorex-Telex N.V., Meridian Automotive Systems, Inc., McLeodUSA, NVR L.P., Northwest Airlines Corporation, Oakwood Homes, Orbital Imaging Corp., Parmalat U.S.A. Corp., Pegasus Satellite Communications, PennCorp Financial Group, Inc., PhyAmerica Group Inc., PRC, LLC, Prime Motor Inns, Inc., Republic Health Corporation, Resorts International, Inc., Safety-Kleen Corporation, SLM International, Inc., The Elder-Beerman Stores Corporation, The Kendall Company, The Williams Companies, Inc., Thermadyne Holdings Corporation, TouchAmerica, Inc., Wang Laboratories Inc., Washington Group International Inc., and Zale Corporation.

4.    Prior to the Petition Date, Evercore and I worked closely with the Debtors' management, financial staff and other professionals in the Debtors' restructuring efforts, the result of which was the launch of the October 2009 exchange offer attached to a solicitation of acceptances for a prepackaged plan of reorganization. Since late July 2009, after facilitating the process of obtaining $3 billion in rescue financing for the Debtors in July 2009, Evercore has reviewed the Debtors' approximately $65 billion capital structure, including conducting a detailed analysis of the terms of the Debtors' outstanding securities and other obligations; acquainted ourselves with the Debtors' businesses, operations, properties and finances; analyzed the Debtors' liquidity and projected cash flows; advised the Debtors in their evaluation of strategic and financing alternatives; assisted the Debtors in their communications with the regulators (including the Federal Reserve Board, Federal Depository Insurance Corporation, United States Treasury and Small Business Administration); facilitated the process of obtaining

$3 billion in rescue financing for the Debtors in July 2009; assisted the Debtors in negotiations with the Lenders Steering Committee; assisted the Debtors in negotiations with more than a dozen different creditor groups, including current bank groups, securitization providers and off-balance sheet financing providers regarding refinancing and restructuring of their existing facilities; assisted the Debtors in structuring the exchange offers and plan of reorganization soliciting more than 300 debt instruments with an aggregate face value of more than $34 billion; advised the Debtors in connection with the October 2009 $4.5 billion expansion facility; and assisted the Debtors in connection with preparations for commencement of these cases.

5.      As a result of this pre-petition work performed on behalf of the Debtors, Evercore and I acquired significant knowledge of the Debtors and their businesses. Likewise, in providing pre-petition services to the Debtors, Evercore's professionals have worked closely with the Debtors' management and other professionals. Accordingly, Evercore has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 cases.  Evercore is both well-qualified and uniquely able to represent the Debtors in these cases in a most efficient and timely manner.

## Disinterestedness of Evercore

6.      In connection with its proposed retention by the Debtors in these cases, Evercore undertook to determine whether it had any conflicts or relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.  As part of this inquiry, Evercore obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these Chapter 11 cases, a summary of which is attached hereto as Schedule I.  Evercore researched its electronic files and records and conducted an internal query of its senior professionals and other professionals involved with this

engagement to determine Evercore's connections with the Debtors and any potential parties in interest.

7.       To the best of my knowledge, neither Evercore nor any professional employed by Evercore (i) is a creditor, equity security holder or insider of the Debtors; (ii) is or has been in the past two years a director, officer or employee of the Debtors; or (iii) has an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders.  Accordingly, to the best of my knowledge, Evercore is a "disinterested person" as that term is defined in section 101(14) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532  (as amended, the "**Bankruptcy Code**"), as modified by section 1107(b) of the Bankruptcy Code.  Evercore will conduct an ongoing review, and if any new relevant facts or relationships are discovered, Evercore will supplement its disclosure to the Court.

8.       Based on the results of Evercore's conflict search conducted to date, neither Evercore nor any Evercore professional working on or connected to this engagement on the Debtors' behalf, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, other parties in interest identified on Schedule I, their respective attorneys, or the United States Trustee or any person employed in the Office of the United States Trustee, except in connection with Evercore's engagement by the Debtors or as otherwise disclosed or described herein, including on Schedule II attached hereto.

9.       As part of its diverse practice, Evercore appears in numerous cases, proceedings and transactions involving attorneys, accountants, investment bankers, financial advisors and financial consultants, some of whom may represent claimants and parties in interest in the Debtors' Chapter 11 cases.  Furthermore, Evercore has in the past, and may in the future, be represented by attorneys and law firms in the legal community, some of whom may be involved in these proceedings.  In addition, Evercore has in the past worked, and likely will in

the future be working, with or opposite other professionals involved in these cases in matters unrelated to these cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors in matters upon which Evercore is to be employed.

10. Evercore has two U.S. affiliates that are in the asset management business: Evercore Wealth Management, LLC ("**EWM**") and Evercore Asset Management, LLC ("**EAM**"). As part of its regular business operations, each of EWM and EAM acts as an investment adviser (whether on a discretionary or non-discretionary basis) for its clients, some of which may be creditors, equity holders or other parties-in-interest in these cases. Some of these client accounts may now or in the future hold debt or equity securities of the Debtors or other parties in interest in these cases. There is an information barrier in place between Evercore, on the one hand, and EWM and EAM, on the other, and Evercore has in place compliance procedures to ensure that no confidential or non-public information concerning the Debtors has or will be available to employees of EWM and EAM. Evercore's parent company also invests, directly or indirectly, in securities issued by various companies, which may include creditors, equity holders or other parties in interest in these cases; however, the parent company does not hold any equity or debt securities issued by the Debtors or their affiliates, nor will it acquire any such securities while Evercore remains employed by the Debtors.

11. Evercore also has four affiliated private equity funds: Evercore Capital Partners I, Evercore Capital Partners II, Discovery Americas I, and Evercore Mexico Capital Partners II (the "**Funds**"). The Funds invest, directly or indirectly, in securities issued by various companies, which may include creditors, equity holders or other parties in interest in these cases; however, the Funds do not hold any equity or debt securities issued by the Debtors or their affiliates, nor will they acquire any such securities while Evercore remains employed by the

Debtors. Certain institutional investors that are limited partners in the Funds also may be creditors, equity holders or other parties-in-interest in these cases. In addition, the Funds may be co-investors with interested parties in these cases in certain investments. Evercore does not believe that these potential relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

12. In 2006, Mizuho Securities Co., Ltd., its affiliate The Bridgeford Group, and Evercore Partners Inc. ("**Evercore Partners**"), the parent company of Evercore, formed a strategic alliance to provide cross-border merger-and-acquisition advisory services in the United States and Japan. In 2008, Mizuho Corporate Bank, Ltd. purchased $120 million in principal amount of unsecured notes issued by Evercore Partners and warrants to purchase approximately 5.5 million shares common stock of Evercore Partners at $22 per share. Mizuho Corporate Bank, Ltd. and Mizuho Securities Co., Ltd. also agreed to commit up to $150 million to be invested in funds affiliated with Evercore Partners. At the same time, Evercore Partners and Mizuho Securities Co., Ltd. entered into a new strategic alliance, strengthening the cross-border alliance entered into in 2006. Evercore is informed and believes that Mizuho Corporate Bank, Ltd. is a secured creditor of the Debtors. Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

13. Evercore and its affiliates have obtained directors' and officers' insurance coverage from certain carriers that are interested parties in these cases. Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

14. Certain professionals employed by Evercore have mortgages, consumer loans, investments, brokerage accounts, or other banking, brokerage, or other customer relationships with institutions that are creditors, equity holders or other parties in interest in these

cases or with funds sponsored by or affiliated with such parties. Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

15. Certain professionals employed by Evercore hold debt or equity securities issued by creditors, equity holders or other parties in interest in these cases. To the best of my knowledge, (a) none of these professionals' holdings would be considered material from the perspective of the issuers of such securities; and (b) no professional employed by Evercore holds debt or equity securities issued by the Debtors.

16. Certain professionals presently employed by Evercore were formerly employed by other investment-banking, financial-services or other professional-services firms that are among, or represent other parties that are among, the creditors, equity holders or other parties in interest in these cases. While employed by other firms, certain professionals presently employed by Evercore represented creditors, equity holders or other parties in interest in these cases in connection with matters unrelated to the Debtors and these Chapter 11 cases. Evercore does not believe that these matters create a conflict of interest regarding the Debtors or these Chapter 11 cases.

17. Evercore may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors and these Chapter 11 cases. In connection therewith, specific disclosures are attached hereto on Schedule II.

18. To the best of my knowledge, Evercore has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, the Debtors' Chapter 11 cases. If this Court approves the proposed employment of Evercore by the Debtors, Evercore will not accept any engagement or perform any services for any entity or person other than the Debtors in this situation. Evercore will, however, continue to provide professional

services to entities or persons that may be creditors, equity holders or parties in interest in the Debtors' Chapter 11 cases; <u>provided</u>, <u>however</u>, that such services do not relate to, or have any direct connection with, the Debtors' Chapter 11 cases.

