UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re: : Chapter 11
:
CIT GROUP INC. and : Case No. 09-16565 (ALG)
CIT GROUP FUNDING COMPANY :
OF DELAWARE LLC, :
:
Debtors. : (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN
POST-PETITION FINANCING PURSUANT TO
11 U.S.C. §§ 105, 362, 363, 364(c)(1), 364(c)(2) AND 364(e)**

Upon the motion (the "**Motion**"),[1] dated November 1, 2009, of CIT Group Inc. ("**CIT**") and CIT Group Funding Company of Delaware LLC ("**Funding**"), each as debtor and debtor-in-possession (collectively, the "**Debtors**"), in the above-captioned cases (the "**Cases**") pursuant to sections 105, 362, 363, 364(c)(1), 364(c)(2) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), seeking, among other things:

(1) authorization for CIT to (i) obtain post-petition financing in the form of the Letter of Credit Facility (the "**L/C Facility**") from Bank of America, N.A. and such other lenders party to a Letter of Credit

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Motion.

Agreement substantially in the form attached as Exhibit A to the Interim Order (as defined below) (the "**L/C Agreement**") among CIT, certain of its non-debtor subsidiaries (the "**Subsidiary Borrowers**" and, collectively, together with CIT, the "**Borrowers**"), and Bank of America, N.A., acting as Administrative Agent (in such capacity, the "**Administrative Agent**") and L/C Issuer (in such capacity, the "**L/C Issuer**"), (ii) permit and cause the Subsidiary Borrowers to become borrowers under the L/C Facility, and (iii) permit and cause certain of its non-debtor subsidiaries to become guarantors under the L/C Facility (collectively, the "**Guarantors**" [2]);

(2) authorization for CIT to execute and enter into, and for CIT to permit and cause the Subsidiary Borrowers and Guarantors to execute and enter into, the L/C Agreement, the Credit Documents (as defined in the L/C Agreement) and any exhibits attached thereto (collectively, and together with the letter agreements referred to in paragraph 4(c)(iii) below, the "**L/C Facility Documents**") and perform such other and further acts as may be required in connection with the L/C Facility Documents including, but not limited to, the posting of cash collateral from time to time to secure the Borrowers' respective obligations under the L/C Facility as required by the L/C Facility Documents;

(3) the granting of certain superpriority claims to the Administrative Agent, the L/C Issuer and the Lenders payable from, and

---

[2] The Subsidiary Borrowers and the Guarantors are defined in the L/C Facility Documents.

having recourse to, all pre-petition and post-petition property of CIT and its estate and all proceeds thereof;

(4) the granting of non-voidable liens on cash collateral and other amounts posted by the Borrowers to and on deposit in the Collateral Accounts (as defined in the L/C Agreement) pursuant to the L/C Facility Documents (the "**Cash Collateral**") to the Administrative Agent, the L/C Issuer and the Lenders;

(5) the limitation of the Debtors' right to surcharge against cash collateral pursuant to section 506(c) of the Bankruptcy Code;

(6) that this court schedule an interim hearing (the "**Interim Hearing**") on the motion to consider entry of an Interim Order (I) Authorizing Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C §§ 105, 362, 363, 364(c)(1), 364(c)(2) and 364(e) and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c) and Local Rule 4001-2 (the "**Interim Order**"); and

(7) that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of a final order (this "**Final DIP Order**") authorizing CIT and such other Borrowers that may be a joint account party with CIT to forthwith obtain letters of credit from the L/C Issuer under the L/C Facility Documents up to an aggregate principal or face amount not to exceed $500 million (subject to any limitations on issuances of letters of credit under the L/C Facility Documents or the Senior Credit Facility

3

Agreement) on a final basis, as set forth in the Motion and the L/C Facility Documents filed with this Court.

Due and appropriate notice of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing, the L/C Facility Fee Letter, and a copy of the entered Interim Order, having been served by the Debtors on (a) the United States Trustee for the Southern District of New York; (b) counsel to Bank of America, N.A., as L/C Issuer; (c) counsel to Bank of America, N.A., as Administrative Agent and Collateral Agent under the Senior Credit Facility (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) counsel to the Lenders' Steering Committee; and (f) those parties identified in the schedules of largest unsecured creditors annexed to the Debtors' chapter 11 petitions.

