UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| CIT GROUP INC. and | : | Case No. 09-16565 (ALG) |
| CIT GROUP FUNDING COMPANY | : |  |
| OF DELAWARE LLC, | : |  |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING (A) THE DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(C) OF THE BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS, AND (II) CONFIRMING THE MODIFIED SECOND AMENDED PREPACKAGED REORGANIZATION PLAN OF CIT GROUP INC. AND CIT GROUP FUNDING COMPANY OF DELAWARE LLC**

Upon the motion (the "Motion") of the Debtors for entry of (i) an order (a) scheduling a combined hearing (the "Confirmation Hearing") on the adequacy of the Debtors' Disclosure Statement, approval of the Solicitation Procedures, and confirmation of the Modified Second Amended Prepackaged Reorganization Plan of CIT Group Inc. and CIT Group Funding Company of Delaware LLC (the "Plan"), (b) approving the procedures for objecting to the adequacy of the Disclosure Statement, approval of the Solicitation Procedures, and confirmation of the Plan, (c) approving form and manner of the Combined Notice and (d) waiving the requirement for meetings of creditors or equity security holders; and (ii) an order (the "Confirmation Order") (a) approving the Solicitation Procedures, (b) approving the adequacy of the Disclosure Statement, and (c) confirming the Plan; and upon the order, dated November 3, 2009, granting, in part, the Motion (the "Scheduling Order") [Docket No. 45]; and the Court having considered the Debtors' Memorandum of Law in Support of Entry of an Order (I)

Approving (A) the Debtors' Disclosure Statement Pursuant to Sections 1125 and 1126(c) of the

Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures, and (C) Forms of Ballots,

and (II) Confirming the Modified Second Amended Prepackaged Reorganization Plan of CIT

Group Inc. and CIT Group Funding Company of Delaware LLC (the "Confirmation Brief")[1]

[Docket No. 180], the Declaration of Robert J. Duffy In Support of the Modified Second

Amended Prepackaged Reorganization Plan of CIT Group Inc. and CIT Group Funding

Company of Delaware LLC (the "Duffy Declaration") [Docket No. 178], the Declaration Of

James W. Kilman Jr. In Support Of Confirmation Of Modified Second Amended Prepackaged

Reorganization Plan Of CIT Group Inc. And CIT Group Funding Company Of Delaware LLC

(the "Kilman Declaration") [Docket No. 179], each filed by the Debtors in advance of the

Confirmation Hearing; and the Court having held a hearing on December 8, 2009 pursuant to

section 1129 of the Bankruptcy Code to consider confirmation of the Plan (the "Confirmation

Hearing"); and the Court having admitted into the record and considered evidence at the

Confirmation Hearing; and the Court having taken judicial notice of the contents of the docket of

the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent,

including all pleadings and other documents filed and orders entered thereon; and after due

deliberation thereon and good and sufficient cause appearing therefor, it is hereby

---

[1]  Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the
    Confirmation Brief.

ORDERED, ADJUDGED, AND DECREED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

A.     <u>Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.  This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.     <u>Filing of Plan</u>.  On November 1, 2009, the Debtors filed the Second Amended Prepackaged Reorganization Plan of CIT Group Inc. and CIT Group Funding Company of Delaware LLC (the "Second Amended Plan") and the Disclosure Statement.  On November 25, 2009 and December 7, 2009, the Debtors filed non-material modifications to the Second Amended Plan.  The Plan consists of two separate plans jointly proposed and filed by each of the Debtors.  Unless stated otherwise, each reference in these Findings and Conclusions to the Plan (in the singular) is a reference to both such plans.  On November 25, 2009 and as updated on December 7, 2009, the Debtors filed forms of the New Notes Indentures; forms of the collateral and security documentation for the New Notes; the forms of amended and modified Intercompany Notes and the ancillary documents related thereto, forms of certain intercreditor and collateral agency agreements relating to the Senior Credit Facility (as hereinafter defined) and the New Notes; form of the First Amendment, dated on or about the Effective Date (the "Amendment to the Senior Credit Facility") to the Second Amended And Restated Credit And

---

[2]     Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

Guaranty Agreement dated as of October 28, 2009, among CIT Group Inc., certain subsidiaries of CIT Group Inc., various lenders, Bank of America, N.A., as administrative agent, parent collateral agent and subsidiary collateral agent, Banc of America Securities LLC and Citigroup Global Markets Inc., as joint lead arrangers, bookrunners and syndication agents (together with all collateral documents, mortgages, control agreements and other agreements and documents related thereto, the "Senior Credit Facility"); form of the Amended and Restated Long-Term Incentive Plan (the "Amended and Restated LTIP Agreement"); form of the China Waiver and Forbearance Agreement (as defined hereinafter); a non-exclusive list of retained causes of action; and a non-exclusive list of released derivative causes of action.[3]

C.      Transmittal of Solicitation Package.  Prior to the Petition Date, the Debtors, either through their solicitation agent, Epiq Financial Balloting Group, LLC ("FBG") or directly, caused the Solicitation Packages to be served and distributed as required by sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the local rules of this Court, all other applicable provisions of the Bankruptcy Code, the Scheduling Order, and all other applicable rules, laws, and regulations applicable to such solicitation, including sections 3(a)(9) and 4(2) of the Securities Act of 1933.  Such transmittal and service was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

D.      The Plan and the Disclosure Statement were transmitted to all creditors entitled to vote on the Plan.  The Disclosure Statement, Plan, and Ballots were transmitted and served in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy

---

[3]      To the extent that drafts or summary descriptions of documents have been filed with the Court in connection with the Plan, the draft documents will be finalized pursuant to the Plan for execution and delivery.

Rules, including Bankruptcy Rule 3017(d), the Local Rules, the Prepack Guidelines, the Scheduling Order and all other applicable rules, laws, and regulations. Such transmittal and service was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

E.    Mailing and Publication of Combined Notice. On or before November 6, 2009, the Debtors caused the Combined Notice to be mailed to all of the Debtors' known creditors and interest holders. See Affidavit of Service of Jonathan D. Carameros re: Summary of Plan and Notice of (I) Meeting of Creditors; (II) Commencement of Chapter 11 Cases, (III) Combined Hearing on Disclosure Statement and Confirmation of Plan of Reorganization and (IV) Procedures for Recommending Individuals to Serve as Directors of Reorganized CIT Group Inc. [Docket No. 69].

F.    Additionally, the Debtors published the Combined Notice in The Wall Street Journal (Global Edition) on November 6, 2009. See Affidavit of Publication of Combined Hearing on Disclosure Statement and Confirmation of Plan of Reorganization in the Wall Street Journal (Global Edition) [Docket No. 91]. Publication of the Combined Notice was in substantial compliance with the Scheduling Order and Bankruptcy Rule 2002(l).

G.    The Debtors have given proper, adequate and sufficient notice of the hearing to approve the Disclosure Statement as required by Bankruptcy Rule 3017(a). The Debtors have given proper, adequate and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d). Due, adequate, and sufficient notice of the Disclosure Statement, the Plan, along with deadlines for filing objections to the Plan and the Disclosure Statement, has been given to all known holders of Claims and Interests substantially in

accordance with the procedures set forth in the Scheduling Order. Notice was adequate and no other or further notice is or shall be required.

H. <u>Objections</u>. All Objections and all reservations of rights that have not been withdrawn, waived or settled, pertaining to confirmation of the Plan are overruled on the merits.

I. <u>Adequacy of Disclosure Statement</u>. Because no offer or distribution of securities which is subject to federal or state securities or "blue sky" laws is being made under the Plan and no other applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the pre-petition solicitation applies, the adequacy of the Disclosure Statement is governed by Bankruptcy Code section 1125(a). The Disclosure Statement contains adequate information as that term is defined in Bankruptcy Code section 1125(a) and complies with any additional requirements of the Bankruptcy Code and the Bankruptcy Rules. Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions.

J. <u>Solicitation</u>. Section 1126(b) of the Bankruptcy Code applies to the solicitation of acceptances and rejections of the Plan prior to the commencement of these chapter 11 cases. The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder, the "Securities Act") and applicable state and local securities laws, and no other non-bankruptcy law applies to the solicitation. The Disclosure

Statement contains adequate information within the meaning of, and for all purposes under, sections 1125 and 1126(b) of the Bankruptcy Code. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Prepack Guidelines, and all other rules, laws, and regulations. The continued postpetition solicitation of Class 7 and Class 8 was proper and in compliance with Bankruptcy Code section 1125(g).

K.       In particular, the solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Plan and the Disclosure Statement were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for such creditors to accept or reject the Plan. The solicitation materials and solicitation procedures comply with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

L.       In particular, the solicitation of Class 8 commenced on October 16, 2009, in accordance with applicable nonbankruptcy law, and continued postpetition through November 13, 2009. Accordingly, the solicitation of Class 8 complied with the provisions of Bankruptcy Code section 1125(g). Additionally, the solicitation of Class 7 originally commenced on October 1, 2009 and, based upon a change to the treatment for holders of Class 7 Canadian Senior Unsecured Note Claims, the deadline for holders of Class 7 to vote on the Plan was extended to November 5, 2009. Accordingly, the solicitation of Class 7 complied with the provisions of Bankruptcy Code section 1125(g) and applicable securities laws.

