| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | NOT FOR PUBLICATION |
| ----------------------------------------------------------------- x | |
| In re: | |
| | Chapter 11 |
| CIT GROUP INC., | |
| | Case No. 09-16565 (ALG) |
| Reorganized Debtor. | |
| ----------------------------------------------------------------- x | |
| CIT GROUP INC., | |
| Plaintiff, | |
| -against- | Adv. Pro. No. 11-2267 (ALG) |
| TYCO INTERNATIONAL LTD., | |
| Defendant. | |
| ----------------------------------------------------------------- x | |

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

SIDLEY AUSTIN LLP
*Attorneys for CIT Group Inc.*
 By:    Lee S. Attanasio, Esq.
        John G. Hutchinson, Esq.
        John J. Kuster, Esq.
        Nicholas K. Lagemann, Esq.
787 Seventh Avenue
New York, New York 10019

GIBSON, DUNN & CRUTCHER LLP
*Attorneys for Tyco International Ltd.*
  By:   Marshall R. King, Esq.
        Janet M. Weiss, Esq.
        Lisa D. Keith, Esq.
200 Park Avenue
New York, New York 10166

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

**Background**

Before the Court are two related motions filed as a consequence of this Court's recent opinion in *CIT Group Inc. v. Tyco Int'l Ltd. (In re CIT Group Inc.)*, 460 B.R. 633 (Bankr. S.D.N.Y. 2011), now on appeal. The background can be briefly summarized. Reorganized Debtor CIT Group, Inc. ("CIT") and its former indirect parent company, Tyco International Ltd. ("Tyco"), are parties to a tax agreement (the "Tax Agreement") that was rejected in CIT's prepackaged plan of reorganization (the "Plan"), confirmed on December 8, 2009. After the rejection, Tyco filed a proof of claim asserting damages in an unliquidated amount, and, after a standstill period of approximately eighteen months, demanded arbitration proceedings to liquidate its claim, relying on an arbitration clause in the Tax Agreement. CIT thereupon commenced the instant adversary proceeding, seeking to subordinate any Tyco claim under § 510(b) of the Bankruptcy Code and to stay arbitration pending a decision on subordination, there being no dispute that, if Tyco's claim is subordinated, it would receive no distribution under CIT's Plan.

On January 20, 2012, after the Court had issued the above opinion granting summary judgment to Tyco on the subordination issue and an order had been entered, CIT filed a notice of appeal and the instant motion to enjoin arbitration proceedings pending a decision on the appeal [Adv. Pro. No. 11-2267, ECF Nos. 47 & 48]. Tyco responded with a motion to compel arbitration of its claim [Case No. 09-16565, ECF No. 294]. Following a hearing on the motions on February 14, 2012, CIT also moved to certify the order appealed from for direct appeal to the Second Circuit pursuant to 28 U.S.C. § 158(d)(2)(A)(i) and (iii) [Adv. Pro. No. 11-2267, ECF No. 64]. Tyco filed a response stating that it had no objection to certification pursuant to 28 U.S.C. § 158(d)(2)(A)(iii), which authorizes a direct appeal when doing so "may materially

2

advance the progress of the case or proceeding in which the appeal is taken." [Adv. Pro. No. 11-2267, ECF No. 65]. The Court is herewith certifying the matter for direct appeal, and it decides the pending motions as follows.

## Discussion

**A.      Arbitrability of Tyco's Claim**

The Court will first address Tyco's motion to compel arbitration of its rejection damages claim. Tyco relies on a clause in the Tax Agreement that provides:

> Any dispute, controversy or claim arising out of or in connection with this Agreement [subject to exceptions not relevant here] shall be finally determined and settled by arbitration in accordance with the CPR Institute for Dispute Resolution Rules for non-Administered Arbitration (the "Rules") by three arbitrators in the County of New York, State of New York. . . . Any decision in such arbitration shall be final, conclusive and binding upon the parties to the arbitration . . . .