**<u>Professional Services and Compensation</u>**

19.     The parties have entered into an agreement dated October 1, 2009 that would govern the relationship between Evercore and the Debtors, a copy of which is attached to this Declaration as <u>Exhibit A</u> (the "**Engagement Letter**").  Evercore and the Debtors also entered into earlier agreements dated April 15, 2008, May 11, 2009, July 30, 2009, and September 11, 2009.  Except for the Indemnification Agreement dated May 11, 2009, a copy of which is attached to this Declaration as <u>Exhibit B</u>, none of these earlier agreements is presently in effect. Prior agreements between the Debtors and Evercore reflected discrete assignments such as the $3 billion July 2009 financing and August 2009 tender offer. The current Engagement Letter reflects the various restructuring advisory work Evercore has conducted for the Debtors from late July 2009 through the Petition Date and expects to continue post-petition.

20.     Pursuant to the Engagement Letter, Evercore will provide such investment banking and financial advisory services as Evercore and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of these Chapter 11 cases, including, but not limited to, the following (capitalized terms not defined in the subsections below having the meanings assigned to them in the Engagement Letter):

> a.     Reviewing and analyzing the Debtors' businesses, operations, capital structure and financial projections;

> b.     Advising and assisting the Debtors regarding restructuring alternatives, mechanics and strategy;

> c.     Advising and assisting the Debtors in consummating Restructuring transaction(s) if the Debtors determine to undertake such transaction(s);

        d.      Providing financial advice in developing and implementing a Restructuring, which would include:

        i.      Assisting the Debtors in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (the "**Plan**");

        ii.      Advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the Plan;

        iii.      Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings under the Bankruptcy Code that are pending before this Court; and,

        iv.      Providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate.

21.      In rendering the above-referenced services, Evercore will coordinate with other retained professionals in these bankruptcy cases to eliminate any duplication or overlap of work.

22.      Prior to the Petition Date, Evercore performed certain professional services for the Debtors beginning April 15, 2008. In connection with Evercore's engagement, Evercore received the following payments within one year prior to the Petition Date:[1]

| | |
|---|---|
| Monthly Fees from November 2008 through October 2009[2] | $3,600,000 |
| Monthly Fees for November 2009 (earned on November 1, 2009) | $350,000 |

---

[1] Not all of the payments listed here were "for services rendered or to be rendered in contemplation of or in connection with" these Chapter 11 cases. 11 U.S.C. § 329(a). Nevertheless, Evercore includes them here in the interest of full disclosure. In addition, Evercore earned and received $3,500,000 in fees from the Debtors (none of which was for services rendered in contemplation of or in connection with these cases) more than one year before the Petition Date.

[2] Fees per earlier agreements between the Debtors and Evercore that are not currently operative.

| | |
|---|---|
| Financing Fee paid in connection with $3 billion July 2009 financing (earned on July 20, 2009) [2] | $17,500,000 |
| Tender Offer Fee paid in connection with $1 billion August 2009 tender offer (earned on August 17, 2009) [2] | $1,000,000 |
| Portion of Restructuring Fee earned and paid pursuant to Section 2(b)(i) of the Engagement Letter in connection with commencement of out-of-court exchange offers (earned on October 1, 2009) | $7,500,000 |
| Portion of Restructuring Fee accelerated and paid pursuant to Section 2(b)(ii) of the Engagement Letter in advance of pre-packaged Chapter 11 filing (earned on October 30, 2009) | $7,500,000 |
| Total Fees paid to Evercore in 12 months prior to Petition Date | $37,450,000 |
| Reimbursement of Expenses | $105,286 |

Other than any unused amounts for estimated expenses, the full amount of such payments received has been applied to pre-petition services rendered and expenses incurred. To the extent that Evercore has incurred expenses prior to the Petition Date for which it has not been reimbursed, Evercore will waive any claim against the Debtors for such amounts.

23. Evercore has agreed to represent the Debtors for compensation at the amounts agreed upon between the parties pursuant to the Engagement Letter (the "**Fee Structure**"). As more fully described in the Engagement Letter, in consideration of the services provided by Evercore, the Debtors have agreed to pay Evercore the following fees:

a. A Monthly Fee of $350,000 beginning in November 2009, payable on the 1st day of each month until the earlier of the consummation of the Restructuring transaction or the termination of Evercore's engagement. Monthly Fees due and payable prior to February 28, 2010, will be credited against the Restructuring Fee (described below), provided, that, in the event of a Chapter 11 filing, any such credit of fees contemplated by this sentence shall only apply to the extent that all such Monthly Fees and the Restructuring Fee are approved in their entirety by this Court pursuant to a final order not subject to appeal and which order is acceptable to Evercore.

b. A Restructuring Fee of $30 million, payable as follows:

i. If a Restructuring is to be effected through out-of-court exchange offers, the Restructuring Fee shall be deemed earned in full on the date definitive offering materials are first given, sent or delivered to holders of Existing Obligations, of which

$7.5 million shall be paid on such date and the balance shall be paid on the 120th date thereafter;

ii. If the Debtors determine to effect the Restructuring through a pre-packaged or pre-arranged Plan of Reorganization pursuant to the Bankruptcy Code, $7.5 million of the Restructuring Fee shall be accelerated and paid on the business day immediately preceding the day petitions for relief under Chapter 11 are filed, and the balance of the Restructuring Fee (less any amounts paid pursuant to clause (i) above) shall be payable upon successful consummation of the restructuring;

iii. In the event of a Sale of the Debtors and their subsidiaries pursuant to Section 363 of the Bankruptcy Code or pursuant to a Restructuring specified by the Debtors and the Steering Committee (as defined in the Credit Facility Agreement, as agreed and amended): $12.5 million of the Restructuring Fee shall be earned and payable immediately prior to the commencement of Chapter 11 proceedings with $17.5 million payable upon consummation of such Sale; and

iv. In the event of any other restructuring transaction not contemplated under the foregoing clauses (i) – (iii), the Restructuring Fee shall be payable upon successful consummation of a restructuring.

c. In the event that Evercore is paid a fee in connection with a pre-packaged Plan or similar pre-arranged Plan or Sale pursuant to Section 363 of the Bankruptcy Code, and such Plan or Sale is not thereafter consummated, then such fee previously paid to Evercore may be credited by the Debtors against any subsequent Restructuring Fee that is payable or that becomes payable by the Debtors to Evercore pursuant to the Engagement Letter.

d. In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse to Evercore (a) all reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (b) other documented reasonable fees and expenses, if any, including expenses of counsel up to a cap of $50,000, after which Evercore will request the consent of the Debtors for expenses of counsel, such consent which will not be reasonably withheld. The payment of Evercore's post-petition expenses shall be subject to review by this Court.

e. If Evercore provides services to the Debtors for which a fee is not provided in the Engagement Letter, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of the Engagement Letter, and the Debtors and Evercore will agree upon a fee for such services based upon good faith negotiations.

f.     In addition to the foregoing, the Debtors have agreed to the indemnification provisions incorporated by reference in the Engagement Letter.

24.     Pursuant to subparagraph 2(b)(i) of the Engagement Letter, $7.5 million of the Restructuring Fee was earned on October 1, 2009, the date on which definitive exchange-offer materials were first given, sent or delivered to holders of Existing Obligations; the respective payment was received on October 5, 2009.  Pursuant to subparagraph 2(b)(ii) of the Engagement Letter, an additional $7.5 million of the Restructuring Fee was accelerated and paid on the business day immediately preceding the Petition Date in these pre-packaged Chapter 11 cases.  The unpaid balance of the Restructuring Fee is $15 million.

25.     Evercore will seek compensation and reimbursement of expenses, as specified in the Engagement Letter, with the payment of such fees and expenses to be approved in accordance with section 328(a) and other applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, the guidelines established by the United States Trustee for the Southern District of New York, and further orders of this Court for all services performed and expenses incurred after the Petition Date.

26.     Evercore has not shared or agreed to share any of its compensation from the Debtors with any other persons, other than employees of Evercore, as permitted by section 504 of the Bankruptcy Code.

27.     Based on its experience and independent analysis, Evercore believes that the Fee Structure is fair, reasonable and market-based.  Evercore believes that the Fee Structure appropriately reflects the nature and scope of the services to be provided by Evercore, its substantial experience with respect to investment banking and financial advisory services, and

the fee structures typically utilized by Evercore and other leading investment bankers and financial advisors.

28.     Per the Fee Structure, the net Restructuring Fee payable to Evercore upon a successful consummation of the restructuring of the Debtors is $15 million. The Restructuring Fee per the Engagement Letter reflects the completion fee for a variety of structuring, negotiating and analytical work already completed by Evercore since late July 2009 as reflected in paragraph 4 of this Declaration. The Fee Structure has been agreed upon by the parties to reflect substantial commitment of professional time and effort required of Evercore and its professionals over the period of several months preceding the Chapter 11 filing as well as during the course of these cases.  Customarily, the preparation of prepackaged or pre-arranged Chapter 11 cases requires a disproportionate amount of professional time to be expended before the commencement of the cases in order to minimize the time spent by the Debtors during the Chapter 11 process. This was particularly true in the case of CIT given the sheer number of different types of debt holders and other constituencies with whom the Debtors and Evercore had to negotiate in order to prepare the plan of organization that would have the highest chance of being approved, thereby minimizing potential value destruction in bankruptcy. In light of these facts, Evercore believes that the Fee Structure also reflects the unprecedented nature and complexity of the assignment, and the extensive tasks that Evercore has previously undertaken and expects to undertake.