The Interim Hearing having been held by this Court on November 3, 2009 at 9:30 a.m. (prevailing Eastern Time), the Interim Order having been entered by the Court following the Interim Hearing, the Final Hearing Having been held on November 23, 2009 and all objections or responses, if any, to the Motion having been withdrawn or overruled either prior to the Final Hearing or at the Final Hearing.

Upon the record made by the Debtors at the Interim Hearing and the Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Under the circumstances, the notice given by the Debtors of the Motion, the Interim Hearing and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c) and Local Rule 4001-2.

3.      *Findings Regarding the L/C Facility.*

(a)     Good cause has been shown for the entry of this Final DIP Order.

(b)     The Borrowers have an immediate need to obtain the L/C Facility in order to permit, among other things, the orderly continuation of the operation of their businesses, to permit the Borrowers to honor certain contractual obligations to third parties and to maintain business relationships with vendors, suppliers and customers.  The access of the Borrowers to the L/C Facility is vital to the preservation and maintenance of the going concern values of the Borrowers and to a successful reorganization of the Debtors.

(c)     The Borrowers are unable to obtain letters of credit on more favorable terms from sources other than the L/C Issuer under the L/C Facility Documents and are unable to obtain adequate unsecured letters of credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.

(d)     The terms of the L/C Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration as to each Borrower.

(e) The L/C Facility has been negotiated in good faith and at arm's length among the Borrowers, the Administrative Agent and the L/C Issuer, and all of the Borrowers' obligations and indebtedness arising under, in respect of or in connection with the L/C Facility and the L/C Facility Documents, including without limitation, (i) all letters of credit issued for the account of the Borrowers pursuant to the L/C Agreement, (ii) all fees and other amounts payable to the Administrative Agent, the L/C Issuer and/or the Lenders under the L/C Facility Documents and (iii) any other "**Obligations**" (as defined in the L/C Agreement) (all of the foregoing in clauses (i), (ii) and (iii) collectively, the "**L/C Obligations**"), shall be deemed to have been extended by the Administrative Agent and the Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f) The Debtors have requested entry of this Final DIP Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2. Absent granting the relief sought by this Final DIP Order, the Debtors' estates and each of the Borrowers will be immediately and irreparably harmed. Consummation of the L/C Facility in accordance with this Final DIP Order and the L/C Facility Documents, including the posting of cash collateral to secure the obligations of the Borrowers, is therefore in the best interest of the Debtors, their estates, the Borrowers and each of their respective subsidiaries.

4.  *Authorization of the L/C Facility and the L/C Facility Documents.*

(a) CIT is hereby authorized to (i) enter into, and to permit and cause the Subsidiary Borrowers and the Guarantors to enter into, the L/C Facility Documents, (ii) obtain, on behalf of itself and certain Subsidiary Borrowers that may be co-account parties with CIT, letters of credit pursuant to the L/C Agreement of up to an aggregate principal or face amount not to exceed $125 million (and beginning on the date on which this Final DIP Order shall have become a Final Order (as defined in the L/C Agreement) up to an aggregate principal or face amount not to exceed $500 million) (plus interest, fees and other expenses and amounts provided for in the L/C Facility Documents) and (iii) permit and cause the Guarantors to guarantee the respective obligations of CIT and the Subsidiary Borrowers with respect to such letters of credit, in each case in accordance with the terms of this Final DIP Order and the L/C Facility Documents; provided however that nothing herein to the contrary shall be deemed to authorize CIT or the other parties to the Senior Credit Facility Agreement to violate the drawing limitations provided in section 6.1(b) or to violate the lien limitations provided in section 6.2(w) of the Senior Credit Facility Agreement.

(b) CIT is hereby authorized to post, on behalf of itself and the Subsidiary Borrowers that are joint account parties with CIT, cash collateral from time to time to secure the letters of credit issued pursuant to the L/C Agreement as required by the L/C Agreement.

(c) CIT is hereby authorized, on and after the date on which this Final DIP Order shall have become a Final Order (as defined in the L/C Agreement), to permit

7

and cause the Subsidiary Borrowers to post cash collateral from time to time to secure the letters of credit issued on behalf of Subsidiary Borrowers pursuant to the L/C Agreement as required by the L/C Agreement.