M.       The Debtors' procedures for transmitting the Disclosure Statement, the Plan, the Ballots, and the voting instructions are adequate and comply with the requirements of Bankruptcy Rule 3017(d) and (e), all other applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules and the Prepack Guidelines, the Scheduling Order and all other applicable rules, laws, and regulations.

N.     The form of the Ballots was adequate and appropriate and complied with Bankruptcy Rule 3018(c).  The forms of the Ballots were sufficiently consistent with Official Form No. 14 and the form of ballot annexed to the Prepack Guidelines and adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for the Classes entitled to vote to accept or reject the Plan.

O.     The establishment of the Voting Deadline (i) for Classes 6, 9, 10, 11, 12 and 13 as October 29, 2009, (ii) for Class 7 as November 5, 2009 and (iii) for Class 8 as November 13, 2009 is reasonable under Bankruptcy Rule 3018(b) and does not prescribe an unreasonably short time for creditors and equity security holders to accept or reject the Plan.

P.     Due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, along with deadlines for voting on the Plan and the Disclosure Statement, has been given to all known holders of Claims entitled to vote on the Plan.  No other or further notice is or shall be required.

Q.     <u>Postpetition Election Notices</u>.  The transmittal on (i) November 19, 2009 by the Debtors of that certain Notice Of Opportunity To Elect Impaired Treatment Under Second Amended  Prepackaged Plan Of Reorganization Of CIT Group Inc. And CIT Group Funding Company Of Delaware LLC (the "Postpetition Class 8B Election Notice") to those holders of Claims in Class 8B, providing such holders the opportunity to elect to receive the Impaired treatment provided to holders of Class 8A Claims without changing such holder's vote on the Plan with such election to be made on or before December 4, 2009 at 5:00 p.m. (New York City time) and (ii) November 25, 2009 by the Debtors of (a) that certain Lender Election Form For

Holders Of Class 10 Senior Unsecured Term Loan Claims To Elect Treatment Under Second Amended Prepackaged Plan Of Reorganization Of CIT Group Inc. And CIT Group Funding Company Of Delaware LLC (the "Postpetition Class 10 Election Notice") and (b) that certain Lender Election Form For Holders Of Class 11 Senior Unsecured Credit Agreement Claims To Elect Treatment Under Second Amended Prepackaged Plan Of Reorganization Of CIT Group Inc. And CIT Group Funding Company Of Delaware LLC (the "Postpetition Class 11 Election Notice" and, together with the Postpetition Class 8B Election Notice and the Postpetition Class 10 Election Notice, the "Postpetition Election Notices"), was proper and not in contradiction of applicable sections of the Bankruptcy Code.

R. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. All persons who solicited votes on the Plan, including any such persons released pursuant to Article XIII.H of the Plan, solicited such votes in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in Article XIII.J. of the Plan.

S. <u>Tabulation Results</u>. On December 2, 2009, FBG filed the Declaration of Service and Vote Certification of Financial Balloting Group LLC in Connection With the Second Amended Prepackaged Reorganization Plan of CIT Group Inc. and CIT Group Funding Company of Delaware LLC [Docket No. 157] (the "Tabulation Declaration"), certifying the method and results of the ballot tabulation for each of the Classes entitled to vote under the Plan (the "Voting Classes"). As evidenced by the Tabulation Declaration, all Voting Classes for which votes were received have accepted the Plan with respect to each of the Debtors in accordance with section 1126 of the Bankruptcy Code.

T.     All procedures used to tabulate the Ballots were fair and reasonable and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Prepack Guidelines, the Scheduling Order and all other applicable rules, laws, and regulations.

U.     <u>Bankruptcy Rule 3016</u>.  The Plan (including all modifications thereof) is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of the Bankruptcy Court simultaneously with the Plan satisfied Bankruptcy Rule 3016(b).

V.     <u>Burden of Proof</u>.  As more fully set forth herein, the Debtors, as proponents of the Plan, have met their burden of proving each of the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for the Confirmation.

W.     <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable provisions of the Bankruptcy Code, including, but not limited to: (a) the proper classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)); (d) provision for the same treatment of each Claim or Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for adequate and proper means for implementation (11 U.S.C. § 1123(a)(5)); (f) the prohibition against the issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6)); (g) adequate disclosure of the procedures for determining the identities and affiliations of the directors, members and officers with respect to the Reorganized Debtors

(11 U.S.C. § 1123(a)(7)); and (h) the inclusion of additional plan provisions permitted to effectuate the restructuring of these Chapter 11 Cases (11 U.S.C. § 1123(b)).

(a)    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).  In particular, Article III of the Plan adequately and properly identifies and classifies all Claims and Interests.  The Plan designates fourteen (14) Classes of Claims and four (4) Classes of Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class, and such classification therefore satisfies section 1122 of the Bankruptcy Code.  Valid business and legal reasons exist for the various Classes of Claims and Interests created under the Plan, such as the contractual subordination of various note facilities to other note and debt facilities, and such Classes do not unfairly discriminate between holders of Claims or Interests.  Thus, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Treatment of Unimpaired Class (11 U.S.C. § 1123(a)(2)). The Plan specifies in Article III that Classes 1, 2, 3, 4, 5, 8B and 17 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan specifies in Article III that Classes 6, 7, 8A, 9, 10, 11, 12, 13, 14, 15, 16 and 18 are Impaired under the Plan and sets forth the treatment of the Impaired Classes in Articles III and IV of the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    No Discrimination (11 U.S.C. § 1123(a)(4)).  Article IV of the Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  With respect to Class 8, holders of Long-Dated Senior Unsecured Note Claims who

vote to accept the Plan will be placed in Class 8A.  Holders of Long-Dated Senior Unsecured

Note Claims who vote to reject the Plan will be placed in Class 8B.  Unless holders of Class 8B

Claims voluntarily have elected to receive the Impaired Treatment provided to Class 8A Claims

pursuant to the Postpetition Class 8B Election Notice, each holder of a Claim within Class 8A

and Class 8B will receive the same treatment as other claimholders in Class 8A or Class 8B,

respectively.  Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

    (e) <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. Article IV of

the Plan provides adequate and proper means for implementation of the Plan, thereby satisfying

section 1123(a)(5) of the Bankruptcy Code.

    (f) <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  Article IV.K

of the Plan provides that the organizational documents of each Reorganized Debtor shall be

amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, including

section 1123(a)(6).  The Reorganized CIT Certificate of Incorporation, Reorganized Delaware

Funding Certificate of Formation and Reorganized Delaware Funding Amendment to Limited

Liability Company Agreement provide that the Reorganized Debtors shall provide that the

Reorganized Debtors shall not issue any non-voting equity securities to the extent required by

Bankruptcy Code section 1123(a)(6).  Accordingly, the Plan satisfies section 1123(a)(6) of the

Bankruptcy Code.

    (g) <u>Selection of Officers, Directors, and Initial Plan Administrator (11</u>

<u>U.S.C. § 1123(a)(7))</u>.  The Debtors have filed as (i) Exhibit F to the Plan the list of directors and

officers of CIT Group Inc. as of the Petition Date, with the exception of one director who

resigned on November 16, 2009, as well as the process for selection of new Board members of

Reorganized CIT and (ii) Exhibit G to the Plan those directors and officers of Delaware Funding

and Reorganized Delaware Funding. CIT Group Inc.'s Board of Directors (the "Board") (which as of the Petition Date had nine (9) members and as of the date hereof has eight (8) members) has determined, and the Plan provides, that the appropriate size of the Board after the Effective Date would be thirteen (13) directors: (a) five of whom will consist of individuals who were serving as directors on November 1, 2009, (b) four of whom will be nominees proposed to the Nominating and Governance Committee of the Board (the "N&GC") by the Steering Committee of Lenders (the "Steering Committee Nominees"), (c) three of whom will be nominees (the "Debtholder Nominees") proposed to the N&GC by CIT Group Inc. noteholders (other than members of the Steering Committee) owning more than 1% of the aggregate outstanding principal amount of outstanding CIT bonds and unsecured bank debt claims (the "One-Percent Holders") and (d) one of whom will be CIT's Chief Executive Officer. At the request of and in cooperation with the Steering Committee, CIT Group Inc. has engaged Spencer Stuart, an internationally recognized director search firm, to assist the N&GC in identifying, interviewing and selecting Steering Committee Nominees. Spencer Stuart will identify Steering Committee Nominees who are independent of CIT Group Inc., not affiliated with, or representatives of, any of the members of the Steering Committee or the One-Percent Holders, and who possess the qualifications, skills and experience specified by the N&GC. The candidates that are approved by the N&GC will be submitted to the full Board for consideration and approval for appointment to the Board, with such appointment subject to the review of the Federal Reserve Bank of New York (the "Federal Reserve"). The appointment of directors to the Board is consistent with the interests of creditors and with public policy and, thus, satisfies section 1123(a)(7) of the Bankruptcy Code.

X.     Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

The Debtors have complied with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Scheduling Order, and other orders of this Court, thereby satisfying

section 1129(a)(2) of the Bankruptcy Code.  In particular, the Debtors are properly debtors under

section 109 of the Bankruptcy Code.  The Debtors are proper proponents of the Plan pursuant to

section 1121(a) of the Bankruptcy Code.  The Debtors, as proponents of the Plan, complied with

the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of this

Court, the Prepack Guidelines and the Scheduling Order in transmitting the Plan, the Disclosure

Statement, the Ballots and notices and in soliciting and tabulating votes on the Plan.