Tax Agreement § 7.13(a), attached as Exhibit A to *Motion to Compel Arbitration* [Case No. 09-16565, ECF No. 294]. CIT has not challenged that the arbitration clause covers Tyco's claim, and it does not assert that rejection of a contract in a bankruptcy case also constitutes the rejection of an agreement to arbitrate a dispute arising out of that contract.[1] Instead, CIT's argument centers on a clause in Article XII of the Plan, which provides in pertinent part that this Court

> shall retain exclusive jurisdiction (except with respect to matters described under clause (a) below, as to which jurisdiction shall not be exclusive) over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:
>
> (a)      Determine any and all objections to the allowance of Claims;
>
> . . . .

---

[1] It is well established that "rejection of a contract, or even breach of it, will not void an arbitration clause. . . . Any different conclusion would allow a party to avoid arbitration at will simply by breaching [or rejecting] the contract." *Madison Foods, Inc. v. Fleming Cos., Inc. (In re Fleming Cos, Inc.)*, 325 B.R. 687, 693-94 (Bankr. D. Del. 2005) (citation omitted).

3

> (d)   Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors is a party or with respect to which the Debtors may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation of any Claims arising therefrom.

CIT further contends that permitting an arbitral panel to resolve a claim that derives from a § 365 rejection would "necessarily jeopardize" the objectives of the Bankruptcy Code because such a claim is "uniquely a creature of the Bankruptcy Code." *Response to Tyco's Motion to Compel* at 5 [Case No. 09-16565, ECF No. 296].

Tyco for its part relies on a separate Plan provision contemplating that claim disputes remain subject to the same liquidation processes that would have applied absent CIT's bankruptcy filing. As CIT's Plan was a fully prepackaged plan of reorganization, it principally impaired the financial creditors, and very few creditors were required to file claims. Article VI.A further provides:

> Except as provided otherwise in the Plan or by the order of the Bankruptcy Court, holders of Claims shall not be required to file proofs of Claim with the Bankruptcy Court. *The amount and validity of any disputed, contingent and/or unliquidated Claim shall be determined, resolved or adjudicated, as the case may be, in the manner in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced*; provided, however, that the Debtors reserve the right to file with the Bankruptcy Court, on or before the Claims Objection Deadline, an objection to any Claim. The Debtors shall be authorized to, and shall, resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having jurisdiction the validity, nature, and/or amount thereof.[2]

(emphasis added). There are thus two contradictory Plan provisions: Article VI.A, authorizing liquidation of Disputed Claims in a non-bankruptcy court, and Article XII(d), purporting to give

---

[2] "Disputed Claim" is defined as "any Claim, or any portion thereof, that is not an Allowed Claim or a Disallowed Claim." *Plan* Art. I.B.1.59. Tyco's claim is thus a Disputed Claim.

4

this Court exclusive jurisdiction, "to the fullest extent permitted by law," with respect to the liquidation of Disputed Claims arising from the assumption or rejection of executory contracts.

The short resolution of this apparent conflict is that the reservation of exclusive jurisdiction in this Court, "to the fullest extent permitted by law," should not be construed in a manner that is fundamentally at odds not only with another provision of the Plan but also with the strong "federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A bankruptcy court has discretion to refuse to compel arbitration of core bankruptcy matters, which by their nature implicate interests central to the bankruptcy process, but only if the bankruptcy court concludes that the Bankruptcy Code provisions governing the proceeding "inherently conflict" with the text or objectives of the Federal Arbitration Act ("FAA"), or that arbitration would "necessarily jeopardize" the goals of the Bankruptcy Code. *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999). It is the burden of the party opposing arbitration to show that Congress intended to preclude arbitration of the claim at issue. *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006).[3]