29.     The Fee Structure also reflects the fact that this assignment may foreclose other opportunities for Evercore and that the actual time and commitment required of Evercore and its professionals to perform services hereunder may vary substantially from week to week or month to month.

Executed on November 1, 2009.

/s/ David Ying
David Ying

**EXHIBIT A**

# EVERCORE GROUP L.L.C

October 1, 2009

Jeffrey M. Peek
Chairman and Chief Executive Officer
CIT Group Inc.
505 Fifth Avenue
New York, NY 10017

Dear Jeff:

This engagement letter (this "Agreement") formalizes the arrangement between Evercore Group L.L.C. ("Evercore") and CIT Group Inc. and its subsidiaries that have executed this agreement (together, the "Company") on behalf of itself and its Board of Directors ("BOD") regarding the retention of Evercore by the Company as financial advisor for the purposes set forth herein.

As you know, the Company and Evercore entered into an engagement letter agreement dated May 11, 2009 (the "May 2009 Agreement") and the Indemnification Agreement, of even date (the "Indemnification Agreement"), which was amended by a letter agreement between the parties, on July 30, 2009, (the "July Amendment"). The Company and Evercore also entered into a separate engagement letter agreement dated on September 11, 2009 (the "September 2009 Agreement").

The parties hereby agree that this Agreement supersedes in their entirety both the May 2009 Agreement, as amended by the July Amendment, and the September 2009 Agreement; provided, however, that the Indemnification Agreement remains in full force and effect with respect to each such engagement letter agreements and the services provided by Evercore thereunder.

## Assignment Scope:

The Company hereby retains Evercore as its and its BOD's financial advisor to provide the Company with general investment banking advice and to advise it in connection with Restructuring transactions (defined below) on the terms and conditions set forth herein.

As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization (including, but not limited to, a Restructuring pursuant to 11 U.S.C. §101 *et. seq.*, as from time to time amended, and any other current or future federal statute or regulation that may be applicable to a Restructuring of the Company (11 U.S.C. §101 *et. seq.* and those other statutes and regulations are referred to herein generically as the "Bankruptcy Code")), including without limitation, cancellation, forgiveness, satisfaction, retirement, purchase and/or a material modification or amendment to the terms of the Company's outstanding indebtedness (including bank debt, bond debt, preferred stock, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, lease obligations, partnership interests and other liabilities (collectively, the "Existing Obligations") including

pursuant to a sale, repurchase or an exchange transaction, a Plan (as defined below) or a solicitation of consents, waivers, acceptances or authorizations.

**Description of Services**:

1. Evercore agrees, in consideration of the compensation provided in Section 2 below, to perform the following services, to the extent it and the Company deem such services appropriate and feasible:

    a. Reviewing and analyzing the Company's business, operations, capital structure and financial projections;

    b. Advising management and the BOD regarding restructuring alternatives, mechanics and strategy;

    c. Advising and assisting the Company in consummating a Restructuring transaction(s), if the Company determines to undertake such transaction(s);

    d. Providing financial advice in developing and implementing a Restructuring, which would include:

        i. Assisting the Company in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (any such plans are referred to generically herein as the "Plan");

        ii. Advising the Company on tactics and strategies for negotiating with various stakeholders regarding the Plan;

        iii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company in any proceedings under the Bankruptcy Code that are pending before a court (generically referred to herein as the "Bankruptcy Court") exercising jurisdiction over the Company as a debtor; and,

        iv. Providing the Company with other financial restructuring advice as Evercore and the Company may deem appropriate.

In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring or other transaction.

Evercore shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for design or implementation of operating, organizational, administrative, cash management or liquidity improvements; nor shall Evercore be responsible for providing any tax, legal or accounting advice. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

**Fees:**

2. As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore the following fees in cash as and when set forth below:

   a. A monthly fee of $350,000 (a "Monthly Fee") beginning in November 2009, payable on the 1st day of each month until the earlier of the consummation of the Restructuring transaction or the termination of Evercore's engagement. Monthly Fees due and payable prior to February 28, 2010, will be credited against the Restructuring Fee, provided, that, in the event of a Chapter 11 filing, any such credit of fees contemplated by this sentence shall only apply to the extent that all such Monthly Fees and the Restructuring Fee are approved in their entirety by the Bankruptcy Court pursuant to a final order not subject to appeal and which order is acceptable to Evercore.

   b. A Restructuring Fee of $30 million, payable as follows:

      i. If a Restructuring is to be effected through out-of-court exchange offers, the Restructuring Fee shall be deemed earned in full on the date definitive offering materials are first given, sent or delivered to holders of Existing Obligations, of which $7.5 million shall be paid on such date and the balance shall be paid on the 120th date thereafter;

      ii. If the Board of Directors of the Company determines to effect the Restructuring through a pre-packaged or pre-arranged Plan of Reorganization pursuant to the Bankruptcy Code, $7.5 million of the Restructuring Fee shall be accelerated and paid on the business day immediately preceding the day petitions for relief under Chapter 11 are filed, and the balance of the Restructuring Fee (less any amounts paid pursuant to clause (i) above) shall be payable upon successful consummation of the restructuring;

      iii. In the event of a sale of the Company and its subsidiaries ("Sale" as defined below) pursuant to Section 363 of the Bankruptcy Code or pursuant to a Restructuring specified by the Company and the Steering Committee (as defined in the Credit Facility Agreement as agreed and amended): $12.5 million of the Restructuring Fee shall be earned and payable immediately prior to the commencement of Chapter 11 proceedings with $17.5 million payable upon consummation of such Sale; and

      iv. In the event of any other restructuring transaction not contemplated under subparagraphs 2(b)(i), 2(b)(ii) or 2(b)(iii) hereof: the Restructuring Fee shall be payable upon successful consummation of a restructuring.

          As used in this Agreement, the term "Sale" shall mean whether in one transaction, or a series of related transactions, any merger, sale, divestiture, joint venture or other business combination involving at least a majority of the securities, business or consolidated assets of the Company and its subsidiaries.

   c. In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, the Company shall promptly reimburse to Evercore (a) all reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (b) other documented reasonable

fees and expenses, if any, including expenses of counsel up to a cap of $50,000, after which Evercore will request the consent of the Company for expenses of counsel, such consent which will not be reasonably withheld.

d.  If Evercore provides services to the Company for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Company and Evercore will agree upon a fee for such services based upon good faith negotiations.

e.  All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

f.  Evercore hereby acknowledges the fees set forth above are the only fees payable to Evercore for its services to the Company hereunder or pursuant to the May 2009 Agreement, the July Amendment or the September 2009 Agreement. Evercore hereby acknowledges receipt of all previous monthly fees paid pursuant to the May 2009 Agreement, the July Amendment and the September 2009 Agreement and agrees that no additional fees are due or owing.

In addition, the Company and Evercore acknowledge and agree that more than one fee may be payable to Evercore under subparagraphs 2(b) and/or 2(d) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore.

In the event that Evercore is paid a fee in connection with a pre-packaged Plan or similar pre-arranged Plan or Sale pursuant to a Section 363 of the Bankruptcy Code, and such Plan or Sale is not thereafter consummated, then such fee previously paid to Evercore may be credited by the Company against any subsequent Restructuring fee that is payable or that becomes payable by the Company to Evercore pursuant to this Agreement.

### Retention in Bankruptcy Code Proceedings:

3.  In the event of the commencement of Chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Evercore on the terms and conditions set forth in this Agreement under the provisions of 11 U.S.C. §§ 327 and 328 subject to the standard of review provided in Section 328(a), and not subject to the standard of review under 11 U.S.C. § 330 or any other standard of review. Subject to being so retained, Evercore agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court. The Company shall supply Evercore with a draft of the application and proposed retention order authorizing Evercore's retention sufficiently in advance of the filing of such application and proposed order to enable Evercore and its counsel to review and comment thereon. Evercore shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Evercore's retention under the terms of this Agreement is approved under Section 328(a) by final order of the

Bankruptcy Court, not subject to appeal, which order is acceptable to Evercore. In so agreeing to seek Evercore's retention under Section 328(a), the Company acknowledges that it believes that Evercore's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, that the value to the Company of Evercore's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable under the standard set forth in Section 328(a), regardless of the number of hours to be expended by Evercore's professionals in the performance of the services to be provided hereunder. No fee payable to any other person, by the Company or any other party, shall reduce or otherwise affect any fee payable hereunder to Evercore.

**<u>Other:</u>**

4. Evercore's engagement hereunder is premised on the assumption that the Company will make available to Evercore all information and data that Evercore reasonably deems appropriate in connection with its activities on the Company's behalf and will not omit or withhold any material information. The Company represents and warrants to Evercore that any information heretofore or hereafter furnished to Evercore is and will be true and correct in all material respects. The Company recognizes and consents to the fact that (a) Evercore will use and rely on the accuracy and completeness of public reports and other information provided by others, including information provided by the Company, other parties and their respective officers, employees, auditors, attorneys or other agents in performing the services contemplated by this Agreement, and (b) Evercore does not assume responsibility for, and may rely without independent verification upon, the accuracy and completeness of any such information.