(d) In furtherance of the foregoing and without further approval of this Court, CIT is authorized and directed, and is authorized and directed to permit and cause the Subsidiary Borrowers and the Guarantors, to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) and to pay all fees, that may be reasonably required or necessary for the Borrowers' and/or Guarantors' performance of their respective obligations under the L/C Facility, including, without limitation:

(i) the execution, delivery and performance of the L/C Facility Documents,

(ii) the execution, delivery and performance of one or more amendments to the L/C Agreement for, among other things, the purpose of adding additional financial institutions as Lenders and reallocating the commitments for the L/C Facility among the Lenders, in each case in such form as CIT, the Subsidiary Borrowers, the Guarantors, the Administrative Agent, the L/C Issuer and the Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the L/C Agreement that do not shorten the maturity of the extensions of credit thereunder or increase the commitments, the rate of interest or the fees payable

thereunder); provided, however, any material amendments to the L/C Agreement shall be filed with the Court,

(iii) the non-refundable payment to the Administrative Agent, the L/C Issuer or the Lenders, as the case may be, of the fees referred to in the L/C Agreement (and in the separate letter agreements between them, CIT, the Subsidiary Borrowers and the Guarantors in connection with the L/C Facility) and such reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the L/C Facility Documents, and

(iv) the performance of all other acts required under or in connection with the L/C Facility Documents.

(e) Upon execution and delivery of the L/C Facility Documents, the L/C Facility Documents shall constitute valid and binding obligations of the Borrowers and the Guarantors, enforceable against each Borrower and each Guarantor party thereto in accordance with the terms of the L/C Facility Documents. No obligation, payment, transfer or grant of security under the L/C Facility Documents or this Final DIP Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

5. *Superpriority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the L/C Obligations shall constitute allowed claims against CIT with priority over any and all administrative expenses, diminution claims and all other claims against

9

CIT (except for any claim granted to an affiliate of CIT on account of post-petition intercompany loans and transfers pursuant to the Cash Management Order and any superpriority claims that may be granted to a provider of debtor-in-possession financing, including without limitation such claims that may be granted to the Senior Secured Lenders under section 5.21 of the Senior Credit Facility Agreement, which claims shall be *pari passu* with the superpriority claims granted herein), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 364, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of CIT and all proceeds thereof. The Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6. *L/C Liens*. As security for the L/C Obligations, effective and perfected as of the time and date of entry of the Interim Order and without the necessity of the execution, recordation of filings by the Debtors of security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the Administrative Agent of, or over, the Cash Collateral or the Collateral Accounts (as defined in the L/C Agreement), the Administrative Agent is

10

hereby granted, for its own benefit and the benefit of the L/C Issuer and the Lenders, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon the Cash Collateral and the accounts to which such Cash Collateral is credited (such liens and security interests granted to the Administrative Agent, for its own benefit and the benefit of the L/C Issuer and the Lenders, pursuant to this Final DIP Order and the L/C Facility Documents, the "**L/C Liens**").

7. *Subsidiary Borrowers.* The entry into the L/C Facility and the performance by CIT and the Subsidiary Borrowers of their respective obligations thereunder, including the mutual guaranties issued thereunder, do not, and shall not, provide a basis for a substantive consolidation of the assets and liabilities of the Debtors with the assets and liabilities of the Subsidiary Borrowers or a finding that the separate corporate identities of the Debtors and the Subsidiary Borrowers may be ignored. Notwithstanding any other provision of the L/C Facility Documents or this Final DIP Order, the Administrative Agent, the L/C Issuer, the Lenders and the other parties thereto have agreed to enter into the L/C Facility in express reliance on the Subsidiary Borrowers being separate and distinct legal entities, with assets and liabilities separate and distinct from those of the Debtors.

8. *Protection of Lenders' Rights.* The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Administrative Agent and the Lenders to exercise, immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the L/C

Facility Documents (including, without limitation, the right to setoff the Cash Collateral), consistent with the terms of the L/C Agreement and subject to any notice requirements contained therein. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors hereby waive their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Administrative Agent, the L/C Issuer or the Lenders set forth in this Final DIP Order or the L/C Facility Documents. In no event shall the Administrative Agent, the L/C Issuer or the Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Cash Collateral.

9. *Cash Collateral*.

(a) No expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Cash Collateral, and the Cash Collateral shall not be subject to any carve-out, whether pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or otherwise.

(b) The Cash Collateral shall not be available for use by the Debtors, whether pursuant to section 363 of the Bankruptcy Code or otherwise, and shall be released to the Debtors only in accordance with the provisions of the L/C Facility Documents. In no event shall the Debtors be authorized to substitute any

12

property for the Cash Collateral or "prime" the interests of the Administrative Agent, the L/C Issuer and the Lenders in the Cash Collateral.