Y.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have

proposed the Plan in good faith, for proper purposes and not by any means forbidden by law,

thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has

been proposed in good faith, the Court has examined the totality of the circumstances

surrounding the filing of the Chapter 11 Cases, the formulation of the Plan and all modifications

thereto.  The Chapter 11 Cases were filed, and the Plan and all modifications thereto were

proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of

the Debtors and the recovery to claimholders.  Therefore, the Debtors have proposed the Plan in

good faith and not by any means forbidden by law, and section 1129(a)(3) of the Bankruptcy

Code is satisfied with respect to the Plan.

Z.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

All fees and expenses of professionals retained in the Chapter 11 Cases remain subject to final

review for reasonableness by the Court.  Article II.B of the Plan provides for the payment only of

Allowed Administrative Claims.  Pursuant to Article XIII.B, professionals holding Professional

Fee Claims are required to file their final fee applications with the Court no later than sixty (60) after the Effective Date. These applications remain subject to Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code, as applicable. Finally, Article XII of the Plan provides that the Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, including requests by Professionals. Accordingly, the Plan fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

AA.     Board of Managers, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have filed as (i) Exhibit F to the Plan the list of directors and officers of CIT Group Inc. as of the Petition Date, with the exception of one director who resigned on November 16, 2009, as well as the process for selection of new Board members of Reorganized CIT and (ii) Exhibit G to the Plan those directors and officers of Delaware Funding and Reorganized Delaware Funding. As set forth above, CIT Group Inc.'s Board has determined that on and after the Effective Date the Board would consist of thirteen (13) directors: (a) (a) five of whom will consist of individuals who were serving as directors on November 1, 2009, (b) four of whom will be Steering Committee Nominees proposed to the N&GC, (c) three of whom will be the Debtholder Nominees and (d) one of whom will be CIT's Chief Executive Officer. The candidates that are approved by the N&GC will be submitted to the full Board for consideration and approval for appointment to the Board, with such appointment subject to the review of the Federal Reserve. To the extent the N&GC or the Federal Reserve does not approve any Steering Committee Nominee, whether such event occurs either pre- or post-Effective Date, the Steering

Committee shall be permitted to submit additional candidates to the N&GC until four members of the Board are Steering Committee Nominees.

BB.     Therefore, the Debtors have sufficiently disclosed the initial members of the Board of Reorganized CIT, including the identity of any insider that will be employed or retained by Reorganized CIT, so far as such parties have been identified to date.  The Debtors have also disclosed the process and procedure for selecting additional members of the Board of Reorganized CIT to the extent the director selection process will continue following the Confirmation Hearing.  The appointment to, or continuance in, such office of each individual, and the methods established therefor are consistent with the interests of holders of Claims and Interests, and with public policy.   Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Plan.

CC.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6)of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

DD.     <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>.  The liquidation analyses attached as Appendix A-1 and Appendix A-2 to the October 23, 2009 supplement to the Disclosure Statement, the Duffy Declaration, the Kilman Declaration and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtors in the event the Debtors were liquidated under Chapter 7 of the Bankruptcy Code, and (4) establish that each holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder

would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

EE.     Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes 1, 2, 3, 4, 5, 8B and 17 are Unimpaired by the Plan and therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan.  Classes 6, 7, 8A, 9, 10, 11, 12 and 13 were entitled to vote on the Plan and each of such Classes has voted to accept the Plan.  Accordingly, Bankruptcy Code section 1129(a)(8) has been satisfied with respect to Classes 1 through 13 and 17.  Class 14, 15, 16 and 18 are deemed to reject the Plan pursuant to Bankruptcy Code section 1126(g) and, therefore, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes.

FF.     Treatment of Administrative and Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims and Other Priority Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

GG.     Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)).  At least one Impaired Class of Claims in each Chapter 11 Case voted to accept the Plan determined without including any acceptance of the Plan by any "insiders."  Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Plan.

HH.     Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan does not provide for the liquidation of all or substantially all of the property of the Debtors.  The financial projections in Appendix A to the Disclosure Statement, the Duffy Declaration, the Kilman Declaration and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii)

have not been controverted by other credible evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization of the Reorganized Debtors. Therefore, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

II. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. The Debtors have paid or, pursuant to the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

JJ. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Article VII.F of the Plan provides that, following the Effective Date, the payment of all retiree benefits (as defined in section 1114 of the Bankruptcy Code) shall continue at the levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to confirmation the Plan, for the duration of the periods the Debtors have obligated themselves to provide such benefits, if any, and subject to any contractual rights to terminate or modify, thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

KK. <u>Section 1129(b); Confirmation of The Plan Over Nonacceptance of Impaired Classes</u>. Holders of Claims and Interests in Classes 14, 15, 16 and 18 are deemed to have rejected the Plan (the "Rejecting Classes"). All of the requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8) with respect to such Classes, have been met. Notwithstanding the fact that the Rejecting Classes are deemed to reject the Plan and thus do not satisfy section 1129(a)(8), the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) all of the voting classes – Classes 6, 7, 8, 9, 10, 11, 12 and 13 – voted to accept the Plan; and (b) the Plan does not discriminate unfairly and is fair and equitable

with respect to the Rejecting Classes. Thus, the Plan may be confirmed notwithstanding the Debtors' inability to satisfy section 1129(a)(8) of the Bankruptcy Code. After entry of the Confirmation Order and upon consummation of the Plan, the Plan shall be binding upon the members of the Rejecting Classes.

LL.     The Plan does not unfairly discriminate because members within each Class are treated similarly. In particular, all of the Class 14 Subordinated 510(b) Claims, Class 15 Old Preferred Interests, Class 16 Old Common Interests and Class 18 Other Equity Interests are placed into their individual classes and given the same respective treatment; provided however that Class 15 Old Preferred Interests are granted Contingent Value Rights on account of such Interests' seniority to Subordinated 510(b) Claims and other CIT Group Inc. Interests. Accordingly, the Plan does not discriminate unfairly in respect to the Rejecting Classes or any other Class of Claims or Interests.

MM.     The Plan is fair and equitable with respect to the Rejecting Classes, because, in accordance with Bankruptcy Code section 1129(b)(2)(B) and (C) no holders of Claims or Interests junior to the holders of Claims or Interests in such Classes will receive or retain any property under the Plan on account of such Claims or Interests. In particular, no Holders of Claims or Interests junior to the Holders of Class 14 Subordinated 510(b) Claims, Class 15 Old Preferred Interests, Class 16 Old Common Interests and Class 18 Other Equity Interests will receive or retain any property under the Plan. Specifically, the Interests in Class 15 Old Preferred Interests are legally distinct from and structurally senior to all other Interests in CIT Group Inc. and to Subordinated 510(b) Claims. Additionally, there are no holders of any Claims against or Interests in CIT Group Inc. junior to the Claims and Interests in the Rejecting Classes, and therefore no holders of any Claims against or Interests in CIT Group Inc. junior to

the Claims and Interests in the Rejecting Classes will receive or retain any property under the Plan on account of such junior claim or interest. Moreover, pursuant to the Plan, no holders of Claims against or Interests in CIT Group Inc. senior to the Rejecting Class are receiving more than full payment on account of such Claims against or Interests in CIT Group Inc. Additionally, with respect to Interests in Delaware Funding, Class 17 Old Delaware Funding Interests is Unimpaired and deemed to accept the Plan. Class 17 Old Delaware Funding Interests consists solely of all of the Interests in Delaware Funding and there are no Interests in Delaware Funding classified in any other Class under the Plan. The Plan has been proposed separately by each of CIT Group Inc. and Delaware Funding, and constitutes a separate and distinct plan of reorganization for each such Debtors. Accordingly, the Unimpaired status of Class 17 is consistent with the requirement that no holders of Claims or Interests junior to the holders of Claims or Interests in the Rejecting Classes will receive or retain any property under the Plan on account of such Claims or Interests.

NN. Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding the Rejecting Classes' deemed rejection of the Plan.

OO. Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

PP.     <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

QQ.     <u>Executory Contracts</u>.  The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts (including licenses and the Amended and Restated LTIP Agreement) and unexpired leases pursuant to Article VII of the Plan.  Each assumption of an executory contract (including the Amended and Restated LTIP Agreement) or unexpired lease pursuant to Article VII of the Plan shall be legal, valid and binding upon the applicable Debtor or Reorganized Debtor and their assignees or successors and all non-Debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such assumption had been effectuated pursuant to an order of the Court entered before the date of the entry of this Confirmation Order (the "Confirmation Date") under section 365 of the Bankruptcy Code.

RR.     <u>Adequate Assurance</u>.  The Debtors have cured, or provided adequate assurance that the Reorganized Debtors or their successors or assignees will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtors pursuant to the Plan.

SS.     <u>Releases and Discharges</u>.  The releases and discharges of Claims and Causes of Action described in Article XIII of the Plan constitute good faith compromises and settlements of the matters covered thereby, are otherwise approved by the Court as appropriate pursuant to applicable law and/or are consensual.  Such compromises and settlements are (i) made in exchange for adequate consideration including, without limitation, in exchange for the New Notes and/or the New Common Interests and/or Contingent Value Rights, (ii) in the best

interests of the Debtors' Estates, claimholders and other parties in interest, (iii) fair, equitable and reasonable, (iv) integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan and (v) in the cases of releases provided pursuant to Article XIII.H.2 of the Plan, are consensual by holders of Claims voting to affirmatively accept the Plan, are the result of a good faith compromise, or are otherwise approved by the Court as appropriate pursuant to applicable law.  Each of the discharge, release, injunction, indemnification and exculpation provisions set forth in the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the transactions incorporated into the Plan; (iv) confers a material benefit on, and is in the best interests of, the Debtors, their Estates and their creditors; (v) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and (vi) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.