In this case, CIT has not carried its burden of demonstrating that it should be able to avoid arbitration as agreed in the Tax Agreement. Despite CIT's contentions, liquidating the Tyco claim through arbitration would not conflict with, much less "necessarily jeopardize," the goals of the Bankruptcy Code. There is no need in this two-party dispute for "centralized proceedings," such as where "complex factual scenario[s] involv[e] multiple claims." *In re U.S. Lines*, 197 F.3d at 641; *see also* Alan N. Resnick, *The Enforceability of Arbitration Clauses in*

---

[3] A bankruptcy court generally has no discretion to refuse to compel arbitration of a non-core arbitrable matter, since the strong presumption in favor of arbitration will generally trump a bankruptcy court's more limited interest in adjudicating such issues. *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 166 (2d Cir. 2000). There is no dispute that liquidation of Tyco's rejection damages claim is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B); *Response to Tyco's Motion to Compel* at 7.

5

*Bankruptcy*, 15 AM. BANK. INST. L. REV. 183 (2007). There are instances where the bankruptcy court must reserve jurisdiction notwithstanding the parties' agreement to arbitrate certain issues; for example, in this case, there is no dispute that the issue of subordination of Tyco's claim under Bankruptcy Code § 510(b) is for the federal courts to decide. By contrast, the determination of damages in connection with rejection of the Tax Agreement will not require consideration of any bankruptcy law issues. Nor will the liquidation of Tyco's claim, if any, delay consummation of CIT's Plan, which became effective several years ago. In short, CIT has not shown that there is anything about arbitration of Tyco's claim that would "inherently conflict" with or "necessarily jeopardize" the Plan or the goals of CIT's reorganization.[4]

CIT argues that Article XII(d) of the Plan nonetheless binds Tyco to arbitrate its rejection damages claim. It contends that the Tax Agreement was the only contract rejected in connection with its prepackaged Plan, and that Tyco was sufficiently aware of the Plan's provisions to serve and file a proof of claim. This does not, however, suffice to demonstrate that the Court or Tyco understood the "exclusive jurisdiction" reservation in Article XII(d) to override the contradictory provisions of Article VI.A, which generally preserved pre-petition remedies, or that Tyco knowingly waived its arbitration rights. Under the circumstances, the record does not support CIT's claim of waiver. *Compare Charter Behavioral Health Sys., LLC v. Managed Health*

---

[4] The Ninth Circuit's recent decision in *Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 2012 U.S. App. LEXIS 1691 (9th Cir. Jan. 30, 2012), offers an example where arbitration of a core proceeding was not compelled. Thorpe, the debtor, was an asbestos dealer. Continental, one of the debtor's insurers, had settled a coverage dispute with the debtor prior to its bankruptcy filing, and the settlement agreement contained an arbitration clause. Afterwards, contemplating bankruptcy, Thorpe began negotiating with its other insurers and asbestos claimants to structure a plan of reorganization that included a channeling trust pursuant to § 524(g). Continental, contending that such actions breached warranties in the settlement agreement, demanded arbitration. The day before arbitration was to commence, Thorpe filed for bankruptcy. The Ninth Circuit affirmed the bankruptcy court's decision to refuse to send the matter to arbitration, holding that "[b]ecause Congress intended that the bankruptcy court oversee all aspects of a § 524(g) reorganization, only the bankruptcy court should decide whether the debtor's conduct in the bankruptcy gives rise to a claim for breach of contract. Arbitration of this case would conflict with congressional intent." *Id.* at *27.

*Network*, 277 B.R. 54 (Bankr. D. Del. 2002), *with Ernst & Young, LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753 (7th Cir. 2002).