5. Evercore's engagement hereunder may be terminated by the Company or Evercore at any time without liability or continuing obligation to the Company or Evercore, except that following such termination and any expiration of this Agreement, (a) Evercore shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Company without Cause, Evercore shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Restructuring announced or occurring during the period from the date hereof until 12 months following such termination or expiration, as the case may be. "Cause" shall mean gross negligence, bad faith or willful misconduct of Evercore.

6. The parties agree that the Indemnification Agreement is hereby amended to include as bases for advancement of expenses, indemnification and contribution by the Company to Evercore and its Indemnified Persons this Agreement and the engagement and services to be rendered by Evercore hereunder. In addition, in the event Evercore's engagement hereunder is terminated by the Company, the parties agree that the Indemnification Agreement, as amended above, shall survive such termination.

7. Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in accordance with the Indemnification Agreement, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. The Company acknowledges that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture or partnership. Evercore shall at all times be and be deemed to be an independent contractor. Nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Evercore and the Company or its Board of Directors. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

8. As part of the compensation payable to Evercore hereunder, the Company agrees to indemnify Evercore and certain related persons in accordance with the Indemnification Agreement. Such indemnification provisions are an integral part of this Agreement, and the terms thereof are incorporated by reference herein. Such indemnification provisions shall survive any termination or completion of Evercore's engagement hereunder.

9. The Company agrees that it is solely responsible for any decision regarding a transaction, regardless of the advice provided by Evercore with respect to such a transaction. The Company acknowledges that the Company's appointment of Evercore pursuant to this Agreement is not intended to achieve or guarantee the closing of a transaction and that Evercore is not in a position to guarantee the achievement or closing of a transaction.

10. The Company recognizes that Evercore has been engaged only by the Company and that the Company's engagement of Evercore is not deemed to be on behalf of and is not intended to confer rights on any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto or any of its affiliates or their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company, is authorized to rely upon the Company's engagement of Evercore or any statements, advice, opinions or conduct by Evercore. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or senior management in the course of the Company's engagement of Evercore are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating the Restructuring or other transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with a transaction. Any advice, written or oral, rendered by Evercore may not be disclosed publicly or made available to third parties without the prior written consent of Evercore, except to the Company's outside counsel, auditors, or Bank regulators, who, in the case of such disclosure, will be informed that the information being disclosed is confidential.

11. In order to coordinate Evercore's efforts on behalf of the Company during the period of Evercore's engagement hereunder, the Company will promptly inform Evercore of any discussions, negotiations, or inquiries regarding a potential Restructuring transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement.

12. This Agreement (including the Indemnification Agreement) between Evercore and the Company, embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect this Agreement in any other respect, which will remain in full force and effect. This Agreement may not be amended or modified except in writing signed by each of the parties.

13. In the event that, as a result of or in connection with Evercore's engagement for the Company, Evercore becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Evercore for the reasonable fees and expenses of its counsel incurred in responding to such a request. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the Indemnification Agreement.

14. The Company agrees that Evercore shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder, with the Company's prior consent, which will not be unreasonably withheld.

15. The Company acknowledges that Evercore's affiliates engage in the private equity business, asset management business and related activities (collectively, "Non-Broker Dealer Businesses"). Subject to the maintenance of an appropriate "wall" between those persons working on transactional matters related to this Agreement and those persons connected with the Non-Broker Dealer Businesses, and any other appropriate precautions, in the ordinary course of Evercore's Non-Broker Dealer Businesses, Evercore's affiliates may at any time hold long or short positions, and may trade or otherwise effect transactions, for their own account or the accounts of customers, in debt or equity securities or senior loans of the Company or any other company that may be involved in a transaction with the Company.

16. The Company agrees to provide and procure all corporate, financial and other information regarding the Company and control persons, as Evercore may require to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act.

17. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

18. Except as provided herein, the parties hereby irrevocably consent to the exclusive jurisdiction of any New York State or United States federal court sitting in the Borough of Manhattan of the City of New York over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York State or federal court. The parties irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above. The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of forum non conveniens.

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

Very truly yours,

Evercore Group L.L.C.

By: _____
David Ying
Senior Managing Director

Agreed to and Accepted as of the Date
October 1, 2009:

CIT Group Inc.

By: _____
Jeffrey M. Peek
Chairman and Chief Executive Officer

The CIT Group/Equipment Financing, Inc.

By: _____
Title: EXECUTIVE VICE PRESIDENT

CIT Leasing Corporation
By: _____
Title: EXECUTIVE VICE PRESIDENT

CIT Lending Services Corporation.

By: _____
Title: EXECUTIVE VICE PRESIDENT

CIT Financial Ltd. (Canada)

By: _____
Title: EXECUTIVE VICE PRESIDENT

CIT Aerospace International (Ireland)

By: _____
Title: EXECUTIVE VICE PRESIDENT

# EXHIBIT B

## Indemnification Agreement

May 11, 2009

Mr. Jeffrey M. Peek
CIT Group Inc.
505 Fifth Avenue
New York, NY 10017

Dear Jeff:

In connection with the engagement of Evercore Group L.L.C. ("Evercore") to render financial advisory services to CIT Group Inc. (the "Company") pursuant to the engagement letter, dated May 11, 2009, the Company and Evercore are entering into this Indemnification Agreement (the "Agreement"). It is understood and agreed that in the event that Evercore or any of its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any (each of the foregoing, including Evercore, an "Indemnified Person"), become involved in any capacity in any claim, action, proceeding or investigation brought or threatened by or against any person, including the Company's stockholders, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, the Company will promptly reimburse each such Indemnified Person for its reasonable legal and other expenses (including the reasonable cost of any investigation and preparation) as and when they are incurred in connection therewith. The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expense to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, whether or not any pending or threatened claim, action, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expense is initiated or brought by or on the Company's behalf and whether or not in connection with any claim, action, proceeding or investigation in which the Company or an Indemnified Person is a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct. The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company, its security holders or creditors or any member of the Board of Directors, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such

Indemnified Person's gross negligence, bad faith or willful misconduct. Each Indemnified Person shall promptly remit to the Company any amounts paid to such Indemnified Person under this Agreement in respect of losses, claims, damages, liabilities or expenses that resulted from such Indemnified Person's gross negligence, bad faith or willful misconduct. If multiple claims are brought against Evercore in an arbitration related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, with respect to at least one of which such claims indemnification is permitted under applicable law, the Company agrees that any arbitration award shall be conclusively deemed to be based on the claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless, then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is unavailable or insufficient in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company and its security holders on the one hand and the party entitled to contribution on the other hand in the matters contemplated by Evercore's engagement as well as the relative fault of the Company and such party with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. The Company agrees that for the purposes hereof the relative benefits received, or sought to be received, by the Company and its security holders and Evercore shall be deemed to be in the same proportion as (i) the aggregate consideration paid or contemplated to be paid or received or contemplated to be received by the Company or its security holders, as the case may be, pursuant to a transaction contemplated by the engagement (whether or not consummated) for which Evercore has been engaged to perform financial advisory services bears to (ii) the fees paid or payable to Evercore in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall Evercore or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Evercore for such financial advisory services. The Company and Evercore agree that it would not be just and equitable if contribution hereunder were determined by pro rata allocation or by any other method that does not take into account the equitable considerations referred to herein. The Company's reimbursement, indemnity and contribution obligations under this Agreement shall be in addition to any liability which the Company may otherwise have, shall not be limited by any rights Evercore or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Evercore, and any other Indemnified Persons.

If any claim, action, proceeding or investigation shall be brought, threatened or asserted against an Indemnified Person in respect of which indemnity may be sought against the Company, Evercore shall promptly notify the Company in writing, and the Company shall be entitled, at its expense, and upon delivery of written notice to Evercore, to assume the defense thereof with counsel reasonably satisfactory to Evercore. Such Indemnified Person shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the Company has agreed in writing to pay such fees and expenses, (ii) the Company has failed to assume the defense, pursue the defense diligently or to employ counsel in a timely manner or (iii) in such action, claim, suit, proceeding or investigation there is, in the reasonable belief of such Indemnified Person, a conflict of interest or a conflict on any material issue between the Company's

position and the position of the Indemnified Person. It is understood, however, that in the situation in which an Indemnified Person is entitled to retain separate counsel pursuant to the preceding sentence, the Company shall, in connection with any one such claim, action, proceeding, investigation or separate but substantially similar or related claims, actions, proceedings or investigations in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of only one separate firm of attorneys at any time for all such Indemnified Parties (unless in the reasonable belief of such Indemnified Parties, there is a conflict of interest or a conflict on any material issue between the positions of such Indemnified Parties), which firm shall be designated in writing by Evercore. The Company shall not be liable for any settlement or compromise of any claim, action, proceeding or investigation (or for any related losses, claims, damages, liabilities or expenses) if such settlement or compromise is effected without the Company's prior written consent (which will not be unreasonably withheld).

The Company agrees that, without Evercore's prior written consent, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution is reasonably likely to be sought hereunder (whether or not Evercore or any other Indemnified Person is an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release from the settling, compromising or consenting party of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. Evercore and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its stockholders and creditors and on behalf of the Board of Directors) waive all right to trial by jury in any claim, action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of or in connection with this Agreement.