10. *Perfection of L/C Liens.*

(a) The Administrative Agent, the L/C Issuer and the Lenders are hereby authorized, but not required, to take possession of or control over the Cash Collateral, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the Administrative Agent on behalf of the Lenders shall, in their sole discretion, choose to take possession of or control over the Cash Collateral, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, as of the time and date of entry of the Interim Order.

(b) A certified copy of the Interim Order and/or this Final DIP Order may, in the discretion of the Administrative Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order and/or this Final DIP Order for filing and recording.

11. *Preservation of Rights Granted Under this Final DIP Order.*

(a) Pursuant to Section 10.20 of the Senior Credit Facility Agreement, upon the posting of the Cash Collateral to secure the obligations of the Borrowers under the L/C Facility, the liens of the Senior Secured Parties under the Senior Credit Facility on the Cash Collateral will be automatically released and will be of no further force or

13

effect and upon such release, the L/C Liens will be the only security interests existing in the Cash Collateral. With the exception of claims granted to an affiliate of CIT on account of post-petition intercompany loans and transfers pursuant to the Cash Management Order and any superpriority claims that may be granted to a provider of debtor-in-possession financing, including without limitation such claims that may be granted to the Senior Secured Lenders under section 5.21 of the Senior Credit Facility Agreement (which claims shall be *pari passu* with the superpriority claims granted herein), no superpriority claim or lien having a priority superior to or *pari passu* with those granted by this Final DIP Order to the Administrative Agent, the L/C Issuer and the Lenders, respectively, shall be granted or allowed while any portion of the L/C Facility (or any refinancing thereof) or the commitments thereunder or the L/C Obligations remain outstanding. Furthermore, no lien against the Cash Collateral shall be granted or allowed and the L/C Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise while any portion of the L/C Facility (or any refinancing thereof) or the commitments thereunder or the L/C Obligations remain outstanding.

(b) Unless the L/C Facility shall have terminated in accordance with the terms of the L/C Facility Documents, the Debtors shall not seek, and it shall constitute an Event of Default under the L/C Facility documents if any of the Debtors seeks, or if there is entered, (i) any modifications or extensions of this Final DIP Order

14

without the prior written consent of the Administrative Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the Administrative Agent, or (ii) an order converting or dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims and security interests granted to the Administrative Agent and the Lenders pursuant to this Final DIP Order shall continue in full force and effect and shall maintain their priorities as provided in this Final DIP Order until all L/C Obligations shall have been paid and satisfied in full (and that such Superpriority Claims and security interests shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

(c) If any or all of the provisions of this Final DIP Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any L/C Obligations incurred prior to the actual receipt of written notice by the Administrative Agent, as applicable, of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the L/C Agreement with respect to any L/C Obligations. Notwithstanding any such reversal, stay, modification or vacation, any L/C Obligations incurred by CIT to the Administrative Agent or the Lenders prior to the actual receipt of written notice by the Administrative Agent of the effective date of

15

such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final DIP Order, and the Administrative Agent, the L/C Issuer and Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final DIP Order and pursuant to the L/C Facility Documents with respect to all L/C Obligations.

(d) Except as expressly provided in this Final DIP Order or in the L/C Facility Documents, the L/C Liens, the Superpriority Claims and all other rights and remedies of the Administrative Agent, the L/C Issuer and the Lenders granted by the provisions of this Final DIP Order and the L/C Facility Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining L/C Obligations. The terms and provisions of this Final DIP Order and the L/C Facility Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the L/C Liens, the Superpriority Claims and all other rights and remedies of the Administrative Agent and the Lenders granted by the provisions of this Final DIP Order and the L/C Facility Documents shall continue in full force and effect until the L/C Obligations are indefeasibly paid in full in accordance with the terms of the L/C Facility Documents.

16

12. *Final DIP Order Governs*. In the event of any inconsistency between the provisions of this Final DIP Order and the L/C Facility Documents or the Interim Order, the provisions of this Final DIP Order shall govern.

13. *Binding Effect; Successors and Assigns*. The L/C Facility Documents and the provisions of this Final DIP Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Administrative Agent, the L/C Issuer, the Lenders, any Committee appointed in these Cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Administrative Agent, the L/C Issuer, the Lenders and the Debtors and their respective successors and assigns; *provided*, *however*, that the Administrative Agent, the L/C Issuer and the Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

Dated: New York, New York
November 23, 2009

*/s/ Allan L. Gropper*
UNITED STATES BANKRUPTCY JUDGE