TT.     <u>Issuance of New Notes</u>.  Issuance of the New Notes is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and their creditors.  The Debtors are authorized, without further approval of this Court or any other party, to issue the New Notes in accordance with the Plan and to execute and deliver all agreements, documents, instruments, and certificates relating thereto.  The liens and guarantees to be granted by CIT Group Inc. on or about the Effective Date pursuant to the related collateral documents to secure the New Notes are legal, valid, enforceable, binding, properly perfected and non-avoidable.

UU.    <u>Issuance of New Common Interests</u>.  Issuance of the New Common Interests is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and their creditors. The Debtors are authorized, without further approval of this Court or any other party, to issue the New Common Interests in accordance with the Plan and to execute and deliver all agreements, documents, instruments, and certificates relating thereto.

VV.    <u>Issuance of Contingent Value Rights</u>.  Issuance of the Contingent Value Rights is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and their creditors. The Debtors are authorized, without further approval of this Court or any other party, to issue the Contingent Value Rights in accordance with the Plan and to execute and deliver all agreements, documents, instruments, and certificates relating thereto.

WW.    <u>Distributions of New Notes, New Common Interests and Contingent Value Rights Are Exempt From the Securities Act</u>.  The distribution of the New Notes, New Common Interests and Contingent Value Rights are exempt from the requirements of section 5 of the Securities Act of 1933, as amended, and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealing in, a security pursuant to section 1145(a) of the Bankruptcy Code.

XX.    <u>Exit Credit Facility</u>.  Reorganized CIT's assumption of all obligations under and all monetary obligations in respect of the Senior Credit Facility (including the Amendment to the Senior Credit Facility) as the Senior Credit Facility may be amended and modified on or after the Effective Date (the "Exit Credit Facility"), is an exercise of reasonable business judgment, proposed in good faith, critical to the success and feasibility of the Plan and in the best interests of the Debtors, the Reorganized Debtors, their Estates and creditors.  The financial accommodations extended by CIT Group Inc. and/or Reorganized CIT pursuant to the

Exit Credit Facility were (and continue to be) extended and implemented in good faith and for legitimate business purposes. The liens, claims, liabilities and obligations of CIT Group Inc. and/or Reorganized CIT created under the Exit Credit Facility are valid, binding, properly perfected and enforceable and not subject to avoidance. All documentation relating to the Exit Credit Facility will continue to be valid, binding and enforceable agreements and are not in conflict with any federal or state law.

YY. <u>Exit L/C Facility</u>. Reorganized CIT's assumption of all obligations under and all monetary obligations in respect of that certain $500,000,000 Letter of Credit Agreement, dated as of November 3, 2009, among CIT Group Inc., certain of its non-Debtor subsidiaries, Bank of America, N.A. and the lenders from time to time party thereto, as may be amended and modified on or after the Effective Date (the "Exit L/C Facility" and, together with the Exit Credit Facility, the "Exit Facility") is proposed in good faith, critical to the success and feasibility of the Plan and in the best interests of the Debtors, the Reorganized Debtors, their Estates and creditors. The financial accommodations extended by CIT Group Inc. and/or Reorganized CIT pursuant to the Exit L/C Facility were (and continue to be) extended and implemented in good faith and for legitimate business purposes and the liens, claims, liabilities and obligations of CIT Group Inc. and/or Reorganized CIT created under the Exit L/C Facility are valid, binding, and enforceable and not subject to avoidance. All documentation relating to the Exit L/C Facility will continue to be valid, binding and enforceable agreements and are not in conflict with any federal or state law.

ZZ. <u>Guarantees by CIT Group Inc.</u> The guarantee by CIT Group Inc. of obligations arising under the Exit Facility is legal, valid, enforceable, binding, properly perfected and non-avoidable.

AAA.  <u>Equal and Ratable Beneficiaries</u>.  CIT Group Inc. is contractually obligated to equally and ratably secure its obligations under (i) CIT Group Inc.'s guarantee of those certain medium term notes, in the aggregate outstanding amount of A$300 million, issued by CIT Group (Australia) Limited (the "Australian Notes") and the Long Dated Senior Unsecured Notes that are Reinstated (together, the "Equal and Ratable Beneficiaries").  Bank of America, N.A. is qualified to serve, and has agreed to serve, as collateral agent for the lien granted by CIT Group, Inc. for the benefit of both the Exit Credit Facility and the Equal and Ratable Beneficiaries (the "Parent Collateral Agent").  Deutsche Bank Trust Company Americas is qualified to serve, and has agreed to serve, as collateral agent for (i) the lien granted by CIT Group, Inc. for the benefit of the Series A Notes and the Equal and Ratable Beneficiaries, and (ii) the lien granted by CIT Group, Inc. for the benefit of the Series B Notes and the Equal and Ratable Beneficiaries (in such capacities, the "Series A Parent Collateral Agent" and the "Series B Parent Collateral Agent", respectively).

BBB.  <u>Lien Grants by CIT Group Inc.</u>  The liens granted by CIT Group Inc. as permitted pursuant to the Exit Credit Facility, in favor of the Parent Collateral Agent pursuant to certain collateral agreements and joinders are legal, valid, enforceable, binding, properly perfected and non-avoidable.  The liens granted by CIT Group Inc. to the Series A Parent Collateral Agent and the Series B Parent Collateral Agent, respectively, pursuant to certain collateral agreements, are legal, valid, enforceable, binding, properly perfected and non-avoidable.  The liens granted by CIT Group Inc. pursuant to the Cash Collateralization of the JPM L/C Facility are legal, valid, enforceable, binding, properly perfected and non-avoidable.

CCC.  <u>China Waiver and Forbearance</u>.  CIT Group Inc.'s entry into and agreements and obligations under that certain waiver and forbearance agreement (the "China

Waiver and Forbearance Agreement") dated December 4, 2009 with respect to the RMB 3,000,000,000 Revolving Facility Agreement (the "China Facility Agreement") dated as of September 24, 2007 and maturing on September 23, 2010 (the "Final Maturity Date") between, among others CIT Finance and Leasing Corporation as borrower (the "China Borrower"), Citibank (China) Co., Ltd. Shanghai Branch as facility agent (the "Facility Agent") and the lenders from time to time party thereto (the "China Lenders" and together with the Facility Agent, the "China Finance Parties"), and the related guarantee dated September 24, 2007 in favor of the Facility Agent issued by CIT Group Inc. (the "China Guarantee"), as described below, is proposed in good faith, is critical to the success and feasibility of the Plan and is in the best interests of the Debtors, the Reorganized Debtors, their Estates and creditors.  The China Waiver and Forbearance Agreement provides the following terms:

(i)      the total commitments under the China Facility Agreement shall be permanently reduced to RMB 1,654,000,000 (the "Maximum Commitment");

(ii)      on or prior to the Effective Date CIT Group Inc. or one of its subsidiaries shall either (A) deposit with the Facility Agent an amount equal to the Maximum Commitment, to be held by the Facility Agent in escrow and as cash collateral for repayment of all outstanding loans (with accrued interest therein) and all other amounts owing under the China Facility Agreement and under the China Waiver and Forbearance Agreement (the "China Obligations") by the China Borrower (the "China Cash Collateral") or (B) prepay the China Obligations and terminate the China Facility Agreement;

(iii)      the parties to the China Waiver and Forbearance Agreement agree that the China Cash Collateral shall be held in an account of the Facility Agent or its designee and the Facility Agent shall hold the China Cash Collateral in an interest bearing account, which interest accrued shall be paid to CIT Group Inc. or one of its subsidiaries (as applicable) once the China Obligations have been satisfied;

(iv)      the parties to the China Waiver and Forbearance Agreement agree that either (A) on the earlier of the Final Maturity Date and the date falling 30 days after the completion of the 2009 audited financial statements of the China Borrower, provided that if on such day banks in Shanghai, Hong Kong and New York are not open for general business ("International Business Day"), on the following International Business Day; (B) on the occurrence of a subsequent event of default under the China

Facility Agreement; (C) on the instructions of CIT Group Inc. directing the Facility Agent in connection with a prepayment of the China Obligations; or (D) should CIT Group Inc. or any of its subsidiaries seeks the return or challenge, or support a challenge to, the enforceability of the China Cash Collateral, other than as permitted by the China Waiver and Forbearance Agreement, and to the extent the China Borrower has not previously repaid the China Obligations, the Facility Agent may apply the China Cash Collateral to the repayment of the China Obligations;

(v)      should the China Borrower or CIT Group Inc. prepay or repay any of the China Obligations prior to the Final Maturity Date, other than in connection with a request for a New Advance (as defined in the China Facility Agreement), such prepayment or repayment shall permanently reduce the Total Commitments (as defined in the China Facility Agreement) and the Facility Agent shall repay the equivalent amount of China Cash Collateral to CIT Group Inc. and for the avoidance of doubt, any prepayment or repayment of the China Obligations made in the ordinary course of business shall not permanently reduce the Total Commitments (as defined in the China Facility Agreement) and the Facility Agent shall not repay the equivalent amount of such prepayment or repayment of China Cash Collateral to CIT Group Inc.;