Indeed, assuming *arguendo* that CIT's interpretation of the Plan is correct and Tyco's rejection damages claim is subject to the exclusive jurisdiction of this Court, it is within the Court's discretion to abstain from exercising such jurisdiction. The Judicial Code authorizes discretionary abstention by a bankruptcy court, *inter alia*, "in the interest of justice." 28 U.S.C. § 1334(c)(1). The courts have relied on a number of factors when deciding if discretionary abstention is "in the interest of justice," including:

> (1) the effect or lack thereof on the efficient administration of the estate if a [bankruptcy] court recommends abstention, (2) the extent to which [non-bankruptcy] law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable [non-bankruptcy] law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing [non-bankruptcy] law claims from core bankruptcy matters to allow judgments to be entered in [non-bankruptcy] court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*In re Motors Liquidation Co.*, 457 B.R. 276, 289 (Bankr. S.D.N.Y. 2011), quoting *In re Portrait Corp. of Am.*, 406 B.R. 637, 641-42 (Bankr. S.D.N.Y. 2009) (citation omitted).

In this case, abstention would have no adverse effect on the administration of the estate, as the Plan became effective years ago; non-bankruptcy issues not only predominate, but are exclusively involved; the issues are wholly remote from the main bankruptcy case; and, most significantly, the policy in favor of enforcing arbitration clauses counsels in favor of abstention. Thus, even if the Plan preserved exclusive jurisdiction in this Court to resolve the dispute, and recognizing that such action should not be taken lightly, the Court has discretion to remit the

7

claim to arbitration and does so. *See In re BFW Liquidation, LLC*, 459 B.R. 757, 777 (Bankr. N.D. Ala. 2011) (ordering arbitration of pension fund's claim against debtor notwithstanding debtor's objection thereto, because "interests of justice plainly indicate that abstention in favor of arbitration is warranted in this case pursuant to 28 U.S.C. § 1334(c)(1)"); *Alderwoods Grp., Inc. v. Charter Funerals, Inc. (In re Loewen Grp. Int'l, Inc.)*, 344 B.R. 727, 731 (Bankr. D. Del. 2006) (granting reorganized debtor's motion to abstain, pursuant to 28 U.S.C. § 1334(c)(1), and to refer dispute to arbitration, saying, "[T]he factors that favor abstention are the more substantive ones: the actions involve only state law issues and their resolution will not have an effect on the efficient administration of the estate. Further, there is a strong federal policy in favor of arbitration." (citations omitted)).

**B.    Stay Pending Appeal**

In response to Tyco's motion to compel arbitration, CIT also moved to enjoin arbitration pending a final decision on its appeal of the Court's order granting Tyco summary judgment on the subordination question. CIT seeks a preliminary injunction under Fed. R. Civ. P. 65, made applicable by Bankruptcy Rule 7065, instead of a stay pending appeal pursuant to Bankruptcy Rule 8005, but the standards are substantially the same. *Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009) ("There is substantial overlap between [the factors governing stay pending appeal] and the factors governing preliminary injunctions." (citation omitted)); *Silverman v. Nat'l Union Fire Ins. Co. (In re Suprema Specialties, Inc.)*, 330 B.R. 93, 94 (S.D.N.Y. 2005) ("In order to obtain a stay from a Bankruptcy Court order the appellant must make the same showing normally required for a preliminary injunction or stays of other kinds of orders." (citation omitted)). A preliminary injunction order, or a stay pending appeal, will be entered where the movant demonstrates "(1) that irreparable harm is likely absent an injunction and (2) either (a) a

8

likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation plus a balance of hardships tipping decidedly in [its] favor." *Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

In deciding the issue of a stay pending appeal, the following is relevant. The parties agreed to stay further proceedings to liquidate the Tyco claim pending this Court's decision on the question of subordination, and the stay made eminent practical sense. A further stay would also make sense, but Tyco has refused to consent thereto, asserting that the time it would take before the appeals were decided would put it at a disadvantage, as witnesses' memories become more clouded by the passage of time. A direct appeal to the Court of Appeals would substantially reduce the appeal period, and the Court is contemporaneously with the issuance of this decision certifying the matter for direct appeal to the Circuit Court on the ground that a direct appeal would "materially advance the progress of the case" within the meaning of 28 U.S.C. § 158(d)(2)(A)(iii).