[Signature page follows]

Each party has all necessary corporate or limited partnership, as applicable, power and authority to enter into this Agreement. All corporate or limited partnership, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

This Agreement shall remain in effect indefinitely, notwithstanding any termination of Evercore's engagement.

Very truly yours,

Evercore Group L.L.C.

By: _____
      Roger C. Altman
      Chief Executive Officer

Agreed to and Accepted as of the Date
First Written Above:

      CIT Group Inc.

By: _____
      Jeffrey M. Peek
      Chairman and Chief Executive Officer

**SCHEDULE I**

**<u>Potential Parties in Interest</u>**

**Debtors**
CIT Group Funding Company of Delaware LLC
CIT Group Inc.

**Debtor Predecessors/Other Names Used**
CIT Group Inc. (Del)
Tyco Capital Holding, Inc.
T-Sub Inc.
CIT Group Funding Company of Canada Limited
CIT Group Funding Company of Canada

**Non-Debtor Subsidiaries/Affiliates**
C.I.T. Leasing Corporation
Capita Corporation
CIT Bank
CIT Capital USA Inc.
CIT Communications Finance Corporation
CIT Credit Group USA Inc.
CIT Financial USA, Inc.
CIT Group (NJ) LLC
CIT Healthcare LLC
CIT Lending Services Corporation
CIT Lending Services Corporation (Illinois)
CIT Loan Corporation
CIT Small Business Lending Corporation
CIT Technologies Corporation
CIT Technology Financing Services I LLC
CIT Technology Financing Services II LLC
CIT Technology Financing Services, Inc.
The CIT Group/Business Credit, Inc.
The CIT Group/Capital Transportation, Inc.
The CIT Group/Commercial Services, Inc.
The CIT Group/Commercial Services, Inc. (Va.)
The CIT Group/Corporate Aviation, Inc.
The CIT Group/Equipment Financing, Inc.

**Other Names Used by Non-Debtor Subsidiaries/Affiliates**
Antigua Funding Corporation
AT&T Automotive Services, Inc
Atmor Holdings, Inc
BDAC Investments, Inc.
Bering Shipping Co., Inc.
Boat Dealers' Acceptance Company, L.L.C.
Capita Credit Consumer Finance Corporation
Capita Credit Corporation
Capita Global Finance Corporation
Capita Preferred Funding L.P
Capita Resources, Inc.
CIT Aerospace, Inc.
CIT Group Inc. (NJ)
CIT Remarco, Inc.
CIT STS, Inc.
CIT Venture Leasing Fund, LLC
Equipment Dealers Credit Company LLC
Healthcare Business Credit Corporation
Midrange Solutions Group, Inc.
Montana OL2 LLC
Montana OP2 LLC
Montana OPCM2A LLC
Montana OPCM2B LLC
NCU Railcar Holdings LLC
Newcourt Aerospace Finance, Inc.
Newcourt Capital USA Inc.
Newcourt Credit Group USA Inc.
Newcourt Equipment Receivables Corp
Newcourt Financial Receivables Corp. I
Newcourt Financial Receivables Corp. II
Newcourt Funding Services L.L.C
Newcourt Insurance Services Inc. of Alabama

Newcourt Insurance Services Inc. of Kentucky
Newcourt Insurance Services Inc. of Mississippi
Newcourt Insurance Services Inc. of New Mexico
Newcourt Insurance Services, Inc
Newcourt Inventory Finance Corporation
Newcourt Investments of Canada (USA) Inc.
Newcourt LINC Receivables Corporation
Newcourt Premium Finance, Inc.
Newcourt Rail Holdings, Inc.
Newcourt Receivables Corporation
Newcourt Receivables Corporation II
Omni Financial Services of America, Inc.
RDAC Investments, Inc.
Recreational Dealers Acceptance Company, L.L.C.
SCL Holding Company
TCC Funding Company LLC
The CIT Group/BCC, Inc. (Ill.)
The CIT Group/Commercial Services, Inc. (Ill.)
The CIT Group/Consumer Finance, Inc.
The CIT Group/CrF Securities Investment, Inc.
The CIT Group/El Paso Refinery, Inc.
The Lease Factor, Inc.
Wajax Finance, Inc.

**Current Directors/Officers**
Alexander T. Mason
Barbara Callahan
Christopher H. Shays
Christopher J. Grimes
Deborah Reperowitz
Edward K. Sperling
Eric S. Mandelbaum
Frank Riepl
Glenn A. Votek
Jacqueline P. McCaulley
James J. Duffy
James P. Shanahan
Jeffrey M. Peek
John R. Ryan
Jonathan Macey
Joseph M. Leone
Kathleen A. Beck
Kathleen M. Sawka
Kathleen Nassaney
Kelley Gipson
Kenneth A. Brause
Larraine A. Milazzo
Linda M. Seufert
Lois M. Van Deusen, Esq.
Marianne M. Parrs
Mark A. Carlson
Michael A. Carpenter
Michael Baresich
Michael C. Magee
Michael J. McConnell
Nancy Foster
Nicole L. Kelsey
Peter J. Tobin
Robert J. Ingato
Seymour "Sy" Sternberg
Stephen Klimas
Susan M. Lyne
Umar Farooq
Usama Ashraf
William Hopf
William M. Freeman

**Restructuring Professionals Representing Debtors**
Evercore Partners
FTI Consulting

Kurtzman Carson Consulting
Morgan Stanley
Curtis, Mallet-Prevost, Colt & Mosle LLP

**Restructuring Professionals Representing Parties in Interest**
Weil, Gotshal & Manges LLP
Stroock & Stroock & Lavan LLP
Simpson Thacher & Bartlett LLP
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Allens Arthur Robinson
Clayton Utz
Stutman Tresier & Glatt

**Steering Committee**
CapRe
Centerbridge
Oak Tree
Silverpoint

**Rescue Lender Facilities – Top 20[1]:**

*Managers:*

Anchorage
Barclays
Baupost
Beachpoint Capital
Capre
Centerbridge
ESL Investments
Fir Tree
Fortress
Goldman
Hayman
Highland
King Street
Luxor
Morgan Stanley
Oaktree
Paulson
Pimco
Qvt Financial
Silverpoint

*Funds:*

American High Income Trust
Anchorage Capital Master Offshore, Ltd
Barclays - SSG
Baupost Group Securities LLC
BLT 31
BLT 31 LLC
BLT 32
CCP Credit Acquisition Holdings Ltd.
Drawbridge Special Opportunities Fund LP
ESL Partners, LP
Goldman Sachs Lending Partners LLC
Hayman Capital Master Fund
Lincoln S.a.r.l Responsibilitee…
Luxor Capital LLC
Morgan Stanley Senior Funding, Inc.
MSD Value Investment LP
Oaktree Opps CITF Ltd.
Paulson Credit Opportunities Master Ltd.
QVT Fund LP

---

[1] Source: Evercore. List dated as of 9/28/09.

Royal Mail Pension Plan
SOF Investments LP
SPCP Group II LLC
SPCP Group LLC
The Income Fund of America Inc.
TIC809, L.L.C.

**Lenders under Credit Agreement**
ABN Amro Bank N.V. - Chicago Branch
Aurora Bank, FSB
Bank of America N.A.
Bank of Montreal, Chicago Branch
Bank of New York
Bank of Nova Scotia
Bank of Tokyo-Mitsubishi UFJ Trust
Bank of Tokyo-Mitsubishi UFJ, L
Barclays Bank Plc
BNP Paribas
Canadian Imperial Bank of Commerce
Chase Lincoln First Commercial  Corporation
Citibank, N.A. - Originations
Credit Suisse
Credit Suisse Loan Funding LLC
Deutsche Bank AG, New York Branch
Deutsche Bank Trust Company America
Drawbridge Sp. Opportunities Fund L
Drawbridge Special Opportunities  Fund Ltd
FCOF UB Securities LLC
FTS SIP L.P.
Goldman Sachs Lending Partners LLC
MTGLQ Investors, L.P. dba fka Ssig Spf One Lq L.L.C.
HSBCBank USA
JPMorgan Chase Bank Na
King Street Capital
Lloyds TSB Bank Plc
Merrill Lynch Bank USA
Morgan Stanley Bank, N.A.  (Morgan Stanley)
Morgan Stanley Senior Funding Inc
National Australia Bank Limited
Royal Bank of Canada
Royal Bank of Scotland
Societe Generale (SocGen)
Standard Chartered Bank
Sumitomo Mitsui Banking Corp. (fka The Sumitomo Bank)
UBS Ag, Stamford Branch  (UBS)
Wachovia Bank, N.A.