(vi)      upon deposit of the China Cash Collateral, and the Effective Date: (A) the China Finance Parties shall waive any and all Defaults or Events of Default (each as defined in the China Facility Agreement) directly or indirectly arising from or relating to CIT Group Inc.'s commencement of its exchange offer and solicitation of consents for its Plan and subsequent commencement of the Chapter 11 Cases, or any action, inaction, filings, statements or disclosures occurring before or during such commencement or otherwise in connection with CIT Group Inc.'s restructuring efforts, in existence and continuing as of the Effective Date (collectively, the "CIT Bankruptcy Event") ; (B) of the China Finance Parties shall waive any Default or Event of Default (each as defined in the China Facility Agreement) described in Article VI of the China Facility Agreement (including, without limitation, 6.01 (d), (g), (h) and (l) therein) as well as any Default or Event of Default arising from the breach of any representation or warranty described in Article IV of the China Facility Agreement or any covenant described in Article V of the China Facility Agreement, in each case, arising from or relating to any CIT Bankruptcy Event, so long as in each case, such Default or Event of Default (each as defined in the China Facility Agreement) is in existence and continuing as of the Effective Date (together with the CIT Bankruptcy Event, the "Waived Events"), and (C) the China Guarantee shall be reinstated in accordance with the terms applicable to Class 3 of the Plan; provided that, the Effective Date occurs prior to January 1, 2010, and in the absence of any subsequent Event of Default under the China Facility Agreement, the China Finance Parties shall covenant not to pursue any remedy available to them as a result of the Waived Events, and shall authorize any new requests by the China Borrower for a new Advance (as defined in the China Facility Agreement) to repay any Maturing Advance (as defined in the China Facility Agreement);

(vii)     the China Finance Parties agree to authorize new requests by the China Borrower for a new Advance(as defined in the China Facility Agreement) to repay any Maturing Advance (as defined in the China Facility Agreement) occurring between the date of China Waiver and Forbearance Agreement and January 1, 2010.

(viii)    the China Borrower and CIT Group Inc. shall at all times ensure that the China Cash Collateral is protected from currency fluctuations between the US Dollar ("USD") and the Chinese Remnibi ("RMB"), and such protection shall take the form of either (A) deposits of additional China Cash Collateral to be determined on the last day of each month until full repayment of the China Obligations, (B) the purchase of a hedging contract at the China Borrower and CIT Group Inc.'s cost protecting the China Cash Collateral from currency fluctuations between the USD and the RMB, or (C) to the extent permitted by applicable laws, the conversion of the China Cash Collateral to RMB;

(ix)      having complied with the relevant notice provisions in the China Facility Agreement, the China Borrower and CIT Group Inc. may prepay the China Obligations at any time before the Final Maturity Date without incurring a prepayment penalty under Sections 2.15 and 2.16 of the China Facility Agreement;

(x)       CIT Group Inc. shall include the terms of the China Waiver and Forbearance Terms (as defined below) in the Confirmation Order and the China Finance Parties stipulate that they shall withdraw any objection to the Confirmation of the Plan based on the China Borrower and CIT Group Inc.'s agreement and adherence to the China Waiver and Forbearance Terms;

(xi)      prior to December 31, 2009, CIT Group Inc. shall provide the China Borrower with an equity capital contribution (the "China Capital Contribution") in an amount no less than USD 15 million, increasing the paid-up registered capital of the China Borrower from USD 15 million to USD 30 million;

(xii)     on payment of the China Cash Collateral, the China Finance Parties will waive the requirements of Section 5.03(i) (Additional Covenants - Negative Pledge) of the China Facility Agreement requiring the securing of the due and punctual payment of the principal of and interest on the outstanding Loans (as defined in the China Facility Agreement) and all other amounts payable by CIT Group Inc. under the China Facility Agreement and China Guarantee equally and ratably with any and all other obligations and indebtedness secured by a security interest in CIT Group Inc.;

(xiii)    reasonable and document fees and expenses of the professionals retained by the Facility Agent, including but not limited to Fangda Partners, Ferrier Hodgson and Weil, Gotshal & Manges LLP, shall be paid by the China Borrower or CIT Group Inc. on demand;

(xiv)     the China Waiver and Forbearance Agreement shall not impair the enforceability of the rights of the China Finance Parties under the China Facility Agreement and China Guarantee, save as expressly modified therein;

(xv)     the provision of the China Cash Collateral shall not discharge the China Borrower's obligation to repay all outstanding amounts under the China Facility Agreement, and Cit Group Inc.'s obligation to pay the Liabilities (as defined in the China Guarantee) on demand under the China Guarantee;

(xvi)     the China Borrower shall not, and CIT Group Inc. shall not cause or allow the China Borrower, to grant any pledge or any encumbrance over the China Borrower's assets until the China Obligations have been fully repaid;

(xvii)     an amendment agreement to the China Facility Agreement shall be executed so as to be effective as of the Effective Date, with amendment to the China Facility Agreement as follows:

> 1) "Final Maturity Date" means the earlier of (a) September 23, 2010; and (b) the date falling 30 days after the completion of the 2009 audited financial statements of the China Borrower, provided that if such day is not an International Business Day, on the following International Business Day; on which date all outstanding Loans (as defined in the China Facility Agreement) or any part thereof shall be repaid by the China Borrower; and

> 2) Interest under the China Facility Agreement after the Effective Date shall accrue and be payable on a monthly basis;

(xviii)     the China Borrower shall use its best efforts (including but not limited to making foreign debt registrations with State Administration of Foreign Exchange or its local branches) to assist the China Lenders in obtaining payment or repayment of all outstanding amounts due in RMB;

(xix)     the Chinese Waiver and Forbearance Agreement shall be executed in both the Chinese and English languages, in case of a discrepancy between the Chinese and English version, the English version shall prevail; and

(xx)     the Chinese Waiver and Forbearance Agreement shall terminate if the Plan does not become effective by January 31, 2010 ((i)-(xx) collectively, the "China Waiver and Forbearance Terms").

DDD.    <u>Injunction Order</u>.  Consistent with this Court's Order Granting Preliminary Injunction, entered in Adversary Proceeding Case No. 09-01713 (ALG) on November 13, 2009 (Docket No. 13) (the "Injunction Order"), the Court finds that any Required Payments (as

defined in the Injunction Order) made pursuant to Termination Agreements (as defined in the Injunction Order) that result in the termination of certain Headlease Transactions (as defined in the Injunction Order) were made and received in good faith and based upon a contemporaneous exchange of reasonably equivalent value and such Required Payments shall result in the release of CIT Group Inc. as a guarantor under such Headlease Transaction.

EEE.    <u>Plan Conditions to Confirmation</u>.  The conditions to Confirmation set forth in Section IX of the Plan have been satisfied or waived in accordance with the terms of the Plan.

FFF.    <u>Plan Conditions to Consummation</u>.  Each of the conditions to the Effective Date, as set forth in Section X of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

GGG.   <u>Retention of Jurisdiction</u>.  The Court properly may retain jurisdiction over the matters set forth in Article XII of the Plan, subject to the exceptions set forth in Article XII of the Plan.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### Confirmation of Plan

1.      Approval Of Disclosure Statement.  Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement is approved as containing adequate information within the meaning of Bankruptcy Code section 1125(a).

2.      Solicitation.  The solicitation procedures, including the procedures for transmittal of Solicitation Packages, the form of Ballots, the election procedures with respect to Classes 8, 10 and 11, and the Voting Deadline, are approved under sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Scheduling Order, the Prepack Guidelines, the local rules of this Court, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations applicable to such solicitation.  The solicitation materials are approved under sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Scheduling Order, the Prepack Guidelines, the local rules of this Court, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.  The solicitation of Classes 7 and 8 complied with the provisions of Bankruptcy Code section 1125(g).

3.      Confirmation.  The Plan, in the form attached hereto as Exhibit A, including all provisions thereof and all Exhibits attached thereto, is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  All acceptances and rejections previously cast for or against the Plan are hereby deemed to constitute acceptances or rejections of the Plan in the form attached to this Order.  Within three (3) business days of entry of this

Confirmation Order, the Debtors shall file with the Court the final version of the confirmed Plan and all Exhibits thereto.

4. <u>Confirmation Order Binding on All Parties</u>. Subject to the provisions of the Plan and Bankruptcy Rule 3020(e), in accordance with section 1141(a) of the Bankruptcy Code and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Plan and this Confirmation Order shall be binding upon, and inure to the benefit of: (a) the Debtors; (b) the Reorganized Debtors; (c) any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan); (d) any other person giving, acquiring or receiving property under the Plan; (e) any and all non-Debtor parties to executory contracts or unexpired leases with any of the Debtors; and (f) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.  On the Effective Date, all settlements, compromises, releases, waivers, discharges, exculpations and injunctions set forth in the Plan shall be effective and binding on all Persons who may have had standing to assert any settled, released, discharged, exculpated or enjoined causes of action, and no other Person or entity shall possess such standing to assert such causes of action after the Effective Date.