Nevertheless, although a further stay would make practical sense, considered on its merits as a matter of law, CIT's motion is insufficient to justify a stay that would extend throughout the appellate process. As to the first prong of the preliminary injunction standard, CIT asserts that it would suffer irreparable harm absent an injunction because it would be forced to expend time and money arbitrating a claim for damages that would have no value if CIT wins on appeal and Tyco's claim is subordinated pursuant to § 510(b). However, as Tyco argues, the incurrence of litigation costs does not ordinarily constitute irreparable harm. *E.g.*, *Katz v. I.A. Alliance Corp.*, 301 B.R. 781, 781 (S.D.N.Y. 2003); *Daniels v. City of New York*, 138 F. Supp. 2d 562, 564 (S.D.N.Y. 2001); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (FAA

9

"requires district courts to compel arbitration of pendent arbitrable claims . . . even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.").

CIT also relies on cases finding irreparable harm where a party is compelled to arbitrate a non-arbitrable dispute. *See Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (granting injunction because movant "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." (quotation marks and citation omitted)); *ProShares Trust v. Schnall*, 695 F. Supp. 2d 76, 80 (S.D.N.Y. 2010) (granting injunction where the parties had not agreed to arbitrate and could not be compelled to do so under applicable FINRA rules). However, the issue here is not whether the parties agreed to arbitration – there is no question there was such an agreement – but whether the Plan requires the Court to exercise exclusive jurisdiction to decide the dispute. As shown above, there are numerous bases leading to the conclusion that the Plan creates no such straightjacket under the circumstances of this case.

Turning to the other preliminary injunction factors, the issues that CIT will raise on appeal are certainly "fair ground for litigation," as it claims. However, it is not clear that the balance of hardships will have tilted decidedly in CIT's favor if it prevails on appeal, as both parties would incur unrecoverable expenses during an intervening arbitration. As the Court said in *Lawrence v. Wilder Richman Secs. Corp.*, 417 F. App'x 11, 14 (2d. Cir. 2010) (summary order), "A party suffers no legally cognizable injury at all, let alone irreparable injury, by being compelled to engage in arbitration to which he has contractually agreed."

Nevertheless, under the circumstances, the Court will stay the matter for a sufficient period to allow the appellate court to decide a motion for a preliminary injunction or a stay, if

10

CIT decides to make one. As noted above, Tyco has pointed to no hardship from a stay pending appeal other than the passage of time. CIT has moved for an order certifying the matter for immediate appeal to the Second Circuit, Tyco did not object to certification in order to expedite the appellate process, and this Court is herewith certifying that "an immediate appeal from the [summary judgment order] may materially advance the progress of the case or proceeding." 28 U.S.C. § 158(d)(2)(A)(iii); Bankruptcy Rule 8001(f). Since there is uncertainty whether the Circuit will hear a direct appeal, a limited stay of the arbitration is warranted until such time as the Circuit Court or the District Court, as the case may be, has an opportunity to rule on any further motion for a stay. This temporary stay will terminate automatically if CIT does not make such a motion within twenty days after (i) the appeal is docketed in the Circuit Court or (ii) the appeal is assigned to a district judge, whichever is relevant after the Circuit Court rules on certification.

## Conclusion

For the reasons set forth above, Tyco's motion to compel arbitration of claims relating to the Tax Agreement is granted, and CIT's motion to enjoin arbitration pending its appeal of the order entered January 18, 2012 is denied, except that a stay is granted until the issue of certification is decided and the appellate court has an opportunity to rule on any further stay motion that CIT may timely file. Tyco's counsel shall settle an order or orders on three days' notice regarding the motions; the Court has entered a separate order certifying the direct appeal.

Dated: March 9, 2012
      New York, New York

                                                  s/Allan L. Gropper
                                                  UNITED STATES BANKRUPTCY JUDGE