**Lenders under Term Loan Facility**
Mizuho Corporate Bank, Ltd.
Goldman Sachs Lending Partners
Baupost Group Securities
Shinsei Bank, Limited
Mitsui Sumitomo Insurance Company Limited
Malayan Banking Berhad

**Lenders under Letter of Credit Facility**
JPMorgan Bank Branch - 0802
Abn Amro Bank- Chicago
Barclays Bank PLC - New York
Banco Bilbao Vizcaya Argentaria - NY
Bank of America NA - Dallas
Bank of China - NY
Bank of Montreal - Toronto
Bank of Nova Scotia - NY Agency
Bank of Tokyo - Mitsubishi UFJ
BNP Paribas SA NY
Chang Hwa Commercial  Bank Ltd
CIBC Inc.
Citicorp USA Inc.
Credit Suisse First Boston - NY

Deutsche Bank - New York
Fifth Third Bank
HSBC Bank USA National Association
Hua Nan Commercial Bank Ltd - NY
Lloyds TSB Bank Plc - New York
Mizuho Corporate Bank USA
PNC Bank NA
Royal Bank of Canada - NY
Royal Bank of Scotland Plc
Secondary Loan And Distressed
Soc Gen - New York
Standard Chartered Bank - NY
Taipei Fubon Commercial Bank Co., Ltd.
UBS AG - Stamford Branch
Wachovia Bank of North Carolina

**Major Bondholders[2]**
AEGON Asset Management (UK) Plc
AIG Financial Products Capital Management Ltd
AIG Global Investment Corp.
AllianceBernstein Ltd.
Allianz Global Investors Kapitalanlagegesellschaft
Allianz of America Inc. (AZOA)
Avenue Capital Management LLC
Banca Carige SpA
Banco Santander SA
Berkshire Hathaway Inc.
California Public Employees' Retirement Systems (CalPERS)
Capital Research & Management Co.
Conning Asset Management Co.
D. E. Shaw & Co., Inc.
DB Securities
Delaware Investment Advisers
Deutsche Asset Management (DeAM) US
Deutsche Bank AG (UK)
Fortress Investment Group
GE Asset Management, Inc.
Goldman Sachs Asset Management LP (United States)
Harbert Management Coporation
Loomis, Sayles & Co. LP
M&G Investment Management Ltd.
MacKay Shields LLC
Metropolitan Life Insurance Company
MFC Global Investment Management
Mizuho Asset Management Co., Ltd.
Natixis Asset Management Advisors LP
New York Life Investment Management LLC
Oaktree Capital Management LLC
Pacific Investment Management Co.
PPM America Inc.
Prudential Investment Management-Fixed Income (PIM Fixed Income)
QVT Financial LLC
Royal Capital Management LLC
Securities Management & Research Inc.
Silver Point Capial LP
Sun Capital Advisers LLC
Swiss PostFinance
Thrivent Investment Management Inc.
UBS AG (London Branch)
Unidentified Hedge Fund Positions (Goldman Sachs)
Unidentified Hedge Fund Positions (JP Morgan Clearing)
Vanguard Group, Inc.
Värde Partners, Inc.

Wellington Management Company
WestLB AG
White Mountains Advisors LLC

**Icahn Bondholders**
Icahn Capital LP
Icahn Partners LP
Icahn Partners Master Fund LP
Icahn Partners Master Fund II LP
Icahn Partners Master Fund III LP
Icahn Fund Sub 1 Ltd.
Icahn Fund Sub 2 Ltd.
Icahn Fund Sub 3 Ltd.
Icahn Fund Sub 4 Ltd.
High River Limited Partnership
(Carl Icahn)

**5% or More Common Stock[3]**
Brandes Investment
Ameriprise Financial
Vanguard Group Inc.

**1% or More Preferred Stock**
Allianz Global
AM Investment Partners
Americus Capital Advisors
Aristeia Capital LLC
Blue Cross Blue Shield
Bluebay Asset Management
Citigroup Incorporated
Contrarian Capital
Deutsche Bank AG
Dreman Value Management
Erie Insurance Exchange
Fidelity Management
Flaherty & Crumrine
Gruss Asset Management
John Hancock Investment
JP Morgan Chase
Kamunting Street
King Street Capital Management
Loomis Sayles & Company
Merrill Lynch Life Insurance
MFC Global Investment Management
Natixis Asset Management
Oaktree Capital Management
Oppenheimerfunds Inc.
PMI Mortgage Insurance
RBC Capital Markets
Thornburg Investment
United States Government
Whitebox Advisors

**Landlords**
Maguire Properties & 300 South Grand Avenue
Fairfield MerrittView Limited Partnership c/o W&M Properties of Conecticut, Inc.
Fifth at 42nd LLC
11 West 42 Realty Investors, L.L.C.
Eric Richard I.B., L.L.C.
Wachovia Corporate Real Estate
Opus Northwest, L.L.C.
Inverness Properties LLC
125 High Street L.P.

---

[2] Top 50, holding $50 million or more. Source: DF King

---

[3] Source: EquityHDS

Teacher's Insurance and Annuity Association of America for the
Benefit of its Separate Real Estate Account
44 Whippany Road SPE LLC
Peninsular Nominees I Limited
Peninsular Nominees III Limited
Patrick Kelly
Thomas Kelly
John McCabe
John Walsh
Edward Brady
Gillian Brady
33 Prussia Street
The Blackrock Park Management Company (No. 2) Limited
Blackrock Park Managemt Company  Limited
3642968 Canada Inc.
1263448 Ontario Limited, c/o Queen's Quay Management Office
Arden Realty Limited Partnership
10 & 30 South Wacker
Hines Charlotte Plaza LP
Hines Interests Limited Partnership as Agent
Gateway Ridgecrest, Inc.
PPF OFF, LLC c/o Morgan Stanley Real Estate Advisor, Inc.
Michel Dallaire
Michel Paquet
Alain Dallaire
Robert Després
Yvan Caron
Pierre Gingras
Ghislaine Laberge
Dino Fuoco
Gérard Coulombe
Cominar Real Estate Investment Trust
700 Louisiana Limtied
Wilson Fulkerson LLP

**Goldman Total Return Swap Parties**
CIT Financial Ltd.
CIT Financial (Barbados) Srl
Goldman Sachs Group Inc.
Goldman Sachs International Limited

**Parties to Pending Litigation**
ACP Master, Ltd.
Aurelius Capital Master, Ltd.
Davidson Kempner Distressed Opportunities Fund LP
Davidson Kempner Distressed Opportunities International Ltd.
Davidson Kempner International, Ltd
Davidson Kempner Partners; Davidson
DDJ Capital Management, LLC
Kempner Institutional Partners, L.P.
M.H. Davidson & Co.
Redwood Master Fund, LTD

**Major Competitors**
Capital Associates, Inc.
Caterpillar Inc.
Chrysler Financial Co., L.L.C.
Citigroup Inc
Credit Acceptance Corp. (MI)
Deere & Co.
Financial Federal Corp.
Ford Motor Co. (DE)
Ford Motor Credit Company LLC
GMAC LLC
Harley-Davidson Inc
IBM Credit Corp.
John Deere Capital Corp.
Marine Growth Ventures Inc
Monaco Finance, Inc.
Motors Liquidation Co

Navistar Financial Corp.
Navistar International Corp.
Nordstrom Credit Inc.
Oakwood Home Corp.
Penske Automotive Group Inc
STEN Corp.
Toyota Motor Credit Corp.
United Environmental Energy Corp (DE)
Western Fidelity Funding, Inc.

**Bank Debt**
Citibank NA as Administrative Agent
Mizuho Corporate Bank, Ltd
Mizuho Corporate Bank, NY

**Indenture Trustees**
Bank of New York Mellon
Computershare Trust Company of Canada

**Creditors of Debt Guaranteed by CIT Group**
ABN Amro Bank, N.V.
Balaba
Banco de Chile
Banco de Credito
Bancolombia
Banco Security
Citibank
HSH Nordbank
Land Renten
LB Bremen
Nord LB
Scotia Capital
Wells Fargo Bank, N.A.

**Significant Trade**
American Express
AT&T
Bankruptcy Processing Solutions Inc
Bloomberg Finance LP
BNSF Railway Co.
CFM International Inc.
Compania Mexicana de Aviacion S.A.
Deloitte & Touche LLP
Deloitte Tax LLP
Equifax Information SVCS LLC
Freightcar America Inc
Great American Group Advisory
Harvard Maintenance Inc.
Intralinks, Inc.
Mcarthy, Burgess & Wolff
Metro East Industries
NEPC, LLC
Norfolk Southern Corp.
Promontory Financial Group, LLC
Reliance Standard
Resources Global Professionals Corp.
Sidley Austin LLP
Township of Livingston
Union Pacific Railroad
United Healthcare Insurance Co.
US Small Business Administration
Weltman, Weinberg & Reis Co, LPA
Wyatt, Tarrant & Combs LLP

**Employee Benefit Providers**
ADP
Bright Horizons
Corporate Counseling Associates
Fidelity Investments
GlobalFit

Health Net of New Jersey
Kaiser Permanente Southern CA
Laser Vision Network of America
Medco
Metropolitan Life Assurance Company
Oxford Health Plans
Prudential
Reliance Standard Life Insurance Company
Smith Barney
Southern Health Plans
Triple-S
UHC Vision/UnitedHealthcare Vision
Unicare of Chicago
UnitedHealthcare
Wachovia Bank, National Association
Working Advantage
Zurich American Insurance Company