5. <u>Notice</u>.  Notice of the Plan, the exhibits thereto (and all amendments and modifications thereto), the Disclosure Statement, the Solicitation Packages and the Confirmation Hearing was proper and adequate.

6.      Objections.  All Objections and all reservations of rights that have not been withdrawn, waived or settled, pertaining to the Confirmation of the Plan are overruled on the merits.

7.      Effectiveness of All Actions.  All actions contemplated by the Plan are hereby authorized and approved in all respects (subject to the provisions of the Plan).  The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer or director thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.  Pursuant to this Order, Delaware General Corporate Law section 303, and other applicable law, the Debtors and the Reorganized Debtors are authorized and empowered, without action of their respective stockholders or members or boards of directors or managers (but subject to consent rights, if any, set forth in the Plan) to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

8.      Revesting of Assets and Operation as of the Effective Date.  Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates shall revest in each of the Debtors and, ultimately, in the Reorganized Debtors, free and clear of all Claims, liens and Interests of any entity other than the Debtors, other than as expressly provided in the Plan.  As of the Effective Date, each of the Reorganized Debtors may operate its business and use, acquire, and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or

Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

9. _Restructuring Transactions_.  The Exchanges and other transactions contemplated by Article IV of the Plan (collectively, the "Restructuring Transactions") are approved, and the Debtors and Reorganized Debtors and their officers, managers and directors are authorized, subject to the consent rights contained in the Plan, to execute and/or amend such documents (including but not limited to those filed as Plan Supplements) and take such actions as may be reasonably required in order to effectuate the Restructuring Transactions.

10. _Cancellation of Old Common Interests, Old Preferred Interests and Other Equity Interests (if any)_.  On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing the Old Common Interests, the Old Preferred Interests and the Other Equity Interests (if any) shall be canceled, terminated and extinguished and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

11. _Cancellation of Canadian Senior Unsecured Notes, Certain Long-Dated Senior Unsecured Notes, Senior Unsecured Notes, Senior Unsecured Term Loans, Senior Unsecured Credit Agreements, Senior Subordinated Notes and Junior Subordinated Notes_.  The Canadian Senior Unsecured Notes, the Electing Long-Dated Senior Unsecured Notes and those Long-Dated Senior Unsecured Notes that elected to receive Impaired Class 8A treatment pursuant to the Postpetition Class 8B Election Notice, the Senior Unsecured Notes, the Senior Unsecured Term Loans, the Senior Unsecured Credit Agreements, the Senior Subordinated Notes, and the Junior Subordinated Notes transferred and assigned to the Reorganized Debtors pursuant to the Plan shall be deemed cancelled, terminated and extinguished effective upon the

Effective Date, except as otherwise provided in the Plan, and all Claims arising thereunder shall be deemed satisfied on the Effective Date.

12.     <u>Issuance of New Notes</u>.  Issuance of the New Notes in accordance with the Plan is approved.  Each of the Debtors and the Reorganized Debtors are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable or appropriate to implement the issuance of the New Notes in accordance with the Plan and to execute and deliver all agreements, documents, instruments, and certificates relating thereto.

13.     All New Notes to be issued are hereby deemed issued as of the Effective Date regardless of the date on which they are actually distributed.  The Reorganized Debtors, as applicable, are authorized to enter into collateral documents to secure the New Notes.  The liens and guarantees granted by CIT Group Inc. pursuant to the related collateral documents to secure the New Notes are legal, valid, enforceable, binding, properly perfected and non-avoidable.

14.     <u>Issuance of New Common Interests</u>.  Issuance of the New Common Interests in accordance with the Plan is approved.  Each of the Debtors and the Reorganized Debtors are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable or appropriate to implement the issuance of the New Common Interests in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto.

15.     The New Common Interests to be issued are hereby deemed issued as of the Effective Date regardless of the date on which they are actually distributed.  All New

Common Interests issued by the Reorganized Debtors pursuant to the provisions of the Plan are hereby deemed to be duly authorized and issued, fully paid and nonassessable.

16.     <u>Allocation of Contingent Value Rights</u>.  Allocation of the Contingent Value Rights in accordance with the Plan is approved.  Each of the Debtors and the Reorganized Debtors are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable or appropriate to implement the allocation of the Contingent Value Rights in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto.  The Contingent Value Rights to be allocated are hereby deemed allocated as of the Effective Date regardless of the date on which they are actually distributed.

17.     <u>Exemption from Registration</u>.  The (i) offer by the Debtors and/or the Reorganized Debtors of the New Notes, the New Common Interests and the Contingent Value Rights issued under the Plan are exempt from the registration requirements of the Securities Act and similar state statutes pursuant to applicable securities law and (ii) sale and issuance by the Reorganized Debtors of the New Notes, New Common Interests and Contingent Value Rights are exempt from the registration requirements of the Securities Act and similar state statutes pursuant to section 1145 of the Bankruptcy Code.

18.     <u>Lien Grants by CIT Group Inc.</u>  The liens granted by CIT Group Inc. to (i) the Parent Collateral Agent secure the obligations of CIT Group Inc. to lenders under the Exit Credit Facility as well as the Equal and Ratable Beneficiaries, (ii) the liens granted to the Series A Parent Collateral Agent secure the obligation of CIT Group Inc. to the holders of the Series A Notes as well as the Equal and Ratable Beneficiaries, and (iii) the lien granted to the Series B Parent Collateral Agent secure the obligation of CIT Group Inc. to the holders of the Series B

Notes as well as the Equal and Ratable Beneficiaries in each case are legal, valid, enforceable, binding, properly perfected and non-avoidable. Each of the Parent Collateral Agent, the Series A Parent Collateral Agent and the Series B Parent Collateral Agent are hereby appointed to represent the Equal and Ratable Beneficiaries and to hold the Collateral of CIT Group Inc. on behalf of the Equal and Ratable Beneficiaries. Each of the Parent Collateral Agent, the Series A Parent Collateral Agent and the Series B Parent Collateral Agent are bound by the terms of, and entitled to the rights under, each of the collateral agreements under which it acts as agent. The liens granted by CIT Group Inc. pursuant to the Cash Collateralization of the JPM L/C Facility are legal, valid, enforceable, binding, properly perfected and non-avoidable.

19.    <u>Exit Facility</u>.  On the Effective Date, the Reorganized Debtors, as applicable, are authorized to (a) enter into the Exit Facility together with all guarantees evidencing obligations of the Reorganized Debtors thereunder and security documents, (b) execute such mortgages, control agreements, certificates and other documentation and deliveries as the agent under the Exit Credit Facility and the Steering Committee reasonably request, (c) execute such control agreements and other documentation as the agent under the Exit L/C Facility reasonably requests, and (d) deliver insurance and customary opinions (collectively, the documents in (a)-(d), the "Exit Facility Documents"), all of which such Exit Facility Documents shall be in form and substance reasonably satisfactory to the Steering Committee and in the case of the Exit L/C Facility in form and substance reasonably satisfactory to the agent under the Exit L/C Facility and the Steering Committee, and such documents and all other documents, instruments and agreements to be entered into, delivered or contemplated thereunder shall become effective in accordance with their terms on the Effective Date. The Reorganized Debtors, as applicable, may enter into such amendments and modifications as may be agreed to

by and between the Reorganized Debtors, as applicable, and the Exit Facility Lenders on and after the Effective Date without further order of the Court to effectuate the transactions contemplated by the Plan and this Order, notwithstanding anything to the contrary in the Plan. The Exit Facility Documents shall constitute the legal, valid, binding and authorized obligations of the Reorganized Debtors, as applicable, enforceable in accordance with their terms. On the Effective Date, all of the liens and security interests granted in accordance with the Exit Facility Documents are hereby deemed approved and shall be legal, valid, binding, enforceable, properly perfected and non-avoidable liens on the collateral in accordance with the terms of the Exit Facility Documents. All obligations of the Reorganized Debtors arising pursuant to the Exit Facility Documents are in exchange for fair and reasonably equivalent value and do not constitute a preferential transfer or fraudulent transfer or fraudulent conveyance under applicable federal or state laws and will not subject the lenders party to the Exit Facility to any liability by reason of incurrence of such obligation or grant of such liens or security interests under applicable federal or state laws, including but not limited to successor or transferee liability.

20. <u>China Waiver and Forbearance</u>. On the Effective Date, the Reorganized Debtors, as applicable, are authorized to enter into the China Waiver and Forbearance Agreement and undertake all obligations with respect to the China Waiver and Forbearance Terms.

21. <u>Executory Contracts and Unexpired Leases</u>. On the Effective Date, all executory contracts or unexpired leases of the Debtors, unless such executory contract or unexpired lease was previously assumed or rejected or is subject to a pending motion to assume or reject as of the Confirmation Date, shall be deemed assumed as of the Confirmation Date (but

subject to the occurrence of the Effective Date) in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

22. All executory contracts or unexpired leases assumed by the Debtors pursuant to the foregoing (the "Assumed Agreements") shall remain in full force and effect for the benefit of the Reorganized Debtors, as applicable, and be enforceable by the Reorganized Debtors, as applicable, in accordance with their terms notwithstanding any provision in such Assumed Agreements that prohibits, restricts or conditions such assumption, assignment or transfer. The assumption of the Assumed Agreements shall be free and clear of all liens, encumbrances, pledges, mortgages, deeds of trust, security interests, claims, charges, options, rights of first refusal, easements, servitudes, proxies, voting trusts or agreements, and/or transfer restrictions under any shareholder or similar agreement or encumbrance. Any provision in the Assumed Agreements that purports to declare a breach or default based in whole or in part on the above-captioned cases is hereby deemed unenforceable, and the Assumed Agreements shall remain in full force and effect.