**Professional**
Marsh Mercer Kroll

**Utilities**
10-30 South Wacker Drive, LP
11 West 42 Realty Investors
44 Whippany Road SPE LLC
Aapop 1, D/B/A Brandywine Realty
Aapop 1
Arden Realty Limited Partnership
Ascent Media
AT&T
AT&T Global Serv Canada
AT&T Mobility
Atlantic Broadband
Bell Canada
Boston Post Road Building 65 LLC
Broadview Networks
Cablevision
City of Danville, Virginia Department of Utilities
City of Martinsville
Comcast
Comcast Cable
Commonwealth Edison
Con Edison
Corporate Telecom Solutions
Crown Oil Company
DirecTV, Inc.
Dominion Virginia Power
Danfield Merrittview LP
Forest City Management, Inc.
Granite Telecommunications
Herbert F. Harback
Hess Corporation
Hines Charlotte Plaza LP
Home Climate John Ebos Fuels
Ingalls Building Co., Ltd.
Intercall
Jersey Central Power & Light Co.
KD Electric Contractors, Inc.
Kelly Communications Systems, Inc.
Kipp-Stawski Management Group A/A/F
Lincoln Sub Joint Venture III
Level 3 Communications LLC
Livingston Township Water/Sewer
Macquarie Telecom Pty Ltd.
Maguire Properties
Maguire Properties-One Cal Plaza, LLC
Mts Allstream Inc.
MX Energy
National Realty & Development Corp.
O2

PECO Energy Company
Phonoscope Ltd.
Ppf Off One Maritime Plaza, LP
Public Service Electric & Gas Co.
QWEST
Reliant Energy Solutions
Senoko Energy Supply Pte. Ltd.
Southwestern Va. Gas Co., Inc.
SP Services Ltd.
Summit Office Park Limited Partnership
Taurus One Deerwood LP
Teachers Insurance and Annuity
Telus
Thomson Financial
Time Warner Cable
Ts Boston Core Holdings, Lp-125 High
Union Gas Limited
Verizon
Verizon Australia Pty Ltd
Verizon CABS
Verizon Deutschland GmbH
Verizon Ireland Ltd
Verizon Nederland B.V.
Verizon Spain S.L.
Verizon Sweden AB
Verizon UK Ltd
Verizon Wireless
Video Corporation of America
Virtela Communications
Wavhovia
Wilson Fulkerson LLP

**Stock Transfer Agent**
Bank of New York Mellon

**Depository Banks/Investment Accounts**
Bank of America
Bank of New York Mellon Corporation, The
Barclays Bank PLC (NY)
BlackRock, Inc.
BMO Nesbitt Burns
CIBC
Citibank
Dreyfus Corporation
Federated
Fidelity Investments Institutional Services Company Inc.
HSBC Securities (USA) Inc.
JP Morgan Chase & Co.
JP Morgan Chase (London)
HSBC Securities (USA) Inc.
JP Morgan Chase (Mexico)
HSBC Securities (USA) Inc.
JP Morgan Chase (NY)
HSBC Securities (USA) Inc.
JP Morgan Chase (Singapore)
PNC Bank
RBC Capital Markets
Regions Bank
Royal Bank of Scotland
Sovereign Bank
Wachovia Securities
Wells Fargo

**Depository Banks/Investment Accounts of Non-Debtors**
Amegy Bank
Bank of America
Bank of Montreal
Bank of New York
Barclays Bank
Barclays Bank PLC (NY)

BMO Nesbitt Burns
Citibank
Comerica
HSBC Securities (USA) Inc.
JP Morgan Chase (Australia)
JP Morgan Chase (DE)
JP Morgan Chase (London)
JP Morgan Chase (NY)
Key Bank
Lasalle Bank
MB Financial
PNC Bank
RBC Capital Markets
Regions Bank
Regions/Amsouth
Royal Bank of Scotland
Sovereign Bank
SunTrust
The Bank of New York Mellon Corporation
US Bank
Wachovia
Wachovia Securities
Wells Fargo

**Securitization Vehicles/Counterparties to Servicing Agreements**
505 CLO I
505 CLO II
505 CLO III
505 CLO IV
CIT Aviation Finance I Ltd.
CIT Aviation Finance II Ltd.
CIT Canada Equipment Receivables Trust
CIT Canada Equipment Receivables Trust II
CIT Canadian Funding Trust
CIT Canadian VFN Trust
CIT Education Loan Trust 2005-1
CIT Education Loan Trust 2007-1
CIT Education Loan Trust 2008-BBC
CIT Equipment Collateral 2006-VT1
CIT Equipment Collateral 2006-VT2
CIT Equipment Collateral 2009-VT1
CIT Equipment Trust - VFC Series II
CIT Equipment Trust - VFC Series III
CIT Rail Leasing Trust I
CIT Small Business Loan Trust 2007-1
CIT Small Business Loan Trust 2008-1
CMS Funding Company
Education Funding Capital Trust II
Education Funding Capital Trust III
Education Funding Capital Trust IV
Education Funding Resources III, LLC
Wells Fargo

**S.D.N.Y. Bankruptcy Court**
Accosta, Annya
Aguila, Milton
Alexis, Keith
Andino, Eddie
Aulisi, Joseph
Honorable Prudence C. Beatty
Honorable Stuart M. Bernstein
Braithwaite, Kenisha
Brown, Michelle
Brown, Tenille
Brundage, Laura
Bush, Brent
Campbell, Tiffany
Cantrell, Deirdra
Cappiello, Karen

Chien, Jason
Chou, Rosalyn
Colon, Gwen
Correa, Grimilda
Decicco, Vincent
Diamond, Mark
Honorable Robert D. Drain
Ebanks, Liza
Edwards, Gerald
Epps, Juanita
Ferguson, Frances
Fredericks, Frances
Gadson, Carol
Garcia, Pedro
Genna, Vito
George, Trevor
Honorable Robert E. Gerber
Gillies, Dexter
Gist, Marion
Honorable Martin Glenn
Gomez, Jessica
Greene, Chantel
Honorable Allan L. Gropper
Guercy, Marlene
Gusciora, Terry
Harris, Kendra
Hibbert, Stacey
Ho, Amanda
Ibrocevic, Mehmet
LaChappelle, Jennifer
Lank, Sue
Leary, Mary
Leggett, Venice(Troy)
Honorable Burton R. Lifland
Lopez, Mary
Mazzola, Peter
Mercado, Tracey
Honorable Cecelia G. Morris
Ng, Cheuk
O'Boyle, Una
Ortiz, Carmen
Pantazis,Alexandra
Honorable James M. Peck
Philbert, Gemma
Porter, Minnie
Richards, Beverly
Rodriguez, Awilda
Rodriguez-Castillo, Maria
Rouzeau, Anatin
Sierra, Emiliano
Slinger, Kathy
Su, Kevin
Suarez, Aurea
Tavarez, Arturo
Webb, Lonnie
Weingold, Kenneth
Welsh, Connie
White, Greg
Woodhouse, Kevin
Young, Livingstone

**U.S. Trustee's Office**
Rifkin, Linda A.
Davis, Tracy Hope
Brooks, Catletha
Catapano, Maria
Choy, Danny A.
Dub, Elizabeth C.
Felton, Marilyn
Fields, Myrna R.

Gasparini, Elisabetta
Golden, Susan
Joseph, Nadkarni
Khodorovsky, Nazar
Martin, Marylou
Martinez, Anna M.
Masumoto, Brian S.
Mendoza, Ercilia A.
Moroney, Mary V.
Nakano, Serene
Morrissey, Richard C.
Schwartz, Andrea B.
Schwartzberg, Paul K.
Sharp, Sylvester
Soto, Hector
Velez-Rivera, Andy
Zipes, Greg M.

*Dealers*
National Australia Bank Limited
Societe Generale Australia Branch
ABN AMRO Bank NY, Australian Branch
Citigroup Global Markets Australia Pty Limited
Citibank, N.A. Sydney Branch
Deutsche Bank AG

*Additional Bond Holders* (not listed under Major Bondholders above)
Bank of America Merrill Lynch
Centerbridge Partners LP

**Top 100 Unsecured Creditors ($30,000 or greater)**
Airbus North America
American Express
AT&T
Balaba
Banco De Chile
Banco De Credito
Banco Security
Bancolombia
Bank Of New York Mellon Corporation
Bloomberg Finance LP
BNSF Railway Co.
Cfm International Inc.
Citibank
Citibank Na As Administrative Agent
Compania Mexicana De Aviacion S.A.
Computershare Trust Company Of Canada
Deloitte & Touche LLP
Deloitte Tax LLP
Eca
Freightcar America Inc
Great American Group Advisory
Harvard Maintenance Inc.
Hsh Nordbank
Intralinks, Inc.
Land Renten
Lb Bremen
Mcarthy, Burgess & Wolff
Metro East Industries
Milestone Advisory Services LLC
Mizuho Corporate Bank, Ltd
Mizuho Corporate Bank, NY
Nepc, LLC
Nord LB
Promontory Financial Group, LLC
Reliance Standard
Resources Global Professionals Corp
Scotia Capital
Sidley Austin LLP
Sunstone Consulting, LLC
Township Of Livingston
Union Pacific Railroad
United Healthcare Insurance Co.
Us Small Bus. Administration
Wells Fargo Conduit
Weltman, Weinberg & Reis Co, Lpa
Wyatt, Tarrant & Combs LLP