23. The Debtors shall not be deemed to have assumed any executory contract or unexpired lease with the United States or any of its instrumentalities unless and until the requirements of the Anti-Assignment Act, 41 U.S.C. § 15, have been satisfied.

24. That certain agreement dated as of July 2, 2002 by and between Tyco International Ltd., a Bermuda company, and CIT Group Inc. listed on Exhibit H hereto is hereby rejected.

25. Deadlines. The bar dates and deadlines set forth in Articles VII and XIII of the Plan are hereby approved, including but not limited to the following:

(a) Rejection Damages Bar Date. Except as otherwise provided in the Plan, if the rejection by the Debtors, pursuant to the Plan or otherwise, of an executory contract

or unexpired lease gives rise to a Claim, a proof of Claim must be served upon the Debtors and their counsel within thirty (30) days after the later of (i) notice of entry of the Confirmation Order or (ii) other notice that the executory contract or unexpired lease has been rejected, provided that any such Claims arising from the rejection of an unexpired lease of real property shall be subject to the cap on rejection damages imposed by Bankruptcy Code section 502(b)(6). Any Claims not served within such time periods will be forever barred from assertion against the Debtors, the Reorganized Debtors, the Estates and their property.

(b)     Professional Claims and Final Fee Applications.  The provisions of Article XIII.B of the Plan shall govern Professional Fee Claims, including final fee applications, payment of professionals fees after the Effective Date, and deadlines and procedures relating thereto.

26.     Exemption from Certain Transfer Taxes.  The issuance, transfer or exchange of debt and equity under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any contract, lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes (including, without limitation, stamp tax or similar taxes) to the fullest extent permitted by section 1146 of the Bankruptcy Code, and the appropriate state or local governmental officials or agents shall not collect any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

27.     Postpetition Election Notices.  The election process established pursuant to the Postpetition Election Notices, whereby (a) holders of Claims in Class 8B were able to elect to receive the Impaired treatment provided to holders of Claims in Class 8A and (b) holders of Claims in Classes 10 and 11 were able to elect to receive indebtedness under credit facilities of Reorganized CIT on substantially the same terms as the Series A Notes in lieu of Series A Notes, are hereby approved.

**Discharge of Debtors, Releases and Injunctions**

28. <u>Discharge of Debtors</u>. Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in this Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Interests (other than those Claims and Interests that are Unimpaired under this Plan) of any nature whatsoever against the Debtors or any of their assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests. Upon the Effective Date, each of the Debtors and the Reorganized Debtors shall be deemed discharged and released under section 1141(d)(1) of the Bankruptcy Code from any and all Claims and Interests (other than those Claims and Interests that are not Impaired under the Plan), including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and the Old Preferred Interests, the Old Common Interests and the Other Equity Interests (if any) shall be cancelled, terminated and extinguished. In accordance with the foregoing, except as provided in the Plan or this Confirmation Order, this Confirmation Order shall be a judicial determination of discharge of all such Impaired Claims and other debts and liabilities against the Debtors and termination of all Interests in CIT Group Inc., pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

29. Accordingly, the Debtors are discharged as of the Confirmation Date except as may otherwise expressly provided in the Plan or this Confirmation Order.

30. <u>Releases, Limitations of Liability and Indemnification</u>. The releases set forth in Article XIII.H of the Plan, the exculpation and limitation of liability provisions set forth in Article XIII.J of the Plan, and the indemnification obligations set forth in Article VII.G of the Plan are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved and authorized in their entirety and shall be, and hereby are, effective and binding, subject to the respective terms thereof, on all persons and entities who may have had standing to assert such Claims or Causes of Action, and no person or entity shall possess such standing to assert such Claims or Causes of Action after the Effective Date.

31. <u>Injunctions</u>. Except as otherwise specifically provided in the Plan and except as may be necessary to enforce or remedy a breach of the Plan, from and after the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors or their property on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Lien; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action, in each case to the fullest extent permissible under applicable law, including to the extent provided for or authorized by Article XIII.I of the Plan and sections 524 and 1141 of the Bankruptcy Code.

32. <u>Exculpations</u>. The Reorganized Debtors, the Debtors, the Estate, their subsidiaries, any Committee, the Steering Committee, Bank of America, N.A. as Administrative

Agent and L/C Issuer and Banc of America Securities LLC as Sole Lead Arranger and Sole Bookrunner (solely with respect to the DIP Facility and the DIP Facility Agreement), the Exit Facility Lender(s) and any agents under the Exit Facility (solely with respect to the Exit Facility and the Exit Facility Agreement), JPM or any other lender under the JPM Facility Agreement (in each case acting in such capacity and solely with respect to the JPM L/C Facility or the JPM L/C Facility Agreement), The Bank of New York Mellon f/k/a The Bank of New York (as successor to J.P. Morgan Trust Company, National Association, as successor to Bank One Trust Company, N.A.) solely in its capacity as indenture trustee of the Long-Dated Senior Unsecured Notes and the Senior Unsecured Notes, Law Debenture Trust Company of New York (as successor to The Bank of New York Mellon f/k/a The Bank of New York) solely in its capacity as indenture trustee of the Canadian Senior Unsecured Notes, Wilmington Trust Company (as successor to The Bank of New York Mellon f/k/a The Bank of New York) solely in its capacity as indenture trustee of the Senior Subordinated Notes and the Junior Subordinated Notes, Depository Trust Company and any other depositories (foreign or domestic) at which the Debtors' securities are held solely in their capacity as depositories for the Debtors' securities and facilitators of the Plan solicitation and election process and any and all of their respective current or former members, officers, directors, members of boards of managers, employees, equity holders, partners, affiliates, advisors, attorneys, agents or representatives, or any of their successors or assigns, shall not have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective members, officers, directors, managers, employees, equity holders, partners, affiliates, advisors, attorneys, agents or representatives, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of, the administration of the Chapter 11 Cases, the negotiation of the terms of the Plan, the solicitation

of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, gross negligence or intentional fraud as determined by a final order of a court of competent jurisdiction, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Cases and the Plan, in each case to the fullest extent permissible under applicable law, including to the extent provided for or authorized by Article XIII.J of the Plan.

33.     Notwithstanding any other provision of the Plan, but without limiting the releases provided in the Plan or affecting the status or treatment of any Claim Allowed pursuant to the Plan, no holder of a Claim or Interest, no other party in interest, none of their respective members, officers, directors, managers, employees, equity holders, partners, affiliates, subsidiaries, advisors, attorneys, agents or representatives, and no successors or assigns of the foregoing, shall have any right of action against the Reorganized Debtors, the Debtors, their Estates, their subsidiaries, any Committee, the Steering Committee, Bank of America, N.A. as Administrative Agent and L/C Issuer and Banc of America Securities LLC as Sole Lead Arranger and Sole Bookrunner (solely with respect to the DIP Facility and the DIP Facility Agreement), the Exit Facility Lender(s) and any agents under the Exit Facility (solely with respect to the Exit Facility and the Exit Facility Agreement), JPM or any other lender under the JPM Facility Agreement (in each case acting in such capacity and solely with respect to the JPM L/C Facility or the JPM L/C Facility Agreement), The Bank of New York Mellon f/k/a The Bank of New York (as successor to J.P. Morgan Trust Company, National Association, as successor to Bank One Trust Company, N.A.) solely in its capacity as indenture trustee of the Long-Dated Senior Unsecured Notes and the Senior Unsecured Notes, Law Debenture Trust Company of

New York (as successor to The Bank of New York Mellon f/k/a The Bank of New York) solely in its capacity as indenture trustee of the Canadian Senior Unsecured Notes, Wilmington Trust Company (as successor to The Bank of New York Mellon f/k/a The Bank of New York) solely in its capacity as indenture trustee of the Senior Subordinated Notes and the Junior Subordinated Notes, Depository Trust Company and any other depositories at which the Debtors' securities are held solely in their capacity as depositories for the Debtors' securities and facilitators of the Plan solicitation and election process or any of their respective current or former members, officers, directors, managers, employees, equity holders, partners, affiliates, subsidiaries, advisors, attorneys, agents or representatives, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of, the administration of the Chapter 11 Cases, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence as determined by a final order of a court of competent jurisdiction, in each case to the fullest extent permissible under applicable law, including to the extent provided for or authorized by Article XIII.J of the Plan.

34.     All injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions, stays or exculpation provisions contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

35.     Nothing in the Plan or this Confirmation Order (i) discharges, releases or precludes any environmental liability to a government unit, whether or not such liability

constitutes a Claim, on the part of the Debtors, Reorganized Debtors, or any non-debtors; (ii) releases or precludes any liability to the Unites States or to an agency thereof on the part of any non-debtors, other than with respect to the Series D Preferred Stock; or (iii) enjoins a government unit from asserting or enforcing any liability described in this paragraph, other than with respect to the Series D Preferred Stock.

36.     Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, and/or Confirmation Order, no provision shall release any non-debtor, including but not limited to any current and/or former officer and/or director of the Debtors and the Reorganized Debtors, and any other non-debtor, from liability in connection with any legal action or claim brought by the United States Securities and Exchange Commission.