**Australian Notes**

*Arranger and Programme Manager*:
National Australia Bank Limited

7

## SCHEDULE II

1.      Evercore has relationships with and has represented the following entities and/or their affiliates in connection with matters unrelated to the Debtors: American International Group, Inc.; AT&T Corporation; The Bank of New York Mellon Corporation; Bright Horizons Family Solutions LLC; Burlington Northern Santa Fe Corporation, Chrysler LLC; Citigroup Inc.; Credit Suisse Group; Deutsche Bank Group; Ford Motor Company; GMAC LLC; Goldman Sachs Group, Inc.; Oaktree Capital Management, L.P.; and Tyco Capital Holding, Inc.  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.   During the period from October 1, 2008 through September 30, 2009, fees received from each of the entities identified above accounted for less than 1% of Evercore's gross revenues.[1]

2.      Evercore provides advisory services to certain clients, in matters unrelated to the Debtors, whose identity Evercore is currently unable to disclose due to confidentiality clauses in its engagement letters.  These clients may or may not be direct or indirect competitors and/or creditors of the Debtors.  Evercore believes that it would adversely affect the interests of these clients if Evercore were to publicly disclose their names at this time.  Evercore does not believe that its work for these clients will adversely affect the Debtors.  Fees received from each of these undisclosed clients accounted for less than 1% of Evercore's gross revenues during the period from October 1, 2008 through September 30, 2009.  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

---

[1] With respect to the recent financial and investment banking advisory services provided by Evercore to Burlington Northern Santa Fe Corporation, Evercore expects that it may be paid for such services sometime in Q1 of 2010.

3.     Certain of Evercore's current and former clients are portfolio companies of private-equity funds.  Any such companies that have been identified to Evercore as creditors, equity holders or parties in interest in these cases are identified above, unless the engagement is confidential.  Evercore is informed and believes that the private-equity sponsors of certain of these clients may be among the creditors, equity holders or other parties in interest in these cases.  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

4.     Certain of Evercore's clients may have loans or credit facilities in which the Debtors are a participant.  Evercore's engagements on behalf of these clients may involve efforts to work out or restructure such loans or facilities.  Because Evercore's clients are not necessarily included on the list of interested parties on Schedule I, and because Evercore may not be aware of the identities of participants in syndicated credit facilities, Evercore is not in a position to identify all of its clients who have borrowing relationships with the Debtors.  The identities of those clients of which Evercore is aware are subject to confidentiality clauses in its engagement letters.  None of Evercore's engagements for the clients discussed in this paragraph are related to Evercore's engagement by the Debtors, and Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

5.     Diagnostic Imaging Group, LLC ("**DIG**") is a subsidiary of a portfolio company of Evercore Capital Partners II.  DIG has a lending facility with the Debtors, but the Debtors are not the agent for that facility.  Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

6.     Evercore has in the past worked with, continues to work with, has mutual clients with, and/or employs professionals who are relatives of professionals at certain law,

accounting, investment-banking and other professional service firms who are potential parties-in-interest in these cases or who represent such parties, including, without limitation, Cravath Swaine & Moore LLP, Davis Polk & Wardwell, Deloitte Touche Tohmatsu, Ernst & Young LLP, Joele Frank, Wilkinson Brimmer Katcher, Jones Day, Kirkland & Ellis LLP, Merrill Lynch, Morgan Stanley & Co. Inc., Morgan Lewis & Bockius LLP, Osler, Hoskin & Harcourt LLP, Paul Weiss Rifkind Wharton & Garrison LLP, PricewaterhouseCoopers LLP, Richards Layton & Finger, Simpson Thacher & Bartlett LLP, Skadden, Arps, Slate, Meagher & Flom LLP, and Weil, Gotshal & Manges LLP. Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

7. In addition to the professionals discussed above, from time to time Evercore purchases goods and services from or otherwise makes payments to entities that are or may be parties in interest in these cases or entities with names similar to those of parties in interest. These entities include the following: ADP, Inc., American Express Company, AT&T Corporation, Bank of America, Bank of New York, Bank of New York Mellon Corporation, Bank of New York Mellon Wealth Management, Bank of Nova Scotia, Bloomberg Finance L.P., Chrysler Financial Co., L.L.C., Citicorp USA, Inc., Comcast Metrophone, Con Edison, DE Lage Landen Financial Services, Inc., Deutsche Bank, Fidelity Management & Research Co., Ford Motor Company, General Electric Capital Corporation, General Electric Company, GMAC LLC, HQ Global Workplaces, Inc., Intralinks, Inc., JP Morgan Chase Bank, N.A., Lehman Commercial Paper Inc, Macquarie Equipment Finance, LLC, Merrill Lynch Trust Company, Mitsui Sumitomo Insurance Company Limited, Mizuho Securities Co., Ltd., Morgan Stanley & Co., Inc., Omni Financial Services of America, Inc., Oxford Health Plans, Promontory Financial Group, LLC, Prudential Life Insurance Co., Resource Global Professionals, Toyota Motor Credit

Corp., UBS AG, the United States Department of the Treasury, Vanguard Group, Inc., Verizon Communications, and Wachovia Bank, N.A. Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

8. A senior managing director of Evercore's private-equity affiliate, who is not involved with this engagement, is a member of the board of directors of Caterpillar Inc. Evercore understands that Caterpillar Inc. is a competitor of the Debtors. Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

9. The Debtors have numerous customers, creditors and other parties with whom they maintain business relationships. In addition, there may be a number of smaller firms that are not listed as potential parties-in-interest. Evercore may have advisory or other commercial or professional relationships with such entities or persons unrelated to the Debtors or their Chapter 11 proceedings. Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :

In re:                                :     Chapter 11
                                      :

CIT GROUP INC. and             :     Case No. 09-16565 (ALG)
CIT GROUP FUNDING COMPANY  :
OF DELAWARE LLC,           :
                                      :

              Debtors.        :     (Jointly Administered)
                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER UNDER 11 U.S.C. §§ 327(a) AND 328(a), FED. R. BANKR. P. 2014 AND 2016
AND LOCAL BANKR. R. 2014-1 AUTHORIZING EMPLOYMENT AND RETENTION
OF EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL
ADVISOR TO THE DEBTORS AND DEBTORS-IN-POSSESSION
_NUNC PRO TUNC_ TO THE PETITION DATE**

Upon the application (the "Application")[1] of the Debtors for entry of an order (the

"Order") under sections 327(a) and 328(a) of Title 11 of the United States Code (the

"Bankruptcy Code"), Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1 authorizing the

employment and retention of Evercore Group L.L.C. and its affiliates ("Evercore") as investment

banker and financial advisor to the Debtors _nunc pro tunc_ to the Petition Date, pursuant to the

terms set forth in the Application; and upon the Declaration of David Ying, a Senior Managing

Director of Evercore, filed in support of the Application, annexed to the Application as Exhibit A

(the "Ying Declaration"), and the Court being satisfied, based on the representations made in the

Application and in the Ying Declaration, that Evercore is a "disinterested person" as such term is

defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
     Application.

Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither represents nor holds an interest adverse to the Debtors and their estates; and this Court having determined that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.      The Application is GRANTED as set forth in this Order.

2.      Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain Evercore as their investment banker and financial advisor, as of the Petition Date, on the terms set forth in the Application and the Engagement Letter; provided, however, that in the event that the Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

3.      Paragraph 7 of the Engagement Letter is amended and shall read as follows:

> Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in accordance with the Indemnification Agreement, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture or partnership. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

4.      The terms of the Engagement Letter, including without limitation, the Fee Structure and the provisions of the Indemnification Agreement incorporated by reference into the Engagement Letter, are reasonable terms and conditions of employment and are approved.

5.      Evercore shall be compensated in accordance with the terms of the Engagement Letter pursuant to the standard of review under section 328(a) of the Bankruptcy Code and not subject to review under section 330(a) of the Bankruptcy Code; provided, however, that Evercore (a) shall only be required to maintain time records for services rendered post-petition, in half-hour increments and (b) shall not be required to provide or conform to any schedule of hourly rates.

6.      Notwithstanding anything contrary to the terms set forth above, the United States Trustee retains all rights to object to Evercore's interim and final fee applications (including expense reimbursement) on all grounds including but not limited to the reasonableness standard set forth in section 330 of the Bankruptcy Code.

7.      All requests of Indemnified Persons (as defined in the Indemnification Agreement) for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final, as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall an Indemnified Person be indemnified to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct of Indemnified Persons.

8.     In no event shall an Indemnified Person be indemnified if the Debtors or a representative of their estates asserts a claim for, and a court determines by final order that such claim primarily arose out of, such person's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

9.     In the event that an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Evercore's own applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of this Court under the standards of Bankruptcy Code sections 330 and 331 without regard to whether such attorneys have been retained under Bankruptcy Code section 327 and without regard to whether such attorneys' services satisfy Bankruptcy Code section 330(a)(3)(C).

10.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

11.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, or 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.    This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:      New York, New York
                        , 2009


_____
UNITED STATES BANKRUPTCY JUDGE