37.     The Reorganized Debtors, as applicable, shall compensate or otherwise reimburse on the Effective Date (i) The Bank of New York Mellon f/k/a The Bank of New York (as successor to J.P. Morgan Trust Company, National Association, as successor to Bank One Trust Company, N.A.) in its capacity as indenture trustee of the Long-Dated Senior Unsecured Notes and the Senior Unsecured Notes, (ii) Law Debenture Trust Company of New York (as successor to The Bank of New York Mellon f/k/a The Bank of New York) in its capacity as indenture trustee of the Canadian Senior Unsecured Notes, and (iii) Wilmington Trust Company (as successor to The Bank of New York Mellon f/k/a The Bank of New York) in its capacity as indenture trustee of the Senior Subordinated Notes and the Junior Subordinated Notes for all outstanding, unpaid, reasonable and documented prepetition and post-petition fees and expenses due and payable under the Long-Dated Senior Unsecured Notes, the Senior Unsecured Notes, the Canadian Senior Unsecured Notes, the Senior Subordinated Notes and the Junior Subordinated Notes in the estimated amounts of: (i)  (A) $42,614.00 in prepetition fees and reimbursable

expenses and (B) $150,000 in postpetition fees and reimbursable expenses for The Bank of New York Mellon f/k/a The Bank of New York (as successor to J.P. Morgan Trust Company, National Association, as successor to Bank One Trust Company, N.A.) in its capacity as indenture trustee of the Long-Dated Senior Unsecured Notes and the Senior Unsecured Notes, (ii) $75,000 in postpetition fees and reimbursable expenses for Law Debenture Trust Company of New York (as successor to The Bank of New York Mellon f/k/a The Bank of New York) in its capacity as indenture trustee of the Canadian Senior Unsecured Notes, and (iii) $135,000 in postpetition fees and reimbursable expenses for Wilmington Trust Company (as successor to The Bank of New York Mellon f/k/a The Bank of New York) in its capacity as indenture trustee of the Senior Subordinated Notes and the Junior Subordinated Notes.

**Plan Modifications**

38. <u>Plan Modifications</u>.  The modifications to the Second Amended Prepackaged Reorganization Plan of CIT Group Inc. and CIT Group Funding Company of Delaware LLC, which changes are incorporated in the Plan, were made in a manner consistent with Article XI of the Plan and did not materially or adversely modify the treatment of any Claims or Interests.  The Plan, as modified, satisfies the requirements of Bankruptcy Code sections 1122 and 1123.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Such changes are approved pursuant to section 1127(a).

39. In addition, the following modifications to the Plan have been made in a manner consistent with Article XI of the Plan and do not materially adversely modify the treatment of any Claims or Interests.  The Plan, as modified, satisfies the requirements of

Bankruptcy Code sections 1122 and 1123. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. At the request of the Debtors, the Plan is hereby modified pursuant to section 1127(a) of the Bankruptcy Code as set forth below:

(a) The exculpation provisions set forth in Article XIII.J of the Plan are hereby modified to include Citibank, N.A. (solely in its capacity as administrative agent under the Senior Unsecured Credit Agreements) and Citibank (China) Co., Ltd. Shanghai Branch (solely in its capacity as facility agent under the China Facility Agreement).

## Resolution of Objections

40. In full and final resolution of the informal objection asserted by Pensioenfonds Horeca & Catering, the court appointed lead plaintiff (the "Lead Plaintiff"), named plaintiff Don Pizzuti ("Pizzuti") and the putative class (the "Litigation Class" and, together with Lead Plaintiff and Pizzuti, the "Securities Plaintiffs") in the consolidated securities class action entitled In re CIT Group Inc. Securities Litigation, Master File No. 1:08-cv-06613-BSJ-THK (the "Securities Class Action") pending in the United States District Court for the Southern District of New York, it is hereby ordered as follows:

(a) Nothing in the Plan or this Confirmation Order shall affect, release, enjoin or impact in any way the Securities' Plaintiffs' pursuit of their claims in the Securities Class Action against CIT Group Inc. and/or Reorganized CIT solely to the extent of available insurance coverage (the "Available Coverage"), it being understood that the Securities Plaintiffs may not pursue CIT Group Inc. and/or Reorganized CIT for any settlement or judgment in its favor in the Securities Class Action, other than from the Available Coverage. To the extent that the Securities Plaintiffs' settlement or judgment in the Securities Class Action is not satisfied in full by CIT Group Inc.'s and/or the Reorganized CIT's Available Coverage, the discharge and injunction under the Plan in favor of the Debtors and the Reorganized Debtors and all successors and assigns thereof expressly applies to any claim(s) against such entities arising from or relating to the Securities Class Action. Further, nothing in the Plan or this Confirmation Order shall

affect, release, enjoin or impact in any way the Securities' Plaintiffs (i) from pursuing their claims in the Securities Class Action against any non-Debtors or (ii) from seeking discovery of the Debtors or the Reorganized Debtors in connection with the claims asserted or to be asserted in the Securities Class Action, subject to the parties' rights to object to any discovery on the grounds set forth in the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act, or other applicable law. Securities Plaintiffs' claims against CIT Group, Inc. and/or Reorganized CIT solely to the extent of the Available Coverage are preserved and not discharged by the Plan.

(b) Notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, the releases by creditors provided in Article XIII.H.2 of the Plan shall not apply to any creditor whose Claims or Interests are impaired and deemed to reject the Plan, and such creditors are deemed to not have released the parties specified in such provision with respect to such Impaired Claim. Any creditor who affirmatively votes in favor of the Plan shall have agreed to release the parties specified in Article XIII.H.2 of the Plan solely in connection with the Claim that such creditor affirmatively votes in favor of the Plan.

**Notice and Other Provisions**

41. <u>Notice of Confirmation Order</u>. On or before the tenth (10th) day following the occurrence of the Effective Date, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on (a) the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) the Federal Reserve; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) those parties identified in the schedules of the largest unsecured creditors annexed to the Debtors' petitions; (g) counsel to Bank of America, N.A., as Administrative Agent, Parent Collateral Agent and Subsidiary Collateral Agent under the Senior Credit Facility; (h) counsel to Bank of America, N.A. as administrative agent under the L/C Facility; (i) counsel to the Steering Committee; and (j) other parties in interest, by causing a notice of this Confirmation Order in substantially the form of the notice annexed hereto as <u>Exhibit B</u> (the "Notice of Confirmation"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid. The Notice of Confirmation shall

also be published in <u>The Wall Street Journal</u> (Global Edition) and any other publications the Debtors deem necessary in their sole discretion.

42.     Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtors mailed a Combined Notice, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of that Person's new address.

43.     Mailing and publication of the Notice of Confirmation in the time and manner set forth in the preceding paragraphs shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is necessary. The Notice of Confirmation shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order to any filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

44.     <u>Authorization to Consummate</u>.  The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver of the conditions precedent to consummation set forth in Article X.A. of the Plan.

45.     <u>Failure to Consummate Plan and Substantial Consummation</u>.  If the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void.  In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for

consummation of the Plan, shall, or shall be deemed to, (a) constitute a waiver or release of any

Claims by or against or Interests in the Debtors or any other Person, (b) prejudice in any manner

the rights of the Debtors or any Person in any further proceedings involving the Debtors, (c)

constitute an admission of any sort by the Debtors or any other Person, or (d) be construed as a

finding of fact or conclusion of law with respect thereto.

46.     References to Plan Provisions.  The failure to include or specifically

reference any particular provision of the Plan in this Confirmation Order shall not diminish or

impair the effectiveness of such provision, it being the intent of the Court that the Plan be

confirmed in its entirety.

47.     Exhibits.  Each reference to a document, agreement or summary

description that is in the form attached as an exhibit to the Plan in this Confirmation Order, in the

Findings of Fact and Conclusions of Law, or in the Plan shall be deemed to be a reference to

such document, agreement or summary description in substantially the form of the latest version

of such document, agreement or summary description filed with the Court (whether filed as an

attachment to the Plan or filed separately).

48.     Plan Provisions Mutually Dependent.  The provisions of the Plan are

hereby deemed nonseverable and mutually dependent.

49.     Confirmation Order Provisions Mutually Dependent.  The provisions of

this Confirmation Order are hereby deemed nonseverable and mutually dependent.

50.     Confirmation Order Supersedes.  It is hereby ordered that this

Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation

Date that may be inconsistent with this Confirmation Order.

51.     Conflicts Between Confirmation Order and Plan.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

52.     Retention of Jurisdiction.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XII of the Plan.

53.     Final Order.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

54.     Immediate Effectiveness.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002 or otherwise, immediately upon the entry of this Confirmation Order, the terms of the Plan, the Plan Supplement, and this Confirmation Order shall be, and hereby are, immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted, were deemed to have accepted, rejected or were deemed to have rejected the Plan), any trustees or examiners appointed in the Chapter 11 Cases, all persons and entities that are party to or

subject to the settlements, compromises, releases, discharges, injunctions, stays and exculpations described in the Plan or herein, each person or entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, of any of the foregoing.

Dated: New York, New York
       December 8, 2009

             */s/ Allan L. Gropper*
             UNITED STATES BANKRUPTCY JUDGE